1  Moez M. Kaba, State Bar No. 257456
   mkaba@hueston.com
2  Steve N. Feldman, State Bar No. 281405
   sfeldman@hueston.com
3  Padraic W. Foran, State Bar No. 268278
   pforan@hueston.com
4  HUESTON HENNIGAN LLP
   523 West 6th Street, Suite 400
5  Los Angeles, CA 90014
   Telephone:    (213) 788-4340
6  Facsimile:    (888) 775-0898

7  Attorneys for Defendants
   Valeant Pharmaceuticals International, Inc.,
8  Valeant Pharmaceuticals International,
   Salix Pharmaceuticals, Ltd., and
9  Salix Pharmaceuticals, Inc.

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA; STATES          Case No. 3:18-cv-01496-JD
    OF CALIFORNIA, COLORADO,
14  CONNECTICUT, DELAWARE, FLORIDA,           **MOTION TO DISMISS CORRECTED**
    GEORGIA, HAWAII, ILLINOIS, INDIANA,       **AMENDED COMPLAINT BY**
15  IOWA, LOUISIANA, MARYLAND,                **DEFENDANTS VALEANT**
    MICHIGAN, MINNESOTA, MONTANA,             **PHARMACEUTICALS INTERNATIONAL,**
16  NEVADA, NEW JERSEY, NEW MEXICO,           **INC., VALEANT PHARMACEUTICALS**
    NEW YORK, NORTH CAROLINA,                 **INTERNATIONAL, SALIX**
17  OKLAHOMA, RHODE ISLAND,                   **PHARMACEUTICALS, LTD., AND SALIX**
    TENNESSEE, TEXAS, VERMONT, AND            **PHARMACEUTICALS, INC.**
18  WASHINGTON; THE COMMONWEALTHS
    OF MASSACHUSETTS AND VIRGINIA;            Judge:   Hon. James Donato
19  AND THE DISTRICT OF COLUMBIA,
                                              Trial Date:   None Set
20  *ex rel.* ZACHARY SILBERSHER,

21             Plaintiffs,

22        vs.

23  VALEANT PHARMACEUTICALS
    INTERNATIONAL, INC., VALEANT
24  PHARMACEUTICALS INTERNATIONAL,
    SALIX PHARMACEUTICALS, LTD., SALIX
25  PHARMACEUTICALS, INC., AND DR.
    FALK PHARMA GMBH,
26
               Defendants.
27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................... 1

I.    STATEMENT OF FACTS ................................................................................................... 1

    A.    The Parties ................................................................................................................ 1

    B.    FDA approval, patent prosecution, and the sale of Apriso ...................................... 2

    C.    Representations and sales to federal and state governments .................................... 2

    D.    Procedural posture .................................................................................................... 3

II.   ARGUMENT ...................................................................................................................... 3

    A.    The legal standard .................................................................................................... 3

    B.    The FCA claim should be dismissed for failing to allege any "claim
         for payment" that was false and material to the government's
         decision to pay .......................................................................................................... 3

         1.    The Complaint fails to allege any false claim ............................................. 3

         2.    The Complaint fails to allege materiality ..................................................... 6

    C.    The FCA claim should be dismissed under the public disclosure bar ...................... 8

         1.    The allegations in the Complaint were publicly disclosed .......................... 9

         2.    Silbersher is not an "original source" of the allegations ............................ 12

    D.    The FCA claim should be dismissed for failing to plead fraud with
         particularity ............................................................................................................ 13

    E.    Silbersher's derivative state law causes of action should be dismissed ................ 14

III.  CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A-1 Ambulance Serv., Inc. v. California*,
  202 F.3d 1238 (9th Cir. 2000) ................................................................ 12

*Ambrosecchia v. Paddock Laboratories, LLC*,
  855 F.3d 949 (8th Cir. 2017) .................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 3, 13

*Cafasso, U.S. ex rel. v. Gen Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................. 4, 13

*Dr. Falk Pharma GmbH v. GeneriCo, LLC*,
  No. 17-2312, Dkt. 37 (Fed. Cir. Nov. 7, 2017) ........................................ 3

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ........................................................ passim

*Health Choice All., LLC, on behalf of United States v. Eli Lilly & Co., Inc.*,
  2018 WL 4026986 (E.D. Tex. July 25, 2018) ........................................ 15

*Knudsen v. Spring Commc'ns Co.*,
  2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) ........................................... 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ................................................................. 3

*Mikes v. Straus*,
  274 F.3d 687 (2d Cir. 2001) .................................................................... 6

*S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*,
  224 Cal. App. 4th 627 (2014) ................................................................ 15

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
  563 U.S. 401 (2011) ........................................................................ 11, 12

*U.S. ex rel. Campie v. Gilead Scis., Inc.*,
  862 F.3d 890 (9th Cir. 2017) ............................................................. 3, 13

*U.S. ex rel. Feldman v. City of New York*,
  808 F. Supp. 2d 641 (S.D.N.Y. 2011) ..................................................... 5

*U.S. ex rel. Fryberger v. Kiewit Pac. Co.*,
  41 F. Supp. 3d 796 (N.D. Cal. 2014) ....................................................... 9

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  792 F.3d 1121 (9th Cir. 2015) .............................................................. 13

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
  461 F.3d 1166 (9th Cir. 2006) ................................................................. 4

1

<u>TABLE OF AUTHORITIES</u> (cont.)

2

Page(s)

3

*U.S. ex rel. Hong v. Newport Sensors, Inc.,*
    2016 WL 8929246 (C.D. Cal. May 19, 2016) ............................................................ 11, 12

4

5

*U.S. ex rel. Hopper v. Anton,*
    91 F.3d 1261 (9th Cir. 1996) ........................................................................ 6, 8

6

*U.S. ex rel. Mateski v. Raytheon Co.,*
    816 F.3d 565 (9th Cir. 2016) ................................................................ 1, 8, 9, 12, 13

7

8

*U.S. ex rel. Petratos v. Genentech Inc.,*
    855 F.3d 481 (3rd Cir. 2017) ........................................................................ 7

9

*U.S. ex rel. Promega Corp. v. Hoffman-La Roche Inc.,*
    No. 03-1447-A (E.D. Va. Sep. 24, 2004) ............................................................ 8

10

11

*U.S. ex rel. Rose v. Stephens Institute,*
    2018 WL 6165627 —F.3d— (9th Cir. 2018) ........................................................ 4

12

*U.S. ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.,*
    739 F. Supp. 2d 396 (S.D.N.Y. 2010) ............................................................ 11

13

*U.S. ex rel. Shea v. Cellco P'ship,*
    863 F.3d 923 (D.C. Cir. 2017) ........................................................................ 10

14

15

*U.S. ex rel. Solis v. Millennium Pharm., Inc.,*
    885 F.3d 623 (9th Cir. 2018) ........................................................................ 9, 12

16

*U.S. ex rel. Unite Here v. Cintas Corp.,*
    2007 WL 4557788 (N.D. Cal. Dec. 21, 2007) ...................................................... 11

17

18

*U.S. ex rel. Wilkins v. United Health Grp.,*
    659 F.3d 295 (3d Cir. 2011) ........................................................................ 4

19

*United States ex rel. JDJ & Associates LLP v. Natixis,*
    2017 WL 4357797 (E.D.N.Y. Sep. 29, 2017) .................................................... 13

20

21

*United States v. Catholic Healthcare W.,*
    445 F.3d 1147 (9th Cir. 2006) ........................................................................ 12

22

*United States v. Corinthian Colls.,*
    655 F.3d 984 (9th Cir. 2011) ........................................................................ 14

23

24

*United States v. Safran Grp. S.A.,*
    2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ...................................................... 14

25

*United States v. United Healthcare Ins. Co.,*
    848 F.3d 1161 (9th Cir. 2016) ........................................................................ 14

26

27

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar,*
    136 S. Ct. 1989 (2016) ........................................................................ passim

28

- iii -

5457211

<u>TABLE OF AUTHORITIES (cont.)</u>

Page(s)

*Wade v. Reg'l Credit Ass'n,*
    87 F.3d 1098 (9th Cir. 1996) ............................................................... 15

*Wang v. FMC Corp.,*
    975 F.2d 1412 (9th Cir. 1992) ............................................................. 13

**<u>Statutes</u>**

28 U.S.C. § 1367(c)(3) ............................................................................ 15

31 U.S.C. § 3729(a)(1)(A), (B) .............................................................. 3, 4

31 U.S.C. § 3730(e)(4) ....................................................................... passim

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 3, 9

Fed. R. Civ. P. 9(b) ........................................................................... 1, 13, 14

**<u>Other Authorities</u>**

Matthew Bultman, *Part of Apriso Patent Nixed In IPR With Hedge Fund Ties,*
    Law360 (May 19, 2017, 4:58 PM EDT) .............................................. 10

1

## NOTICE OF MOTION AND MOTION

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE THAT on April 4, 2019 at 10:00 a.m., or as soon thereafter as the

4  matter may be heard in the United States District Court for the Northern District of California, San

5  Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, in

6  Courtroom 11 before the Honorable James Donato, Defendants Valeant Pharmaceuticals

7  International, Inc. (Bausch Health Companies Inc.), Valeant Pharmaceuticals International, Salix

8  Pharmaceuticals, Ltd., and Salix Pharmaceuticals, Inc., (collectively, "Moving Defendants") by and

9  through counsel, will and hereby do move this Court to Dismiss the Corrected Amended Complaint

10  (Dkt. 10) pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

11      Moving Defendants' motion is based on this notice of motion and accompanying

12  memorandum of points and authorities, the accompanying exhibits, all documents in the Court's

13  file, any matters of which this Court may take judicial notice, and on such written or oral argument

14  that Moving Defendants may present to the Court.

15

## ISSUE TO BE DECIDED

16      1.      Does the Corrected Amended Complaint fail to state a claim upon which relief may

17  be granted pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6)?

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2      Defendants Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals

3  International, Salix Pharmaceuticals, Ltd., and Salix Pharmaceuticals, Inc. (collectively, "Moving

4  Defendants") respectfully move pursuant to Rule 12(b)(6) to dismiss the Corrected Amended

5  Complaint ("Complaint"). Plaintiff and Relator Zachary Silbersher purports to assert claims on

6  behalf of the United States under the False Claims Act ("FCA"), and on behalf of 28 states and the

7  District of Columbia under their respective false claims statutes. But the United States, every

8  plaintiff state, and the District of Columbia have each declined to intervene in this action. As these

9  government entities must recognize, the Complaint fails on multiple grounds.

10     *First*, it fails to plead the basic elements of an FCA claim. Silbersher does not allege that

11  Moving Defendants made a false statement or "false certification" in any demand for payment. *See*

12  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). He likewise does not plead facts

13  establishing that any statement or certification meets the FCA's "rigorous" and "demanding"

14  materiality standard. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2002-03

15  (2016). *Second*, the Complaint should be dismissed under the FCA's public disclosure bar. Every

16  material transaction alleged in the Complaint was publicly disclosed long before this action was

17  filed. *See U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016). Silbersher—a

18  patent attorney unaffiliated with the Moving Defendants—also does not qualify as an "original

19  source" of the information. 31 U.S.C. § 3730(e)(4)(B). *Third*, the Complaint should be dismissed

20  because it fails to plead any of its claims with the particularity required by Rule 9(b). Silbersher

21  fails to describe the content of any claim for payment made by any Defendant, let alone who made

22  it, when, where, how, or to whom. *Ebeid*, 616 F.3d at 998.  These defects are not curable by further

23  amendment, and the Complaint should be dismissed with prejudice.

24

**I.      STATEMENT OF FACTS**

25

**A.      The Parties**

26     Defendant Salix Pharmaceuticals, Inc. offers treatments for gastrointestinal diseases. In

27  2015, it and Salix Pharmaceuticals, Ltd. were acquired by Valeant Pharmaceuticals International,

28  Inc. (now Bausch Health Companies Inc. ("Bausch")). Each of the Moving Defendants is owned

1   (either directly or indirectly) by Bausch. Relator Zachary Silbersher is a New York patent attorney

2   who in 2017 was adverse to Moving Defendants in an *inter partes review* (IPR) of one of their

3   patents before the Patent Trial and Appeal Board (the "PTAB"). Silbersher now takes his client's

4   IPR allegations—allegations that Moving Defendants obtained drug patents without disclosing

5   prior art—and dresses them up as an FCA claim. His theory appears to be that Moving Defendants'

6   patents increased a drug's market price and, as a result, Moving Defendants necessarily violated the

7   FCA every time they sold this drug to the government at its ordinary market price.

8           **B.      FDA approval, patent prosecution, and the sale of Apriso**

9           Silbersher accuses Defendants of making material omissions to the U.S. Patent and

10  Trademark Office (the "USPTO") while prosecuting patents on Apriso, an ulcerative colitis drug.[1]

11  Between 2003 and 2015, Defendants were issued six patents relating to Apriso's pellet formulation

12  (the "Otterbeck Patents"). Complaint ¶ 100. Silbersher alleges that each of the Otterbeck Patents

13  was invalid because of prior art. *Id.* ¶¶ 102-16. In 2008, Apriso was approved for sale by the U.S.

14  Food and Drug Administration (the "FDA"). *Id.* ¶ 117. Apriso's FDA-approved exclusivity expired

15  in 2011. *Id.* ¶ 118. In 2014, Defendants obtained a patent relating to a method for administering

16  Apriso, U.S. Patent No. 8,865,688 ("the '688 Patent"). *Id.* ¶ 80. Silbersher asserts that the '688

17  Patent was also invalid because of prior art. *Id.* ¶¶ 83-99. Ignoring the several other patents

18  protecting Apriso, Silbersher alleges that generic manufacturers were prepared to enter the market,

19  but that the issuance of the '688 Patent caused them to stay out. *Id.* ¶¶ 117-24. He asserts that

20  generic competition would have reduced Apriso's price and market share. *Id.* ¶¶ 73-74.

21          **C.      Representations and sales to federal and state governments**

22          Silbersher alleges that, starting in 2011 and later, Moving Defendants submitted invoices to

23  the federal and various state governments for Apriso. *Id.* ¶ 139. He alleges that to qualify Apriso

24  for sale to federal agencies and for reimbursement under Medicare and Medicaid, Moving

25  Defendants would have had to provide the General Services Administration (the "GSA") with

26  "proof that the price is fair and reasonable." *Id.* ¶ 133. He alleges that such "proof" would have

27

28  _____

[1] For purposes of this Motion, we treat the allegations in the Complaint as if they were true.

1   been a misrepresentation, because of the '688 Patent's claimed invalidity.

2       **D.      Procedural posture**

3       Silbersher, on behalf of a generic drug company and hedge fund, initiated IPR of the '688

4   Patent in 2015. In May 2017, the PTAB invalidated the '688 Patent.[2] *Id.* ¶ 15. Less than a year

5   later, Silbersher filed this action. Dkt. 1. In September 2018, the United States declined to

6   intervene. Dkt. 8. On October 23, 2018, Silbersher filed a Corrected Amended Complaint. Dkt. 10.

7   Just six days later, all of the plaintiff states declined to intervene, and the case was later unsealed.

8   Dkt. 11, Dkt. 21. On December 5, 2018, the action was reassigned to Judge James Donato. Dkt. 28.

9                              **II.      ARGUMENT**

10      **A.      The legal standard**

11      Under the familiar Rule 12(b)(6) standard, the Court "accept[s] factual allegations in the

12  complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."

13  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But

14  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

15  statements, do not suffice," and pleadings that "are no more than conclusions, are not entitled to the

16  assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

17      **B.      The FCA claim should be dismissed for failing to allege any "claim for payment"**

18              **that was false and material to the government's decision to pay.**

19      The FCA creates liability only for one who "knowingly presents, or causes to be presented,

20  a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to

21  be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C.

22  § 3729(a)(1)(A), (B).  A plaintiff must plead "(1) a false statement or fraudulent course of conduct,

23  (2) made with scienter, (3) that was material, causing (4) the government to pay out money or

24  forfeit moneys due." *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017).

25      **1.      The Complaint fails to allege any false claim.**

26      "The first requirement of a False Claims Act claim is a false claim," *Campie*, 862 F.3d at

27  _____

28  [2] This decision is currently on appeal to the Federal Circuit.  *See Dr. Falk Pharma GmbH v. GeneriCo, LLC*, No. 17-2312, Dkt. 37 (Fed. Cir. Nov. 7, 2017).

902, and the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the *claim for payment*." *Cafasso, U.S. ex rel. v. Gen Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (emphasis added; internal quotations omitted). Courts recognize (1) "factually false" and (2) "legally false" claims. "A claim is factually false when the claimant misrepresents what goods or services … it provided to the Government[.]" *U.S. ex rel. Wilkins v. United Health Grp.*, 659 F.3d 295, 305 (3d Cir. 2011). Silbersher does not—and could not—assert that Moving Defendants made any factually false claim.[3]

A claim may be legally false due to an "express false certification" or an "implied false certification." *See U.S. ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018). Express false certification "means that the entity seeking payment [falsely] certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *Ebeid*, 616 F.3d at 998. Implied false certification means that the entity "has *previously* undertaken to expressly comply with a law, rule, or regulation [but does not], and that obligation is implicated by submitting a claim for payment." *Id.* (emphasis added).

The only "claim[s] for payment" that any Defendant allegedly made to the government were "invoices for patented Apriso." *See* Complaint ¶ 139. At most, Silbersher offers a theory that these invoices were *legally* false. He argues that, through a convoluted daisy chain of implications, Moving Defendants' mere submission of invoices for Apriso *impliedly* certified that they had complied with all patent laws in obtaining the '688 Patent. He alleges that (1) Moving Defendants submitted claims for payment on Apriso by sending invoices to the federal government (*Id.* ¶ 139); (2) the invoices *implied* that Moving Defendants had listed Apriso on the Federal Supply Schedule (the "FSS"); (3) listing Apriso on the FSS *implied* that Defendants had signed a Master Agreement ("MA") and a Pharmaceutical Price Agreement ("PPA") with the GSA; (4) signing the MA and PPA *implied* that Moving Defendants had complied with certain GSA reporting requirements; (5)

---

[3] None of Moving Defendants' alleged statements or omissions to the USPTO, to the FDA, or to the GSA is a "claim for payment," 31 U.S.C. § 3729(a)(1)(A), and thus none can create liability for a factually false claim. With respect to invoices for Apriso, Silbersher does not allege that Moving Defendants provided Apriso at anything other than the quality, amount, and price agreed. He therefore does not allege that Moving Defendants submitted any claim that was "literally false or fraudulent." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006).

1    complying with such reporting requirements *implied* that Moving Defendants had provided "proof

2    that [Apriso's] price [was] fair and reasonable"; (6) providing such proof *implied* that the price of

3    Apriso had not been inflated by excluding generic competitors; and (7) thus *implied* that Moving

4    Defendants had complied with all relevant patent laws in obtaining the '688 Patent. *Id.*  ¶¶ 132-33.

5    Moving Defendants are not aware of *any* case in *any* court that has found FCA liability based such

6    an attenuated chain of implications. Even if these allegations were true, they describe neither an

7    express nor an implied false certification, and thus fail as a matter of law.

8         Silbersher does not allege that these invoices contained *any* express representation of *any*

9    kind, let alone express "compliance with a[ny] law, rule or regulation." *Ebeid*, 616 F.3d at 998.  To

10   the extent that any Moving Defendant expressly asserted that a "price [wa]s fair and reasonable,"

11   they did so to the GSA to obtain a listing on the FSS, not in any claim for payment.[4]

12        Silbersher also fails to allege facts suggesting that Moving Defendants' invoices contained

13   any *implied* false certification. The Supreme Court in *Escobar* recently held that a claim can

14   support liability for an implied false certification if two conditions are met:

15                  first, the claim does not merely request payment, but also makes
                    specific representations about the goods or services provided; and
16                  second, the defendant's failure to disclose noncompliance with
                    material statutory, regulatory, or contractual requirements makes
17                  those representations misleading half-truths.

18   *Escobar*, 136 S. Ct. at 2001. The Complaint fails to plead facts satisfying either of these conditions.

19        First, the Complaint does not allege that any invoice "makes [any] specific representations

20   about the goods … provided." *Id.* In *Escobar*, a health provider impliedly certified that it had

21   provided patients with certain types of counseling treatment "by submitting claims for payment

22   using payment codes that corresponded to specific counseling services." *Id.* at 2000. These codes

23   amounted to "specific representations" about the types of services provided. Here, by contrast,

24   Silbersher fails to describe *any* content in *any* invoices. *See, e.g.*, Complaint ¶ 148.

25

26   _____

27   [4] Even if it had been made in a claim for payment, an assertion that a price is "fair and reasonable"
     is too generic to constitute an express certification under the FCA. *See U.S. ex rel. Feldman v. City
     of New York*, 808 F. Supp. 2d 641, 652 (S.D.N.Y. 2011) ("[A] claim that there has been an express

28   false certification cannot be premised on anything as broad and vague as a certification that there
     has been compliance with all 'federal, state and local statutes, regulations, [and] policies.'").

1    Second, the Complaint does not allege that the invoices contained any "misleading half-

2    truths." In *Escobar*, the defendant's claims for payment amounted to "misleading half-truths"

3    because they contained identification numbers "corresponding to specific job titles," which falsely

4    suggested that the employees who performed the services possessed the basic qualifications and

5    training necessary to hold such titles. *Escobar*, 136 S. Ct. at 2000. Here, by contrast, the alleged

6    invoices are not alleged to have contained any representations at all, let alone "half-truths."

7    Unable to satisfy *Escobar*'s test, Silbersher resorts to his chain of inferences to argue that

8    Moving Defendants' submission of invoices impliedly certified that they had complied with all

9    patent laws in obtaining the '688 Patent. This allegation fails too. Unlike the payment codes and

10    job titles at issue in *Escobar*, the term "fair and reasonable" is nebulous and undefined. Courts

11    regularly reject liability arising from such vague "certifications." In *Mikes v. Straus*, 274 F.3d 687,

12    698-99 (2d Cir. 2001), *abrogated on other grounds by Escobar*, 136 S. Ct. 1989, the Second

13    Circuit rejected liability based on a relator's certification that services were "medically indicated

14    and necessary for the health of the patient," in part because the concept of medical necessity did

15    "not impart a qualitative element mandating a particular standard of medical care, and [relator did]

16    not point to any legal authority requiring us to read such a mandate into the form." *Id.* at 698. The

17    term "fair and reasonable" is similarly vague and subject to a variety of meanings. Silbersher

18    proposes a definition under which a price cannot be fair or reasonable if *any* prior misconduct may

19    have caused the market price to be higher than it otherwise would be. But like the relator in *Mikes*,

20    Silbersher cannot cite to any authority supporting this definition, which is not plausible in any

21    event.[5] The Ninth Circuit has affirmed that such "differences in interpretations are not false

22    certifications under the [FCA]." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).

23        **2.    The Complaint fails to allege materiality.**

24    Even if the invoices that Moving Defendants submitted for Apriso contained false

25    certifications (they did not), the Complaint fails to allege that any such certification satisfies the

26

27    ───────────────

28    [5] Context suggests that the term "fair and reasonable" means non-discriminatory and commensurate
with the market price. Complaint ¶ 132. Silbersher does not allege that any Defendant charged the
government a price for Apriso that was discriminatory or incommensurate with the market price.

1  FCA's "rigorous" and "demanding" materiality requirement. *Escobar*, 136 S. Ct. at 2002-03. To

2  meet this standard, a relator must allege that the certification was "material to the Government's

3  payment decision." *Id.* at 2003. It is not sufficient that compliance is a condition of payment, nor

4  "that the Government would have the *option* to decline to pay if it knew of the defendant's

5  noncompliance." *Id.* at 2003 (emphasis added).[6]

6      The Complaint alleges only that the "fair and reasonable" certification was "*per se* material

7  to the government's payment decision." Complaint ¶ 137. *Escobar* and its progeny reject this "*per

8  se*" theory of materiality. In *Knudsen v. Spring Commc'ns Co.*, 2016 WL 4548924 (N.D. Cal. Sept.

9  1, 2016), for example, a "single, conclusory paragraph" was insufficient to plead materiality. The

10  paragraph alleged that, because regulations required certain price reductions to the government,

11  "those terms were per se material to the government's decision to contract with Defendants." *Id.* at

12  *13. The court held that "per se" materiality was untenable under *Escobar*, which had "rejected a

13  theory of materiality that any statutory, regulatory, or contractual violation is material just because

14  it can result in the government's decision not to pay a claim." *Id.*; *see also U.S. ex rel. Petratos v.

15  Genentech Inc.*, 855 F.3d 481, 489-93 (3d Cir. 2017) (affirming dismissal of FCA claim where

16  relator did not plead that facts showing that Medicare would not have reimbursed claims if it had

17  knowledge of a regulatory violation). As in *Knudsen*, the Complaint includes a single, conclusory

18  paragraph citing to a government regulation regarding price, and on that basis alone asserts that the

19  certification was "*per se* material." Complaint ¶ 137. This fails as a matter of law.

20      The failure to plead materiality is acute here. To establish materiality, the Complaint would

21  need to plead that, if the federal and state governments had known that the '688 Patent was based

22  on undisclosed prior art, they would have declined to pay the invoices that Moving Defendants

23  submitted. Not only does the Complaint fail to plead this, but it pleads the opposite. The Complaint

24  confirms that federal and state governments would *not* have refused to purchase Apriso, because

25  they in fact *continued* to purchase it long after the '688 Patent was invalidated in May 2017, and

26  after this action was filed in March 2018. Complaint ¶ 32. Silbersher alleges that "the number and

27  
_____

28  [6] The Supreme Court has also rejected any "assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss." *Escobar,* 136 S. Ct. at 2004 n.6.

1    cost of false claims Defendants submitted or caused to be submitted" actually *increased* in 2018,

2    after the patent was invalidated. *Id.* As the Supreme Court acknowledged in *Escobar*, "if the

3    Government pays a particular claim in full despite its actual knowledge that certain requirements

4    were violated, that is *very strong evidence that those requirements are not material*." *Escobar,* 136

5    S. Ct. at 2003 (emphasis added). The '688 Patent cannot have been the *sine qua non* of federal

6    funding, because according to the Complaint, the government paid for Apriso both *before* the '688

7    Patent was issued and *after* it was invalidated. Complaint ¶¶ 32-33; *see Hopper*, 91 F.3d at 1267

8    ("Mere regulatory violations do not give rise to a viable FCA action … where regulatory

9    compliance was not a *sine qua non* of receipt of state funding.").[7]

10        At least one court has rejected an analogous effort to impose FCA liability. In *U.S. ex rel.*

11   *Promega Corp. v. Hoffman-La Roche Inc.*, No. 03-1447-A (E.D. Va. Sept. 24, 2004), the relator

12   alleged that the defendants had "fraudulently obtained" patents by lying to the USPTO, that "years

13   later Defendants used those patents to obtain contracts with the Government," and that "every

14   invoice submitted for payment under these contracts" therefore constituted an FCA violation. *Id.* at

15   5. The *Promega* court dismissed this FCA claim as "fatally flawed," holding that the alleged

16   "misrepresentations to the USPTO from years ago" could not amount to a false claim because of

17   their "disconnect" from "the invoices submitted to the Government." *Id.* The same is true here.

18        **C.    The FCA claim should be dismissed under the public disclosure bar.**

19        The Complaint should be dismissed for an independent reason: it cannot survive the public

20   disclosure bar. The FCA's public disclosure bar requires a court to dismiss a *qui tam* action if (1)

21   there has already been a "public disclosure" of "substantially the same allegations or transactions

22   alleged in the action" and (2) the relator is not an "original source" of that disclosure. 31 U.S.C.

23   § 3730(e)(4). "The public disclosure bar is intended to encourage suits by whistle-blowers with

24   genuinely valuable information, while discouraging litigation by plaintiffs who have no significant

25   information of their own to contribute." *Mateski*, 816 F.3d at 570. The Court may adjudicate public

26

27   _____

[7] It makes sense that the '688 Patent's status would not have been material to a payment decision.
28   As alleged, "Apriso® did not have any FDA-approved competitors." Complaint ¶ 138. Had the
     government not paid for Apriso, ulcerative colitis patients may have been left with *no* treatment.

1  disclosure by considering documents outside the complaint, such as news reports. *See, e.g.*, *U.S. ex*

2  *rel. Fryberger v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 802-10 (N.D. Cal. 2014) (relying on

3  judicially-noticed documents to dismiss under Rule 12(b)(6) for public disclosure).

4          **1.**      **The allegations in the Complaint were publicly disclosed.**

5        Under the FCA, public disclosure may occur through three channels: "(i) in a Federal …

6  hearing in which the Government … is a party; (ii) in a congressional, Government Accountability

7  Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media[.]" 31

8  U.S.C. § 3730(e)(4)(A). Such a disclosure bars a *qui tam* action if it contains "substantially the

9  same allegations or transactions as alleged in the action or claim." *Id.* In this context, "[c]ourts have

10  interpreted 'allegation' to refer to a direct claim of fraud, and 'transaction' to refer to facts from

11  which fraud can be inferred." *Mateski*, 816 F.3d at 571 (citing 31 U.S.C. § 3730(e)(4)(A)).

12  Therefore, "[t]he substance of the disclosure … need not contain an explicit 'allegation' of fraud,

13  so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public

14  domain." *Id.* (alteration in original, internal quotations omitted). To analyze whether the "material

15  elements" of a "transaction" have been disclosed, the Ninth Circuit in *Mateski* offered guidance:

16          If X + Y = Z, Z represents the allegation of fraud and X and Y
        represent its essential elements. In order to disclose the fraudulent

17          transaction publicly, the combination of X and Y must be revealed,
        from which readers or listeners may infer Z, i.e., the conclusion that

18          fraud has been committed … [I]n a fraud case, X and Y inevitably
        stand for but two elements: a misrepresented state of facts and a true

19          state of facts. In order to invoke the [public disclosure] bar, a
        defendant must show that the transaction . . . is one in which a set of

20          misrepresented facts has been submitted to the government.

21  *Id.* (internal quotation marks and alteration marks omitted). Relatedly, a disclosure concerns

22  "substantially the same" allegation if it was sufficient to "put the government 'on notice to

23  investigate the fraud.'" *U.S. ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 626 (9th Cir.

24  2018) (quoting *Mateski*, 816 F.3d at 574). Silbersher nowhere pleads that the alleged fraud in the

25  Complaint was not publicly disclosed, nor could he. There was public disclosure both of "X," the

26  allegedly misrepresented state of facts, and "Y," the allegedly true state of facts.**8**

27  _____

28  **8** For the Court's convenience, Moving Defendants have enclosed a chart in Appendix A tracking
each material transaction alleged in the Complaint and the source of its public disclosure.

1

### a. The allegedly misrepresented state of facts was disclosed.

2    The "misrepresented state of facts" alleged in the Complaint was publicly disclosed before

3    Silbersher filed this action. The Complaint alleges Moving Defendants made misrepresentations to

4    the GSA when they certified that the price of Apriso was "fair and reasonable." *See* Complaint ¶¶

5    133, 137. The only basis for this allegation is that there is a GSA rule requiring such a certification

6    to list a drug on the FSS. *Id.* ¶¶ 132-33. This rule is, and has been, publicly posted on the GSA

7    website.[9] Courts have held that whether characterized as "news media" or government "reports,"

8    publicly available rules are public disclosures for purposes of the FCA. *See, e.g.*, *U.S. ex rel. Shea*

9    *v. Cellco P'ship*, 863 F.3d 923, 933-34 (D.C. Cir. 2017) (affirming district court's dismissal of *qui*

10   *tam* action under the public disclosure bar when relator "relied on public regulations governing

11   federal contracts"). Thus, the allegedly misrepresented state of facts—Moving Defendants'

12   assertion that the price of Apriso was "fair and reasonable"—was publicly disclosed.

13

### b. The allegedly true state of facts was disclosed.

14   The "true state of facts" alleged in the Complaint was also publicly disclosed before

15   Silbersher filed this action. The Complaint alleges that the price of Apriso was artificially inflated,

16   because the '688 Patent was obvious in light of prior art. Critically, this core allegation—the

17   supposed invalidity of the '688 Patent as determined by the PTAB—was publicly disclosed

18   through national news media before Silbersher initiated this action. *See* Matthew Bultman, *Part of*

19   *Apriso Patent Nixed In IPR With Hedge Fund Ties*, Law360 (May 19, 2017, 4:58 PM EDT),

20   https://www.law360.com/articles/926213/part-of-apriso-patent-nixed-in-ipr-with-hedge-fund-ties.

21   (Ex. I.) The coverage noted that the PTAB held that the patent was made obvious by prior art. *Id.*

22   Moreover, *all* of the elements of the '688 Patent's alleged invalidity—and Moving

23   Defendants' knowledge thereof—were disclosed before the Complaint was filed. The Complaint

24   asserts that the Brunner and Marakhouski studies made the '688 Patent obvious. *See*

25   Complaint ¶¶ 10, 83-87. Each of those studies was published online for years preceding this suit.

26   *See* Exs. G, H. The Complaint asserts that Moving Defendants knew about the studies because of

27   _____

28   [9]  *See* About GSA Schedules, https://www.gsa.gov/buying-selling/purchasing-programs/gsa-schedules/about-gsa-schedules (last visited January 15, 2018).

1  the involvement of Dr. Falk and his head of research and development in them. Complaint ¶ 84.

2  These facts were disclosed in the studies themselves. *See* Ex. G (Greinwald listed as co-author of

3  Brunner study, with affiliation listed as "Dr. Falk Pharma GmbH, Freiburg, Germany"); Ex. H

4  (same for Marakhouski study). The publishing of these studies on the Internet is public disclosure

5  through "news media." *See U.S. ex rel. Hong v. Newport Sensors, Inc.*, 2016 WL 8929246, at *5

6  (C.D. Cal. May 19, 2016) (holding that profile pages on websites were public disclosures via "news

7  media," and stating: "Information publicly available on the Internet generally qualifies as 'news

8  media.'"); *U.S. ex rel. Unite Here v. Cintas Corp.*, 2007 WL 4557788, at *14 (N.D. Cal. Dec. 21,

9  2007) ("The 'fact' of the contracts between Cintas and the federal government was publicly

10 disclosed in the news media, as that information was available on the Internet.").

11      The Complaint also alleges that the '688 Patent was rendered obvious by statements that

12 Moving Defendants made while prosecuting U.S. Patent No. 8,921,344 ("the '344 Patent").

13 Complaint ¶¶ 88-90, 92. *All* of these statements were made in documents available on the USPTO's

14 online Public Patent Application Information Retrieval ("PAIR") database. *See* Exs. B-1, B-2.

15 Statements made in prosecuting the '688 Patent were also disclosed on the PAIR database. *See* Ex.

16 A-1. The fact that Jonathan Sparks prosecuted both patents (Complaint ¶ 89) is disclosed in these

17 documents. *See* Ex. A-4 (disclosing Sparks' prosecution of the '688 Patent); Ex. B-2 (same for the

18 '344 Patent). Similarly, the fact that Lorin Johnson was an inventor of both patents (Complaint ¶

19 89) is disclosed in these documents. *See* Ex. A-3 (disclosing Johnson's invention of the '688

20 Patent); Ex. B-2 (same for the '344 Patent). The contents of the Otterbeck Patents and the patents

21 that supposedly invalidate them (Complaint ¶¶ 100-116) are available on the PAIR database and

22 the European Patent Office website. *See* Exs. C, D, E. Under the FCA, disclosures via a public

23 online government database—such as the PAIR database—constitute disclosure via either "news

24 media" or a "Federal report." *See Unite Here*, 2007 WL 4557788, at *14; *U.S. ex rel. Rosner v.

25 WB/Stellar IP Owner, L.L.C.*, 739 F. Supp. 2d 396, 407 (S.D.N.Y. 2010) (holding that a publicly-

26 available database on a city agency's website was an administrative report for purposes of the

27 public disclosure bar); *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011) (the

28 public disclosure bar, "especially [the] 'news media' [prong,] ... provides 'a broa[d] sweep.'").

1    Finally, the allegation that Apriso's price was elevated by the absence of generic drugs

2    (Complaint ¶¶ 73-74) is based on a Federal Trade Commission report that was published online.

3    *See* Ex. F. This "Federal report" is a public disclosure. 31 U.S.C. § 3730(e)(4)(A)(ii). Thus, the

4    Complaint's "true state of facts"—that Apriso's price was not "fair and reasonable" because it was

5    elevated via the '688 Patent, which was invalid—was disclosed in full.

6    Thus, the two elements making up the Complaint's alleged fraudulent transaction—the

7    "misrepresented state of facts" and the "true state of facts"—were publicly disclosed. This publicly

8    disclosed information "point[s] to the same actors" and "the same conduct" as the Complaint, even

9    at a "granular level" of generality. *Solis*, 885 F.3d at 626; *Mateski*, 816 F.3d at 574. It is irrelevant

10    that these public disclosures did not explicitly point to fraud. "The absence of any explicit

11    allegation of wrongdoing in the prior public disclosure 'is simply of no moment' so long as 'the

12    material transactions giving rise to the [defendant's] allegedly unlawful … schemes were publicly

13    disclosed.'" *Solis*, 885 F.3d at 627 (quoting *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d

14    1238, 1245 (9th Cir. 2000)). In *Hong*, for instance, the public disclosure bar applied despite the

15    lack of any explicit public allegation of wrongdoing. *Hong*, 2016 WL 8929246 at *5. The material

16    elements of the transaction at issue in that case could be stitched together from a disparate

17    assortment of public documents, including lists of grants in government databases, lists of project

18    briefs in government databases, copies of faculty profile pages from universities' websites,

19    Freedom of Information Act responses from a federal agency, and a K-8 Form submitted to the

20    Securities and Exchange Commission. As here, it was irrelevant that "the required 'true' and

21    'misrepresented' facts were not contained in the same public document." *Id.* at *6; *see United

22    States v. Catholic Healthcare W.*, 445 F.3d 1147, 1151 n.1 (9th Cir. 2006), *abrogated on other

23    grounds by Schindler Elevator Corp.*, 563 U.S. 401 ("the elements of the fraud allegation [or

24    transaction] need not have been made public in a single document.").

25              **2.    Silbersher is not an "original source" of the allegations.**

26    After public disclosure, a relator can escape dismissal only if he or she is an "original

27    source." An original source is an individual who either (1) voluntarily disclosed to the government

28    "the information on which allegations or transactions in a claim are based" *before* public

1    disclosure, or (2) "has knowledge that is independent of and materially adds to the publicly

2    disclosed allegations or transactions," and who has voluntarily provided the information to the

3    government *before* filing the action. 31 U.S.C. § 3730(e)(4)(B). The Complaint fails to plead facts

4    to suggest that Silbersher is either. Even if a relator's claims are "supported by a few factual

5    assertions never before publicly disclosed," they cannot survive if on the whole "the allegation

6    repeats what the public already knows." *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992),

7    *overruled on other grounds by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th

8    Cir. 2015). Nor can a relator's claim survive on the basis that he or she applied some special

9    analysis or expertise to the publicly disclosed facts. *See U.S. ex rel. JDJ & Associates LLP v.*

10   *Natixis*, 2017 WL 4357797 (E.D.N.Y. Sept. 29. 2017).

11       Silbersher asserts that he "is an 'original source' of information within the meaning of 31

12   U.S.C. § 3730(e)(4)(B)," that he has generated information that "is independent of and materially

13   adds to" the publicly disclosed allegations, and that he provided this information to the government

14   "before filing this action." Complaint ¶¶ 37-38. But he offers no facts in support of these

15   conclusory allegations, making this an insufficient "[t]hreadbare recital[]" of the legal standard.

16   *Iqbal*, 556 U.S. at 678; *see U.S. ex rel. Ambrosecchia v. Paddock Laboratories, LLC*, 855 F.3d 949,

17   955 (8th Cir. 2017) (relator's "conclusor[]y assert[ion] that she gained the information from her

18   employment with Defendants" was not sufficient to establish she was an original source where her

19   "complaint d[id] not detail the nature of that information or explain how it relate[d] to her

20   employment."). It is implausible that Silbersher would possess any independent information, since

21   the information reflected in the Complaint reflects only information available in public documents,

22   not "genuinely new and material information of fraud," and Silbersher has not "allege[d] fraud that

23   is different in kind [or] in degree" from the prior public disclosures. *Mateski*, 816 F.3d at 578-79.

24       **D.    The FCA claim should be dismissed for failing to plead fraud with particularity.**

25       The Complaint should be dismissed for an independent reason: it fails to meet the

26   heightened pleading requirements that govern FCA claims. *Cafasso*, 637 F.3d at 1054. "A claim

27   under the False Claims Act must not only be plausible, … but pled with particularity under Rule

28   9(b)." *Campie*, 862 F.3d at 898. Rule 9(b) requires a party alleging fraud "to state with particularity

- 13 -

1  the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this standard, a relator must

2  "allege particular details of a scheme to submit false claims paired with reliable indicia that lead to

3  a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998-99 (internal

4  quotations omitted). In particular, the relator must identify the "who, what, when, where, and how"

5  of the fraud, *id.* at 998 (internal quotation omitted), including "what is false or misleading about a

6  statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180

7  (9th Cir. 2016). "Broad allegations that include no particularized supporting detail do not suffice"

8  under Rule 9(b). *Id.* This obligation extends to each defendant; a complaint cannot "lump multiple

9  defendants together," but must instead "inform *each defendant separately* of the allegations

10  surrounding [its] alleged participation in the fraud." *United States v. Corinthian Colls.*, 655 F.3d

11  984, 997-98 (9th Cir. 2011) (citation omitted) (emphasis added).

12        The Complaint fails to meet this standard. It does not identify any particular invoice that

13  any Defendant issued to the government at any time, let alone which Defendant issued it, when it

14  was issued, what it said, to whom it was sent, how much it was for, or whether it was paid. This is

15  far from describing the "who, what, when, where, and how" of the alleged fraud, or the "particular

16  details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference

17  that claims were actually submitted." *Ebeid*, 616 F.3d at 998-99 (internal quotations omitted). The

18  Complaint also depends on deficient collective pleading that "attributes wholesale all of the

19  allegations against" each Defendant to all of the Defendants. *Corinthian Colls.*, 655 F.3d at 998;

20  *United States v. Safran Grp. S.A.*, 2017 WL 235197, at *3 (N.D. Cal. Jan. 19, 2017) ("[T]he lack of

21  any allegations regarding the … false representations against [a defendant] specifically and the

22  lumping of Defendants warrants dismissal.").[10]

23        **E.      Silbersher's derivative state law causes of action should be dismissed.**

24        The Court may dismiss each of the state law claims with prejudice. Each of the state laws is

25

26  _____

27  [10] The fact that Silbersher has "no access to the [relevant] records" (Complaint ¶ 148) does not
    excuse his deficient pleading. As the Ninth Circuit has held, "[t]o jettison the particularity
    requirement simply because it would facilitate a claim by an outsider is hardly grounds for

28  overriding the general rule." *Ebeid*, 616 F.3d at 999. Indeed, "the FCA is geared primarily to
    encourage insiders to disclose information necessary to prevent fraud on the government." *Id.*

5457211

1  modeled on the federal FCA, and state courts therefore look to federal statute for guidance. *See,*

2  *e.g.*, *S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 224 Cal. App. 4th 627, 638

3  (2014) ("Given the very close similarity of the [California False Claims Act] to the federal FCA, it

4  is appropriate to turn to federal cases for guidance in interpreting the CFCA.") (internal quotations

5  and alterations omitted). For all the reasons Silbersher's claims fail under the federal statute, they

6  also fail under the state statutes. Indeed, the Complaint does not attempt to distinguish any of his

7  state law theories from his federal theory, and the Court may dismiss on that basis. *See Health*

8  *Choice All., LLC, on behalf of United States v. Eli Lilly & Co., Inc.*, 2018 WL 4026986 at *58

9  (E.D. Tex. July 25, 2018), *report and recommendation adopted*, 2018 WL 3802072 (E.D. Tex.

10  Aug. 10, 2018) ("Absent allegations about how a state law differs from the FCA – which Relator

11  has not pled here – courts interpret state false claims laws consistently with the FCA.").

12      Alternatively, after dismissing the FCA claim, the Court should decline to exercise

13  supplemental jurisdiction over Silbersher's pendent state law claims. *See* 28 U.S.C. § 1367(c)

14  ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … (3) the

15  district court has dismissed all claims over which it has original jurisdiction[.]"); *Wade v. Reg'l*

16  *Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim,

17  leaving only state claims for resolution, it should decline jurisdiction over the state claims and

18  dismiss them without prejudice.").

19          **III.    CONCLUSION**

20      The Court should dismiss the Complaint in its entirety. It fails to state any plausible claim

21  for relief under any recognized theory of FCA liability. These failures go the heart of the asserted

22  claims and are not correctable by amendment. Thus, it should be dismissed with prejudice.

23     Dated:  January 15, 2019       Hueston Hennigan LLP

24                    By:  */s/ Moez M. Kaba*
                       Moez M. Kaba

25                       Attorneys for Defendants
                       Valeant Pharmaceuticals International,

26                       Inc.,
                       Valeant Pharmaceuticals International,

27                       Salix Pharmaceuticals, Ltd., and
                       Salix Pharmaceuticals, Inc.

28

5457211