# Appendix A

| **Claim** | **Source of Claim** | **Prior Public Disclosure** | **Source of Prior Public Disclosure** |
|---|---|---|---|
| Defendants made express and implied promises that the price of Apriso was "fair and reasonable." | Complaint ¶¶ 131-136 | The Complaint infers that these statements were made because such statements are required by federal laws, regulations, and rules, all of which are publicly posted online. | 38 U.S.C. § 8126(a).<br><br>42 C.F.R. § 414.804(a)(5).<br><br>About GSA Schedules, available at https://www.gsa.gov/buying-selling/purchasing-programs/gsa-schedules/about-gsa-schedules.<br><br>42 U.S.C. § 1396r-8(b)(3)(C)(ii). |
| The '688 Patent was invalid because of prior art from the Brunner and Marakhouski studies. | Complaint ¶¶ 9-11, 15, 83-87 | The PTAB's decision and reasoning were publicly disclosed in national news media. | Matthew Bultman, *Part of Apriso Patent Nixed In IPR With Hedge Fund Ties*, Law360 (May 19, 2017, 4:58 PM EDT), https://www.law360.com/articles/926213/part-of-apriso-patent-nixed-in-ipr-with-hedge-fund-ties (Ex. I). |
| When prosecuting the '688 Patent, Defendants claimed a method for maintaining the remission of ulcerative colitis by administering Apriso "without food." | Complaint ¶ 82 | This disclosure is contained in a document submitted to the USPTO during prosecution of the '688 Patent, which is available online for download through the USPTO's PAIR database. It is also contained in the '688 Patent itself, which is available online for download through the USPTO's PAIR database. | *Amendment and Response to Office Action*, U.S. Patent Application No. 12/573,081, June 20, 2014, p. 2 (Ex. A-1).<br><br>U.S. Patent No. 8,865,688 (Ex. A-4). |

| | | | |
|---|---|---|---|
| The Brunner study disclosed that mesalamine could be taken "independent of concomitant food intake." | Complaint ¶¶ 10, 83 | The Brunner study was available online for years prior to the Complaint being filed. | Martin Brunner et al., *Gastrointestinal transit and release of 5-aminosalicylic acid from 153Sm-labelled mesalazine pellets vs. tablets in male healthy volunteers*, Aliment Pharmacol. Ther. 17:1163-1169, 1167 (2003), available at https://onlinelibrary.wiley.com/doi/full/10.1046/j.1365-2036.2003.01564.x (Ex. G). |
| The Marakhouski study disclosed that mesalamine "can be taken independent of meals." | Complaint ¶¶ 10, 83 | The Marakhouski study was available online for years prior to the Complaint being filed. | Yuri Marakhouski et al., *A double-blind dose-escalating trial comparing novel mesalazine pellets with mesalazine tablets in active ulcerative colitis*, Aliment Pharmacol. Ther. 21:133-140, 134 (2005), available at https://onlinelibrary.wiley.com/doi/full/10.1111/j.1365-2036.2005.02312.x (Ex. H). |
| Defendants were aware of the Brunner and Marakhouski studies because of the involvement of Dr. Falk and Roland Greinwald. | Complaint ¶ 84 | The Brunner study disclosed that "[t]he study medication was provided by Dr Falk Pharma GmbH, Freiburg, Germany." Roland Greinwald was listed as a co-author of the study, with his affiliation listed as "Dr Falk Pharma GmbH, Freiburg, Germany."<br><br>The Marakhouski study disclosed that the "study was supported by a grant from Dr. Falk Pharma GmbH, Freiburg, Germany." Roland Greinwald was listed as a co-author of the study, with his affiliation listed as "Dr Falk Pharma GmbH, Freiburg, Germany." | Brunner at 1163, 1164 (Ex. G).<br><br>Marakhouski at 133, 139 (Ex. H). |

| The '344 Patent disclosed the "unexpected" finding that administering balsalazide "with food" increases the colonic bioavailability of mesalamine | Complaint ¶ 88 | This disclosure is contained in the '344 Patent itself, which is available online for download through the USPTO's PAIR database. | U.S. Patent No. 8,921,344 (Ex. B-2). |
|---|---|---|---|
| When prosecuting the '344 Patent, Defendants stated that "one of ordinary skill in the art … would have expected the bioavailability of balsalazide to *decrease* when taken with food …" | Complaint ¶ 88 | This disclosure is contained in a document submitted to the USPTO during prosecution of the '344 Patent, which is available online for download through the USPTO's PAIR database. | *Response to Final Office Action*, U.S. Patent Application No. 11/592,854, July 16, 2009, p. 7 (Ex. B-1). |
| When prosecuting the '344 Patent, Defendants disclosed a table showing that when Claversal, Asacol, and Lialda were administered with food, the colonic bioavailability of those drugs decreased. | Complaint ¶¶ 89, 92 | This disclosure is contained in a document submitted to the USPTO during prosecution of the '344 Patent, which is available online for download through the USPTO's PAIR database. | *Response to Final Office Action*, U.S. Patent Application No. 11/592,854, July 16, 2009, pp. 6-7 (Ex. B-1). |
| Defendants were aware of the information disclosed in the '344 Patent application because it shared an attorney with the '688 Patent. | Complaint ¶ 89 | The fact that attorney Jonathan Sparks prosecuted both patents is disclosed in the patents themselves, which are available online for download through the USPTO's PAIR database. | U.S. Patent No. 8,921,344 (Ex. B-2).<br><br>U.S. Patent No. 8,865,688 (Ex. A-4). |

5462140

| | | | |
|---|---|---|---|
| Defendants were aware of the information disclosed in the '344 Patent application because it shared an inventor with the '688 Patent. | Complaint ¶ 89 | The fact that Lorin Johnson was an inventor of the '344 Patent is disclosed in the patent itself, which is available online for download through the USPTO's PAIR database. The fact that Johnson was an inventor of the '688 Patent is disclosed in a document submitted to the USPTO during prosecution of the '688 Patent, which is available online for download through the USPTO's PAIR database. | U.S. Patent No. 8,921,344.<br><br>*Petition to Correct Inventorship Pursuant to 37 C.F.R. § 1.324*, U.S. Patent Application No. 12/573,081, July 31, 2015 (Ex. A-3). |
| When prosecuting the '688 Patent, Defendants withheld information regarding Lialda that they had disclosed when prosecuting the '344 Patent. | Complaint ¶ 90 | These alleged omissions were made in a document submitted to the USPTO during prosecution of the '688 Patent, which is available online for download through the USPTO's PAIR database. | *Amendment and Response to Office Action*, U.S. Patent Application No. 12/573,081, June 20, 2014, pp. 5, 6 (Ex. A-1). |
| Defendants' omission of information about Lialda was material to the Examiner's decision to issue the patent. | Complaint ¶ 90 | The Examiner's stated reasons for granting the '688 Patent were disclosed in a document filed with the USPTO, which is available for download through the USPTO's PAIR database. | *Notice of Allowance and Fees Due*, U.S. Patent Application No. 12/573,081, Sep. 11, 2014, p. 3 (Ex. A-2). |
| When prosecuting the '688 Patent, Defendants withheld information regarding Claversal and Asacol that they had disclosed when prosecuting the '344 Patent. | Complaint ¶¶ 92-96 | These alleged omissions were made in a document submitted to the USPTO during prosecution of the '688 Patent, which is available online for download through the USPTO's PAIR database. | *Amendment and Response to Office Action*, U.S. Patent Application No. 12/573,081, June 20, 2014, pp. 5, 6 (Ex. A-1). |

| Defendants' omission of information about Claversal and Asacol was material to the Examiner's decision to issue the '688 Patent. | Complaint ¶¶ 97-98 | The Examiner's stated reasons for granting the '688 Patent were disclosed in a document filed with the USPTO, which is available for download through the USPTO's PAIR database. | *Notice of Allowance and Fees Due*, U.S. Patent Application No. 12/573,081, Sep. 11, 2014, p. 3 (Ex. A-2). |
|---|---|---|---|
| The Otterbeck Patents asserted that use of a "non gel-forming" polymer matrix "surprisingly" increased targeted delivery of mesalamine. | Complaint ¶¶ 101-105 | All disclosures made in the Otterbeck Patents are contained in the patents themselves, which are available online for download through the USPTO's PAIR database. | U.S. Patent No. 6,551,620 (Ex. C-1). U.S. Patent No. 8,337,886 (Ex. C-2). U.S. Patent No. 8,496,965 (Ex. C-3). U.S. Patent No. 8,911,778 (Ex. C-4). U.S. Patent No. 8,940,328 (Ex. C-5). U.S. Patent No. 8,956,647 (Ex. C-6). |
| The '990 Patent, the '742 Patent, the '858 Patent, and European Patent 0169821A2, all constituted prior art that made the Otterbeck Patents invalid. | Complaint ¶¶ 106-115 | All disclosures made in the '990 Patent, the '742 Patent, the '858 Patent, and European Patent 0169821A2 that supposedly constitute prior art are contained in the patents themselves, which are available online for download through the USPTO's PAIR database and through the European Patent Office's Espacenet Patent Search database. | U.S. Patent No. 6,290,990 (Ex. D-1). U.S. Patent No. 4,892,742 (Ex. D-2). U.S. Patent No. 4,784,858 (Ex. D-3). European Patent 0169821 (A2) (Ex. E). |

| | | | |
|---|---|---|---|
| But for Defendants' obtaining the '688 Patent, generic drugs would have entered the marketplace and reduced the price for generic Apriso by 85 to 90 percent. | Complaint ¶¶ 73-74 | Estimates about the effect that generic competition would have on the market price and market share of Apriso are drawn from a 2010 Federal Trade Commission report that was available for download online for years prior to the Complaint being filed. | Federal Trade Commission, *Pay-for-Delay: How Drug Company Pay-Offs Cost Consumers Billions* (2010), available at https://www.ftc.gov/sites/default/files/documents/reports/pay-delay-how-drug-company-pay-offs-cost-consumers-billions-federal-trade-commission-staff-study/100112payfordelayrpt.pdf (Ex. F). |