Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Nicomedes Sy Herrera (State Bar No. 275332)
Kevin Rayhill (State Bar No. 267496)
Kyla Gibboney (State Bar No. 301441)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:  jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        nherrera@saverilawfirm.com
        krayhill@saverilawfirm.com
        kgibboney@saverilawfirm.com
        vprentice@saverilawfirm.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, | Case No.: 3:18-cv-01496-JD |
| *ex rel.* ZACHARY SILBERSHER, | **PLAINTIFF-RELATOR ZACHARY SILBERSHER'S OPPOSITION TO THE MOTION TO DISMISS BY THE VALEANT AND SALIX DEFENDANTS** |
| Plaintiffs, | |
| v. | Date:       April 11, 2019 |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, | Time:       10:00 am<br>Courtroom: 11, 19th Floor |
| Defendants. | |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................ 2

    A.   Background ............................................................................................ 2

    B.   Defendants Unlawfully Excluded Competitors Through the Fraudulent '688 Patent ..................................................................................................... 2

    C.   Defendants Submitted or Caused the Submission of False Claims ....... 3

III.   ARGUMENT .................................................................................................... 4

    A.   Relator Has Adequately Alleged Facts to State Claims Under the False Claims Act ........................................................................................................... 4

        1.   Defendants' Fraud Violates the Plain Language of the FCA ............... 5

        2.   The Sufficiency of Relator's Allegations is Confirmed by Recent Supreme Court and the Ninth Circuit Caselaw ......................................... 6

        3.   Defendants' Other Arguments Lack Merit .................................................. 7

    B.   Relator Sufficiently Alleges Materiality ................................................... 9

    C.   There Has Been No Public Disclosure of Defendants' Fraud in any Statutory *Fora* ...................................................................................................... 10

        1.   Defendants Fail to Identify Public Disclosure of the Core Elements of the Fraud .................................................................................................. 11

        2.   Defendants Rely on Disclosures in *Fora* Excluded by the Statute. .......... 12

        3.   Defendants Do Not Allege Disclosure of the Misrepresented State of Facts ......................................................................................................... 14

    D.   Relator is an "Original Source" of the Material Allegations of Fraud ............... 14

    E.   Relator Has Pleaded Fraud With Particularity ........................................... 15

    F.   Relator Has Sufficiently Pleaded Claims Under the State Law Causes of Action 15

IV.   CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*State* ex rel. *Bartlett v. Miller*, 243 Cal. App. 4th 1398 (2016)................................................................ 13

*U.S.* ex rel. *Campie v. Gilead Scis., Inc.*, 862 F.3d 890 (9th Cir. 2017) .......................................... *passim*

*U.S.* ex rel. *Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103 (1st Cir. 2016).............................. 9

*U.S.* ex rel. *Feldman v. City of New York*, 808 F. Supp.2d 641 (S.D.N.Y. 2011) ................................. 8

*U.S.* ex rel. *Found. Aiding the Elderly v. Horizon W.*, 265 F.3d 1011, *opinion amended,*
275 F.3d 1189 (9th Cir. 2001)......................................................................... 10, 11, 12

*FTC v. AbbVie Inc.*, No. 14-5151, 2018 U.S. Dist. LEXIS 109628 (E.D. Pa. June 29,
2018) ......................................................................................................................... 10

*U.S.* ex rel. *Haight v. Catholic Healthcare W.*, 445 F.3d 1147 (9th Cir. 2006)............................... 12, 13

*U.S.* ex rel. *Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006).............................................. 4, 7

*Knudsen v. Sprint Commc'ns Co.*, No. C13-04476 CRB, 2016 WL 4548924 (N.D. Cal.
Sept. 1, 2016) ............................................................................................................ 10

*Liotine v. CDW Gov't, Inc.*, No. 05-33-DRH, 2009 WL 3156704 (S.D. Ill. Sept. 29,
2009) ......................................................................................................................... 13

*U.S.* ex rel. *Mateski v. Raytheon Co.*, 816 F.3d 565 (9th Cir. 2016)........................................ 11, 12, 14

*Mike v. Straus*, 274 F.3d 687 (2d Cir. 2001).......................................................................................... 8

*Prather v. AT&T, Inc.*, 847 F.3d 1097 (9th Cir.) ................................................................................ 11

*U.S.* ex rel. *Promega Corp. v. Hoffman–La Roche, Inc.*, Civil Action No. 03–1447–A
(E.D. Va. Sep 29, 2004) ............................................................................................ 8

*U.S.* ex rel. *Rosner v. WB/Stellar IP Owner, L.L.C.*, 739 F. Supp. 2d 396 (S.D.N.Y.
2010) ......................................................................................................................... 13

*Sams v. Yahoo! Inc.*, 713 F.3d 1175 (9th Cir. 2013)............................................................................ 11

*Schindler Elevator Corp. v. U.S.* ex rel. *Kirk,* 563 U.S. 401 (2011)...................................................... 12

*U.S., ex rel. Solis v. Millennium Pharm., Inc.*, No. 2:09-CV-03010-MCE, 2015 WL
1469166 (E.D. Cal. Mar. 30, 2015) ........................................................................... 5

*Ebeid* ex rel. *U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) .............................................................. 15

*United States v. Aurora Las Encinas, LLC*, 2013 WL 12142566 (C.D. Cal. Apr. 12,
2013) ......................................................................................................................... 14

*United States v. Berkeley Heartlab, Inc.*, No. CV 9:14-230-RMG, 2017 WL 6015574
(D.S.C. Dec. 4, 2017) ................................................................................................ 10

*United States v. Celgene Corp.*, 226 F. Supp. 3d 1032 (C.D. Cal. 2016) ............................................... 8

*Universal Health Servs., Inc. v. United States* ex rel. *Escobar*, _U.S._, 136 S. Ct. 1989
(2016) ...................................................................................................................... *passim*

*Usher v. City of Los Angeles,* 828 F.2d 556 (9th Cir. 1987) ........................................... 4

**Federal Statutes**

15 U.S.C. § 2 .................................................................................................................. 10

18 U.S.C. § 1001 .............................................................................................................. 3

31 U.S.C. § 3730(e)(4) ................................................................................... 2, 11, 12, 14

42 U.S.C. 1320a-7b .......................................................................................................... 10

False Claims Act, 31 U.S.C. §§ 3729–3733 ............................................................. 3, 5, 6, 9

Patient Protection and Affordable Care Act, PL 111-148, March 23, 2010, 124 Stat 119 ................... 11

**State Statutes**

Tex. Hum. Res. Code § 36.104 ........................................................................................ 15

Va. Sup. Ct. R. 5A-1 ......................................................................................................... 8

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................... 5

**Regulations**

37 C.F.R. § 1.56 ................................................................................................ 1, 3, 12, 15

48 C.F.R. §§ 8.404(d) ........................................................................................................ 4

**Other Authorities**

155 Cong. Rec. S13661-01 (2009) ..................................................................................... 4

155 Cong. Rec. S13661-95 (2009) ..................................................................................... 1

H.R. Rep. 102-837 (1992) ............................................................................................... 12

Restatement (Second) of Torts §§ 440 ............................................................................... 8

S. Rep. No. 99-345 (1986) ................................................................................................ 4

PLAINTIFF-RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

I.   **INTRODUCTION**

2      This suit strikes at a root cause driving high drug prices: brand drug manufacturers

3   fraudulently procuring patents to foreclose generic competition. Drug manufacturers such as

4   Defendants—which extend their patent monopolies to reap enormous supracompetitive profits—may

5   find irresistible the temptation to ignore their affirmative statutory duties of candor and good faith to

6   the Patent Office, 37 C.F.R. § 1.56, knowing that even if a fraudulently obtained patent is challenged

7   and invalidated, litigation can extend the manufacturer's drug monopoly for years.

8      This is why suits like this carry enormous public importance. It takes a great deal of expertise

9   and investigation to identify and analyze pharmaceutical patents that are not just invalid, but also

10  obtained through fraud. Identifying such fraud is not reasonably ascertainable by government

11  prosecutors, and they must rely on those with specialized knowledge to bring suit. Congress amended

12  the False Claims Act in 2010 specifically to permit suits such as the one Mr. Silbersher brings, so that

13  private citizens who are not traditional "insiders" with direct knowledge can "come forward to

14  expose fraud, which is a crucial way to save the government money and ensure the health and well-

15  being of Americans." *See* 155 Cong. Rec. S13661-95 (2009), at S13693; *see also* p. 11 & n.9, *infra*.

16     The complaint alleges that Defendants caused the submission of false claims for payment of

17  their drug Apriso to government-funded health programs. First, Defendants made false

18  representations to the Patent Office to obtain a patent that they used unlawfully to exclude

19  competitors and inflate Apriso's prices by 650%. Then, to qualify Apriso for payment from

20  government health programs, Defendants listed Apriso on the Federal Supply Schedule ("FSS"). In

21  doing so, Defendants expressly and impliedly represented that Apriso prices were "fair and

22  reasonable." As Relator alleges, Defendants knew the pricing was not "fair and reasonable" because

23  Defendants artificially inflated them using a fraudulently obtained patent to exclude competitors.

24     Defendants argue that Relator has failed to allege a "false or fraudulent claim." This is

25  incorrect. Relator alleges sufficient factual detail with respect to each element of an FCA claim.

26  *Universal Health Servs., Inc. v. United States* ex rel. *Escobar,* _U.S._, 136 S. Ct. 1989 (2016); *U.S.* ex

27  rel. *Campie v. Gilead Scis., Inc.*, 862 F.3d 890 (9th Cir. 2017). Defendants also argue the Complaint

28  should be dismissed under the "public disclosure bar," but they fail to identify a single document that

actually discloses the central elements of the fraud alleged in the complaint. In any event, even if *all* the elements of Defendants' fraud were publicly disclosed—which did not happen—Relator may nevertheless proceed because he is an "original source" of the material information that Defendants incorrectly claim were publicly disclosed. Finally, Defendants say that Relator failed to plead fraud with particularity, but the detailed allegations in the complaint specify the date, documents, details, responsible parties, and recipients of Defendants' misrepresentations.

## II.    STATEMENT OF FACTS

### A. Background

Moving defendants Valeant Pharmaceuticals International; Valeant Pharmaceuticals International, Inc.; Salix Pharmaceuticals, Ltd.; and Salix Pharmaceuticals, Inc. (collectively, "Defendants") manufacture, sell, and distribute Apriso, which is widely prescribed for ulcerative colitis. The active drug in Apriso, mesalamine, has been widely used for decades, and the original patents covering mesalamine expired long ago. (Complaint ¶ 2) Several generic companies sought to introduce lower cost generic alternatives. Defendants, however, have excluded generic entrants by asserting U.S. Patent No. 8,865,688 ("the '688 Patent"). The '688 Patent claims an invention based on a method for administering a mesalamine formulation "without food." (Complaint ¶ 80-82)

Relator is a patent attorney who was lead counsel in an *Inter Partes Review* ("IPR") proceedings before the Patent Trial and Appeal Board ("PTAB") that invalidated the '688 patent. *See GeneriCo, LLC v. Dr. Falk Pharma GmbH*, No. IPR2016-00297. Through his independent investigation, Relator uncovered that Defendants obtained the '688 Patent through fraud. (Complaint ¶¶ 80-99) Much of that investigation, and the allegations of fraud here, were *not* disclosed in the IPR.[1]

### B. Defendants Unlawfully Excluded Competitors Through the Fraudulent '688 Patent

The crux of the '688 Patent—and the sole reason the Patent Office ("PTO") granted it after rejecting Defendants' six prior attempts—was Defendants' false representation on June 20, 2014 that taking the Apriso mesalamine formulation "without food" was inventive. (Complaint ¶ 9, 82) Relator's investigation uncovered two primary reasons Defendants knew this was false.

---

[1] Even if they were, Congress amended the FCA in 2010 to permit suits based on facts alleged in criminal, civil, or administrative proceedings if the government was not a party. 31 U.S.C. § 3730(e)(4). *See* p. 11 & n.9, *infra*.

First, Defendants participated in two studies (Marakhouski and Brunner) many years earlier that had disclosed the purportedly novel feature of the '688 patent. (Complaint ¶¶ 10, 83-85) Defendants never disclosed these prior art references to the PTO, despite Defendants' affirmative duty of "candor and good faith" when prosecuting a patent. (*See* Complaint ¶¶ 72, 86, *citing* 37 C.F.R. § 1.56; 18 U.S.C. § 1001). If the PTO had known about them, the '688 Patent would not have been granted: The '688 Patent was later invalidated based on them. (Complaint ¶¶ 15, 97-99) Defendants' omission was not innocent oversight. As Relator's investigation discovered, Defendants *participated* in them, supplied drug samples for them, and co-authored them. (Complaint ¶¶ 11, 84-85)

Second, Relator discovered that on July 16, 2009—six years before prosecuting the '688 Patent—Defendants disclosed data to the PTO in connection with prosecuting a different and unrelated patent ("the '344 Patent") showing that taking mesalamine formulations similar to Apriso "without food" was well-known in the art. (Complaint ¶ 88-96) Defendants intentionally withheld this data when prosecuting the '688 Patent. (Complaint ¶ 89).

Defendants used their fraudulently-obtained '688 Patent to exclude generic competition and charge an artificially high price for Apriso.[2] (Complaint, ¶¶ 5, 60-74, 117-130) But for Defendants' fraudulent scheme, generic competition would have reduced the price of the drug by 85%, and Defendants would have lost 90% of Apriso's market share. (Complaint ¶ 24, 73, 141)

### C. Defendants Submitted or Caused the Submission of False Claims

Apriso generates over $200 million per year for Defendants. Defendants sell a one-month prescription for $595. (Complaint ¶ 78) Much of this revenue is derived from federal health programs. Relator alleges that each claim for payment or reimbursement from any government health care program for Apriso constitutes a false claim in violation of the False Claims Act, 31 U.S.C. §§ 3729–3733 (the "FCA"), and the state false claims act of the respective states.

Between 2012 and 2016, Medicare paid 462,491 claims for Apriso for approximately $183

---

[2] Defendants also sought to exclude competition through the "Otterbeck Patents," which expired on April 20, 2018. (Complaint ¶¶ 17-18, 100-116) Beginning in July 2012, several generic manufacturers challenged their validity. (Complaint ¶ 18) In each case, Defendants withdrew assertion of the Otterbeck Patents or settled with the generic manufacturer, so those patents would not have delayed generic entry but for Defendants' fraudulent procurement and assertion of the '688 Patent. (Complaint ¶¶ 18, 20-22) In any event, Defendants failed to disclose material information to the PTO that would have precluded issuance of the Otterbeck Patents. (FAC ¶¶ 18, 100-116)

1    million. (Complaint ¶ 31) Between 2012 and 2016, Medicaid paid 177,213 claims for Apriso for

2    approximately $65 million. (Complaint ¶ 33) Each of these claims violates the FCA because, among

3    other reasons, they incorporate an artificially inflated price that Defendants misrepresented were

4    "fair and reasonable." (Complaint ¶¶ 27-36) Additionally, numerous other government programs

5    directly purchased Apriso, including, for example, The Veterans Health Administration. The prices

6    the government paid or reimbursed for Apriso were calculated, in whole or in part, on pricing

7    information Defendants explicitly and impliedly certified was "fair and reasonable" in accordance

8    with basic principles underlying the Federal Acquisition Regulations, *see, e.g.,* 48 C.F.R. §§ 8.404(d);

9    15.402(a) (2018). (Complaint ¶¶ 131-144)

## III.    ARGUMENT

### A.  Relator Has Adequately Alleged Facts to State Claims Under the False Claims Act

12           The FCA is a remedial statue that should be broadly construed. As the Supreme Court

13   explained, that the FCA was originally enacted to combat "the massive frauds" draining public funds.

14   *Escobar,* 136 S. Ct. at 1996. Both times that Congress revised the FCA to make it easier for relators to

15   bring *qui tam* actions, the amendments were passed with bipartisan support to protect government

16   funds when the nation faced important challenges, including ensuring affordable health care in 2010.[3]

17           Accordingly, the Ninth Circuit has repeatedly instructed that the FCA is "intended to reach

18   all types of fraud, without qualification, that might result in financial loss to the Government." *U.S.*

19   ex rel. *Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170–71 (9th Cir. 2006); *see also Campie*, 862 F.3d at

20   899. In doing so, the Ninth Circuit observed that "in amending the False Claims Act in 1986,

21   Congress emphasized that the scope of false or fraudulent claims should be broadly construed . . . ."

22   *Hendow*, 461 F.3d at 1171; *accord, Campie,* 862 F.3d at 899 ("We construe the Act broadly"). In

23   broadly applying the FCA, the Court should accept all alleged facts to be true, *id.*. at 898, and draw all

24   reasonable inferences in Relator's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).

---

[3] *See* S. Rep. No. 99-345, at 2-3 (1986) (noting that fraud drained up to 10% of the federal budget, and Congress believed that "only a coordinated effort by both the Government and the citizenry" including encouraging "private individuals to bring suits on behalf of the Government" would stem the "wave of defrauding public funds"); 155 Cong. Rec. S13661-01, at S13693 (2009) ("We agree that reducing the cost of health care for American citizens is a critical goal of health care reform"; and by "fixing the False Claims Act's public disclosure provision, we can ensure that we fairly and appropriately empower whistleblowers to come forward to expose fraud, which is a crucial way to save the government money and ensure the health and well-being of Americans").

To allege an FCA claim, Relator must plead: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Campie*, 862 F.3d at 899. In their motion, Defendants only contest Relator's pleadings with respect to two elements: they say that they have not engaged in a "false or fraudulent" course of conduct; and their fraud was not "material." They are wrong. The Complaint sufficiently pleads both with sufficient specificity to satisfy Fed. R. Civ. P. 9(b). *See Campie,* 862 F.3d at 898.

### 1.  Defendants' Fraud Violates the Plain Language of the FCA

Relator pleads facts sufficient to state a claim under the FCA in three separate ways.[4]

First, to qualify Apriso for payment through government health programs, Defendants provided explicit and implied assurances to the government that the price of Apriso was "fair and reasonable." (Complaint ¶¶ 6, 30, 131-44) Yet, as Defendants knew, the price of Apriso was *not* fair and reasonable because they unlawfully excluded generic competition based upon a fraudulent patent. (Complaint, ¶¶ 5, 60-74, 117-130) Thus, each claim submitted to the government for payment for Apriso constituted a false claim. *See* 31 U.S.C. § 3729(a)(1)(A) (any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" violates the FCA).

Second, many states require or permit pharmacists to substitute available generic unless the prescription specifically requires that a brand drug be dispensed. (Complaint ¶¶ 140-41) But for Defendants' misrepresentations, approximately 90% or more of the Apriso subscriptions paid or reimbursed through government health programs would have instead been for significantly lower-priced generic Apriso. (Complaint ¶ 73, 141) Each claim for payment or reimbursement for Apriso that would have been substituted for a less expensive generic equivalent constituted a false claim. *See, e.g.,* 31 U.S.C. § 3729(a)(1)(A). Courts uniformly hold that drug prescriptions procured through anti-competitive conduct, such as through unlawful kickbacks, constitute "false and fraudulent" claims under the FCA. *See, e.g., U.S.,* ex rel. *Solis v. Millennium Pharm., Inc.*, No. 2:09-CV-03010-MCE, 2015 WL 1469166, at *6 (E.D. Cal. Mar. 30, 2015).

---

[4] Defendants falsely assert that the declination of the government to intervene at this time "must" mean they believe the Complaint lacks merit. (MTD, 1) This is false. In 2017, relators in declined cases recovered over $380 million for health care fraud alone. *See,* https://taf.org/wp-content/uploads/2018/04/FCA-Stats-2017-ALL-8-PAGES.pdf, at p.4. Indeed, the federal government retains the right to intervene at a later date, 31 U.S.C. § 3730(c)(3). They often do so. *See,* https://taf.org/wp-content/uploads/2018/03/factsheetb.pdf (collecting representative cases).

1    Third, Defendants fraudulently obtained the '688 Patent through misrepresentations and

2  omissions of material fact to the PTO in violation of Defendants' affirmative duties of good faith and

3  candor. (Complaint, ¶¶ 75-116) Those misrepresentations and omissions constituted "false records

4  or statements material to a false or fraudulent claim" for Apriso. 31 U.S.C. § 3729(a)(1)(B).

5

6  ### 2.   The Sufficiency of Relator's Allegations is Confirmed by Recent Supreme Court and the Ninth Circuit Caselaw

7    The sufficiency of Relator's allegations is confirmed by recent caselaw construing the FCA. In

8  *Escobar,* 136 S. Ct. 1989, the Relator alleged that claims submitted to Medicaid for counseling services

9  were "false and fraudulent" under the FCA when the claims referred to billing codes corresponding

10 to services such as "family therapy" and job titles such as "Social Worker, Clinical." *Id.* at 1997. The

11 Supreme Court held that such claims violated the FCA because the social workers were unlicensed

12 under state law—even though neither the claims nor the billing code descriptions contained an

13 explicit representation the social workers were "licensed" under state law. Focusing on the plain

14 meaning of the FCA and eschewing a "circumscribed" interpretation, the Court held the claims

15 defrauded the government because such qualifications were *implied*. *Id.* at 1997-98 & 2000.

16    Like in *Escobar*, the fraud that Relator alleges in the Complaint satisfies the plain meaning of

17 the FCA. (Complaint, ¶¶ 75-99; 100-116). Moreover, the facts alleged here present a stronger case for

18 FCA violations than those asserted in *Escobar* because, as Relator specifically alleges, Defendants

19 made express *and* implied representations that Apriso's price was "fair and reasonable" when it was

20 not, because Defendants had unlawfully excluded generic competition through misrepresentations to

21 the PTO.   (Complaint, ¶¶ 5, 60-74, 117-130)

22    Defendants seek to distinguish *Escobar*, saying that the invoices in that case did not "merely

23 demand payment" but also contained implicitly false identification numbers and job titles that

24 concerned the nature of the "goods and services" provided. (MTD, 4 & 6) That is a distinction

25 without a difference. Recognizing the breadth of the statute, the Supreme Court held that the implied

26 certification theory of legal falsity can be a basis for liability "**at least**" in the circumstance where

27 "the defendant submits a claim for payment that makes specific representations about the goods or

28 services provided . . . ." *Escobar,* 136 S. Ct. at 1995 (emphasis supplied). The Court did not purport to

1    limit the implied certification theory solely to such forms of fraud, and it would make no sense to

2    arbitrarily do so. Here, Defendants' fraud resulted in the government paying highly inflated drug

3    prices, which directly drains public funds at least as much as, if not more than, a misrepresentation

4    concerning the nature of the "goods and services" provided.

5           In *Campie*, the Ninth Circuit reversed the dismissal of an FCA complaint alleging that Gilead

6    obtained FDA approval of its drugs through false statements to the FDA. Foreign manufacturing

7    locations must register with the FDA before drugs made in those locations can be imported into the

8    U.S. The *Campie* relators alleged that Gilead manufactured its drugs in unregistered locations, which

9    relators claimed made them ineligible for payment. *Id.,* 862 F.3d at 896.

10          The court rejected Gilead's arguments—also made by Defendants here—that the fraud was

11   too attenuated because the misrepresentations were made to the FDA, and not directly to the paying

12   agencies. *Id.* at 903. So long as a defendant's false statements are an essential part of a causal chain

13   leading to payment, Defendants are liable under the FCA. *Id.* (collecting cases). *See also Hendow*, 461

14   F.3d at 1174 ("the precise logistical details of how the claim is made—with respect to timing, for

15   instance, or the number of stages involved—are immaterial: '[i]f a false statement is integral to a

16   causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the

17   statements among layers of paperwork.'") (internal citation omitted).

18          Relator's claims here present an even stronger case under the FCA than those in *Campie*. In

19   *Campie*, there was no allegation that the invoices for Gilead's drugs mentioned *anything* concerning

20   the location where the drugs were manufactured. The court did not even require proof that the drugs

21   were worthless or unusable, or that the government paid too much compared with the drug's intrinsic

22   economic value. *Id.* at 900. Here, the claims for payment specifically included prices Defendants

23   represented were fair and reasonable, and the government was actually overcharged by 650% or more.

24   (Complaint, ¶ 73, 131-144) At the very least, Relator's allegations raise an issue of fact.

25          **3.  Defendants' Other Arguments Lack Merit**

26          Defendants assert that Relator's theory is based on a supposed "daisy chain of implications"

27   too attenuated to support FCA liability (MTD, 4-5) But Defendants' manufactured chain of supposed

28   "inferences" are instead *facts* alleged with specificity in the complaint, which are assumed to be true

1  for pleading purposes. Defendants *did* list Apriso on the FSS. Defendants *did* sign Master and

2  Pharmaceutical Price Agreements. In doing so, Defendants *did* certify fair and reasonable pricing.[5]

3  (MTD, 4-5) Nothing needs to be *implied* from those well-pleaded factual allegations.

4       Defendants' argument also confuses proximate causation principles with "implied

5  certification" claims under the FCA. To the extent Defendants argue that the facts pleaded requires

6  proof of a causal chain that is too "attenuated"—which is not true—that issue should be resolved by

7  a trier of fact. *See United States v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1049-50 (C.D. Cal. 2016); *cf.*

8  *Campie,* 862 F.3d at 907; *see generally*, Restatement (Second) of Torts §§ 440. Defendants are liable if

9  the steps in the causal chain are "reasonably foreseeable," and there is no superseding event. *See id.*

10      Defendants also contend that Defendants' misrepresentations of "fair and reasonable pricing"

11  were not included in Apriso invoices but instead were made to "the GSA to obtain listing on the

12  FSS." (MTD, 5). The Ninth Circuit has rejected this argument, holding that a false statement need

13  not be included in a claim for payment or made directly to the paying agency. *Campie*, 862 F.3d at 903.

14      Defendants say that "fair and reasonable" pricing is too broad and vague to support an FCA

15  violation. Defendants cite to *U.S.* ex rel. *Feldman v. City of New York*, 808 F. Supp.2d 641, 652

16  (S.D.N.Y. 2011) and *Mike v. Straus*, 274 F.3d 687, 698-99 (2d Cir. 2001), but those cases are

17  inapposite. In *Feldman*, the relator made a general allegation that the defendant should have complied

18  with all laws. Defendants' false statements here are much more specific, and directly related to price

19  that the government was charged. Moreover, *Mike*, which is no longer good law after *Escobar*, merely

20  held that in the context of express certifications (as opposed to implied certifications), the relator's

21  interpretation of the term "medical necessity" was inconsistent with how that term was ordinarily

22  used. *See* 274 F.3d at 698. Neither *Feldman* nor *Mike* apply here.

23      Defendants cite to an unpublished, out-of-circuit decision from 2004 called *U.S.* ex rel.

24  *Promega Corp. v. Hoffman–La Roche, Inc.,* Civil Action No. 03–1447–A (E.D. Va. Sep 29, 2004),

25  even though Va. Sup. Ct. R. 5A-1 states that the decision is not binding authority, and the Court has

26  removed the decision from PACER. (MTD, 8) *Promega* was decided before the 2010 amendments to

27  the FCA, and its dismissal based on public disclosure bar is no longer good law. The Ninth Circuit

28

---

[5] Defendants concede these allegations because they say their certifications concerning Apriso's "fair and reasonable" pricing was publicly disclosed. (*See, e.g.,* Defendants' App'x A, at Row 1)

1   has also explicitly rejected *Promega's* reasoning that there was a "disconnect" between the invoices

2   and the misrepresentations. *Campie*, 862 F.3d at 903.

3          Finally, Defendants say that if the Court accepts Relator's theory, any prior misconduct that

4   causes higher market prices may be actionable. (MTD, 6) The Court is not called upon to decide

5   whether all hypothetical conduct that may potentially skew market price is actionable. Rather, the

6   issue here is the sufficiency of the Complaint: In particular, specific allegations that Defendants,

7   through unlawful conduct, systematically excluded competition, artificially inflating the price by

8   650%. In such cases, the FCA makes it illegal to make an express or implied representation concerning

9   the fairness and reasonability of the price charged.

10  **B. Relator Sufficiently Alleges Materiality**

11         Under the FCA, a falsehood is material if it has the "natural tendency to influence, or be

12  capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4);

13  *Campie*, 862 F.3d at 904-05. The Complaint's allegations of materiality are sufficient, as confirmed by

14  *Escobar* and its progeny, including *Campie*.

15         Upon remand, the First Circuit in *Escobar* held that the "centrality" of the regulations that

16  defendants violated was "strong evidence that a failure to comply with the regulations would be

17  'sufficiently important to influence the behavior' of the government in deciding whether to pay the

18  claims." *See U.S.* ex rel. *Escobar v. Universal Health Servs., Inc.,* 842 F.3d 103, 111 (1st Cir. 2016).

19  Similarly here, ensuring that the price of medicine is fair and reasonable—and not artificially inflated

20  through the unlawful exclusion of competitors—is central to the regulatory framework governing

21  payments under government health programs. (Complaint, ¶¶ 30, 131-37, 139, 141, 144). At the very

22  least, knowledge of the fraud and resulting 650% overcharge would have a "natural tendency to

23  influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C.

24  § 3729(b)(4); *Escobar*, 136 S. Ct. at 2002; *Campie*, 862 F.3d 890.

25         Defendants assert that their alleged fraud cannot be material because the government has

26  supposedly continued to pay Apriso invoices even though the '688 Patent has been invalidated.

27  (MTD, 8). In *Campie,* the Ninth Circuit held that the complaint sufficiently alleged materiality under

28  *Escobar* even if the government continued to pay after knowing of the FDA violations. 862 F.3d at

905-06. Moreover, Defendants' factual assertion relies on a false premise. The IPR may have invalidated the '688 Patent, it contained *no findings* the patent was fraudulently procured, so there is no basis to assume the government's *actual* knowledge of fraud. *See Campie,* 862 F.3d at 907.

But for Defendants' fraudulent statements, the government *necessarily* would have paid less for Apriso based on generic competition, saving hundreds of millions of dollars. Defendants say that *Escobar* "rejects" *per se* materiality,[6] but courts post-*Escobar* have found no difficulty doing so under circumstances similar to this case. For example, in *United States v. Berkeley Heartlab, Inc.,* No. CV 9:14-230-RMG, 2017 WL 6015574, at *2 (D.S.C. Dec. 4, 2017) the Court noted that compliance with the anti-kickback statute, 42 U.S.C. 1320a-7b ("AKS") "was *per se* material even before [Congress amended the FCA in 2010 confirming it]." The court reasoned that no "reasonable person could believe that AKS compliance is unimportant to the Government's reimbursement decisions" because violation of the AKS "is not a *de minimis* regulatory violation, nor is it a mere technical violation." *Id.,* at *2. The same can be said here. Indeed, Defendants' fraudulent scheme would also constitute unlawful monopolization, 15 U.S.C. § 2, and the government routinely punishes such misconduct. *See, e.g., FTC v. AbbVie Inc.,* No. 14-5151, 2018 U.S. Dist. LEXIS 109628 (E.D. Pa. June 29, 2018).

**C. There Has Been No Public Disclosure of Defendants' Fraud in any Statutory *Fora*[7]**

The FCA bars *qui tam* actions only if *all* the material allegations of fraud were disclosed in specifically enumerated public *fora* such that the disclosure is "sufficient to enable it adequately to investigate the case and to make a decision whether to prosecute." *U.S.* ex rel. *Found. Aiding the Elderly v. Horizon W.*, 265 F.3d 1011, 1016, *opinion amended,* 275 F.3d 1189 (9th Cir. 2001). To qualify as a public disclosure, it must be made in: (i) a federal criminal, civil, or administrative hearing or proceeding "in which the Government or agent is a party"; (ii) a Congressional or federal report,

---

[6] Defendants rely on *Knudsen v. Sprint Commc'ns Co.*, No. C13-04476 CRB, 2016 WL 4548924, at *12 (N.D. Cal. Sept. 1, 2016). This case is inapposite. The *Knudsen* plaintiff failed to allege the government had even entered into any of the purported contracts. The court held that the relator had not sufficiently pleaded that the inclusion of the purported provisions was material in *inducing* the government to *enter* into such contracts. This is much different from what Relator alleges in the Complaint, which, like in *Escobar* and *Campie*, specifies how the fraud would be directly material to the government's decision to pay. In any event, *Knudsen* did not have the benefit of the Ninth Circuit's views on pleading materiality in *Campie*, the First Circuit's decision on remand in *Escobar*, or the decision in *Heartlab*, 2017 WL 6015574.

[7] Relator attaches as Appendix 1 a summary of the reasons why Defendants' purported public disclosures in Appendix A to Defendants' motion are insufficient to establish a public disclosure bar.

hearing, audit or investigation; or (iii) the news media. 31 U.S.C. § 3730(e)(4)(A).[8]

The Ninth Circuit has confirmed that even if public reports provided enough information to "pursue an investigation into some fraud, and even though the Government did in fact undertake some investigation," such public disclosure will not bar a relator's suit if they reasonably "could not have alerted the Government to the specific areas of fraud" alleged by the relator. *U.S.* ex rel. *Mateski v. Raytheon Co.*, 816 F.3d 565, 579 (9th Cir. 2016); *accord, Foundation,* 265 F.3d at 1016.

Congress amended the public disclosure bar 2010 to allow this type of *qui tam* action.[9]

### 1. Defendants Fail to Identify Public Disclosure of the Core Elements of the Fraud

Defendants rely principally upon a Law360 article that Defendants mistakenly assert discloses the "core allegation" of fraud. (MTD, 10, *citing* RJN Ex. I; *see* App'x 1 herein, p. 2). However, that article does not disclose *any* allegation that the '688 Patent was obtained through fraud. Importantly, the article does not disclose Defendants' June 20, 2014 misrepresentations to the PTO or identify any facts demonstrating that those statements were misrepresentations. Instead, the article merely reports that the "two claims in the patent were obvious based on a collection of references that included press releases from Salix about clinical drug trials and some academic papers." (RJN, Ex. I) Although the article references "two studies" (without identifying them), the article did so to make a different point: Defendants had argued to the PTAB that the unidentified studies supported Defendants' contention that "others failed to find a solution" to problems the '688 Patent tried to solve. (*Id.*) This is completely different from Relator's allegations. Moreover, the article mentions nothing about Relator's allegations concerning Defendants' prior inconsistent statements in the '344 Patent.

Defendants also contend that the Brunner and Marakhouski studies were available on an academic Internet library. (MTD, 10) But libraries are not an enumerated public forum under the

---

[8] The 2010 amendments to the FCA converted the public disclosure bar from a jurisdictional to an affirmative defense governed under Rule 8. *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir.) As such, Defendants' arguments based on public disclosure are not proper under Rule 12(b), because their resolution relies on facts outside the complaint. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Relator submits as Appendix 1 responses to each of the purported public disclosures in Defendants' Appendix A, but the Court may deny Defendants' motion without reaching those issues.

[9] The 2010 amendments to the FCA revised the public disclosure bar in 31 U.S.C. § 3730(e)(4) to permit individuals such as Relator who lack "direct" knowledge of fraud (usually possessed only by "insiders") to qualify as an "original source." Congress also exempted allegations disclosed in criminal, civil, or administrative proceedings when the government is not a party to them. Patient Protection and Affordable Care Act, PL 111-148, March 23, 2010, 124 Stat 119.

FCA.[10] Even if they were, nothing in those studies disclose that they are prior art to the '688 Patent, which was not filed until several years later. Those studies merely contain the results of clinical tests related to administering certain mesalamine formulations without food. (RJN, Exs. G, H)

Patent applicants have an *affirmative*, *statutory* duty of good faith and candor to disclose material prior art that may bar issuance of their patent. 37 C.F.R. § 1.56 (2018). The underlying premise is the government cannot be deemed to possess knowledge of every scientific study or prior patent that may relate to a pending patent application. Thus, particularly for FCA claims based upon patent fraud, it makes no sense to attribute near-omniscience to the government when determining whether purported public disclosures were "sufficient to enable [the government] adequately to investigate the case and to make a decision whether to prosecute." *Foundation,* 265 F.3d at 1016.

### 2. Defendants Rely on Disclosures in *Fora* Excluded by the Statute.

Defendants claim that Relator's allegations were disclosed in enumerated public *fora* supposedly because certain facts material to the fraud are available—according to Defendants—on the PTO's Patent Application Information Retrieval ("PAIR") docket retrieval system. (MTD, 11) This is misguided. Patent prosecution proceedings before the PTO do not constitute an enumerated public forum under the FCA. The patent prosecution docket available on PAIR does not disclose information from a federal criminal, civil, or administrative proceedings where the government is a party; a federal report or investigation; or news media. *See* 31 U.S.C. § 3730(e)(4)(A)(i)-(iii).

A patent prosecution proceeding before the PTO is an administrative proceeding, and the government is not a party. In the 2010 amendments, Congress specifically excluded information disclosed in such proceedings from the enumerated public *fora* under § 3730(e)(4)(A). *See* n.9, *supra.*

The PAIR docket is also not a "federal report." As the Ninth Circuit has held, "reports and investigations generally involve independent product" including "analysis of findings" or "governmental leg-work." *U.S.* ex rel. *Haight v. Catholic Healthcare W.,* 445 F.3d 1147, 1153 (9th Cir. 2006), *abrogated on other grounds, Schindler Elevator Corp. v. U.S.* ex rel. *Kirk,* 563 U.S. 401 (2011).

---

[10] Defendants say that online libraries are news media, contrary to the common, ordinary meaning of that term. But Congress amended the FCA in 1986 to strike a balance between "encouraging" private persons to bring suits while stifling "parasitic" lawsuits, *see Mateski* 816 F.3d at 575, where individuals would merely copy allegations of fraud of existing investigations reported in newspapers, *see* H.R. Rep. 102-837 (1992), at 12. Congress clarified that relators could not bring parasitic suits alleging fraud already reported by the "news media."

1    Here, PAIR does nothing more than disclose raw information—there is no governmental findings,

2    analysis, or leg-work.[11]

3          Defendants rely on *U.S. ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*, 739 F. Supp. 2d 396,

4    405 (S.D.N.Y. 2010), in arguing that the PAIR database is an "administrative report" (an enumerated

5    public forum that Congress removed from § 3730(e)(4)(A)(ii) in 2010). But the "J-51" database in

6    *Rosner*, unlike PAIR, did "not present raw, unanalyzed data." Rather, it present[ed] synthesized tax

7    benefit histories" that the government had selected, synthesized, and analyzed before inclusion. *Id.* at

8    407.  PAIR contains only raw data, and thus, is not a "report." Moreover, *Rosner* was decided before

9    the 2010 FCA amendments, where Congress amended the FCA to correct, for the second time,

10   expansive judicial application of the public disclosure bar to dismiss suits that were not parasitic.

11        Defendants argue that the PAIR docket is "news media" because it is available on the

12   Internet. (MTD, 11) The PAIR docket is not news media. Congress did not intend to create a "news

13   media" category that would broadly sweep almost the entirety of human knowledge now available on

14   the Internet.[12] *See Liotine v. CDW Gov't, Inc.*, No. 05-33-DRH, 2009 WL 3156704, at *6 & n. 5 (S.D.

15   Ill. Sept. 29, 2009) (university's website was not an enumerated public forum because a user had to

16   take several steps to locate the information).[13] Other courts have agreed.[14] *See, e.g., State* ex rel.

17   *Bartlett v. Miller*, 243 Cal. App. 4th 1398, 1414, (2016) ("the SEC's online public database are not

18   disclosures by the news media no matter how broadly that term is interpreted").

19        Even if PAIR were considered "news media" or a "federal report"—and it is neither— there

20   was still no public disclosure of the material allegations of fraud. Defendants say that the patent

21   dockets "disclose" that Defendants failed to reference the Marakhouski and Brunner studies while

22

---

23   [11] *Schindler* held that documents produced in FOIA requests are "federal reports" because they require
     each agency to make an independent determination as to what to include in response); *but compare, id.*,
24   at 418 (Ginsburg, Breyer, and Sotomayor, *JJ.*) (dissenting) (FOIA request is not a "federal report"
     because it requires insufficient synthesis or analysis with the aim of gleaning meaningful insight).

25   [12] The PAIR database is similar to court filings on PACER. If Defendants' argument were accepted, then
26   judicial expansion of the "news media" category would effectively nullify the specific exemptions
     Congress enacted in 2010 (that excluded from the public disclosure bar information disclosed in
27   criminal, civil, or administrative proceedings where the government was not a party).

     [13] PAIR can only be accessed after logging into the government's system and entering queries for specific
28   documents; they are not searchable through Google or other Internet browsers; and they are not curated.

     [14] Defendants even cite to a case that holds that information available on a government database is *not*
     "news media." *See* MTD, 11, *citing Rosner*, 739 F. Supp. 2d at 405.

1  prosecuting the '688 Patent. This relies on factual matter outside the Complaint. See n.8, *supra*. It is

2  also untrue. There was no *disclosure* of this fact in *any* of the docket entries. (*See* RJN, Exs. A-1

3  through A-4). There is no document identifying Defendants' *omission* of the studies in violation of

4  Defendants' duties of good faith and candor. Instead, what Defendants argue is *not a disclosure at all*,

5  but rather a *conclusion* that can be reached only after analyzing the entire docket and noticing that none

6  of Defendants' disclosures mentioned potentially relevant scientific studies published years before.

7  **3.  Defendants Do Not Allege Disclosure of the Misrepresented State of Facts**

8  To invoke the jurisdictional bar, "a defendant must show that the transaction [purportedly

9  disclosed in a statutory public forum] . . .  be one in which a set of misrepresented facts has been

10  submitted to the government." *United States v. Aurora Las Encinas, LLC*, 2013 WL 12142566, at **3,

11  6 (C.D. Cal. Apr. 12, 2013) Here, Defendants do not identify any public disclosure of the fraudulent

12  claims (*i.e.*, invoices made to the government that incorporates an inflated price for Apriso).

13  Defendants do not point to a single public disclosure of any such invoice. Rather, Defendants

14  only claim that the regulations that required them to certify fair and reasonable pricing on the FSS

15  were public. (MTD, 10) That level of generality—without disclosure of specific, granular details

16  sufficient to alert the government of fraud—is insufficient to establish public disclosure. *Cf. Mateski v.*

17  *Raytheon Co.*, 816 F.3d at 577 (Allowing disclosure of "generalized fraud" to bar FCA suits "would

18  deprive the Government of information that could lead to recovery of misspent Government funds").

19  **D.  Relator is an "Original Source" of the Material Allegations of Fraud**

20  Relator is an "original source" of the material allegations of fraud because he "has knowledge

21  that is independent of and materially adds to the publicly disclosed allegations," *see* 31 U.S.C.

22  § 3730(e)(4)(B).  Defendants correctly state that Relator was the lead attorney for the petitioner in the

23  IPR that invalidated the '688 Patent. (MTD, 2) As such, Relator is an original source that disclosed

24  the Marakhouski and Brunner studies to the PTAB. Relator's allegations also do not simply "repeat

25  what the public already knows," as Defendants incorrectly assert. (MTD, 13) For instance, Relator

26  uncovered Defendants' prior inconsistent statements in the '344 Patent application that

27  demonstrated Defendants' fraud in connection with the '688 Patent. (Complaint, ¶¶ 88-99). Those

28  facts were not raised in the underlying IPR, or anywhere.

### E.  Relator Has Pleaded Fraud With Particularity

Defendants assert that the Complaint does not identify specifics of the fraud. (MTD, 14) This is not true. The Complaint alleges the material facts with particularity. For example, the Complaint identifies the precise date and fraudulent language in the June 20, 2014 patent filing by Salix Pharmaceuticals, Ltd. and Dr. Falk Pharma GmbH; who received the fraudulent statement (the PTO); why the statement was fraudulent; the July 16, 2009 prior inconsistent statement made by Salix in prosecuting an earlier, unrelated patent; Defendants' misrepresentations concerning Apriso's "fair and reasonable pricing"; and the time period for the false claims. (Complaint, ¶¶ 9, 11, 80-85, 88-96, 122-123, 131-144) Relator even identifies over half a million individual false claims. (Complaint ¶¶ 31, 33) Each of the Defendants are subsidiaries of Valeant Pharmaceuticals International, which is liable for the acts of the Salix defendants. Moreover, each entity or its successor was a real-party-in-interest during the prosecution of the '688 Patent and are therefore liable for the failure to disclose material facts of invalidity in violation of the duty of good faith and candor. 37 C.F.R. § 1.56 (2018) (pre-AIA); Manual of Patent Examination Procedure § 2001.01. This is confirmed in the Complaint and in the patent docket.[15]

Defendants rely extensively on *Ebeid* ex rel. *U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010), but that case held that the complaint failed to disclose *any* factual allegations identifying the supposedly unlawful practice of medicine or Stark Act violations. That case bears no resemblance to the detailed allegations here. Moreover, *Ebeid* confirms the sufficiency of the allegations in this case, holding that a relator need not allege a *specific* false claim, but merely the "particular details of a scheme" with "reliable indicia that lead to a strong inference" that claims were submitted. *Id.*

### F.  Relator Has Sufficiently Pleaded Claims Under the State Law Causes of Action

Defendants argue that the state FCAs are modeled on the federal FCA, and that if the federal claims are dismissed, then so too should the state claims. (MTD, at 15) Because Relator has adequately pleaded federal FCA claims, the state claims should be upheld.[16]

---

[15] Salix's filings in the patent docket confirm that "Dr. Falk Pharma GmbH ("Dr. Falk") and Salix Pharmaceuticals, Ltd. ("Salix")") are the real parties-in-interest. . . . Salix Pharmaceuticals, Ltd. is a wholly owned subsidiary of Valeant Pharmaceuticals International, Inc." *See* IPR2017-297, Paper 6, 2.

[16] The Texas Attorney General has requested Relator to inform the Court that the law contradicts Defendants' argument that the decision of Texas not to intervene has any bearing on its view of the merits. Tex. Hum. Res. Code § 36.104. Additionally, liability for the Texas causes of action do not

1

## IV.   CONCLUSION

2        The Court should deny Defendants' motion to dismiss should be denied in its entirety and

3   enter the accompanying [Proposed] Order. In the alternative, if the Court finds any deficiency in the

4   Complaint, the Court should permit Relator to amend his pleading.

5

6   Dated: February 19, 2019                 By:    */s/ Joseph R. Saveri*

7                                                           Joseph R. Saveri

8                                             Joseph R. Saveri (State Bar No. 130064)
                                              Steven N. Williams (State Bar No. 175489)
9                                             Nicomedes Sy Herrera (State Bar No. 275332)
                                              Kevin Rayhill (State Bar No. 267496
10                                            Kyla Gibboney (State Bar No. 301441)
                                              V Chai Oliver Prentice (State Bar No. 309807)
11                                            JOSEPH SAVERI LAW FIRM, INC.
                                              601 California Street, Suite 1000
12                                            San Francisco, California 94108
                                              Telephone: (415) 500-6800
13                                            Facsimile:  (415) 395-9940

14                                            *Attorneys for Plaintiffs*

15                                            United States of America; the States of California,
                                              Colorado, Connecticut, Delaware, Florida, Georgia,
16                                            Hawaii, Illinois, Indiana, Iowa, Louisiana, Michigan,
                                              Minnesota, Montana, Nevada, New Jersey, New
17                                            Mexico, New York, North Carolina, Oklahoma, Rhode
                                              Island, Tennessee, Texas, Vermont, and Washington;
18                                            the Commonwealths of Massachusetts and Virginia;
                                              and the District of Columbia, *ex rel.* Zachary Silbersher

19

20

21

22

23

24

25

26

27

28
_____

require the presentment of a false claim, and most do not require proof of materiality. *Id.*, at
§§ 36.002(1)-(13). Therefore, Defendant's argument does not apply to the Texas causes of action.

1

### **<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on this 19th day of February 2019, true and correct copies of the following

3

documents were served *via* the United States District Court CM/ECF system on all parties or

4

persons requiring notice.

5

- **PLAINTIFF-RELATOR'S OPPOSITION TO THE MOTION TO DISMISS**

6

  **BY THE VALEANT AND SALIX DEFENDANTS**

7

8

*/s/ Nicomedes Sy Herrera*

9

Nicomedes Sy Herrera

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:18-cv-01496-JD

PLAINTIFF-RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS