Nicomedes Sy Herrera (State Bar No. 275332)
Andrew Purdy (State Bar No. 261912)
Laura E. Seidl (State Bar No. 269891)
**HERRERA PURDY LLP**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile:  (855) 969-2050
Email: NHerrera@HerreraPurdy.com
          APurdy@HerreraPurdy.com
          LSeidl@HerreraPurdy.com

Tejinder Singh (*Pro Hac Vice*)
**GOLDSTEIN & RUSSELL, P.C.**
7475 Wisconsin Avenue, Suite 850
Bethesda, Maryland 20814
Telephone: (202) 362-0636
Email: TSingh@GoldsteinRussell.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, <br><br> *ex rel.* ZACHARY SILBERSHER, <br><br>        Plaintiffs, <br><br>       v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, <br><br>        Defendants. | Case No.: 3:18-cv-01496-JD <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> CMC Date: August 8, 2019, 10:00 AM <br><br> Hon. James Donato <br> Courtroom 11, 19th Floor <br> 450 Golden Gate Avenue <br> San Francisco, CA 94102 |

Pursuant to the Court's January 18, 2018 Order (Dkt. 40), Plaintiff-Relator Zachary Silbersher ("Relator"), on behalf of the United States of America; the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, and Washington; the Commonwealths of Massachusetts and Virginia; and the District of Columbia; and Defendants Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc. (the "Bausch Defendants"), and Dr. Falk Pharma GmbH ("Dr. Falk") (collectively with the Bausch Defendants, "Defendants") (Defendants with Relator, the "Parties"), jointly file this Case Management Statement.

Pursuant to Fed. R. Civ. P. 26(f), Relator met and conferred with the Bausch Defendants on December 18, 2018, and with Dr. Falk on March 25, 2019. All the parties also met and conferred on July 30, 2019. The parties were able to reach agreement as to most issues. Any topic areas upon which the Parties were not able to agree are addressed with separate statements from the Parties setting forth their respective positions.

**1.     Jurisdiction and Service:**

**Relator's Statement**: As stated in Relator's Corrected First Amended Complaint (the "Complaint"), the Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 31 U.S.C. §§ 3730 & 3732. The Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. 3732(b). The Court has personal jurisdiction over each of the Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because Defendants can be found in and transact business in this District. The Bausch Defendants have not challenged jurisdiction or venue. Dr. Falk has challenged the Court's jurisdiction in its motion to dismiss based on its alleged lack of contacts with the forum. (Dkt. 55, at 10-11)

The Bausch Defendants have accepted service of the summons and complaint. On March 25, 2019, counsel for Dr. Falk confirmed that it does not intend to challenge this court's jurisdiction on the basis of improper service of process.

**Bausch Defendants' Statement**:

The Bausch Defendants do not challenge jurisdiction or venue at this time.  The Bausch Defendants have accepted service of the summons and complaint.

**Dr. Falk's Statement:**

Dr. Falk asserts that the Court lacks personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) over Dr. Falk . First, because Dr. Falk is misjoined under Federal Rule of Civil Procedure 20(a), Dr. Falk is not a co-defendant and 31 U.S.C. § 3732(a) does not apply. Second, there is no precedent holding that a defendant like Dr. Falk should be subject to personal jurisdiction in California under the FCA. Third, Falk is not subject to any traditional basis of personal jurisdiction because Dr. Falk—a German company that does not manufacture, distribute, package or sell any products (much less Apriso®) in the United States and has not presented any false claims for payment—does not maintain minimum contacts in California. Maintenance of the suit would offend principles of reasonableness and fairness.  Dr. Falk confirms that it does not intend to challenge this court's jurisdiction on the basis of improper service of process.

**2.      Facts:**

**Relator's Statement**: Defendants manufacture, sell, and distribute the branded drug Apriso® (mesalamine). Apriso is widely prescribed to treat patients with ulcerative colitis and costs approximately $600 for a one-month prescription. Relator's operative complaint (the "Complaint") alleges that Defendants fraudulently obtained U.S. Patent No. 8,865,688 ("the '688 Patent") to exclude generic competitors from offering a lower-priced generic alternative to Apriso, thereby inflating the price by 650%. In particular, Defendants—through their agents—fraudulently obtained the '688 Patent by knowingly making material misrepresentations to the USPTO in prosecuting the patent application. They did so in contravention of the statutory duty of "candor and good faith" to

the USPTO under 37 C.F.R. § 1.56, which is imputed to each Defendant as a principal and real party-in-interest to the '688 Patent.[1]

Several generic companies have sought to introduce lower cost generic alternatives, but Defendants have asserted the '688 Patent against them to prevent their entry into the market and eliminate price competition for the drug. Several generic manufacturers filed *inter partes* reviews[2] (the "IPRs") challenging the validity of the patent. The IPRs claimed that the '688 Patent was invalid, but they did not assert the patent was obtained through fraud or inequitable conduct, because the PTAB has no authority to entertain such claims. The PTAB invalidated the '688 Patent, which was affirmed by the Federal Circuit on June 12, 2019..

Relator is a patent attorney who was lead counsel in the consolidated IPR proceedings that invalidated the '688 Patent. As a result of his independent investigation, Relator alleges that Defendants knowingly obtained the '688 Patent through fraud on the USPTO. Relator is therefore an "original source" of such information under § 3730(e)(4)(B), because Relator investigated and provided the analysis upon which the PTAB invalidated the '688 Patent. Relator also investigated, discovered, and provided information not disclosed in the IPR.

The '688 Patent claims as an invention the administration of a mesalamine formulation "without food." The crux of the '688 Patent—and the reason the USPTO granted it—was Defendants' representation to the USPTO that taking the Apriso mesalamine formulation "without food" was inventive. Relator alleges that this representation was false, and Defendants knew it. Relator's investigation uncovered two sets of facts supporting these allegations.

First, by 2005, two studies had demonstrated that the Apriso mesalamine formulation was previously to be taken without food. Those studies were prior art, and Defendants failed to disclose them to the USPTO in contravention of the duty of candor and good faith. Relator alleges that, if the USPTO had known about the studies, the '688 Patent would not have been granted. The '688 Patent

---

[1] Each Defendant is a principal and a real party-in-interest to the '688 patent and is jointly and severally liable for each false claim under the FCA. *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1149 (N.D. Cal. 2003); *Mortgs., Inc. v. United States Dist. Court*, 934 F.2d 209, 212 (9th Cir. 1991).

[2] *Inter partes* review is a proceeding conducted at the Patent Trial and Appeal Board ("PTAB") to review the patentability of one or more claims in a patent only on a ground that could be raised under 35 U.S.C. §§ 102 or 103, and only on the basis of prior art consisting of patents or printed publications.

was later invalidated based on those same two prior art studies. Relator discovered and alleges that Defendants knew about the studies because they participated in them, supplied the drug samples, and co-authored them.

Second, Relator discovered that in July 2009—six years before prosecuting the '688 Patent—Salix disclosed data to the USPTO (in connection with prosecuting a different and unrelated patent) showing that taking mesalamine formulations similar to Apriso "without food" was well-known by those with ordinary skill in the art. Neither Salix nor any other Defendant disclosed this fact to the USPTO when prosecuting the '688 Patent.

Defendants wrongfully asserted the '688 Patent to exclude generic competition and charge an artificially high price for Apriso. Relator alleges that each claim for payment or reimbursement for Apriso to a government health care program constitutes a false claim in violation of the federal False Claims Act, 31 U.S.C. §§ 3729–3733 (the "FCA"), and the false claims act of the respective plaintiff States and the District of Columbia. Relator alleges that those claims are false because they charged an artificially inflated price that Defendants maintained by unlawfully excluding generic competitors through the fraudulently obtained '688 Patent. First, because Defendants caused claims for payment or reimbursement for Apriso to be submitted to the government at illegally inflated prices, each such claim for Apriso was a false claim in violation of the False Claim Act and similar state statutes. *See* 31 U.S.C. § 3729(a)(1)(A). Second, each claim for payment or reimbursement for Apriso that would have been substituted for a less expensive generic equivalent constituted a false claim. *Id.* Third, because Defendants fraudulently obtained the '688 Patent through misrepresentations and omissions of material fact to the Patent Office, Defendants made a "false record or statement material to a false or fraudulent claim" or "fraudulent course of conduct" relating to Apriso. 31 U.S.C. § 3729(a)(1)(B); *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017).

Additionally, to qualify Apriso for payment through government health programs such as Medicaid and the Veterans' Health Administration, Defendants listed Apriso on the Federal Supply Schedule and thereby provided explicit and implied certifications to the U.S. government that the price of Apriso was "fair and reasonable in accordance with basic principles underlying the Federal Acquisition Regulations. (48 C.F.R. §§ 8.404(d); 15.402(a) (2018); § 1396r-8; Complaint, ¶ 132-136)

- 4 -

Thus, Relator alleges that each claim submitted to such government health programs for payment of Apriso also constituted a false claim under the "promissory fraud" or fraudulent inducement doctrine. *See Campie*, 862 F.3d at 902; *Hendow*, 461 F.3d at 1173. Relator alleges that Defendants knowingly obtained the '688 Patent through fraud, and they did so to keep Apriso prices high due by preventing price competition from generic drugs. Defendants' misrepresentations were material because the difference between the Apriso prices certified on the Federal Supply Schedule to be "fair and reasonable" and the lower prices that would have been prevailed but for the misrepresentation was substantial, by 85%.

Finally, Relator alleges that, but for Defendants' misrepresentations, approximately 90% or more of the Apriso subscriptions paid or reimbursed through government health programs would have instead been for significantly lower-priced generic Apriso. Courts uniformly hold that drug prescriptions procured through unlawful or anti-competitive conduct, such as through kickbacks, constitute "false and fraudulent" claims under the FCA. *See, e.g., U.S.,* ex rel. *Solis v. Millennium Pharm., Inc.*, No. 2:09-CV-03010-MCE, 2015 WL 1469166, at *6 (E.D. Cal. Mar. 30, 2015). The Complaint therefore alleges that each claim for payment or reimbursement for Apriso that would have been substituted for a less expensive generic equivalent also constitutes a false claim under the FCA.

**Bausch Defendants' Statement**:

Defendant Salix Pharmaceuticals, Inc. offers treatments for gastrointestinal diseases. In 2015, it and Salix Pharmaceuticals, Ltd. were acquired by Valeant Pharmaceuticals International, Inc. (now Bausch Health Companies Inc. ("Bausch")). Each of the Bausch Defendants is owned (either directly or indirectly) by Bausch.  Relator Zachary Silbersher is a New York patent attorney. On behalf of a generic drug company and a hedge fund, Silbersher initiated *inter partes review* (IPR) of U.S. Patent No. 8,865,688 ("the '688 Patent") before the Patent Trial and Appeal Board (the "PTAB") in 2015. In May 2017, the PTAB invalidated two claims in the '688 Patent. Less than a year later, Silbersher filed this action. Silbersher now takes his client's IPR allegations—allegations that Defendants obtained

drug patents without disclosing prior art—and dresses them up as a False Claims Act ("FCA") claim.[3] Silbersher is not a traditional FCA "insider" who exposes fraud.  In fact, he is simultaneously litigating nearly identical claims against three different pharmaceutical companies—none of which he has any direct connection to. In each case, he has pieced together allegations from publicly-available government databases to attempt to state an FCA claim. *See United States et al. v. Janssen Biotech, Inc. et al.*, No. 2:19-cv-12107-KM-JBC (D.N.J.); *Silbersher et al. v. Allergan plc et al.*, No. 3:18-cv-03018-JCS (N.D. Cal.).

Silbersher alleges that, starting in 2011 and later, Defendants submitted invoices to the federal and various state governments for Apriso. *Id.* ¶ 139. He alleges that to qualify Apriso for sale to federal agencies and for reimbursement under Medicare and Medicaid, Defendants would have had to provide the General Services Administration (the "GSA") with "proof that the price is fair and reasonable." *Id.* ¶ 133. Although Silbersher alleges that such "proof" would have been a misrepresentation because of the '688 Patent's claimed invalidity, the GSA regulations that require an assessment of a "fair and reasonable" price never define that term. *See* 48 C.F.R. 8.402(f)(2). To the extent that a definition of "fair and reasonable" can be gleaned from the context of the GSA regulations, that definition would not encompass the kinds of regulatory violations that Silbersher's Complaint has alleged.  Federal regulations imply that a price is "fair and reasonable" so long as it is non-discriminatory and commensurate with the market price. *See* 48 C.F.R. 15.404-1(b)(2) (describing "various price analysis techniques and procedures to ensure a fair and reasonable price," all of which compare the offered price to the private market price). Silbersher never suggests that any Defendant charged the government a price for Apriso that was discriminatory or incommensurate with the market price.

Silbersher repeatedly alleges in his Complaint and in his briefing that Defendants have made "express and implied certifications" that Apriso's price was "fair and reasonable," but he uses these terms without regard for their well-settled legal meanings in the FCA context.  The Ninth Circuit has repeatedly held that an "express" certification is made *in a claim for payment*.  *See Ebeid ex rel. U.S.*

---

[3] Defendants reject the allegations in Silbersher's Complaint and repeated here in his Statement of Facts.

*v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010) (express false certification "means that the entity seeking payment [falsely] certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted").  Silbersher never alleges that Defendants have made any express certification about Apriso's price in a claim for payment.  Moreover, to the extent that Silbersher alleges that Defendants have made "implied certifications" about whether Apriso's price is "fair and reasonable" or whether Defendants have complied with the law, they also appear to use this term outside the context of its settled meaning in the FCA context.  The Supreme Court has held that, to state an FCA claim for an implied false certification, a claim for payment must "not merely request payment, but also make[] specific representations about the goods or services provided."  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar,* 136 S. Ct. 1989, 2001 (2016).  As the Ninth Circuit has held, this is a *requirement* in order to allege a false certification claim.  *See U.S. ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1018 (9th Cir. 2018).  Silbersher's Complaint never makes any allegation that any claim for payment for Apriso contained a "specific representation" that was false.

Silbersher asserts that but for Defendants' alleged misrepresentations, Apriso prescriptions would have been filled by other drugs.  However, the Complaint does not allege specific facts to this end; it only alleges that the "fair and reasonable" certification to the GSA was "*per se* material to the government's payment decision." Complaint ¶ 137.

All of Silbersher's allegations are based on publicly-disclosed information.  *All* of the elements of the '688 Patent's alleged invalidity—and Defendants' knowledge thereof—were disclosed before the Complaint was filed.  The Complaint asserts that the Brunner and Marakhouski studies made the '688 Patent obvious.  *See* Complaint ¶¶ 10, 83-87. Each of those studies was published online for years preceding this suit.  The Complaint also alleges that the '688 Patent was rendered obvious by statements that Defendants made while prosecuting U.S. Patent No. 8,921,344 ("the '344 Patent"). Complaint ¶¶ 88-90, 92. *All* of these statements were made in documents available on the USPTO's online Public Patent Application Information Retrieval ("PAIR") database.  Statements made in prosecuting the '688 Patent were also disclosed on the PAIR database.  Silbersher asserts in passing in his Complaint that he is an "original source" of the allegations, but he provides no substantiation

beyond a conclusory assertion.

**Dr. Falk's Additional Statement**:

Dr. Falk joins in the Bausch Defendants' Statement above.

Dr. Falk is a German corporation with its principal place of business in Frieburg im Breisgau, Germany. Dr. Falk is the assignee of the '688 patent, which it licenses to Salix Pharmaceuticals, Inc. Dr. Falk is not owned by Bausch and is not affiliated with any of the Bausch Defendants. Dr. Falk disputes that it "is jointly and severally liable for each false claim under the FCA." *See supra* n.1.

Dr. Falk has no U.S. subsidiary, no U.S. location, and no contacts with California. Dr. Falk does not "manufacture, sell, and distribute" Apriso® in the United States, nor does it have FDA approval to do so. Dr. Falk also has never listed Apriso on the Federal Supply Schedule or submitted any claim for payment for Apriso® to the government of any state in the United States. Further, neither Dr. Falk, nor any individual from or associated with Dr. Falk, was substantively involved in the filing and prosecution of the '688 patent, much less made any knowingly false and materially misleading statements to the PTO.

In order to manufacture and market a generic version of Apriso in the United States, a generic drug company must submit an Abbreviated New Drug Application to the Food and Drug Administration (FDA) for approval.[4]  Teva Pharmaceuticals USA Inc. ("Teva") is the only generic company with tentative approval to sell Apriso.  Teva's ANDA No. 209970 was tentatively approved by the FDA in July 2018.  No other generic pharmaceutical company has been approved by the FDA to sell a generic version of Apriso. Further, Relator has provided no evidence that any generic company is prepared to commercialize a generic version of Apriso or that absent the pending appeal of the IPR decision, a generic company could  and would have entered the market.

**3.**     **Legal issues:**

**Relator's Statement**:

---

[4] https://www.fda.gov/drugs/developmentapprovalprocess/howdrugsaredevelopedandapproved/approvalapplications/abbreviatednewdrugapplicationandagenerics/default.htm. To obtain FDA approval, the generic drug company must scientifically show that its generic product delivers the same amount of active ingredients into a patient's bloodstream in the same amount of time as the innovator drug. *Id.*

1    In their motions to dismiss, Defendants raised several issues of fact, which they present as

2    issues of law.

3    Defendants argue that Relator fails to allege false and fraudulent statements constituting

4    "false or fraudulent claims." The FCA is to be broadly construed "to reach all types of fraud, without

5    qualification, that might result in financial loss to the Government." *Hendow*, 461 F.3d at 1170–71.

6    Relator has pleaded facts sufficient to state a claim under the FCA and has sufficiently alleged each

7    element of a claim under the FCA. *Universal Health Servs., Inc. v. United States* ex rel. *Escobar,*

8    _U.S._, 136 S. Ct. 1989 (2016); *Campie*, 862 F.3d 890.

9    Defendants also contend that the fraudulent statements alleged were not material to the

10    government's payments for Apriso. This is a question of fact. With respect to the applicable legal

11    standard, the price of a product purchased by the government is a material term "about the goods."

12    *See Escobar*, 136 S. Ct. at 2001. Under hornbook principles of contract law, price is a quintessential

13    material term. J. D. Calamari & J.M. Perillo, The Law of Contracts, § 2-13, at 43-44 & n. 176 (2d

14    ed. 1977). In fact, the "centrality" of fair and reasonable drug prices paid by the government

15    confirms that not overpaying for drugs is "'sufficiently important to influence the behavior' of the

16    government in deciding whether to pay the claims." *See Escobar*, 842 F.3d 103, 111 (1st Cir. 2016).

17    A jury can reasonably conclude that knowledge of the fraud and resulting 650% overcharge would

18    have a "natural tendency to influence, or be capable of influencing, the payment or receipt of money

19    or property." 31 U.S.C. § 3729(b)(4); *See Escobar*, 136 S. Ct. at 2002; *Campie*, 862 F.3d at 904-05.

20    And courts have held that terms affecting the size of government payments are material under the

21    FCA. *See U.S.* ex rel. *Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 701

22    (S.D.N.Y. 2018) (misstatement of information that directly influences the amount the government

23    pays is material); *United States v. DynCorp Int'l, LLC*, 253 F. Supp. 3d 89, 102 (D.D.C. 2017)

24    (defendant's claimed costs "were significantly higher than reasonable, so those claims satisfy

25    *Escobar's* materiality standard")..

26    Defendants also raise issues of fact whether the allegations of fraud have been publicly

27    disclosed. To qualify as a public disclosure that could potentially bar a relator's claim, the

28    information must have been published in: (i) a federal criminal, civil, or administrative hearing or

- 9 -

proceeding "in which the Government or agent is a party"; (ii) a Congressional or federal report, hearing, audit or investigation; or (iii) the news media. 31 U.S.C. § 3730(e)(4)(A). Defendants primarily rely on sources that are none of the above. Indeed, in a recent, well-reasoned decision, the court in *U.S.* ex rel. *Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSX), 2019 WL 3282619, at *12 (C.D. Cal. July 16, 2019) rejected many of the same public disclosure arguments that Defendants try in this case—including Defendants' reliance on studies published in online libraries, or on information in civil or administrative proceedings where the government was not a party—just because such information was posted somewhere on the Internet.

To the extent there has been any public disclosure—and there has been none that would warrant dismissal—Defendants' motion should still be denied because Relator is an "original source" of such information under § 3730(e)(4)(B). Relator investigated and provided the analysis upon which the PTAB invalidated the '688 Patent. Relator also investigated, discovered, and provided information not disclosed in the IPR. As an "original source" of information that is "independent of and materially adds to" any publicly disclosed allegations or transactions, Relator may proceed with this suit regardless of whether any public disclosures that may have occurred. 31 U.S.C. § 3730(e)(4)(A), (B).

Finally, defendant Dr. Falk believes that the Court cannot exercise jurisdiction over it because of their insufficient contacts within California. Under the FCA's nationwide venue provision, 31 U.S.C. § 3732(a), the relevant inquiry is whether Dr. Falk has minimum contacts with the United States as a whole. *Silingo v. Mobile Med. Examination Servs., Inc.*, 2015 WL 12752552, at *4 (C.D. Cal. Sept. 29, 2015). Such contacts exist, both nationally and also within California.

**Bausch Defendants' Statement**:

The Bausch Defendants' Motion to Dismiss raises a number of legal defects in the Complaint which merit dismissing the Complaint with prejudice. First, the Complaint does not plead falsity, as it relies on a theory of falsity that *no* court has recognized. Silbersher's core argument—that he can plead an "implied false certification" theory without alleging that the actual claim for payment contains any misrepresentation—is squarely rejected by the Ninth Circuit.   In *U.S.* ex rel. *Rose v. Stephens Inst.*, 909 F.3d 1012 (9th Cir. 2018), the relator argued—as Silbersher does now—that the

- 10 -

two conditions for an implied false certification claim articulated in *Universal Health Servs., Inc. v. U.S. ex rel. Escobar,* 136 S. Ct. 1989, 2001 (2016) are merely illustrative, not exclusive.  The Ninth Circuit unequivocally rejected this argument, holding that "our post-*Escobar* cases . . . appear to *require Escobar*'s two conditions[.]" *Rose*, 909 F.3d at 1018 (emphasis added).  Silbersher cannot satisfy *either* of *Escobar*'s two conditions, and he does not argue that he can.

Second, the Complaint fails to plead materiality. Silbersher's theory of "*per se*" materiality fails to satisfy the FCA's "rigorous" and "demanding" test. In any case, *Escobar* and its progeny have rejected Silbersher's "*per se*" theory of materiality. *See Knudsen v. Spring Commc'ns Co.*, 2016 WL 4548924 (N.D. Cal. Sept. 1, 2016); *see also U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 489-93 (3d Cir. 2017). Silbersher asserts that this is a "question of fact," but the Supreme Court has rejected any "assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss." *Escobar,* 136 S. Ct. at 2004 n.6.

Third, the Complaint is precluded by the public disclosure bar. Silbersher acknowledges that he is not an FCA insider, and that he pieced together his allegations from documents available to anyone. In fact, this is one of three nearly identical lawsuits he is currently litigating against different pharmaceutical companies. In each case, he has pieced together allegations from publicly-available government databases to attempt to state an FCA claim. *See United States et al. v. Janssen Biotech, Inc. et al.*, No. 2:19-cv-12107-KM-JBC (D.N.J.); *Silbersher et al. v. Allergan plc et al.*, No. 3:18-cv-03018-JCS (N.D. Cal.). The documents on which he bases his complaint were "public"—they have been disclosed, among other places in federal government databases and the news media—and they disclose all of the relevant allegations. 31 U.S.C. § 3730(e)(4)(A). Silbersher has, in his briefing, inserted new allegations about why he is an "original source" of the allegations in the Complaint, but this Court should not consider, on a Motion to Dismiss, allegations asserted for the first time in briefing.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers[.]") (citations omitted). Contrary to Silbersher's assertion that this is an "issue of fact" that cannot be adjudicated on a motion to dismiss, courts in this District can and do adjudicate public disclosure by considering documents outside the complaint. *See, e.g.*, *U.S. ex rel.*

- 11 -

*Fryberger v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 802-10 (N.D. Cal. 2014) (relying on judicially-noticed documents to dismiss under Rule 12(b)(6) for public disclosure). Silbersher's citation to *U.S. ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSX), 2019 WL 3282619 (C.D. Cal. July 16, 2019), does not help him. That case embraces a broad reading of "Federal report" that is consistent with Defendants' public disclosure arguments. *Integra Med. Analytics LLC*, 2019 WL 3282619 at *6. Moreover, the factors the *Integra* court considered in determining whether a disclosure was made via "news media" also support Defendants' position that the scientific periodicals containing the Brunner and Marakhouski studies are news media. *See id.* at *14-15 (factors include whether the "information typically conveyed by a source would be considered newsworthy," whether the source "curates information," whether it is "a source's intent to disseminate information widely, as opposed to only to a few individuals," and whether "the conveyance of newsworthy information is the primary purpose of the entity publishing the online source"). Contrary to Silbersher's assertion, Defendants have never asserted that the news media prong covers "information in civil or administrative proceedings where the government was not a party."

Fourth, Silbersher fails to plead fraud with the particularity required by Rule 9(b). He lumps all defendants together and does not allege basic facts about a single alleged invoice, such as which Defendant issued it, what it said, or how much it was for.

**Dr. Falk's Additional Statement:**

Dr. Falk joins in the Bausch Defendants' Statement above and joined the Bausch Defendants' Motion to Dismiss.

This Court cannot exercise jurisdiction over Falk because it has insufficient contacts with California as well as the United States. Relator cites no precedent where the Northern District of California or the 9th Circuit has held that a defendant like Dr. Falk, with no contact in California, is subject to personal jurisdiction in California under the nationwide service of process provision of the FCA.[5]

---

[5] *Silingo*, cited by Relator, is a Central District of California case.  2015 WL 12752552, at *4. This case is factually inapposite as well. The *Silingo* defendants had "a principal place of, and engage in, business" within the United States. *Id.* In contrast, Falk is a German company that does not manufacture, distribute, package or sell any products, much less Apriso®, in the United States.

**4.     Motions:**

The Bausch Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 15, 2019. Dr. Falk joined that motion on February 18. On February 19, Relator filed his opposition to the Bausch Defendants' motion to dismiss. On March 19, the Bausch Defendants filed their reply.

On February 18, Dr. Falk filed a separate motion to dismiss. Relator filed his opposition on March 4. On March 15, Dr. Falk filed its reply.

On February 13, 2019, the Bausch Defendants filed a Motion to Stay Discovery, which Dr. Falk joined on February 27, 2019. Relator filed his Opposition on February 27, 2019. The Bausch Defendants filed their Reply on March 6, 2019, which Dr. Falk joined on March 11, 2019.

Relator filed a letter brief asking the Court to compel the Bausch Defendants to produce documents responsive to Relator's First Requests for Production of Documents. The Bausch Defendants filed their response on March 25. Dr. Falk filed a letter brief on March 19 seeking a clarification that the motion to compel was not directed to them. Relator filed a response the same day acknowledging that the motion to compel was not directed to Dr. Falk.

The foregoing motions are all fully briefed. No other motions are anticipated at this time.

**5.     Amendment of Pleadings:**

Absent an adverse ruling on the pleadings granting leave to amend, Relator does not anticipate amending the pleadings.

**6.     Evidence Preservation:**

The Parties have reviewed the Northern District's Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The Parties have met and conferred pursuant to Rule 26(f) to discuss reasonable and proportional steps to preserve relevant evidence. Specifically, Relator inquired whether Defendants were aware of any issues regarding evidence that has either not been preserved or is inaccessible. Defendants stated that they are not aware of any such issues. Defendants stated that they had initiated litigation holds.

Relator emphasized that, due to the nature of the claims, information dating back several years relating to certain topic areas would need to be preserved, including (by way of example and

not limitation), (a) documents and communications relating to the '688 Patent and certain other patents whose prosecution was begun in the early 2000s or even earlier, including documents relating to ownership, prosecution, and assignment of rights affiliated with those patents; and (b) documents and communications relating to the Brunner and Marakhouski studies.

**7.    Disclosures:**

Relator and the Bausch Defendants exchanged Rule 26 Initial Disclosures on January 25, 2019. Relator provided Defendants and Dr. Falk an amended Rule 26 Disclosure on April 28, 2019. Dr. Falk provided Rule 26 Initial Disclosures on May 3, 2019.

**8.    Discovery:**

**Relator's Statement**:

Relator believes that the interests of efficiency and judicial economy will be well served by beginning discovery without delay. To that end, Relator served his First Requests for Production of Documents on the Bausch Defendants on January 31, 2019. Defendants served their Objections and Responses on March 1, 2019. After extensive efforts to resolve the Parties' differences, including telephone conferences on February 5, 8, and 11, and March 12, Defendants have not produced any documents. The RFPs are now the subject of motion practice. *See*, item 4, *supra*.

In connection with the Rule 26 conference, Relator has also identified certain broad categories of documents he considers relevant, such as documents pertaining to Defendants' settlements with ANDA filers, prosecution of the relevant patents, agreements and discussions among Defendants regarding patent ownership, prosecution, and rights, among other things. Relator agreed to provide Defendants with a list of relevant categories and topic areas.

**Bausch Defendants' Statement**:

On February 13, 2019, the Bausch Defendants filed a Motion to Stay Discovery in this case. On February 27, 2019, Dr. Falk joined the Bausch Defendants' Motion to Stay Discovery.  On April 16, 2019, the Court ordered a short hold on all discovery pending the hearing on the Motion to Stay Discovery. (Dkt. 76)  Defendants believe that it is appropriate to stay discovery in this FCA case until their Motions to Dismiss is resolved. *See U.S. ex rel. Modglin v. DJO Glob. Inc.*, 2014 WL 12564275, at *2 (C.D. Cal. Feb. 20, 2014) ("It is "proper in FCA [False Claims Act] cases … to stay

- 14 -

1  discovery until the court has had the opportunity to decide whether the complaint satisfies the

2  heightened pleading requirements of Rule 9(b).").

3         There is good cause for such a stay under Rule 26. Permitting Relator to take discovery on his

4  expansive and non-particularized FCA claims would subvert Rule 9(b). "Indeed, one purpose of Rule

5  9(b) particularity requirements is to inhibit the filing of a complaint as a pretext for the discovery of

6  unknown wrongs." *State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 638, 639 (N.D. Cal.

7  1997); *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ("Rule 9(b) serves … to deter the

8  filing of complaints as a pretext for the discovery of unknown wrongs[.]") (internal quotations

9  omitted).  Taking discovery on Relator's expansive and non-particularized FCA claims would also

10  subvert, and deprive the Court of an opportunity to consider, the public disclosure bar. Relator should

11  not be permitted to use his FCA claims, which are based entirely on publicly-disclosed information, to

12  obtain discovery into *non-public* information.

13         Moreover, the requested stay satisfies the two-part test that courts in this District use to

14  determine whether discovery should be stayed pending resolution of a motion to dismiss. *See, e.g.*, *In*

15  *re Nexus 6P Prods. Liab. Litig.*, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017). First, the Motion

16  to Dismiss, if granted, would completely dispose of this case. Second, the Motion to Dismiss does not

17  depend on any issue of fact that would require, or even benefit from, discovery. For these reasons,

18  discovery should be stayed pending resolution of the Motion to Dismiss.

19         Given that the Motion to Dismiss is set for hearing on August 8, any delay is relatively brief.

20  The requested stay will preserve the Court's ability to consider the arguments raised in the

21  pending Motion to Dismiss, conserve judicial resources, and cause no prejudice to Relator.**Dr.**

22  **Falk's Additional Statement**:

23  Dr. Falk joins in the Bausch Defendants' Statement above.

24  To date, no discovery requests have been served on Dr. Falk.

25  **9.     Class Actions:**

26  Inapplicable.

27  **10.    Related Cases:**

28  Though these cases are not strictly speaking related, the Federal Circuit has affirmed the

- 15 -

PTAB's decision invalidating on obviousness grounds two claims of the '688 Patent that Defendants asserted against generic manufacturers (*GeneriCo, LLC v. Dr. Falk Pharma GmbH*, No. IPR2016-00297, Final Written Decision, Dkt. 55 at 21-22 (P.T.A.B. May 19, 2017)), and dismissed as moot an appeal of another district court opinion on infringement of the '688 patent (*Salix Pharms. Inc. v. Mylan Pharms., Inc.*, No. 1:15-cv-00109-IMK, Slip Op., Dkt. 255 (N.D.W. Va. Sept. 12, 2017)).

The Federal Circuit decision is *Dr. Falk Pharma GmbH v. GeneriCo, LLC*, No. 2017-2312, 2019 WL 2452362, at *1 (Fed. Cir. June 12, 2019).

Moreover, although the cases are not strictly related, Relator is a plaintiff and relator in two other pending cases against other pharmaceutical manufacturers that Relator alleges also fraudulently obtained patents to exclude generic competition with respect to three other drugs. *See United States et al. v. Janssen Biotech, Inc. et al.*, No. 2:19-cv-12107-KM-JBC (D.N.J.); *Silbersher et al. v. Allergan plc et al.*, No. 3:18-cv-03018-JCS (N.D. Cal.).

**11.   Relief:**

Relator seek damages on behalf of the federal government and the Plaintiff States for overcharges paid for Apriso between October 2014 (when the '688 Patent was allowed) and the present. (The statute of limitations for the False Claims Act is six years from the date of the violation.) Medicare Part D and Medicaid payments for Apriso totaled approximately $316,027,111. This number does not include Apriso purchases by Medicare and Medicaid in 2018 and 2019, or by government-funded health programs, such as the Veterans Health Administration.

Relator believes the government may recover the full amount of these invoices, either because a lower cost generic would have been substituted for Apriso but for Defendant's fraudulent scheme, or under a fraudulent inducement theory of liability. With trebling under 31 U.S.C. § 3729(a)(1), the government's recovery without statutory penalties would be $948,081,333, excluding damages relating to any direct purchases from the Veterans Health Administration, the Department of Defense's TRICARE, or other government-funded health programs. This amount also excludes Apriso purchases in 2018 and 2019.

But even if the government is entitled to only recover the overcharge amount, if generics had been able to enter the market, the price of Apriso would have dropped by 85% or more. The amount

of this overcharge, just for Medicare Part D and Medicaid, and not counting 2018 and 2019, would be $268,623,044.35, which when trebled becomes $805,869,133.05.

The FCA also authorizes a civil penalty of not less than $11,463, or more than $22,927, for each violation of the False Claims Act. Medicare Part D and Medicaid paid 671,938 total claims for Apriso between October 2014 and the end of 2017. Accordingly, the minimum civil penalty would be approximately $7.7 billion, and the maximum civil penalty would be approximately $15.4 billion just for these claims. Adding the treble damages to the civil penalties, Relator seeks, at a minimum, damages of approximately between $8.5 billion and $16.3 billion (excluding damages from other Medicare claims and direct purchases from other government programs, and excluding purchases in 2018 and 2019), plus reasonable expenses, attorneys' fees, and costs, as authorized under 31 U.S.C. 3730(d)(2).

Defendants contend that Relator is not entitled to any relief.

**12.   Settlement and ADR:**

During the meet and confer Relator informed Defendants that mediation before a magistrate is acceptable, as are the other ADR options offered by the Court. Defendants are agreeable to mediation in front of a magistrate, though they believe ADR is premature at this time, and would prefer to revisit the issue after the Court has ruled on the pleadings.

**13.   Consent to Magistrate Judge for All Purposes:**

Defendants have declined the Magistrate Judge.

**14.   Other References:**

Inapplicable.

**15.   Narrowing of Issues:**

The Parties do not believe the issues can be narrowed at this time.

**16.   Expedited Trial Procedure:**

No party seeks to proceed under the Court's Expedited Trial Procedure.

**17.   Scheduling:**

| EVENT | DATE |
|---|---|
| Initial Case Management Conference | 8/08/2019 |

- 17 -

| EVENT | DATE |
|---|---|
| Hearing on Defendants' Rule 12 motions | 8/08/2019 |
| Relator provides custodians/search terms | 08/22/19 or Pursuant to Court Order on Motion to Compel or Motion to Stay |
| Defendants begin rolling document production | Pursuant to Court Order on Motion to Compel or Motion to Stay |
| Defendants respond with proposed custodians/search terms | 9/05/19 or Pursuant to Court Order on Motion to Compel or Motion to Stay |
| Defendants answer the complaint | Three weeks after decision on motion to dismiss. |
| Deadline to amend pleadings or to add defendants, claims, or defenses, except upon a showing of good cause | 60 days after the Court adjudicates motion(s) to dismiss |
| Fact discovery closes, including all fact depositions; all discovery must have been timely served to be answerable by this date | The later of 2/14/2020 or 180 days following the date that Defendants Answers to the Complaint are due. |
| The Parties serve merits expert reports | The later of 5/14/2020 or 90 days following the close of fact discovery. |
| The Parties serve opposing merits expert reports | The later of 6/18/2020 or 35 days following service of merits expert reports. |
| The Parties serve reply merits expert reports | The later of 7/16/2020 or 28 days following service of opposing merits expert reports |
| Expert discovery closes | The later of 8/13/2020 or 28 days following service of reply merits expert reports |
| Deadline for Rule 56 and Daubert motions | The later of 8/20/2020 or 35 days following service of reply merits expert reports |
| Rule 56 and Daubert oppositions | The later of 9/17/2020 or 28 days following deadline for Rule 56 and Daubert motions. |
| Rule 56 and Daubert replies | The later of 10/1/2020 or 14 days following Rule 56 and Daubert oppositions. |
| Hearing on Rule 56 and Daubert motions | The later of 10/22/2020 – 12/03/2020 or the 42-day window starting 21 days following the Rule 56 and Daubert replies. |
| Parties exchange Rule 26(a)(3) disclosures and preliminary trial memoranda | The later of 11/12/2020 or 42 days following Rule 56 and Daubert replies. |
| Parties file motions *in limine* | The later of 11/12/2020 or 42 days following Rule 56 and Daubert replies. |
| Parties file oppositions to motions *in limine* | The later of 11/25/2020 or 14 days following the filing of motions *in limine*. |
| Parties exchange objections to Rule 26(a)(3) disclosures | The later of 12/03/2020 or 7 days following filing of oppositions to motions *in limine*. |
| Parties exchange counter-objections to Rule 26(a)(3) disclosures | The later of 12/07/2020 or 3 days following exchange of objections to Rule 26(a)(3) disclosures. |

| EVENT | DATE |
|-------|------|
| Parties file replies to motions *in limine* | The later of 12/10/2020 or 3 days following exchange of objections to Rule 26(a)(3) disclosures. |
| Attorneys' Conference; all motions *in limine* must be fully briefed by this date. | The later of 12/14/2020 or 4 days following filing of replies to motions *in limine*. |
| Draft of Joint Final Pretrial Order, *voir dire*, and jury instructions exchanged | The later of 1/08/2021 or 21 days following Attorneys' Conference excluding the dates between 12/21/2020 through 01/07/2021 |
| Joint Final Pretrial Order filed with Court | The later of 1/13/2021 or 5 days following Draft of Joint Final Pretrial Order. |
| First Final Pretrial Conference (proposed) | The later of 1/15/2021 or 2 days following filing of Joint Pretrial Order with Court. |
| Parties file proposed *voir dire*, jury instructions, original and two copies of final bound exhibits, revised 26(a)(3)/Final Pretrial Order materials, witness summaries, and Final Trial Memoranda | The later of 2/05/2021 or 21 days following First Final Pretrial Conference. |
| Second Final Pretrial Conference | The later of 2/12/2021 or 7 days following filing of proposed *voir dire*. |

**18.    Trial:**

Defendants prefer a bench trial. Relator is amenable to a bench trial but reserves his right to request a jury trial. No other trial-related issues were discussed.

**19.    Disclosure of Non-party Interested Entities Or Persons:**

The parties have filed Certifications of Interested Entities or Persons with the Court.

**20.    Professional Conduct:**

The Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.    Other Matters:**

On January 18, 2019, Relator sent to counsel for the Bausch defendants a draft protective order and draft stipulations and proposed orders relating to expert discovery and privilege protocols. On March 22, 2019, Relator sent these documents (with additional updates) to Dr. Falk's counsel. Relator is awaiting Defendants' comments to these documents.

1

Dated: August 1, 2019

**HERRERA PURDY LLP**

2

3

By: _/s/ Nicomedes Sy Herrera_
Nicomedes Sy Herrera

4

Nicomedes Sy Herrera (State Bar No. 275332)
Andrew Purdy (State Bar No. 261912)

5

Laura E. Seidl (State Bar No. 269891)
1300 Clay Street, Suite 600

6

Oakland, California 94612
Telephone: (510) 422-4700

7

NHerrera@HerreraPurdy.com

8

APurdy@HerreraPurdy.com
LSeidl@HerreraPurdy.com

9

**GOLDSTEIN & RUSSELL, P.C.**

10

11

Tejinder Singh (_pro hac vice_ application to be filed)
7475 Wisconsin Avenue, Suite 850

12

Bethesda, Maryland 20814
Telephone: (202) 362-0636

13

TSingh@goldsteinrussell.com

14

_Attorneys for Plaintiff-Relator Zachary Silbersher_

15

Dated: August 1, 2019

By: _/s/ Padraic Foran_
Padraic Foran

16

17

Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com

18

Padraic W. Foran, State Bar No. 268278
pforan@hueston.com

19

HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400

20

Los Angeles, CA 90014
Telephone: (213) 788-4340

21

Facsimile:   (888) 775-0898

22

_Attorneys for Defendants Valeant Pharmaceuticals_
_International, Inc., Valeant Pharmaceuticals_

23

_International, Salix Pharmaceuticals, Ltd., and Salix_
_Pharmaceuticals, Inc._

24

25

26

27

28

- 20 -

1

By:   */s/ Christian E. Mammen*
Christian E. Mammen

2

Christian E. Mammen (State Bar No. 188454)
WOMBLE BOND DICKINSON (US) LLP

3

1841 Page Mill Road, Suite 200

4

Palo Alto, CA 94304
( 408) 341-3067

5

Email: Chris.Mammen@wbd-us.com

6

Mary W. Bourke (*admitted pro hac vice*)

7

Kristen Healey Cramer (*admitted pro hac vice*)
WOMBLE BOND DICKINSON (US) LLP

8

1313 North Market Street, Suite 1200
Wilmington, DE 19801

9

(302) 252-4320
Email: Chris.Mammen@wbd-us.com

10

Mary.Bourke@wbd-us.com
Kristen.Cramer@wbd-us.com

11

12

John Bourke (*admitted pro hac vice*)
WOMBLE BOND DICKINSON (US) LLP

13

Two International Place, Suite 02110
Boston, MA 02110

14

(857) 287-3128
Email: Ben.Bourke@wbd-us.com

15

16

*Attorneys for Defendant Dr. Falk Pharma GmbH*

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT                    CASE NO. 3:18-CV-01496-JD

## **ATTESTATION OF FILER**

I, Nicomedes Sy Herrera, attest that I have obtained the concurrence of Padraic Foran and Christian Mammen as to the substance of this **JOINT CASE MANAGEMENT STATEMENT**. Messrs. Foran and Mammen have authorized the use of their electronic signatures on this document.

Dated: August 1, 2019                              By: */s/ Nicomedes Sy Herrera*
                                                                        Nicomedes Sy Herrera