**Pages 1 - 31**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

```
UNITED STATES OF AMERICA;      )
STATES OF CALIFORNIA, COLORADO,)
CONNECTICUT, DELAWARE, FLORIDA,)
GEORGIA, HAWAII, ILLINOIS,     )
INDIANA, IOWA, LOUISIANA,      )
MICHIGAN, MINNESOTA, MONTANA,  )
NEVADA, NEW JERSEY, NEW MEXICO,)
NEW YORK, NORTH CAROLINA,      )
OKLAHOMA, RHODE ISLAND,        )
TENNESSEE, TEXAS, VERMONT, AND )
WASHINGTON; THE COMMONWEALTHS  )
OF MASSACHUSETTS AND VIRGINIA; )
AND THE DISTRICT OF COLUMBIA,  )
                               )
ex rel. ZACHARY SILBERSHER,    )
                               )
          Plaintiffs,          )
                               )
  VS.                          )    No. C 18-1496 JD
                               )
VALEANT PHARMACEUTICALS        )
INTERNATIONAL, INC., VALEANT   )
PHARMACEUTICALS INTERNATIONAL, )
SALIX PHARMACEUTICALS, LTD.,   )
SALIX PHARMACEUTICALS, INC.,   )
AND DR. FALK PHARMA GMBH,      )
                               )
          Defendants.          )
_____)    San Francisco, California
                                    Thursday, August 8, 2019
```

**TRANSCRIPT OF PROCEEDINGS**

(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, CRR, RMR
               Official Reporter - U.S. District Court

**APPEARANCES:**

For Plaintiff-Relator Zachary Silbersher:
                        HERRERA PURDY LLP
                        1300 Clay Street, Suite 600
                        Oakland, California 94612
            BY:  **NICOMEDES SY HERRERA, ESQ.**
                 **ANDREW PURDY, ESQ.**
                 **LAURA E. SEIDL, ESQ.**


For Defendants Valeant Pharmaceuticals International, Inc.,
Valeant Pharmaceuticals International, Salix Pharmaceuticals,
Ltd., and Salix Pharmaceuticals, Inc:
                        HUESTON HENNIGAN LLP
                        523 West 6th Street, Suite 400
                        Los Angeles, California 90014
            BY:  **MOEZ M. KABA, ESQ.**
                 **DANIEL C. SHEEHAN, ESQ.**


For Defendant Dr. Falk Pharma GmbH:
                        WOMBLE BOND DICKINSON (US) LLP
                        1841 Page Mill Road, Suite 200
                        Palo Alto, California 94304
            BY:  **CHRISTIAN E. MAMMEN, ESQ.**

1   **Thursday - August 8, 2019**                    **10:47 a.m.**

2                        **P R O C E E D I N G S**

3                          ---oOo---

4        **THE CLERK:**  Calling Civil 18-1496, Silbersher versus

5   Valeant Pharmaceuticals.

6      Counsel.

7        **MS. SEIDL:**  Good morning, Your Honor.  Laura Seidl for

8   the plaintiff relator.

9        **MR. PURDY:**  Andrew Purdy on behalf of the plaintiffs

10  also.

11       **MR. HERRERA:**  Good morning, Your Honor.  Nicomedes

12  Herrera on behalf of Mr. Silbersher, the plaintiff relator who

13  gives his regrets that he couldn't be here today.

14       **THE COURT:**  Oh, yes, travel.  That's fine.  Okay.

15  Good.  Yes.

16       **MR. KABA:**  Good morning, Your Honor.  Moez Kaba and my

17  colleague Daniel Sheehan, of Hueston Hennigan, on behalf of the

18  Bausch defendants, which are Valeant Pharmaceuticals

19  International, Inc., Valeant Pharmaceuticals International,

20  Salix Pharmaceuticals Ltd., and Salix Inc.

21       **THE COURT:**  Good morning.

22       **MR. MAMMEN:**  Good morning, Your Honor.  Christian

23  Mammen, from Womble Bond Dickinson, on behalf of defendant

24  Dr. Falk Pharma.

25       **THE COURT:**  Okay.  Are you going to take the lead

```
 1    Mr. Kaba.
 2             MR. KABA:  Yes, Your Honor.
 3             THE COURT:  All right.  And, Mr. Herrera, you're going
 4    to handle for the plaintiff?
 5             MR. HERRERA:  Yes, Your Honor.
 6             THE COURT:  All right.  So this came with you from the
 7    old place; is that right?
 8             MR. HERRERA:  That's right, Your Honor.
 9             THE COURT:  All right.  So is Mr. Saveri out totally
10    now?
11             MR. HERRERA:  Yes, he is Your Honor.
12             THE COURT:  Okay.  Go ahead.  You know what?  Here's
13    what I want.  I would like to focus on the public disclosure
14    bar, okay.  Why don't you start with that, Mr. Kaba.
15             MR. KABA:  Sure, Your Honor.
16        So the public disclosure bar, of course, under the Court's
17    most recent decisions in *Mateski* but also the Court's
18    earlier -- the Ninth Circuit's, I should say, decision in
19    *Mateski* but also the Ninth Circuit's decision in *A-1* and
20    *Schindler* lays out a framework for the Court to follow in
21    determining whether or not either the allegation, i.e. the
22    allegation of fraud or the transactions, i.e. the underlying
23    facts that make up the alleged fraud, were publicly disclosed.
24        I think it's really key, plaintiff-relator admits exactly
25    what this complaint is based on.  A complaint that I credit for
```

1    its novelty but is really remarkable in its reach.

2          Plaintiff, on page 3, page 7 of the docket but page 3 of

3    his opposition, says here is what my case is based on:  Two

4    studies, the Marakhouski and Brunner study, that plaintiff had

5    nothing to do with, that was publicly available at the time the

6    studies were available, and two disclosures from the '344

7    patent.

8          Again, relator had nothing to do with the '344 patent, but

9    it was publicly available.  It was part of the public record in

10   the '344 record and part of the PAIR database.

11         So then the question the Court asked is, Okay.  Is that

12   it?  Is that what you got?  And plaintiff said, No, I analyzed

13   that information.  And those documents did not reveal the

14   fraud.  In fact, I'm a lawyer, I was the patent attorney in the

15   challenge to the '668 patent -- '688 patent, and I used my

16   skill to say, hey, the authors of these studies include some

17   individuals associated with Dr. Falk, so there you go, they

18   must have known something.

19         Now, of course, Your Honor, the Ninth Circuit's decision

20   in *A-1* says that's not enough.  You can't -- your special

21   expertise is not relevant to whether or not this information

22   was publicly disclosed or you are an original source.

23         **THE COURT:**  Is there any -- the plaintiff is not

24   claiming to be an original source, is he?

25         **MR. HERRERA:**  Yes, he is, Your Honor.

1          **THE COURT:**  Oh, he is?  Okay.  Go ahead, Mr. Kaba.

2          **MR. KABA:**  So let's take it step by step.

3          **THE COURT:**  Let's start with the disclosure.

4          **MR. KABA:**  Exactly.

5          **THE COURT:**  All right.

6          **MR. KABA:**  So the disclosures, are these public

7    disclosures?

8          So the two studies, as we've argued in our papers and we

9    think is clear under the Central District's decision in *Hong*

10   and the more recent decision in *Integra* qualify as news

11   reports.  They are publicly available.  It is information that

12   is out there for anyone to be able to go out and access.

13   That's how they accessed it.  The documents are out there.

14   They're published scientific studies.  That's the first of

15   their -- the legs of their stool.

16         The second leg of the stool is the authors of those

17   studies.  Well, that's in the study itself.  The authors are

18   listed.  Not only are the authors listed but their affiliation

19   with Dr. Falk, who is the original applicant for the patent, is

20   listed.  That's the second leg: publicly available.  *Hong,*

21   *Integra* deal with this issue.

22         The third leg of their stool is, what was said in the '344

23   patent?  Now, they weren't involved in the '344 patent, so

24   where do you get that information?  Well, you get it from the

25   patent files, the records of the patent.

1    They argue, well, that's not -- that's just a -- that
2  doesn't qualify as a government record under the public
3  disclosure analysis of the FCA.  So how do you get to a public
4  record?  It can be a news report, which is what the two studies
5  are, or it can be a government record.
6    And they cite a case from the Ninth Circuit and they say
7  that case says that just the database, the fact of the patent
8  file, there's no synthesis or analysis there, therefore, it
9  cannot be a government record.
10   And they note in their papers, oh, this Ninth Circuit
11 opinion was abrogated on other grounds by *Schindler*, the U.S.
12 Supreme Court's decision in *Schindler*.
13   Actually, *Schindler* abrogated the opinion on precisely
14 those grounds.  In *Schindler* the Court made very clear, over a
15 dissent, that FOIA responses are public records under the
16 government exception prong of the analysis.
17   Why?  Because in -- the *Schindler* court says government
18 records have to be interpreted according to their ordinary
19 meaning, and that's just anything that provides information.
20   And anything that provides information, Your Honor, would
21 include, if it includes a responsible FOIA request it certainly
22 includes the patents -- the file of the patent and what was
23 included and not included in that patent.
24   So in *Schindler* the Court, again -- I think a very
25 illustrative case here because it deals with the exact sort of

1  issue we have here because it cautions against parasitic and

2  opportunistic relators who are from outside of the company,

3  which this relator is.  This relater has nothing to do with

4  these companies but has mined some public records, including

5  the Patent Office's records, and said, I think I have something

6  here.

7      And we obviously argue what he thinks he has is neither a

8  false statement nor material, but because Your Honor wants to

9  focus on public disclosure, that's where I'll go.

10          **THE COURT:**  Let me just pause on that.

11      Mr. Herrera.

12          **MR. HERRERA:**  Your Honor, defendants have two major

13  problems with public disclosure.  They cannot show an

14  enumerated fora in the statute.  And, second of all, they

15  cannot show a substantially similar allegation or transaction,

16  even if you did consider their sources to be enumerated within

17  the statute.

18      I want to begin first, and it's very important, the sea

19  change that happened in 2010, also in 1986.  Congress twice, in

20  Congress's own words, tried to fix the False Claims Act from

21  expansive judicial interpretation that expanded the original

22  purpose of the public disclosure bar to stop meritorious suits,

23  and that the whole purpose of the False Claims Act was to have

24  a partnership where private citizens like Mr. Silbersher can

25  stop government fraud.

1    Now, there's two things that are very important, that will
2    run through these arguments, that Congress did in 2010.

3    Number one, they modified who could be an original source
4    from someone having direct knowledge to just someone with
5    independent knowledge.  That, I think, gives the lie to what my
6    colleagues across the aisle said, that just because
7    Mr. Silbersher was not an insider that somehow he's not a
8    proper relator.

9    Congress said, no, no, no.  We want to encourage everyone,
10   whether you're an insider or not.  The purpose is stopping
11   government fraud, not whether he worked for the company or not.
12   That's irrelevant to stopping government fraud.

13   But for the purpose of the public disclosure bar, the key
14   change was in section 1 of section 3730(e)(4)(A).  Those have
15   three enumerated fora.  And in order to meet the public
16   disclosure bar, it has to fall in one of them.

17   And with respect to subsection 1, beforehand it was any
18   civil, administrative, or criminal proceeding.  That would be
19   enough.  If it was disclosed in a civil proceeding like a
20   patent infringement action, you were done.  If it was disclosed
21   in an administrative proceeding like a patent prosecution
22   proceeding before the Patent Office, you were done.  Even in a
23   state proceeding.

24   Congress said, in 2010, no, no, it has to be Federal so
25   that we know that the government is likely to be informed of

1   it; and, second of all, if the government is not a party to

2   those proceedings -- actually, it's hearings, but as *A-1* says,

3   "hearings" is synonymous with "proceedings."  If the government

4   is not a party to those proceedings, it doesn't count.

5        Now, let's go look to what they say --

6        **THE COURT:**  Let me ask you this.  Why didn't your

7   client file this case before the PTAB decision?

8        **MR. HERRERA:**  My client was the lead attorney in the

9   PTAB decision.

10        **THE COURT:**  Look.  The two studies, Brunner and -- I'm

11   just going to call them B and M --

12        **MR. HERRERA:**  Yeah.

13        **THE COURT:**  -- were out in 2003, 2004.  The patent was

14   applied for in, like, 2007.  Those are all a click away on the

15   Internet.  There is no secret about them.

16        Why did he wait until 2019, when all those sources were

17   available over a decade ago?

18        **MR. HERRERA:**  Well, first of all, in the PTAB action,

19   the PTAB doesn't even have jurisdiction to look at fraud --

20        **THE COURT:**  I'm not asking that.  I'm asking, why did

21   your client wait until after the PTAB decision to file?

22        **MR. HERRERA:**  I don't know.

23        **THE COURT:**  All right.  I think I do.  He waited

24   because it was only when the PTAB said this patent is

25   invalidated for being obvious that he concluded that he had an

1  opportunity to bring a False Claims Act case.

2      In other words, I think this whole case comes down to what

3  the PTAB did.  And your client had all these sources in hand.

4  There may be a time bar issue, we're not talking about that

5  right now.  He had all these sources in hand way before 2019.

6  And the switch didn't flip until PTAB said, well, yes, these

7  are obvious.

8      And I have to be honest with you, this is not a typical

9  False Claims Act case, which is fine.  We're here to let the

10  law develop.  But he's a complete outsider.  He has no inside

11  information, whatsoever, about the conduct of these

12  pharmaceutical defendants, because he never worked for them.

13  In fact, he prosecuted them, so to speak, on the civil side.

14  And he didn't do anything until the PTAB said this patent is

15  invalid for obviousness.

16      And the complaint is just that.  The complaint is all,

17  see, PTAB said this was obvious and invalid so everything

18  subsequent to that must be a fraud or False Claims Act charge.

19      And all the raw material, all the building logs for the

20  fraud claim were in place, you know, by 2007, when the USPTO

21  started the application.

22      I'm giving a fair amount of attention to a case that

23  neither of you cited, but it's from two years ago.  It's called

24  *Amphastar*.

25          **MR. HERRERA:**  Oh yeah.

1          **THE COURT:**  *Amphastar Pharmaceuticals versus Aventis*,

2    856 F.3d 696, Ninth Circuit 2017, which is really quite on

3    point.  I was surprised neither of you mentioned it.  Maybe

4    there's some reason I'm missing.

5          It was pretty clear there that when you have a critical

6    mass, is what, I think, the Circuit called it, when you have a

7    critical mass of facts that are substantially in the public

8    record, that are substantially identical to whistleblower

9    claims, you don't have a whistleblower claim.

10          Now, I understand and I'm concerned about the statutory

11    language.  I just haven't really worked that through yet.  I

12    want to get more of your views on that.

13          But the fact of the matter is, none of this was outside

14    the public record.  Not a word of it was outside publicly

15    available sources.  That just can't be the basis for a False

16    Claims Act.

17          **MR. HERRERA:**  Your Honor, if I may.

18          **THE COURT:**  Yes, please.

19          **MR. HERRERA:**  I would like to react three ways.

20          Number one, the Congress carefully circumscribed what can

21    bar suit.  Not everything that's publicly available can bar

22    suit.

23          Now, Your Honor mentioned the PTAB decision.  That's

24    right.  Before 2010, there would be no case.  After 2010

25    Congress said that if you have an administrative proceeding,

like a PTAB, but the government is not a party, it just doesn't

count.  It does not lead to public --

          THE COURT:  Do you see the problem here though?  Just

as a policy issue, it's not a driver in the decision, but just

think this over for a moment, as I know you have.

     If that were the case, you'd just have an industry of

people pouring over PTAB decisions for invalidation on

obviousness and then trying to find a link to Department of

Defense, Department of Energy, DHS, you know, any of the

tremendous consumers of patented technology in the government,

and then just doing exactly what you said.  And they don't have

a lick of inside information about what really happened to make

this a false claim within the meaning of fraud on the

government.

          MR. HERRERA:  Your Honor --

          THE COURT:  Does that sound right to you?

          MR. HERRERA:  Yes, I do think that's right, for two

reasons.

     Number one, Congress said we have to -- we have to give

effect to what Congress actually said.  And Congress made a

decision, as part of the Affordable Care Act, they said, we

have waves of healthcare fraud, and one of the ways to do it is

we incentivize outsiders, people without direct knowledge even,

not the traditional insiders.  We want them to go out there and

police healthcare fraud because we want to protect the

 1   government fisc.

 2          **THE COURT:**  I have to jump in on that because I don't

 3   think that's right.

 4          **MR. HERRERA:**  Okay.

 5          **THE COURT:**  I answer to Congress.  I also have to

 6   answer to the Supreme Court.  And the Supreme Court, just two

 7   years ago, three years ago, in the *Escobar* case, said plain as

 8   day that the False Claims Act is not a license to hunt general

 9   fraud.

10          **MR. HERRERA:**  Sure.

11          **THE COURT:**  That's just not what it is.

12          **MR. HERRERA:**  Sure.

13          **THE COURT:**  So you cannot be a roving avenger for

14   healthcare fraud under the FCA.  You have to show that the

15   government paid a false claim.

16          **MR. HERRERA:**  Yes.  We'll get to the false claim, but

17   I just want to focus laser in on the PTAB.

18       Under the plain words of the statute as it exists today,

19   the PTAB is not an enumerated fora.  It is just not a public

20   disclosure.  Why?  Because it falls squarely within subsection

21   1.  It is an administrative proceeding in which the government

22   is not a party.

23       Congress specifically said if the government is not a

24   party to that proceeding, it just doesn't count.  It may be

25   public, people may know about it, but it's just not --

1          **THE COURT:**  Okay.  I don't think I agree with that,

2   but I'll take your point for now.

3          **MR. HERRERA:**  Okay.

4          **THE COURT:**  It doesn't really matter because the

5   patent application is a public record.  And the government, at

6   the PTO, is available online, you know exactly what they said

7   in the application.  And the two studies that you're claiming

8   put the lie to the enteric coating are also in the public

9   domain.

10          **MR. HERRERA:**  Sure.  Your Honor, I would like to get

11   to those.  I was focusing on PTAB because I know Your Honor was

12   very concerned about it.

13          **THE COURT:**  No, no, my concern is you all didn't sue

14   until someone told you this is a problem.

15          **MR. HERRERA:**  That's right.  Okay.

16          **MR. KABA:**  I would like to react to that, to break it

17   up, to react just to this one issue --

18          **THE COURT:**  Okay.

19          **MR. KABA:**  -- Your Honor, before we jump to the next

20   one.

21          Their focus is all wrong.  They keep going back to

22   (4)(A)(i) in a federal criminal, civil, or administrative

23   hearing in which the government or its agent is a party.

24   That's what they keep saying.  They say, oh, in 2010 we changed

25   the law, Congress changed the law.

1    That is beside the point, as Your Honor is saying, because

2    all you have to do is go to the next romanette.  It says "or in

3    a Congressional government accountability office or other

4    Federal report, hearing, audit, or investigation."

5    The government doesn't have to be a party.  And of course

6    the PAIR files, the Patent Office's files, if FOIA records, if

7    responses to FOIA records are another Federal report, certainly

8    what we are talking about and what Your Honor is pointing out

9    is a Federal report, hearing, audit or investigation.

10    And we don't need to go to 2010 in Congress.  We can go to

11    2011, the *Schindler* decision by Justice Thomas on the Supreme

12    Court.  He says there is a, quote, wide-reaching public

13    disclosure bar.

14    He says exactly as Your Honor is pointing out, that the

15    drafting history supports the idea that you have to prevent

16    opportunistic litigation that the public disclosure bar is

17    designed to discourage.

18    And the Court uses an analogy similar to what Your Honor

19    just said:  Anyone could find regulatory filing and

20    certification requirements, submit requests until they discover

21    someone out of compliance, and then go and file an FCA claim.

22    And the Court says absolutely not.  And the Court says

23    that over a vigorous dissent, saying, no, no, no, just

24    government files should not qualify as public records, there

25    needs to be analysis and synthesis.

1    And Justice Thomas, writing for the majority, says

2    absolutely not.  If it's in the government records, if it's a

3    record, plain meaning, provides some information.

4    And I cannot imagine how you could say PTO records do not

5    provide the information, particularly when you have the pattern

6    you have here, which is waiting until an invalidation on

7    obvious.  By the way, not invalidation for fraud on the PTO.

8        THE COURT:  That's an interesting issue.  It was an

9    inequitable conduct, which actually was the case in *Amphastar*,

10   which makes it even closer to FCA.  So this is actually even

11   substantively another step away.

12   But why don't we --

13       MR. HERRERA:  Your Honor, I really need -- I would

14   like to --

15       THE COURT:  Yes.  You're going to close it out, then

16   we're going to go to original source.

17       MR. HERRERA:  Okay.  So the public disclosure bar,

18   there are three romanettes.  It has to be one of those three

19   fora.  I think I share, I think we all agree we have to go

20   through these three fora, to say is what's public out there, is

21   it in one of those three fora?

22       THE COURT:  Would you not talk to my clerks.  Talk to

23   me.

24       MR. HERRERA:  Sorry, Your Honor.

25       THE COURT:  You keep doing that.  Someone told you to

1    do that.  Don't do that.  It's a mistake.

2           **MR. HERRERA:**  I beg your pardon.

3           **THE COURT:**  Go ahead.

4           **MR. HERRERA:**  So, okay.  There's three things that

5    defendants say.  Well, actually, two things.  One is the patent

6    prosecution dockets.  And the second thing they say is the

7    Marakhouski and Brunner studies.  Those are the underlying

8    facts they say were publicly disclosed.

9        Just like -- Your Honor mentioned the PTAB decision.  The

10   PTAB, as we know, falls under number 1.  It is a government

11   administrative hearing or proceeding in which the government is

12   not a party.  And it's not a Federal record and it's not news

13   media.  So whatever is disclosed in a PTAB, including the

14   decision, does not create a public disclosure.

15          **THE COURT:**  Let me ask you this.  Of course, we're

16   working off the complaint.

17       I didn't see anything in the complaint that's alleged to

18   be the basis for the fraud, other than the two reports, the B

19   and the M report, and the PTAB decision.  What else is in the

20   complaint that says --

21          **MR. HERRERA:**  That's it.  I can get to that.  I think

22   those are very startling evidence of fraud.  But let me stick

23   with the public disclosure, and then I'll get to that -- to

24   that issue, Your Honor.

25       Now, there's been a lot of mention by Your Honor --

1            **THE COURT:**  What are we doing?  You said there's

2      nothing in the complaint beyond those three?

3            **MR. HERRERA:**  Beyond those.

4            **THE COURT:**  Okay.  Go ahead.

5            **MR. HERRERA:**  I think these are very strong

6      allegations of fraud.  Now, I want to --

7            **THE COURT:**  Well, that may be, but anybody in the

8      world -- you could have filed this case, my son could have

9      filed this case, my grandmother could have filed this case,

10     someone who is on vacation in New York could have filed this

11     case.  That's the point.  It's publicly available.  So when

12     everybody in the world could file the case, I don't think you

13     have an FCA case.

14           **MR. HERRERA:**  When Congress amended in 2010, they

15     wanted to say just because it's public doesn't mean it's going

16     to create a public disclosure bar.

17         That's why Congress constrained very carefully especially

18     subsection 1, that says even if it's disclosed in a court

19     proceeding, even if it's in a court proceeding it just does not

20     create a public disclosure bar because -- unless the government

21     is on the other side of the V.

22           **THE COURT:**  I don't think anyone is arguing that the

23     government was a party.  That's a red herring.  It's really the

24     rest of it.  It's available in the media.  That's a big one.

25     And it's any kind of investigation, report, or study by the

1    government.

2              **MR. HERRERA:**  Okay.

3              **THE COURT:**  No one is saying USA was not a party.

4    You're going on that.

5              **MR. HERRERA:**  All right.

6              **THE COURT:**  It's not relevant.

7              **MR. HERRERA:**  Okay.  Now let's go to subsection 2.  So

8    now they say the patent prosecution dockets, that's disclosed,

9    that's a public disclosure.  It's not either because, just like

10   a PTAB proceeding, a patent prosecution proceedings is an

11   administrative proceeding in which the government is not a

12   party.  It's an *ex parte*.  They never refute that.

13        So what does that mean?  The patent prosecution docket is

14   squarely within subsection 1.  Now, they argue, okay -- they

15   don't really dispute the fact that patent prosecution

16   proceedings are under -- are clearly within the heartland of

17   subsection 1.  They say, okay, well, let's look at subsections

18   2 and 3, and maybe we'll do an end run around it.  Maybe it's a

19   Federal report, and they focus on *Schindler*.

20        Your Honor, the *Schindler* decision and the *Integra*

21   decision that we recently put before the Court are squarely in

22   our favor.

23        In *Schindler*, whatever Justice Ginsburg and the dissenters

24   and Justice Thomas in the majority may have disagreed with in

25   terms of the amount of legwork or synthesis, they all agreed on

one thing.  Every single justice in that case agreed on one

thing.  In order to be a Federal report, there was a great

focus on the fact that in a FOIA request -- and I'm reading

from the decision.

In a FOIA request, Your Honor, there is a specific request

to a government representative.  The government representative

looks at the scope of the request and makes a determination as

to what is responsive based upon many different databases or

documents they may have in their files.

They make an analysis, they determine which documents

would be responsive, they have to give reasons for their

responses.  Then they assemble all those documents and create a

literal report and give it back to the requester.

THE COURT:  Just analytically, how is that any

different from an USPTO officer reviewing an application and

finding the subject matter --

MR. HERRERA:  In a USPTO -- they're looking at the

USPTO document under PAIR.  That's like Pacer.  So Pacer shows

the docket for civil and criminal proceedings in Federal court.

And PAIR does the same thing for the *ex parte* administrative

proceedings in a patent prosecution.

Now, you wouldn't say that Congress amended the statute in

2010 to say that if it's in a civil case and the government is

not a party, we don't want you to consider that a public

disclosure, and then turn around and say, well, Pacer, Pacer is

1    a Federal report, so that means that we can nullify everything

2    that Congress did because all the Federal cases are on Pacer.

3    So if Pacer is a Federal report, then what Congress did was a

4    complete nullity.

5              **THE COURT:**  Okay.  Can we -- I did not appreciate that

6    you think your client is an original source.

7              **MR. HERRERA:**  Oh, okay.

8              **THE COURT:**  The test is what direct and independent

9    knowledge did he have?  Now, that's why I asked you.  All the

10   complaint says is the B and M study and PTAB.  So I don't see

11   any allegation of direct and independent knowledge.

12             **MR. HERRERA:**  The '344 patent was never mentioned in

13   the PTAB case.  It just wasn't.

14        Mr. Silbersher found that out.  It's a material allegation

15   of fraud because it says that Salix knew -- when they said to

16   the Patent Office in 2014 that taking Apriso without food was

17   novel, they knew that that was not true.  Because in 2009, with

18   respect to the '344 patent, they said the exact opposite.  They

19   told the Patent Office taking Apriso with food was novel,

20   because everyone would have assumed that you take it without

21   food.

22        So they lied.  There's no way to make those statements

23   consistent.  And so they lied in order to extend their monopoly

24   for another 20 years.

25        And so, now, is the '344 patent publicly disclosed?  Well,

1   first of all, it's independent knowledge that the relator

2   brought, it's nowhere else in the world, and you no longer have

3   to have direct knowledge.

4       So when they say he wasn't involved in the '344 patent,

5   Congress took that away from them in 2010.  Congress said you

6   don't have to have direct knowledge.  They specifically struck

7   that out in order to encourage relators who were not insiders

8   to bring suit just like *Integra*.

9       So now let's look at the '344 patent.  Has that been

10  publicly disclosed?  No, because it is an administrative

11  proceeding before the Patent Office, where the government is

12  not a party.  And just like Pacer, just because the docket in a

13  patent prosecution proceeding is online doesn't make it a

14  Federal report.

15      Because unlike a FOIA request, where you have the

16  government that is compiling and using judgment to create an

17  actual report based upon many different sources -- Justice

18  Thomas went through great pains to show how that type of

19  synthesis was happening in *Schindler*.  So all the justices knew

20  that in order to be a Federal report you had to have that

21  intermediary.

22      Pacer is not like -- if I file a motion tomorrow, summary

23  judgment motion, that doesn't create a Federal report.  Which

24  government agency -- you know, I file it.  It goes on the

25  docket.  Everyone gets an ECF notice.  It's now on Pacer.

1    That's not a Federal report under *Integra*, and it's not a

2    Federal report under *Schindler*.

3        In *Integra*, the Federal report was, again, a request, just

4    like a FOIA request, to the Centers for Medicaid Services where

5    they said, please, Medicaid Services, give us data that may be

6    somewhere in your file.  And someone at CMS actually went

7    through those files --

8            **THE COURT:**  All right.  We're plowing old ground.

9        On the original source, what did he do for pre-suit

10   disclosure and the pre-suit disclosure requirement?

11           **MR. HERRERA:**  He disclosed all this before filing

12   suit.  So he's clearly within.

13           **THE COURT:**  Where is that in the complaint?

14           **MR. HERRERA:**  Well, he says that he filed suit --

15           **THE COURT:**  I'm talking about the original pre-suit

16   disclosures.

17           **MR. HERRERA:**  The original source?

18           **THE COURT:**  Just the paragraph.

19           **MR. HERRERA:**  Paragraph 37.  I'm sorry.

20           **THE COURT:**  37.

21           **MR. HERRERA:**  Paragraph 38.  That he has voluntarily

22   provided information on which the allegations or transactions

23   alleged --

24        (Reporter interrupts.)

25           **MR. HERRERA:**  "Relator has voluntarily provided the

1    information on which the allegations or transactions alleged

2    herein are based to the government and that plaintiff states

3    before filing this action."

4         And that's true.  He did do that.  So he's an original

5    source, especially with respect to the '344 patent.

6         Your Honor --

7              THE COURT:  This would be pretty conclusory.

8              MR. HERRERA:  It's not, because he did.

9              THE COURT:  You've got to say, on this date I sent it

10   to Ohio, or whoever you sent it to.  I mean, it's going to be a

11   little more than just "I did it."  All that paragraph says is,

12   we're good.

13             MR. HERRERA:  Your Honor, I can represent to you --

14             THE COURT:  You have to have facts to make a

15   plausible.

16             MR. HERRERA:  Well, in Rule 8 -- this is governed by

17   Rule 8, not by Rule 9, because it's not about a fraud.  It's

18   saying that he actually provided this information, and he did.

19             THE COURT:  Says plausible.  That's a Rule 8 standard.

20   You have to have facts to show -- this is just you or whoever

21   wrote the complaint saying, we did it, period.

22             MR. HERRERA:  Yeah.

23             THE COURT:  Can't just say that.  You have to say,

24   here's what we did.  You know, it's -- anyway, okay.

25             MR. HERRERA:  He filed a prefiling disclosure.

```
 1          Your Honor, may I address Amphastar?

 2              THE COURT:  Let me ask you this.

 3              MR. HERRERA:  Yeah.

 4              THE COURT:  I don't know quite yet how I'm going to

 5     come out on this.  If you were to amend, if we got to that

 6     point, would you have anything more to add on why the public

 7     disclosure is not a bar in terms of facts?

 8              MR. HERRERA:  Why the --

 9              THE COURT:  Public disclosure is not a bar.

10              MR. HERRERA:  Yes, Your Honor.  No additional facts.

11              THE COURT:  No additional facts?

12              MR. HERRERA:  On terms of why the public disclosure

13     bar is not -- I think that what we've already given are what is

14     going to establish the fraud, so --

15              THE COURT:  You would have nothing to amend with if

16     you had a chance to amend?

17              MR. HERRERA:  I would have to talk with my client.  As

18     I sit here today, Your Honor, I do not know that.

19              THE COURT:  I understand.  That's fair.  Okay.  All

20     right.

21              MR. KABA:  Yes, Your Honor, briefly on original

22     source.

23              THE COURT:  Very, very briefly.

24              MR. KABA:  Very, very briefly.  I understand you've

25     given us a lot of time already.
```

1    And of course we're focused on this, even though I do

2    think there are real questions on their implied false

3    certification theory under the governing standard and the

4    materiality, which *Escobar* -- this case could get kicked on

5    materiality alone, because according to their --

6         **THE COURT:**  Okay.  Just public source and original

7    source.

8         **MR. KABA:**  Okay.  Original source, the issue -- and I

9    do went to make a point on *Amphastar*, Your Honor.

10   In *Amphastar*, the language you quoted, that direct

11   knowledge language is actually not in the statute anymore.  So

12   as Your Honor is working on the opinion, *Amphastar* was

13   addressing the 2010 --

14        **THE COURT:**  No, no, I understand.

15        **MR. KABA:**  -- version.

16   But it doesn't actually change the analysis because you

17   don't -- to be an original source, you do not simply need to

18   state in a conclusory fashion, in one paragraph, that you

19   voluntarily provided information, because the statute says it

20   needs to be prior to the public disclosure.  Saying, I found

21   these publicly disclosed studies and I gave it to the

22   government does not make you an original source --

23        **THE COURT:**  It's tested by fact allegations, so that's

24   why you do need to say something, so that that can be tested.

25        **MR. KABA:**  But if their allegations are -- and this is

what they said in their opposition, not in their complaint but

in their opposition, and we discussed this, Your Honor, on page

10 of our reply brief.

If the allegations are, I went and found the '344

patent -- of course they didn't find it, it was out in the

patent record -- and I went and found these two studies and

then I gave it to the government, that doesn't make you the

original source.  That makes you someone who has packaged, like

the *Schindler* court cautioned against, like the *A-1* in -- the

Ninth Circuit cautioned against in *A-1*, that makes you

opportunistic, certainly.

You may be good at digging through public records, but it

doesn't make you an original source.  Because the original

source says it needs to be prior to the public disclosure that

you have voluntarily disclosed or you have knowledge that is

independent of and materially adds.

You cannot have independent and material knowledge when

what you are doing is packaging public reports and just

providing it to the government.

With that, Your Honor --

**MR. HERRERA:**  Your Honor, may I add something on

*Amphastar*?

**THE COURT:**  Yes, you get the last word, but not too

many of them.

**MR. HERRERA:**  Yes.  So two things.

1    Marakhouski and Brunner, the last thing, they're not in

2    the news.  They're not news media either.  They're scientific

3    studies in an academic library.  Under the plain meaning of

4    news media, that doesn't count either.  And that's explained in

5    the *Integra* decision.

6        Now, regarding *Amphastar* --

7            **THE COURT:**  All right.  Yes, go ahead.

8        **MR. HERRERA:**  In *Amphastar* the District Court actually

9    said that the type of claims that are alleged in the complaint

10   stated valid claims under the False Claims Act.

11       And so in the District Court, before they reached the

12   public disclosure issue, the Court said these are valid claims.

13   And I can give you the cite in a second.  But what happened is

14   that after the Court denied the motions to dismiss and said,

15   yeah, when you create a fraud on the Patent Office that is a

16   false claim, there was -- there was evidence that came out that

17   the allegations of fraud were disclosed in the patent

18   infringement cases beforehand.

19       And since the case was filed in 2009, the old version of

20   the statute applied; and, therefore, a patent infringement suit

21   at that time was a civil proceeding, and that ended the case.

22           **THE COURT:**  All right.

23       **MR. HERRERA:**  If it was filed afterwards, it would not

24   have ended the case because the government would not have been

25   a party to that patent infringement suit; and, therefore, the

1    disclosure in the patent infringement action would not be an

2    enumerated public disclosure that is carefully circumscribed

3    within the statute.

4              THE COURT:  Okay.  You know, because is this

5    jurisdictional, I'm going to -- let's just let me do this,

6    okay, and let's not have anything else happen in the case.  I

7    want to get past the jurisdictional point first.

8         I mean, typically I would let people amend, but I'll

9    probably -- if we get to that point, if I don't see it your

10   way, I will let you do it.  It's up to you.

11             MR. HERRERA:  Yeah, I would like to.

12             THE COURT:  Okay.  But, certainly, the pleading stage

13   I would be very unlikely to turn it off just on one and done.

14   That's not likely to happen.  Whether you want to do that or

15   not or have the facts for it, that would be up to you.

16             MR. HERRERA:  Yes, we would.

17             THE COURT:  If we get there.

18             MR. HERRERA:  Yeah.

19             THE COURT:  Let's stay everything until I --

20             MR. MAMMEN:  Your Honor --

21             THE COURT:  -- have a chance to do this.  And it may

22   be a little bit of time because we're just really drowning

23   right now.  I've got a ton of trials coming up.  Okay?

24        Yes.

25             MR. MAMMEN:  Your Honor, there is also a motion to

dismiss filed by my client, Dr. Falk Pharma, on the basis of
lack of personal jurisdiction.

**THE COURT:**  Yes.

**MR. MAMMEN:**  We, of course, join the other motion to
dismiss, but also wanted to emphasize that because jurisdiction
should be determined on a defendant-by-defendant basis --
that's the *Calder* case -- the allegations here do not establish
related purposeful direction into the forum.  Whether you
consider California to be the forum or nationwide contacts, our
client, the German company, simply does not have forum-related,
claim-related contacts, and should be dismissed for lack of
personal jurisdiction.

**THE COURT:**  We will see how it goes.  Probably going
to do the public disclosure bar first, which would relieve you
anyway.  So we'll see, but I understand.

**MR. MAMMEN:**  Thank you, Your Honor.

**THE COURT:**  Okay.  Thank you.

**MR. HERRERA:**  Thank you, Your Honor.

    (At 11:23 a.m. the proceedings were adjourned.)

                    - - - - -

1

2

3                    **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6    DATE: Monday, August 19, 2019

7

8

9

10   _____

11        Katherine Powell Sullivan, CSR #5812, RMR, CRR
                     U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25