Mary W. Bourke (*admitted pro hac vice*)
Mary.Bourke@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Tel.: 302-252-4320

Christian E. Mammen (CA Bar No. 188454)
Chris.Mammen@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, CA 94111
Tel.: 415-433-1900

Attorneys for Defendant
Dr. Falk Pharma GmbH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, *ex rel*. ZACHARY SILBERSHER, <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, <br><br> Defendants. | Case No.: 3:18-cv-01496-JD <br><br> **DEFENDANT DR. FALK PHARMA GMBH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Hearing Date: April 10, 2025 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 11 <br> Hon. Judge: James Donato |

TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................2

II. PROCEDURAL AND RELEVANT BACKGROUND........................................................3

    A. Procedural Background..............................................................................................3

    B. Factual Background Concerning Defendants, the '688 Patent, and Apriso ............4

III. ARGUMENT..........................................................................................................................6

    A. Legal Standards..........................................................................................................6

        1. Motion to Dismiss..........................................................................................6

        2. Inequitable Conduct ......................................................................................7

    B. Dr. Falk Pharma Should Be Dismissed Under Fed. R. Civ. P. 12(b)(5) Because Dr. Falk Pharma Has Never Been Served..................................................................9

    C. The SAC Should Be Dismissed Under Rules 12(b)(6) and 9(b) Because It Fails to Allege Fraud With Particularity as to Each Defendant..........................................11

    D. Additionally, or in the Alternative, the SAC Fails to State a Claim Against Dr. Falk Pharma Under Either Theory of Fraudulent Conduct Identified in the SAC, and Should Be Dismissed Under Rule 12(b)(6) ...........................................................13

        1. The SAC Fails to Satisfy Rule 9(b) or Rule 12(b)(6) by Failing to Allege Facts Relating to Alleged Inequitable Conduct with Sufficient Particularity ..................................................................................................................13

        2. The SAC Does Not Allege That Dr. Falk Pharma Submitted False Claims for Reimbursement........................................................................................14

IV. CONCLUSION....................................................................................................................15

TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 6, 7

*Aster Graphics, Inc. v. Static Control Components, Inc.*,
    No. SA CV 17-1167-DOC (JDEx), 2018 WL 2425973 (C.D. Cal. Feb. 12, 2018) ................... 9

*Avid Identification Sys., Inc. v. Crystal Import Corp.*,
    603 F.3d 967 (Fed. Cir. 2010) .................................................................................. 8, 14

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) ......................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 6

*Burlington Indus., Inc. v. Dayco Corp.*,
    849 F.2d 1418 (Fed. Cir. 1988) ..................................................................................... 7

*C.R. Bard, Inc. v. M3 Sys.*,
    157 F.3d 1340 (Fed. Cir. 1998) ..................................................................................... 8

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
    482 F.3d 1347 (Fed. Cir. 2007) ..................................................................................... 9

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir.1997) ........................................................................................ 11

*del Campo v. Kennedy*,
    491 F. Supp. 2d 891 (N.D. Cal. 2006) ........................................................................ 11

*Dippin' Dots, Inc. v. Mosey*,
    476 F.3d 1337 (Fed. Cir. 2007) ..................................................................................... 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ............................................................................. passim

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
    163 F.Supp.3d 938 (D.N.M. 2016) ................................................................................ 7

*Goodstein v. Bombardier Capital, Inc.*,
    167 F.R.D. 662 (D.Vt. 1996) ...................................................................................... 10

*Int'l Metaphysical Ministry, Inc. v. Schaefer*,
    No. C 18-4524 SBA, 2018 WL 10560778 (N.D. Cal. Nov. 21, 2018) ...................... 11

*Lewis v. Option One Mortgage Corp.*,
  No. 13-cv-03973-AT-JFK, 2014 WL 12861081 (N.D.Ga. June 23, 2014) .............................. 10

*Martinez v. Aero Caribbean*,
  No. C 11-03194 WHA, 2014 WL 309589 (N.D. Cal. Jan. 28, 2014) ...................................... 11

*Melton v. Wiley*,
  No. 07-CV-2 (HL), 2007 WL 315343 (N.D. Ga. Jan. 31, 2007) ............................................ 11

*Miyasaki v. Treacy*,
  No. 5:12-cv-04427 EJD, 2014 WL 6687321 (N.D. Cal. Nov. 24, 2014) ............................ ….11

*Morgan v. Elumi Nazi - Sovereign*,
  No. 17-CV-04833-LB, 2017 WL 11476418, at *1 (N.D. Cal. Dec. 27, 2017)……………..11

*N. Star Int'l v. Ariz. Corp. Comm'n*,
  720 F.2d 578 (9th Cir. 1983) ................................................................................................... 6

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed. Cir. 1998) ................................................................................................ 8

*Ohio Willow Wood Co. v. Alps S.*, LLC,
  813 F.3d 1350 (Fed. Cir. 2016) ................................................................................................ 9

*Quatela v. Stryker Corp.*,
  820 F. Supp. 2d 1045 (N.D. Cal. 2010) ................................................................................. 12

*Ridgway v. Phillips*,
  No. 18-cv-07822-HSG, 2020 WL 1288464 (N.D. Cal. Mar. 18, 2020) ................................. 11

*Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*,
  806 F.2d 1393 (9th Cir.1986) ................................................................................................ 11

*Techshell, Inc. v. Max Interactive, Inc.*,
  No. SACV19-00608-AGA-DSX, 2019 WL 4422682 (C.D. Cal. Aug. 5, 2019) .................. 7, 9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ..................................................................................... 8, 9, 13

*TransWeb, LLC v. 3M Innovative Props. Co.*,
  812 F.3d 1295 (Fed. Cir. 2016) ................................................................................................ 8

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ................................................................................................. 12

*Vess v. Ciba–Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................................. 7

*Xitronix Corp. v. KLA-Tencor Corp.*,
  757 F. App'x 1008 (Fed. Cir. 2019) ………………………………………………………..8

Statutes

31 U.S.C. § 3730(e)(4) ................................................................................................... 3, 4

Rules

Fed. R. Civ. P. 4(m) ..................................................................................................... 10, 11

Fed. R. Civ. P. 9(b) ...................................................................................................... passim

Fed. R. Civ. P. 12(b)(2) ....................................................................................................... 4

Fed. R. Civ. P. 12(b)(5) ........................................................................................ 1, 2, 10, 11

Fed. R. Civ. P. 12(b)(6) ............................................................................................... passim

Fed. R. Civ. P. 12(g) .......................................................................................................... 10

Regulations

37 C.F.R. § 1.56 ...................................................................................................... 1, 3, 8, 14

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 10, 2025, at 10:00 a.m. in the courtroom of the Honorable Judge James Donato, located at the San Francisco Courthouse, 450 Golden Gate Avenue, 19th Floor, CA 94102, Defendant Dr. Falk Pharma GmbH will and hereby does move for an order granting Defendant Dr. Falk Pharma GmbH's Motion to Dismiss the Second Amended Complaint. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Court's files in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Dated: February 5, 2025

By: /s/ Mary W. Bourke
Mary W. Bourke (*admitted pro hac vice*)

Christian E. Mammen (CA Bar No. 188454)
**WOMBLE BOND DICKINSON (US) LLP**

Attorneys for Defendant
Dr. Falk Pharma GmbH

**ISSUES TO BE DECIDED**

1. Where Defendant Dr. Falk Pharma GmbH has not been served with the Summons and Complaint since this action was filed in March 2018, should the Second Amended Complaint be dismissed as to Dr. Falk Pharma GmbH pursuant to Federal Rule of Civil Procedure 12(b)(5)?

2. Where virtually all allegations of fraud in the Second Amended Complaint are alleged collectively as to all Defendants, should the Second Amended Complaint be dismissed pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to allege fraud with sufficient particularity?

3. Where the Second Amended Complaint's allegations of fraud upon the United States Patent and Trademark Office fail to allege all elements of inequitable conduct as set forth in the precedents of the United States Court of Appeals for the Federal Circuit and 37 C.F.R. § 1.56, and where the Second Amended Complaint's allegations of fraud in the submission of claims for Medicare reimbursement do not contain any particularized allegations of conduct by Dr. Falk Pharma GmbH, should the Second Amended Complaint be dismissed as to Dr. Falk Pharma GmbH under Federal Rules of Civil Procedure 9(b) and 12(b)(6) because it fails to state a claim?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This case, which was originally filed in March 2018, is based on a novel legal theory advanced by Relator Zachary Silbersher ("Silbersher"), a former patent litigator. Silbersher claims to have "discovered" while representing a client during proceedings before the Patent Trial and Appeal Board that inequitable conduct allegedly occurred during prosecution of a patent covering a branded pharmaceutical. Silbersher claims to be a whistleblower under the False Claims Act ("FCA"), arguing that because of the purported unenforceability of this patent due to inequitable conduct, the patent prosecution itself, as well as *every claim for reimbursement* submitted to Medicare for the branded pharmaceutical, is a false or fraudulent claim under the FCA. Importantly, although the issue of unenforceability of U.S. Patent No. 8,865,688 ("the '688 Patent") due to inequitable conduct was never alleged or litigated in any patent litigation involving the '688 Patent, Silbersher's allegations of inequitable conduct now form a centerpiece of his *qui tam* claim under the FCA.

Defendant Dr. Falk Pharma GmbH ("Dr. Falk Pharma") now brings this renewed motion to dismiss.  The motion is based on three grounds.

First, in the more than six years that this litigation has been pending, Dr. Falk Pharma, a German company, has never been served with the Summons and Complaint.  Dr. Falk Pharma preserved this issue when it first appeared in February 2019, and the Second Amended Complaint ("SAC") should now be dismissed as to Dr. Falk Pharma under Rule 12(b)(5).

Second, despite having gone through two rounds of amendment, Silbersher's SAC still fails to plead its fraud allegations with the particularity required by Rule 9(b).  Most glaringly, virtually all allegations are made as to "Defendants" generally, and not as to Dr. Falk Pharma specifically, much less any specific individual within Dr. Falk Pharma, as required by the rules.

Third, Silbersher fails to state a claim against Dr. Falk Pharma upon which relief may be granted and should be dismissed under Rule 12(b)(6).  The SAC includes two broad theories of fraudulent submissions to the U.S. government: one that allegedly occurred during prosecution of the '688 Patent, and one that allegedly occurred in connection with claims for Medicaid

reimbursement for prescriptions of Apriso. Both theories fail as to Dr. Falk Pharma. First, the only theory of "fraud on the Patent Office"—one that is discussed at length in the SAC—is the doctrine of inequitable conduct, based on the duty of candor set forth in 37 C.F.R. § 1.56 (also known as "Rule 56"). *See* SAC ¶¶ 73, 88. But no facts are alleged that either Dr. Falk Pharma or any of its personnel were subject to Rule 56, and no facts are alleged that any such person actually submitted any false or misleading statement, material or otherwise, to the Patent Office during prosecution of the '688 Patent, and there is no allegation that any such person intended to deceive the Patent Office. Second, Dr. Falk Pharma does not manufacture, sell or supply Apriso or any mesalamine compound in the United States, and consequently never submitted any claims to Medicare for reimbursement, and the SAC makes no such allegations as to Dr. Falk Pharma specifically. Because these defects cannot be remedied via amendment, further leave to amend should be denied.

Additionally, Dr. Falk Pharma joins the Bausch Defendants' motion to dismiss in its entirety.

## II. PROCEDURAL AND RELEVANT BACKGROUND

### A. Procedural Background

Silbersher, an attorney, filed a *qui tam* Complaint under the FCA against Defendants Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International; Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., (collectively, formerly known as "the Valeant Defendants" and now known as the "Bausch Defendants") and Dr. Falk Pharma on March 8, 2018. D.N. 1.

On January 15, 2019, the Bausch Defendants filed a motion to dismiss a prior version of the Complaint pursuant to Rule 12(b)(6) for (i) failure to allege an actionable false claim, as foreclosed by the FCA's public disclosure bar (31 U.S.C. § 3730(e)(4)), (ii) failure to plead materiality, and (iii) failure to plead fraud with particularity under Rule 9(b). D.N. 36. Although it had not been served with the Summons and Complaint, and had not executed a waiver of

service,[1] Dr. Falk Pharma filed a joinder in the Valeant Defendants' Motion to Dismiss, further alleging that Silbersher failed to state a claim against Dr. Falk Pharma specifically, and concurrently filed, pursuant to Rule 12(b)(2), a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Joinder. D.N. 42, D.N. 43.

Following a 2019 hearing on defendants' motions to dismiss, the Court granted dismissal under the FCA's "public disclosure bar," 31 U.S.C. § 3730(e)(4). D.N. 109.  The Court expressly reserved all other issues, including all issues besides the public disclosure bar that were raised in the defendants' motions to dismiss.  *Id.* at 18 ("The Court declines to take up defendants' other arguments for dismissal at this time.").  The Court also denied Dr. Falk Pharma's personal jurisdiction motion. D.N. 108.

An appeal and cross-appeal ensued, covering only the issues actually addressed in this Court's Orders. D.N. 110, 116. The Ninth Circuit's final opinion on Silbersher's appeal of the dismissal issued on January 5, 2024 (D.N. 127) and the mandate issued on October 7, 2024 (D.N. 134).  The Ninth Circuit's ruling on Silbersher's appeal was narrowly limited to the interpretation of the FCA's public disclosure bar as applied to certain disclosures, and specifically reserved any other pleading issues for remand.  D.N. 127 at 30-31 ("[W]e make no statement about the sufficiency of the pleadings.  The Federal Rules require fraud to be pleaded with particularity, *see* Fed. R. Civ. P. 9(b), and the district court did not address whether Silbersher's allegations meet that requirement.  We remand this case for the district court to consider whether Silbersher's *qui tam* action may proceed.").

Following remand, Silbersher filed a Second Amended Complaint ("SAC") on November 27, 2024. Nothing in the SAC remedies the deficiencies that are the subject of this Motion.

**B.    Factual Background Concerning Defendants, the '688 Patent, and Apriso**

Dr. Falk Pharma is a German corporation with a principal place of business in Freiburg im Breisgau, Germany. SAC ¶ 47.  Since April 1, 2011, it has been the assignee of the '688 Patent. SAC ¶ 47; *see also* D.N. 55-2.

---

[1] Dr. Falk Pharma noted this fact in its motion papers, expressly reserving its rights in the event that it was not eventually served. In fact, to this date, Dr. Falk Pharma has never been served with the Summons and Complaint.

Salix Pharmaceuticals, Inc. ("Salix"), a U.S. pharmaceutical company, is the exclusive licensee of the '688 Patent. SAC ¶ 46. Salix developed, filed and prosecuted the patent application that issued as the '688 Patent directed to a method of maintaining remission of ulcerative colitis by orally administering a granulated mesalamine formulation once daily in the morning without food. Salix makes and sells Apriso, its once daily mesalamine formulation indicated for the maintenance of remission of ulcerative colitis, in the United States. *See* SAC ¶¶ 4, 43, 46.

The SAC makes no allegation that Dr. Falk Pharma specifically participated substantively in the prosecution of the '688 Patent; nor does it allege that either of the named inventors is affiliated with Dr. Falk Pharma. Instead, Silbersher attributes the prosecution of the '688 Patent to "Defendants" generally, and makes no allegation explaining how Dr. Falk Pharma, or any specific individual at Dr. Falk Pharma, allegedly participated in the '688 Patent's prosecution or allegedly made any false representations to, or withheld material information from, the United States Patent and Trademark Office ("USPTO" or "Patent Office") during prosecution of the '688 Patent. *See* SAC ¶ 11 ("Defendants . . . intentionally withheld material information" from the USPTO demonstrating that the patent was obvious and "Defendants intentionally withheld such information for the purpose of obtaining the '688 patent, excluding generic competitors, and charging supracompetitive prices for Apriso."); *see also, e.g.*, SAC ¶¶ 9-17, 82-101.

After the '688 Patent issued, Dr. Falk Pharma, as the patent's assignee, joined in litigation with Salix concerning the patent, including *Salix Pharmaceuticals, Inc. v. Novel Laboratories, Inc.*, C.A. No. 14-213 (D. Del.); *Salix Pharmaceuticals, Inc. v Mylan Pharmaceuticals, Inc.*, C.A. No. 15-cv-109 (N.D. W.Va.); and *Salix Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*, CA. No. 17-cv-00329 (D. Del.). *See generally* SAC ¶¶ 121-127. Each of these cases was initiated under the Hatch-Waxman Act when the generic company filed an Abbreviated New Drug Application ("ANDA") seeking the Federal Drug Administration's ("FDA's") approval to market a generic version of Salix's ulcerative colitis drug, Apriso, in the United States. *Id.* In addition, as the patent's assignee, Dr. Falk Pharma participated in an *inter partes* review ("IPR") proceeding before the Patent Trial and Appeals Board ("PTAB"), specifically *GeneriCo LLC v. Dr. Falk Pharma GmbH*, IPR2016-00297 (P.T.A.B.) (joined by Mylan Pharmaceuticals, Inc.), in which

Silbersher's client GeneriCo LLC (a generic pharmaceutical company) challenged certain claims of the '688 patent as invalid as obvious over various combinations of references. *See generally* SAC ¶¶ 89, 120.  In none of these prior proceedings—or, indeed, any litigation pertaining to the '688 Patent prior to the present case—has anyone alleged or ruled that the '688 Patent is unenforceable due to inequitable conduct.  And again, the Complaint makes no contrary allegations.

Dr. Falk Pharma has never sold Apriso in the United States.  Nor has it ever submitted claims for reimbursement—or made any actual or implied representations to—any Federal or state government agency in the United States concerning Apriso. And the Complaint does not allege otherwise. *Compare* SAC ¶ 47 (alleging only that Dr. Falk Pharma is "the sole assignee of all rights pertaining to all United States patents relating to Apriso") *with id*. ¶ 43 (noting that "Bausch sold Apriso either directly or through its subsidiaries, agents, or affiliates to customers throughout the United States").

Other than these limited alleged facts, all other conduct-related allegations in the Complaint are alleged as to "Defendants" generally, or specifically name only the other co-defendants besides Dr. Falk Pharma. *E.g.,* SAC ¶¶ 3, 4, 7, 8, 11-17, 20-39, 41, 48, 51, 52, 76-133, 138-166.

## III.   ARGUMENT

### A.   Legal Standards

#### 1.   Motion to Dismiss

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (cleaned up). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Further, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See generally Techshell, Inc. v. Max Interactive, Inc.*, No. SACV19-00608-AGA-DSX, 2019 WL 4422682, at *1 (C.D. Cal. Aug. 5, 2019). A Rule 9(b) dismissal is the functional equivalent of a Rule 12(b)(6) motion. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106-1107 (9th Cir. 2003) ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

### 2. Inequitable Conduct

The only type of "fraud on the Patent Office" during patent prosecution that is set forth in the SAC and that is now legally recognized is the doctrine of inequitable conduct. *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (noting that inequitable conduct was formerly known as "fraud on the Patent Office"); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 163 F.Supp.3d 938, 978 (D.N.M. 2016) (same).[2] Inequitable conduct is tied to the

---

[2] The SAC includes a citation to *C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1367 (Fed. Cir. 1998) that references "[f]raud in obtaining a United States patent." SAC ¶ 73. However, that passage pertains to an antitrust claim under *Walker Process*. Cases decided before *Therasense* and *Exergen*

DEFENDANT DR. FALK PHARMA GmbH'S  
MOTION TO DISMISS SECOND AMENDED COMPLAINT

7

CASE NO.: 3:18-cv-01496-JD

duty of disclosure set forth in the applicable regulations, referred to as Rule 56. *See* 37 C.F.R. § 1.56 ("Each individual associated with the filing and prosecution of a patent application has a duty of candor," including "a duty to disclose to the Office all information known to that individual to be material to patentability."). The elements of an inequitable conduct claim are: (1) "an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information"; and (2) "the individual did so with a specific intent to deceive the [US]PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

The Federal Circuit has defined "'substantively involved' to mean that the involvement relates to the content of the application or decisions related thereto, and that the involvement is not wholly administrative or secretarial in nature." *Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967, 974 (Fed. Cir. 2010) (citing Manual of Patent Examining Procedures § 2001.01 (8th ed., rev. 2, May 2004)).

The "materiality required to establish inequitable conduct is but-for materiality," meaning that but-for the misrepresentation, the patent would not have been issued. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc). In other words, incorporating the *Therasense* standard, the elements of inequitable conduct have been stated as: (1) "the patent applicant made misrepresentations or omissions material to patentability," (2) the applicant "did so with the specific intent to mislead or deceive the [US]PTO," and (3) "that deceptive intent was the single most reasonable inference to be drawn from the evidence." *Ohio Willow Wood Co. v. Alps S.*, LLC, 813 F.3d 1350, 1357 (Fed. Cir. 2016); *Techshell,* 2019 WL 4422682, at *2.

---

confirmed that *Walker Process* fraud requires a higher and more specific standard of misconduct than inequitable conduct. *E.g., Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007). "Simply put, *Walker Process* fraud is a more serious offense than inequitable conduct." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed. Cir. 1998) (cited in *Xitronix Corp. v. KLA-Tencor Corp.*, 757 F. App'x 1008, 1010 (Fed. Cir. 2019)). However, post-*Therasense*, the gap may be narrower. *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016) (acknowledging that the *Therasense* standard for inequitable conduct "may be nearly identical" to the *Walker Process* standard). To the extent it differs, Silbersher has also not alleged facts to support a theory of *Walker Process* fraud.

While "'intent' may be averred generally, a pleading . . . must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual . . . withheld or misrepresented this information with a specific intent to deceive the [US]PTO." *Id.* at 1328–29. *See generally Aster Graphics, Inc. v. Static Control Components, Inc.,* No. SA CV 17-1167-DOC (JDEx), 2018 WL 2425973, at *7–8 (C.D. Cal. Feb. 12, 2018).

Inequitable conduct claims, like all claims alleging fraud, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Exergen*, 575 F.3d at 1327. Rule 9(b) requires that the "circumstances constituting fraud or mistake shall be stated with particularity." *Id.* at 1326. To plead the "circumstances" of inequitable conduct with the requisite "particularity," the pleading "must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [US]PTO." *Id.* at 1327-1328. Because allegations of inequitable conduct bear on an issue that "pertains to or is unique to patent law," this Court must apply Federal Circuit law to determine whether the pleadings are adequate. *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (internal quotation marks omitted). That is, Federal Circuit precedent governs whether the facts alleged amount to inequitable conduct under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Exergen*, 575 F.3d at 1326 ("[W]e apply our own law, not the law of the regional circuit, to the question of whether inequitable conduct has been pled with particularity under Rule 9(b)."); Fed. R. Civ. P. 9(b). The Federal Circuit has established a demanding standard for pleading inequitable conduct. It described the doctrine as the "atomic bomb of patent law" due to its draconian effects on patent holders' property rights. *Therasense,* 649 F.3d at 1288-89 (citation omitted). Courts must scrutinize inequitable conduct claims carefully, "lest inequitable conduct devolve into a magic incantation to be asserted against every patentee." *Exergen*, 575 F.3d at 1331 (citation omitted).

### B.     Dr. Falk Pharma Should Be Dismissed Under Fed. R. Civ. P. 12(b)(5) Because Dr. Falk Pharma Has Never Been Served

On December 12, 2018, Silbersher moved to appoint a process server to serve Dr. Falk Pharma in Germany, which the Court granted. D.N. 29, 30. But that service was **never** completed.

Meanwhile, the Bausch defendants filed a Motion to Dismiss, with a hearing initially set for April 4, 2019. D.N. 36. On February 18, 2019, before Silbersher filed his opposition, and in order to preserve its rights vis-à-vis the Motion to Dismiss, Dr. Falk Pharma filed a joinder in the Bausch defendants' Motion to Dismiss, and separately moved to dismiss on several other grounds, including lack of personal jurisdiction. D.N. 42, 43. In its motion papers, Dr. Falk Pharma specifically noted, "To date, Relator has failed to effect proper service of process on Falk under Federal Rule of Civil Procedure 12(b)(5). In the event proper service of process is never effectuated, Falk retains all claims, defenses and rights afforded by law and does not waive any right to challenge service of process." D.N. 43 p.4 n.2.

Dr. Falk Pharma's reservation of rights in its first Motion to Dismiss is sufficient to preserve its Rule 12(b)(5) defense of improper service. In *Goodstein v. Bombardier Capital, Inc.*, 167 F.R.D. 662 (D.Vt. 1996), the court held that the defense of improper service is preserved where a defendant referenced non-service in a motion to dismiss filed before the 120-day service deadline set forth in Rule 4(m),[3] but did not request dismissal under Rule 12(b)(5) until long after the 120-day deadline had passed. In finding service deficient, the court noted, "Strictly speaking, a defense of insufficiency of service of process was not 'available' [within the meaning of Rule 12(g)] at the time [the earlier] motion [to dismiss] was filed because there was still a possibility that Defendant [] would be timely served." 167 F.R.D. at 665; s*ee also Lewis v. Option One Mortgage Corp.*, No. 13-cv-03973-AT-JFK, 2014 WL 12861081 at *2, *4 (N.D.Ga. June 23, 2014) (including a footnote in Rule 12(b)(6) motion noting lack of service and preservation of rights under Rule 12(b)(5) was sufficient to preserve defense).

The same is true here – at the time of the initial Motion to Dismiss in 2019, there was a possibility that Hague convention service would ultimately be completed. But now, five years later, that service still has not been completed. Although the then-120-day (now 90-day) deadline in Rule 4(m) does not, by its terms, apply to service of overseas defendants, a delay of *more than five years* is surely long enough to warrant a conclusion that the failure to serve the Summons and

---

[3] The 120-day deadline under Rule 4(m) was subsequently shortened to 90 days. Fed. R. Civ. P. 4(m).

Complaint makes service deficient under Rule 12(b)(5). As courts in this District have noted, "the amount of time allowed for foreign service is not unlimited." *Miyasaki v. Treacy*, No. 5:12-cv-04427 EJD, 2014 WL 6687321, at *4 (N.D. Cal. Nov. 24, 2014); *Int'l Metaphysical Ministry, Inc. v. Schaefer*, No. C 18-4524 SBA, 2018 WL 10560778, at *2 (N.D. Cal. Nov. 21, 2018); *Morgan v. Elumi Nazi - Sovereign*, No. 17-CV-04833-LB, 2017 WL 11476418, at *1 (N.D. Cal. Dec. 27, 2017) (same), *report and recommendation adopted*, No. C 17-04833 SBA, 2018 WL 10150533 (N.D. Cal. Jan. 17, 2018) (granting dismissal). Thus, even though Rule 4(m) does not apply to foreign service, courts "may still set reasonable time limits for serving foreign defendants." *Martinez v. Aero Caribbean*, No. C 11-03194 WHA, 2014 WL 309589, at *4 (N.D. Cal. Jan. 28, 2014); *Ridgway v. Phillips*, No. 18-cv-07822-HSG, 2020 WL 1288464, at *4 (N.D. Cal. Mar. 18, 2020) (same). The court's power to do so arises from "its inherent authority to manage cases on its docket." *Int'l Metaphysical Ministry,* 2018 WL 10560778, at *2.

Dr. Falk Pharma's voluntary appearance in the proceedings, after having raised the potential Rule 12(b)(5) defect, does not waive the defense. *See Melton v. Wiley*, No. 07-CV-2 (HL), 2007 WL 315343, *2 (N.D. Ga. Jan. 31, 2007). Accordingly, Dr. Falk Pharma should be dismissed from this action under Rule 12(b)(5).

### C. The SAC Should Be Dismissed Under Rules 12(b)(6) and 9(b) Because It Fails to Allege Fraud With Particularity as to Each Defendant

It is a bedrock requirement of pleading claims for fraud that a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997) (citation omitted). Thus, in cases involving multiple defendants, "fraud allegations need to be pled with particularity for each defendant." *del Campo v. Kennedy*, 491 F. Supp. 2d 891, 904 (N.D. Cal. 2006), *aff'd*, 517 F.3d 1070 (9th Cir. 2008); *see also Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1401 (9th Cir.1986). Put another way,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple

defendants, a plaintiff must, at a minimum identify the role of each defendant in the alleged fraudulent scheme.

*United States v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) (cleaned up); *Quatela v. Stryker Corp.*, 820 F. Supp. 2d 1045, 1049 (N.D. Cal. 2010) (same, noting that plaintiff "is required to differentiate between the allegedly fraudulent conduct of [each defendant]" and "must specifically allege [each defendant's] role in the purported fraud, the 'time place and manner of each act of fraud,' and the 'who, what, when, where, and how' of the charged misconduct").

The SAC contains hundreds of references to the alleged conduct of "Defendants" lumped together collectively but identifies factual allegations specific to Dr. Falk Pharma in just three paragraphs: 13, 47 and 86.[4] Specifically, paragraphs 13 and 86 describe Dr. Falk Pharma's alleged role in relation to several scientific studies; and paragraph 47 describes Dr. Falk Pharma's place of incorporation, principal place of business and status as assignee of certain patents.

It is undisputed (and nowhere alleged in the SAC) that Dr. Falk Pharma—

- Was not substantively involved in the preparation or prosecution of the '688 Patent, nor was any individual associated with Dr. Falk Pharma;
- Has never submitted an application to the FDA for permission to sell Apriso in the United States;
- Has never been approved by the FDA to sell Apriso in the United States;
- Has never sold Apriso in the United States;
- Has never submitted claims for reimbursement to any state or Federal government agency for sales of Apriso in the United States; and
- Has never made any actual or implied representations to any state or Federal government agency in connection with claims for reimbursement for sales of Apriso in the United States.

Accordingly, the SAC simply fails to allege *any* facts sufficient to state an FCA claim against Dr. Falk Pharma. Therefore, this Court should dismiss the SAC in its entirety as to Dr.

---

[4] There are a handful of other incidental mentions of Dr. Falk Pharma as a party, in the caption, introductory paragraph, and references to case names of prior litigation (SAC ¶¶ 17, 18, 89).

Falk Pharma, under Rules 12(b)(6) and 9(b).

### D. Additionally, or in the Alternative, the SAC Fails to State a Claim Against Dr. Falk Pharma Under Either Theory of Fraudulent Conduct Identified in the SAC, and Should Be Dismissed Under Rules 12(b)(6) and 9(b)

The SAC generally identifies two theories of fraudulent conduct: fraud during prosecution of the '688 Patent, and fraud in submitting Medicare/Medicaid claims for reimbursement for Apriso subscriptions. As applied to Dr. Falk Pharma, both theories are irreparably deficient.

#### 1. The SAC Fails to Satisfy Rule 9(b) or Rule 12(b)(6) by Failing to Allege Facts Relating to Alleged Inequitable Conduct with Sufficient Particularity

Silbersher's allegations of fraud on the Patent Office are brought under the doctrine of inequitable conduct. *See* SAC ¶¶ 73,88. "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense*, 649 F.3d at 1285. This judge-made doctrine is rooted in the doctrine of unclean hands. *Id.* Because it sounds in fraud, inequitable conduct must be pled with particularity under Rule 9(b). *Exergen*, 575 F.3d at 1326.

Silbersher has not alleged the elements of inequitable conduct with the requisite particularity.

Silbersher's allegation of inequitable conduct is legally deficient under controlling legal standards. "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the [US]PTO. The accused infringer must prove both elements—intent and materiality—by clear and convincing evidence." *Therasense*, 649 F.3d at 1287.

Silbersher's inequitable conduct allegations are interspersed throughout the SAC. *See* SAC ¶¶ 7, 11-17, 32, 71-74, 82-101. These allegations are fatally deficient in several key respects.

First, Dr. Falk Pharma is not subject to the duty of candor set forth in 37 C.F.R. § 1.56, and nothing in the SAC alleges otherwise. The duty of candor that forms the basis for the inequitable conduct doctrine applies only to *individuals*. And not just any individuals, but individuals *substantively involved in the prosecution of the application. Exergen,* 575 F.3d at 1329; *see also Avid Identification Sys.,* 603 F.3d at 974 n.1 ("[O]nly individuals, rather than corporations …

owe a duty of candor to the [US]PTO."); 37 C.F.R. § 1.56(a) (duty of candor and good faith applies to "each *individual* associated with the filing and prosecution of a patent application.") (emphasis added).

Contrary to this black-letter rule that only *individuals* are subject to the duty of disclosure, Dr. Falk Pharma is not an "individual." SAC ¶ 47 ("Defendant Dr. Falk Pharma GmbH is a German *corporation*") (emphasis added). Therefore, the duty of disclosure does not apply to Dr. Falk Pharma. *Exergen*, 575 F.3d at 1329 (duty of candor only "applies only to individuals, not to organizations"). Furthermore, Dr. Falk Pharma does not fall within any of the three categories enumerated in Rule 56(c). Dr. Falk Pharma is not a named inventor or an attorney who prepared or prosecuted the application. 37 C.F.R. § 1.56(c)(1)-(2). Nor does Silbersher offer any contention that Dr. Falk Pharma was "substantively involved in the preparation or prosecution of the application." 37 C.F.R. § 1.56(c)(3). Thus, Dr. Falk Pharma was not subject to a duty of disclosure under Rule 56.

Second, Silbersher alleges no specific facts concerning an intent to deceive the PTO. *Exergen*, 575 F.3d at 1325-1331. This is not a situation where there may be a dispute over whether the facts alleged "support[] a reasonable inference" of intent to deceive. *See id.* There simply are no such facts alleged. Similarly, Silbersher's Complaint does not allege—even in a conclusory fashion—that an *individual with a duty of disclosure* had any intention to deceive the PTO. *See id.*; 37 C.F.R. § 1.56(a).

### 2. The SAC Does Not Allege That Dr. Falk Pharma Submitted False Claims for Reimbursement

Silbersher's FCA claim is alternatively based on the alleged submission to Medicare of false or fraudulent claims for reimbursement for Apriso. *See* SAC ¶¶ 119-169. According to Silbersher's theory, the claims for reimbursement were false or fraudulent because the market price for Apriso was protected by a patent (the '688 Patent) that Silbersher alleges was unenforceable under a newly-articulated theory of fraud on the Patent Office. However, no facts are alleged that Dr. Falk Pharma submitted claims to Medicare for Apriso or manufactures, sells, or imports Apriso into the United States. This theory fails to state a claim as to Dr. Falk Pharma and should be

dismissed as well.

## IV.  CONCLUSION

For the foregoing reasons, the SAC should be dismissed in its entirety as to Dr. Falk Pharma. Because the defects cannot be cured by amendment, leave to amend further should be denied, and the dismissal should be entered with prejudice.

Date: February 5, 2025

By: */s/ Mary W. Bourke*
Mary W. Bourke (*admitted pro hac vice*)

Christian E. Mammen (CA Bar No. 188454)
**WOMBLE BOND DICKINSON (US) LLP**

Attorneys for Defendant
Dr. Falk Pharma GmbH