Nicomedes Sy Herrera (State Bar No. 275332)
Shawn M. Kennedy (State Bar No. 218472)
Bret D. Hembd (State Bar No. 272826)
Laura E. Seidl (State Bar No. 269891)
**HERRERA KENNEDY LLP**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile: (855) 969-2050
Email: NHerrera@HerreraKennedy.com
       SKennedy@ HerreraKennedy.com
       BHembd@ HerreraKennedy.com
       LSeidl@ HerreraKennedy.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

[Additional Counsel on the Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, | Case No.: 3:18-cv-01496-JD |
| *ex rel.* ZACHARY SILBERSHER, | **PLAINTIFF-RELATOR'S BRIEF IN OPPOSITION TO THE MOTION TO DISMISS FILED BY DR. FALK PHARMA GMBH (ECF 141)** |
| Plaintiffs, | |
| v. | Hearing Date: April 10, 2025 |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, | Hearing Time: 10:00 a.m. Courtroom: 11 Hon. James Donato, U.S.D.J. |
| Defendants. | |

1

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................ 1

QUESTIONS PRESENTED AND SUMMARY OF ARGUMENT ............................... 2

FCA LIABILITY THEORIES ...................................................................... 6

ARGUMENT................................................................................................ 7

      I.     Falk Represented To This Court That It Would Not Contest Service Of Process, and The Ninth Circuit Held That Falk Has Waived This Argument............................................................................................ 7

      II.    The SAC Pleads Fraud With Particularity Against Falk........................ 10

      III.   The Courts Have Uniformly Rejected Application Of The Standards Governing Inequitable Conduct In FCA Cases. .................................... 13

      IV.   Falk Is Liable For Causing The Submission Of False Claims. ............... 15

CONCLUSION............................................................................................ 15

RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS    CASE NO. 3:18-CV-01496-JD

# TABLE OF AUTHORITIES

## CASES

*Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*
2013 WL 12139832 (C.D. Cal. Apr. 19, 2013)................................................................2

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)........................................................................................................7

*Avid Identification Sys., Inc. v. Crystal Imp. Corp.*
603 F.3d 967 (Fed. Cir. 2010).......................................................................................14

*Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*
104 F. Supp. 3d 1023 (E.D. Cal. 2015).........................................................................14

*BHPH Cap. LLC v. JV Wholesalers LLC*
2024 WL 455038 (D. Ariz. Feb. 6, 2024)......................................................................10

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*
267 F.3d 1370 (Fed. Cir. 2001).....................................................................................13

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd.*
394 F.3d 1348 (Fed. Cir. 2005)......................................................................................12

*Continental Cas. Co. v. Hardin*
2016 WL 11234458 (M.D. Fla. Dec. 5, 2016)................................................................8

*Cook Cnty. v. United States ex rel. Chandler*
538 U.S. 119 (2003)........................................................................................................1

*GeneriCo, LLC v. Dr. Falk Pharma*
IPR2016-00297 (P.T.A.B. Sept. 14, 2016).....................................................................11

*Goodstein v. Bombardier Capital, Inc.*
167 F.R.D. 662 (D. Vt. 1996)........................................................................................9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
2014 WL 2581525 (N.D. Cal. June 9, 2014) .........................................................8, 10

*Ingle v. Cir. City*
408 F.3d 592 (9th Cir. 2005)..........................................................................................7

*Nautilus, Inc. v. Biosig Instruments, Inc.*
572 U.S. 898 (2014)......................................................................................................12

*Praxair, Inc. v. Atmi, Inc.*
543 F.3d 1306 (Fed. Cir. 2008)......................................................................................12

*Rudolph v. UT Starcom, Inc.*
2009 WL 248370 (N.D. Cal. Deb. 2, 2009).............................................................8, 9

*Silbersher v. Allergan Inc.*
    506 F. Supp. 3d 772 (N.D. Cal. 2020) ............................................................ 2, 5, 7, 13

*Silbersher v. Valeant Pharms. Int'l, Inc.*
    2020 WL 13833190 (N.D. Cal. May 7, 2020) .................................................. 5, 10, 11

*Silbersher v. Valeant Pharms. Int'l, Inc.*
    2023 WL 4946736 (9th Cir. Aug. 3, 2023) ................................................. 2, 5, 7, 10, 11

*Therasense, Inc. v. Becton, Dickinson & Co.,*
    649 F.3d 1276 (Fed. Cir. 2011) ................................................................................. 13

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,*
    501 F.3d 493 (6th Cir. 2007) ..................................................................................... 15

*United States ex rel. Campie v. Gilead Scis., Inc.*
    862 F.3d 890 (9th Cir. 2017) ...................................................................... 2, 5, 6, 13, 16

*United States ex rel. Heath v. AT&T, Inc.*
    791 F.3d 112 (D.C. Cir. 2015) ................................................................................... 15

*United States ex rel. Hendow v. Univ. of Phx.*
    461 F.3d 1166 (9th Cir. 2006) ............................................................................... 1, 13

*United States ex rel. Main v. Oakland City Univ.*
    426 F.3d 914 (7th Cir. 2005) ....................................................................................... 1

*United States ex rel. Polukoff v. St. Mark's Hosp.*
    895 F.3d 730 (10th Cir. 2018) ............................................................................. 14, 15

*United States ex rel. Roby v. Boeing Co.*
    184 F.R.D. 107 (S.D. Ohio 1998) ............................................................................. 15

*United States ex rel. Silbersher v. Janssen Biotech, Inc.*
    576 F. Supp. 3d 212 (D.N.J. 2021) ................................................... 2, 5, 6, 7, 13, 15

*United States ex rel. Winslow v. PepsiCo, Inc.*
    2007 WL 1584197 (S.D.N.Y. May 31, 2007) ............................................................ 15

*United States v. Allergan, Inc.*
    46 F.4th 991 (9th Cir. 2022) ........................................................................................ 2

*United States v. Bourseau*
    531 F.3d 1159 (9th Cir. 2008) ................................................................................... 14

*United States v. Garcia-Beltra*
    443 F.3d 1126 (9th Cir. 2006) ..................................................................................... 8

*United States v. Lummi Indian Tribe*
    235 F.3d 443 (9th Cir. 2000) ....................................................................................... 7

*United States v. Perez*
    475 F.3d 1110 (9th Cir. 2007) ..................................................................................... 8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016).................................................................................................14

*Williams v. Duke Energy Int'l, Inc.*
  681 F.3d 788 (6th Cir. 2012)....................................................................................15

<h2 style="text-align:center">STATUTES</h2>

21 U.S.C. §§ 355(c)(3)(C), (j)(5)(B)(iii) ...................................................................1

31 U.S.C § 3729(b)(4) ...............................................................................................14

31 U.S.C. § 3729(a)(1) ..............................................................................................6

31 U.S.C. § 3729(a)(1)(A)-(B) ..................................................................................5

31 U.S.C. § 3729(a)(1)(C) .........................................................................................4

31 U.S.C. § 3729(b)(1) ..............................................................................................14

31 U.S.C. § 3729(b)(2)(A) .........................................................................................15

31 U.S.C. § 3729(b)(2)(A)(i) .....................................................................................6

31 U.S.C. § 3729(b)(4) ..............................................................................................14

31 U.S.C. §§ 3729–33 ...............................................................................................1

Plaintiff-Relator Zachary Silbersher ("Relator") respectfully submits this opposition to the motion to dismiss filed by defendant Dr. Falk Pharma GmbH ("Falk").

## INTRODUCTION

Relator's Second Amended Complaint ("SAC"), (ECF 137), alleges that Defendants caused the United States and Plaintiff States (collectively, the "Government") to pay hundreds of millions of dollars more for Defendants' ulcerative colitis medication, Apriso (mesalamine), than they should have. The Government overpaid monopoly prices because Defendants unlawfully obtained fraudulent patents on Apriso (*i.e.*, U.S. Patent No. 8,865,688 ("the '688 patent") and the Otterbeck Patents described in SAC ¶¶ 19–21 & 102–118).[1] Defendants used these patents to block generic competitors from entering the market, thus capitalizing on their antecedent fraud to maintain their market share and monopoly prices. *See generally* SAC ¶¶ 64–70, 119–33, 139–40, 145–150, 159, 161, 168); *see also* 21 U.S.C. §§ 355(c)(3)(C), (j)(5)(B)(iii) (describing process by which patents prevent generic entry).

The False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA"), is "expansive[], meaning to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003) (quotation marks omitted). This includes situations—like this one—where an upstream fraud taints downstream claims for payment. As long as "a false statement is integral to a causal chain leading to payment," the statute applies. *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006) (quoting *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916 (7th Cir. 2005)). For example, controlling precedent holds that when a defendant defrauds the government into approving a drug, subsequent claims for payment for that drug are false under the statute. *See United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890,

---

[1] The Otterbeck Patents all expired on or around April 20, 2018. Defendants withdrew their assertion of the Otterbeck Patents against generic competitors when Defendants obtained issuance of the '688 patent. (SAC ¶ 20.) Accordingly, for simplicity and brevity's sake, this brief focuses on the fraud concerning the '688 patent. The fraud concerning the Otterbeck Patents extends the damages period substantially, but even without proving that fraud, Defendants would still be liable for damages at least from the time that the Otterbeck Patents expired on April 20, 2018.

RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS          CASE NO. 3:18-CV-01496-JD

902–04 (9th Cir. 2017) (fraud on the FDA taints subsequent claims). Here, Defendants defrauded the Government twice over: first, when they lied to obtain the '688 patent; and again when they weaponized that patent to overcharge the Government for Apriso.

Multiple courts have issued well-reasoned decisions concluding that the FCA applies when false or materially misleading statements (including material omissions) made to the Patent Office led to inflated drug prices. *See United States ex rel. Silbersher v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 228-30 (D.N.J. 2021); *Silbersher v. Allergan Inc.*, 506 F. Supp. 3d 772, 826 (N.D. Cal. 2020) ("Defendants' false statements to obtain a government benefit [*i.e.,* issuance of a pharmaceutical patent] are sufficient to render their later claims false for the purposes of the FCA."), *rev'd on other grounds and remanded sub nom. United States v. Allergan, Inc.,* 46 F.4th 991 (9th Cir. 2022). The court in *Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*, 2013 WL 12139832, at *3 (C.D. Cal. Apr. 19, 2013), endorsed a similar theory on the merits, although the court later dismissed the action on public disclosure grounds based on the superseded pre-2010 version of the statute requiring "direct" knowledge, among other things, which do not apply here.[2]

### QUESTIONS PRESENTED AND SUMMARY OF ARGUMENT

Falk's motion to dismiss presents three questions.

- **Question 1**: Can Falk raise a Fed. R. Civ. P. 12(b)(5) defense for insufficient service of process even though Falk previously represented to this Court that it did "not intend to challenge this court's jurisdiction on the basis of improper service of process," (ECF 86 at 2), and the Ninth Circuit held that Falk "waived any such challenge" because of its representations to this Court, *see Silbersher v. Valeant Pharms. Int'l, Inc.*, 2023 WL 4946736, at *1 (9th Cir. Aug. 3, 2023)?

---

[2] Only one outdated case, *United States ex rel. Promega Corp. v. Hoffman-La Roche Inc.*, No. 03-1447-A (E.D. Va. Sept. 29, 2004), has ever questioned a patent fraud theory of FCA liability, and it did so based on a circumscribed view of "falsity" that well-reasoned authority has repudiated in the 20 years since *Promega* was decided. *See, e.g.*, *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 190–92 (2016); *Allergan*, 506 F. Supp. 3d at 826 (specifically rejecting *Promega*); *Janssen*, 576 F. Supp. 3d at 228. The Court should follow these cases, and not the unpublished, outdated decision in *Promega*, which is not even available on PACER.

- 2 -

**Answer**: No. Falk failed to inform the Court about the Ninth Circuit's decision rejecting Falk's insufficient service argument. Instead, Falk described the Ninth Circuit's rulings on public disclosure without mentioning the Ninth Circuit's decision holding that Falk had waived its defenses based on insufficient service because of Falk's prior statement to this Court. (Mot. 4.) That holding and Falk's concession are binding.

Beyond this, Falk's argument rests on legal and factual misstatements. Falk incorrectly suggests that "at the time [Falk filed its first motion to dismiss] in 2019," Fed. R. Civ. P. 4(m) included a "then-120-day (now 90-day) deadline" for service of process. (Mot. 10.) But the 120-day deadline was changed to 90 days in 2015—not after 2019. That is an important mistake, because Falk relies on cases suggesting that if a motion to dismiss does not raise insufficient service of process (but reserves the right to do so) *before* the time period set forth in Rule 4(m) expires, then the defense potentially is preserved. *Id.* Falk's cases are inapposite because Falk filed its first motion to dismiss (without asserting a Rule 12(b)(5) defense) on February 18, 2019, (ECF 43), more than 90 days after this case was unsealed on October 29, 2018, (ECF 12).

Besides all of this, Falk *also* waived any defense based on insufficient service of process several more times by voluntarily and actively participating in this lawsuit—including, for example, serving extensive discovery (including interrogatories and 83 document requests) on Relator before the Court stayed discovery on February 25, 2025. *See* Declaration of Nicomedes Sy Herrera dated March 12, 2025 ("Herrera Decl.")[3], ¶ 3.

- **Question 2**: Has Relator sufficiently pleaded fraud with particularly against Falk, when the SAC alleges, among other things, that Falk owned the rights to all patents relating to Apriso during the relevant time period; that Falk's employees participated in critical prior art studies that were fraudulently withheld from the patent office; that Falk supplied the mesalamine formulations used in the withheld studies; and that Falk actively participated in critical aspects of the fraud, such as asserting the fraudulent patent against generic competitors to keep them off the market, so that Falk and its co-defendants (to

---

[3] Relator is filing an accompanying Request for Judicial Notice for the exhibits to the Herrera Decl.

RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS          CASE NO. 3:18-CV-01496-JD

1  whom Falk licensed the fraudulent patent) could benefit from the resulting monopoly prices charged to

2  the Government and the retention of a 100% market share in Apriso?

3       **Answer**: Yes. The SAC alleges with particularity Falk's critical role in effectuating the

4  fraudulent scheme, including holding all rights to all patents relating to Apriso during the relevant time

5  period. (SAC ¶ 47.) Among other things (more fully described below), the SAC also sufficiently alleges

6  that Falk knowingly withheld material prior art from the Patent Office because of Falk's primary role

7  participating in those crucial but withheld prior art studies (*i.e.*, the Marakhouski and Brunner studies).

8  (SAC ¶ 86.) Indeed, the SAC alleges that Falk's head of research and development, Roland Greinwald,

9  co-authored the Marakhouski and Brunner studies, and Falk supplied the specific mesalamine

10 formulation used in those studies. (*Id.*) Falk also asserted the fraudulent '688 patent in litigation against

11 generics, (SAC ¶¶ 122–23, 125 (Falk was a named plaintiff in the cited cases)), and Falk defended the

12 validity of the fraudulent '688 patent (unsuccessfully) in the *inter partes* review ("IPR") that invalidated

13 the '688 patent, (SAC ¶ 120 (Falk was the named "Patent Owner" in the cited IPR petitions, making it

14 a necessary party to the action)). Falk's actions were critical to effectuating Defendants' fraudulent

15 scheme because they delayed generic competition. (SAC ¶¶ 119–33.)

16      Based on these and other allegations—including that Falk licensed the '688 patent and the

17 Otterbeck Patents to its co-defendants, (SAC ¶ 46), the SAC plausibly alleges that all "Defendants, their

18 employees and agents, individually and in concert, knowingly submitted or caused to be submitted false

19 claims to the United States Government and the Plaintiff States to secure payments for illegally-inflated

20 prices for mesalamine." (SAC ¶ 149.) Moreover, "[t]hrough their planning and coordination, Defendants

21 conspired to violate the False Claims Act under 31 U.S.C. § 3729(a)(1)(C)." (*Id.*) These allegations

22 compare favorably with the fraud allegations in *Allergan*, where the court found Rules 9 and 12 satisfied.

23      Indeed, the Ninth Circuit noted the allegations detailing Falk's culpable role in the fraudulent

24 scheme: "Falk licensed its U.S. patents for the drug Apriso for sale in the United States and sought to

25 enforce those patents in U.S. courts. After invoking its patents to protect Apriso, Falk allegedly benefited

26 from the sale of Apriso to the U.S. government, with Medicare alone reimbursing an alleged $183

27 million during the relevant period." *Valeant Pharms.*, 2023 WL 4946736, at *2. And as this Court has

28

- 4 -

1    also previously noted, "Falk's involvement in obtaining the patent, . . . [and] Falk's patent infringement

2    suits against generic drug manufacturers played a ***critical*** role in allowing Valeant to maintain inflated

3    prices for Apriso—a key element of the alleged false claims." *Silbersher v. Valeant Pharms. Int'l, Inc.*,

4    2020 WL 13833190, at *1-2 (N.D. Cal. May 7, 2020) (*citing* Corrected First Amended Complaint, ECF

5    10, at ¶¶ 119–22) (emphasis added); *cf.* SAC ¶¶ 121–33.

6    • **Question 3**: Should the Court import the heightened standards applicable to the affirmative

7    defense of inequitable conduct available to defendants in patent infringement suits when determining

8    Relator's claims under the FCA, in derogation of the statute's plain language?

9    **Answer**: No. Inequitable conduct, a judge-made affirmative defense against patent infringement,

10   cannot displace the statutory standards for an FCA cause of action. Courts reviewing this issue under

11   indistinguishable circumstances have rejected Falk's argument. *See Janssen* 576 F. Supp. 3d at 230–31

12   (inequitable conduct is "judicially-crafted and designed for different statutory contexts than the FCA,"

13   and it cannot "displace . . . the FCA's plain text"); *Allergan*, 506 F. Supp. 3d at 812, 829 (denying motion

14   to dismiss FCA claim where defendant raised inequitable conduct argument).

15   Moreover, Falk's argument that the claims against it should be dismissed if the SAC does not

16   specifically allege that Falk *submitted* a false claim for payment to the government is legally wrong

17   because the FCA supports liability when a false certification "causes" the submission or presentment of

18   inflated claims, or is material to such inflated payment claims, regardless of who submits the claim for

19   payment. § 3729(a)(1)(A)-(B). As explained *supra*, the Ninth Circuit construes the FCA to impose

20   liability when an upstream misrepresentation taints later claims for payment, even if the claims are

21   submitted to a different government agency or by a different party. *See, e.g.*, *Campie*, 862 F.3d at 904

22   (fraud on the FDA by the defendant drug manufacturer leads to false claims submitted to CMS by third-

23   parties, including pharmacies).

24   Falk's argument is also factually wrong because the SAC alleges that Falk, as the patent

25   application rights' owner, is deemed to have submitted the fraudulent patent application for the '688

26   patent through its patent agents (and co-defendants)—and the patent application itself is a false claim

27

28
RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS          CASE NO. 3:18-CV-01496-JD

because it requests "property." § 3729(b)(2)(A); *see Janssen*, 576 F. Supp. 3d at 228 (patent application is a false claim *in addition to* the later claims for payment incorporating inflated monopoly prices).

### FCA LIABILITY THEORIES

The SAC alleges three separate and independent liability theories.

First, when drug companies obtain patents through fraud and then assert the fraudulent patents, the patent applications themselves are false claims. (SAC ¶ 34.) The FCA defines a "claim" as "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—(i) is presented to an officer, employee, or agent of the United States." § 3729(b)(2)(A)(i). A patent application fits this definition because it is a "request" for a patent, which is "property" that is "presented to" a patent examiner, who is "an officer, employee, or agent of the United States." Because the application used false statements to seek property Defendants were not entitled to have, the application itself constitutes a false claim, and Defendants are liable for damages that the government sustained "because of" that false claim. *See Janssen*, 576 F. Supp. 3d at 228; § 3729(a)(1).

Second, Defendants made material false statements or misleadingly omitted material information to the: (i) Patent Office, (SAC ¶¶ 134–142; *see also* ¶¶ 77–118); and (ii) FDA (when listing the fraudulent patent in the FDA's Orange Book as part of a scheme to exclude generic competitors), (SAC ¶¶ 64–70, 129–31, 145, 150, 159, 161, 168). These false statements let Defendants exclude generic competitors from the market, unlawfully maintaining their patent monopoly for Apriso and permitting them to overcharge the Government monopoly prices. The resulting claims for payment for Apriso prescriptions submitted to the Government by providers, pharmacies, wholesalers, patients, Medicare plan sponsors, and other third parties incorporated those monopoly prices. Where, as here, Defendants' upstream false statements or material omissions to the government taint downstream claims for payment submitted to the Government, the claims are "false or fraudulent" under the FCA. SAC ¶¶ 136, 140, 143, 162, 169; *see Campie*, 862 F.3d at 898–99, 902–04. Courts have confirmed that materially indistinguishable allegations of patent fraud support fraudulent inducement liability. *See Janssen*, 576 F. Supp. 3d at 229 (relator's allegations that defendant drug companies' upstream misrepresentations to

- 6 -

1  the government in obtaining a fraudulent patent "tainted subsequent claims for payment" for the drug

2  pleaded viable FCA claims); *accord Allergan*, 506 F. Supp. 3d at 824–26 (relying on *Campie*).

3       Third, each claim submitted to government programs that directly purchased Apriso because of

4  the drug's listing in the Federal Supply Schedule ("FSS") or under the Federal Acquisition Regulations

5  are false claims under the FCA. This is because, to list Apriso on the FSS or sell Apriso under certain

6  government programs (such as the Veterans Health Administration), Defendants implicitly certified to

7  government payors that Apriso's price was "fair and reasonable," or at least not tainted by fraud, when

8  Defendants knew the price was actually the product of an unlawful monopoly. (SAC ¶¶ 33.) This implied

9  false certification theory is well-established. *See Janssen*, 576 F. Supp. 3d at 229; *Allergan,* 506 F. Supp.

10  3d at 820–24.

11                                      ARGUMENT

12       When evaluating a Rule 12(b)(6) motion, the Court accepts the complaint's well-pleaded

13  factual allegations as true and draws all reasonable inferences in plaintiff's favor. *See Ashcroft v.*

14  *Iqbal*, 556 U.S. 662, 678 (2009).

15  I.   **Falk Represented to This Court That It Would Not Contest Service of Process, and the**
16       **Ninth Circuit Held That Falk Has Waived this Argument.**

17       Over five years ago, Falk explicitly abandoned its insufficient service of process defense,

18  "confirm[ing]" for this Court and Relator "that it does not intend to challenge this court's jurisdiction

19  on the basis of improper service of process." (ECF No. 86, at 2.) It now reverses course, urging dismissal

20  because Relator has never served it. But on Falk's appeal of this Court's jurisdictional holding, the Ninth

21  Circuit held that Falk "waived any such challenge" by "inform[ing] the district court that it did not

22  'intend to challenge [the district] court's jurisdiction on the basis of improper service of process.'"

23  *Valeant Pharms.*, 2023 WL 4946736, at *1. This ruling should settle the matter. *Ingle v. Cir. City*, 408

24  F.3d 592, 594 (9th Cir. 2005) ("Under the law of the case doctrine, 'a court is generally precluded from

25  reconsidering an issue previously decided by the same court, or a higher court in the identical case.'"

26  (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000))); *United States v.*

27  *Perez*, 475 F.3d 1110, 1113 n.1 (9th Cir. 2007) ("The rule of mandate is similar to, but broader than, the

28

- 7 -

1  law of the case doctrine. The rule of mandate requires a lower court to act on the mandate of an appellate

2  court, without variance or examination, only execution." (quoting *United States v. Garcia-Beltran*, 443

3  F.3d 1126, 1130 (9th Cir. 2006))).

4       Courts also disallow litigants from retracting a waiver of an insufficient service of process

5  defense. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 2581525, at *1–4 (N.D. Cal. June

6  9, 2014) (defendants waived Rule 12(b)(5) defense by representing to court and opposing counsel that

7  they had abandoned the defense). As the court noted, "permitting a defendant[, like Falk,] to represent

8  to the Court and other parties that a defense has been abandoned, without putting that party at risk of

9  waiver, could unfairly allow parties to take advantage of other litigants[, like Relator,] who take the

10 abandonment on its face and do not then return to the issue." *Id.* at *3.

11      In addition to Falk's explicit waiver, Falk waived its Rule 12(b)(5) defense under Rules 12(g)(2)

12 and (h)(1) by joining Bausch's motion to dismiss in 2019 without explicitly preserving its Rule 12(b)(5)

13 defense. (ECF 42.) Although Falk soon afterwards filed its own motion to dismiss reserving "any right

14 to challenge service of process," (ECF No. 43, at 4 n.2), it had already waived that defense by not

15 preserving it when Falk first joined Bausch's motion to dismiss. *See Continental Cas. Co. v. Hardin*,

16 2016 WL 11234458, at *13 (M.D. Fla. Dec. 5, 2016), *report and recommendation adopted*, 2017 WL

17 979098 (M.D. Fla. Mar. 14, 2017) (joining another defendant's motion to dismiss "preclud[ed]"

18 defendant from filing a "successive" Rule 12(b)(2) motion asserted "in the same document as their"

19 joinder); *Rudolph v. UT Starcom, Inc.*, 2009 WL 248370, at *1 (N.D. Cal. Deb. 2, 2009) (defendant

20 "waived his right to challenge the sufficiency of service when he failed to raise the defense in his

21 previous motion to dismiss").

22      Setting aside these waivers, Falk's reservation of rights in its standalone motion to dismiss in

23 2019 did not preserve its Rule 12(b)(5) defense because it could and should have asserted that defense

24 at that time.[4] Falk's primary argument is that its motion to dismiss did not waive insufficient service of

---

25 [4] *Lewis v. Option One Mortgage Corp.*, 2014 WL 12861081 (N.D. Ga. June 23, 2014), did not hold that

26 "including a footnote in [a] Rule 12(b)(6) motion noting lack of service and preservation of rights under

27

28                                              - 8 -

process because Rule 4(m)'s service deadline had not yet expired when it filed its standalone motion in 2019. (Mot. 10.) But contrary to Falk's assertions, Rule 4(m)'s service deadline was 90 days in 2019, not 120,[5] and it had passed when Falk filed its initial motions to dismiss in 2019. *Compare* ECF No. 12, Oct. 29, 2018, *with* ECF No. 43, Feb. 18, 2019 (112 days between filings). This means that the insufficient service of process defense was "available" to Falk, unlike the defendant in *Goodstein v. Bombardier Capital, Inc.*, 167 F.R.D. 662, 665 (D. Vt. 1996), the primary authority upon which Falk relies. Accordingly, Falk could and should have asserted the defense in its original motions, and it waived the defense by failing to do so. *Rudolph*, 2009 WL 248370, at *2 (foreign defendant "waived his right to challenge the sufficiency of service under Rule 12(b)(5)" by not raising defense when it "was available to him" once Rule 4(m)'s service deadline expired). This analysis does not change simply because Rule 4(m) excludes foreign service,[6] a point that even *Goodstein* recognizes. 167 F.R.D. at 665 (foreign defendant "should have amended the motion to dismiss [he joined] to include the defense of insufficiency of service of process when [Rule 4(m)'s service deadline] had expired"); *see also Rudolph*, 2009 WL 248370, at *2 (finding that a foreign defendant's "Rule 12(b)(5) defense for insufficient service of process was available to him" once Rule 4(m)'s service deadline expired even though that "Rule 4(m) does not apply to service on foreign defendants").

Falk's litigation conduct further precludes it from asserting a Rule 12(b)(5) defense. Falk served initial disclosures in May 2019, and it recently served interrogatories and 83 document requests on Relator days before the Court stayed discovery. *See BHPH Cap. LLC v. JV Wholesalers LLC*, 2024 WL

---

Rule 12(b)(5) was sufficient to preserve" a defendant's Rule 12(b)(5) defense. (Mot. 10.) Although two defendants in *Lewis* included a footnote in their Rule 12(b)(6) motion explaining "that they have not been served with summons and the complaint and that they preserve their right to move for dismissal on that basis," the court never decided that the footnote preserved the defense. *Lewis*, 2014 WL 12861081, at *2. In fact, the court noted that those defendants' "objections to Plaintiff's service, if any, . . . [were] not before the court" and dismissed them under Rule 12(b)(6), not Rule 12(b)(5). *Id.* at *4 nn.4, 5, 8.

[5] "The presumptive time for serving a defendant is reduced from 120 days to 90 days." Fed. R. Civ. P. 4(m) advisory committee's notes to 2015 amendment.

[6] Rule 4(m)'s inapplicability to foreign defendants does, however, provide an independent justification for denying Falk's motion. *Id.* ("Even if [the defendant] had not waived his Rule 12(b)(5) challenge, his argument also fails because Rule 4(m) does not apply to service on foreign defendants.").

RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS    CASE NO. 3:18-CV-01496-JD

1  455038, at \*3 (D. Ariz. Feb. 6, 2024) (defendant waived insufficient service of process defense "by

2  being part of the discovery process" despite "assert[ing] ineffective service as an affirmative defense in

3  his answer"); *In re CRT*, 2014 WL 2581525, at \*3.[7]

4  **II.   The SAC Pleads Fraud with Particularity Against Falk.**

5       The SAC pleads sufficient facts showing Falk's involvement in the alleged fraud. Falk owns

6  the application that resulted in the '688 patent and continued to own the patent after it issued. (SAC

7  ¶ 47.) Falk acquired the rights to the '688 patent application on April 1, 2011, and thus was a real

8  party-in-interest liable for the failure to disclose material facts of invalidity as of the time of the June

9  20, 2014 fraudulent statements to the PTO alleged in the SAC.[8] As the '688 patent's owner, Falk

10 licensed rights under the patent to the Bausch/Valeant co-defendants in connection with the sale of

11 Apriso. SAC ¶¶ 46-47; *see also Valeant Pharms.*, 2023 WL 4946736, at \*2; *Valeant Pharms. Int'l*,

12 2020 WL 13833190, at \*1-2.

13       Falk has asserted its rights under the '688 patent in patent infringement litigation against

14 generics to exclude them from generic entry. (SAC ¶¶ 122-23, 125 (Falk was a named plaintiff in the

15 cited cases).) This Court has previously deemed this conduct a "critical" part of Defendants'

16 fraudulent scheme to exclude competitors for Apriso and obtain supracompetitive profits. *See Valeant*

17 *Pharms. Int'l*, 2020 WL 13833190, at \*1-2; *see also Valeant Pharms.*, 2023 WL 4946736, at \*2. Falk

18 also defended the fraudulent '688 patent against the IPR challenge. (SAC ¶ 120 (Falk was the named

19 "Patent Owner" in the cited IPR petitions).)

20 ──────────
[7] Falk's reliance on *Melton v. Wiley*, 2007 WL 315343 (M.D. Ga. Jan. 31, 2007), is misplaced. There,
21 the court found that a domestic defendant had not waived its Rule 12(b)(5) defense despite participating
   in the case just because he asserted the defense in his answer. *Melton*, 2007 WL 315343, at \*2. This
22 cursory analysis puts *Melton* squarely at odds with "well settled" authority from courts within the Ninth
   Circuit, holding "that a defendant can waive a 12(b) defense through their conduct, such as extensive
23 participation in the discovery process." *E.g.*, *BHPH Cap.*, 2024 WL 455038, at \*3; *Craters & Freight v. Benz*, 465 F. App'x 719, at \*1 (9th Cir. 2012).

24 [8] The April 1, 2011 assignment to Falk is attached as Exhibit 1 to the Declaration of Nicomedes Sy
25 Herrera dated March 4, 2019, (ECF 55-2). *See also GeneriCo, LLC v. Dr. Falk Pharma GmbH*,
   No. IPR2016-00297, Paper 6, at 2 (P.T.A.B. Dec. 30, 2015) ("Dr. Falk Pharma GmbH ("Dr. Falk") and
26 Salix Pharmaceuticals, Ltd. ("Salix")") are the real parties-in-interest.") (Herrera Decl. Ex. A). As a real-
   party-in-interest during the '688 Patent prosecution, Falk is liable for its failure to disclose material facts
27 of invalidity in violation of the affirmative, statutory duty of candor and good faith. *Cf.* 37 C.F.R. § 1.56
   (2018) (pre-AIA); Manual of Patent Examination Procedure § 2001.01.

28
   RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS        CASE NO. 3:18-CV-01496-JD

1    Falk's employee, Roland Greinwald, co-authored the Marakhouski and Brunner studies, which

2    are the critical prior art studies that invalidated the '688 patent. (SAC ¶¶ 86, 89.) Falk conceded, and

3    the PTAB found, that the Marakhouski and Brunner studies related to the mesalamine formulation

4    within the scope of the '688 patent. (SAC ¶ 86.) Dr. Greinwald testified in the IPR invalidating the

5    '688 patent, *GeneriCo, LLC v. Dr. Falk Pharma*, IPR2016-00297 (P.T.A.B. Sept. 14, 2016), Case No.

6    IPR2016-00297 (Sept. 14, 2016), Ex. 2037 (Herrera Decl. Ex. B),[9] and at trial in one of the district

7    court patent infringement actions, *id.* (Mar. 15, 2016), Ex. 2024 (Herrera Decl. Ex. C). Moreover, the

8    '688 patent itself identifies Falk's material involvement, in addition to its Bausch co-defendants—the

9    patent's specification discloses a study using Salofalk® Tablets, (the '688 patent, Example 7) (Herrera

10   Decl. Ex. D), which Falk commercialized. The patent also incorporates by reference numerous patents

11   assigned to Falk. (*Id.* col. 10:47–53.)

12   In addition, the public filings of the IPR specifically referenced in the SAC, (¶ 17 (citing

13   IPR2016-00297)), disclose that Lorin Johnson (the '688 patent's purported inventor and Salix's co-

14   founder) testified to the beliefs of both Salix *and Falk*, *see GeneriCo*, Case No. IPR2016-00297 (Sept.

15   14, 2016), Ex. 2036 at ¶¶ 4, 21 (Herrera Decl. Ex. E), which further evidences extensive collaboration

16   among all Defendants over the subject matter of the '688 patent. Mr. Johnson also testified that when

17   Salix acquired a license to the rights under the patents covering Apriso, including the Otterbeck

18   patents,[10] both Salix and Falk "shared all of the data" and "both had access to all of the data for [each

19   company's] respective territories," *GeneriCo*, Case No. IPR2016-00297 (Dec. 23, 2016),  Ex. 1067,

20   67:9-17 (Herrera Decl. Ex. F), which leads to a reasonable inference that Falk informed its Bausch co-

21   defendants (which acquired Salix) of the Brunner and Marakhouski studies through their data sharing

22   during the patent prosecution.

23   Because Falk owned the application during the critical time period in 2014 when it sought a

24   patent for Apriso including the "without food" limitation, (SAC ¶¶ 82–84), the prosecuting attorney

25

---

26   [9] The full P.T.A.B. docket for IPR2016-00297 can be found at: https://ptacts.uspto.gov/ptacts/ui/home.

27   [10] This occurred well before the prosecution of the patent resulting in the '688 patent. SAC ¶ 46; *see also* Herrera Decl. Ex. G.

28

RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS          CASE NO. 3:18-CV-01496-JD

1    for the '688 patent, Jonathan Sparks, therefore acted as Falk's agent. The SAC alleges both knowledge

2    and intent to deceive by Mr. Sparks. (*See e.g.*, SAC ¶¶ 90-91.) Mr. Sparks's knowledge and intent to

3    deceive can be imputed to Falk, the patent application owner. *See Praxair, Inc. v. Atmi, Inc.*, 543 F.3d

4    1306, 1316–17 (Fed. Cir. 2008) (finding inequitable conduct—which requires a higher standard than

5    what applies to the FCA claims here—against Praxair based on knowledge and intent to deceive by

6    two individuals, an outside attorney and inventor, that Praxair did not employ), *abrogated on other*

7    *grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).

8        In Falk's telling, although it owned the '688 patent application, it remained ignorant regarding

9    its prosecution. But scienter is often established using circumstantial evidence—and here, there is a

10   mountain of it, including Falk's involvement owning, asserting, and defending the '688 patent. At a

11   minimum, such allegations suffice at the pleading stage. But even if the Court does not draw the

12   inference that Falk was substantively involved in prosecution of the '688 patent—which it should—

13   that would nonetheless be insufficient to avoid liability, because Falk owned the patent application that

14   issued as the '688 patent, and the SAC alleges Falk's agents acted with scienter. *See Praxair*, 543 F.3d

15   at 1316–17 (finding liability against Praxair based on agent's conduct even though "Praxair was not

16   involved in the prosecution of the [relevant] patent").

17        The SAC alleges scienter against Falk for an additional reason. The Brunner and Marakhouski

18   studies were highly material to the '688 patent's patentability because they each disclosed the exact

19   "without food" limitation that rendered the patent allowable in the first instance. (SAC ¶ 89.) In the

20   inequitable conduct context—which carries a heightened standard not required here, *see infra* Section

21   III—withheld prior art that is highly material to patentability can substantiate an inference of

22   knowledge and scienter. *See Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d

23   1348, 1354 (Fed. Cir. 2005*)* ("[A] fair inference of deceptive intent may be drawn, in view of the high

24   materiality of the [withheld prior art.]"); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d

25   1370, 1381 (Fed. Cir. 2001) ("When balanced against high materiality, the showing of intent can be

26   proportionally less."). Because Relator's allegations satisfy the heightened standards applicable to

27   inequitable conduct, they necessarily satisfy the relaxed statutory standards for FCA claims, which do

28

- 12 -

RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS        CASE NO. 3:18-CV-01496-JD

1  not require specific intent, and may even be satisfied by reckless disregard or deliberate ignorance. *See*

2  *infra* Section III; § 3729(b)(1).

3  **III.    The Courts Have Uniformly Rejected Application of the Standards Governing**
4  **       Inequitable Conduct in FCA Cases.**

5          Falk argues that Relator has not alleged inequitable conduct (a doctrine never mentioned in the

6  complaint or even permitted to be raised in an IPR) with particularity. (Mot. 7–9, 13–14.) As described

7  above, Relator has done so. Regardless, Relator need not plead inequitable conduct. That judge-made

8  affirmative defense to patent infringement based on fraud during patent prosecution incorporates

9  elevated standards for materiality and scienter inapplicable in FCA actions, and it cannot displace the

10  statutory cause of action. *See Janssen*, 576 F. Supp. 3d at 230–31 (inequitable conduct is "judicially-

11  crafted and designed for different statutory contexts than the FCA," and it cannot "displace . . . the

12  FCA's plain text"); *Allergan*, 506 F. Supp. 3d at 812, 829.

13          The inequitable conduct affirmative defense requires an alleged infringer to prove by clear and

14  convincing evidence "specific intent to deceive the PTO" and "but-for" causation. *Therasense, Inc. v.*

15  *Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–91 (Fed. Cir. 2011). Inequitable conduct is subject to

16  strict standards because it invalidates property rights—potentially even with respect to an entire patent

17  family and claims not directly tainted by such conduct. *Id.* at 1288–90 (referring to inequitable conduct

18  as the "atomic bomb" of patent law and thereby requiring a heightened standard of proof).

19          The FCA, by contrast, is a deliberately capacious remedial statute designed to protect the public

20  fisc from fraud. The Ninth Circuit instructs courts to construe the FCA "broadly" to "'reach all types of

21  fraud, without qualification, that might result in financial loss to the Government'" to achieve the

22  statute's remedial purpose. *Campie*, 862 F.3d at 899 (quoting *Hendow*, 461 F.3d at 1170). The FCA

23  does not require clear and convincing proof, and it has relaxed standards for intent and materiality, which

24  "require no proof of specific intent to defraud," § 3729(b)(1)(B), and eschew but-for causation, *see id.*

25  § 3729(b)(4); *United States v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir. 2008).

26          Courts cannot ignore Congress's words merely because the fraud involved a patent application.

27  The FCA protects the Government—and by extension taxpayers—from fraud and is broadly crafted to

28

- 13 -

1   protect the public fisc. But what matters most is that the FCA is a statute with a text, which courts must

2   apply as written. It would violate the FCA's text to import inequitable conduct doctrine into FCA cases.

3   It is also unnecessary, because FCA liability would not legally affect any patent's enforceability. Here,

4   the '688 patent has already been invalidated, and the Otterbeck patents expired. The '688 patent's

5   invalidation makes clear that Defendants should *never* have been able to charge the Government

6   monopoly prices for Apriso in the first place, at least after the Otterbeck Patents expired in April 2018.

7   (*See supra* note 1.) The only question is whether the government should recoup the amount it was

8   overcharged (including penalties). The answer to that must be a resounding yes.

9        Falk also argues that the regulatory duty of candor applies only to individuals, not organizations.

10  (Mot. 13-14.) But when individuals act as corporations' agents before the Patent Office, the

11  "individual's actions may be imputed to a corporate patent owner." *Beco Dairy Automation, Inc. v. Glob.*

12  *Tech Sys., Inc.*, 104 F. Supp. 3d 1023, 1036 (E.D. Cal. 2015) (citing *Avid Identification Sys., Inc. v.*

13  *Crystal Imp. Corp.*, 603 F.3d 967, 973 (Fed. Cir. 2010)). More generally, principals are liable for frauds

14  their agents commit. *See, e.g.*, *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 n.9

15  (10th Cir. 2018). Here, Falk was the listed assignee of the patent, *i.e.*, the party that stood to receive all

16  the rights under the patent if it was granted. It is a plausible allegation and a reasonable inference that

17  the individuals working to obtain the patent acted as Falk's agents.

18       Falk's assertion that Relator was required but failed to identify a specific individual working for

19  Falk that had a specific intent to defraud the Patent Office, (Mot. 14), should also be rejected. First, the

20  SAC does identify such individuals, including Mr. Sparks, Falk's agent during the patent prosecution,

21  and Dr. Greinwald, a co-author on the withheld Brunner and Marakhouski studies that were highly

22  material to the '688 patent. (SAC ¶¶ 13, 90-91; *see supra* pages 11-12.) Second, the FCA does not

23  require specific intent. § 3729(b)(1). Third, Rule 9(b) does not mandate the identification of any specific

24  individual. *See, e.g.*, *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 506 (6th Cir.

25  2007) (rejecting the argument that "parties must plead the identity of the specific individual employees

26  within the defendant corporation who submitted false claims to the government"); *United States ex rel.*

27  *Heath v. AT&T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015) (complaint satisfied Rule 9(b) by naming the

28

- 14 -

1 responsible entity, without naming specific employees); *United States ex rel. Winslow v. PepsiCo, Inc.*,

2 2007 WL 1584197, at *8 (S.D.N.Y. May 31, 2007) ("It is not fatal to the complaint that Relator does

3 not specify who exactly made the certification on behalf of the company. . . ."); *United States ex rel.*

4 *Roby v. Boeing Co.*, 184 F.R.D. 107, 110–11 (S.D. Ohio 1998) (it was sufficient to identify the corporate

5 party; identification of specific employees was unnecessary). That is because this information is plainly

6 within Falk's knowledge already—and therefore not required by Rule 9(b). *See, e.g.*, *Polukoff*, 895 F.3d

7 at 745 (relator need not plead "which employees handle federal billing for procedures" because the

8 defendant "no doubt, knows" who they are and "'Rule 9(b) does not require omniscience'" but simply

9 "'enough specificity to put defendants on notice as to the nature of the claim'" (quoting *Williams v.*

10 *Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012))).

11 **IV.    Falk is Liable for Causing the Submission of False Claims.**

12        In a one-paragraph argument citing no authority, Falk says the claims against it should be

13 dismissed because the SAC does not specifically allege Falk manufactured or sold Apriso in the U.S. or

14 submitted claims for payment to Medicare. (Mot. 14.) Falk simply ignores the statute's plain language.

15        First, Falk overlooks that the patent application itself is a false claim because it requests

16 "property." *See* § 3729(b)(2)(A); *Janssen*, 576 F. Supp. 3d at 228–29. Falk is therefore liable along with

17 its Bausch co-defendants because it owned the rights to the patent application when the fraud on the

18 Patent Office was committed. (*See* SAC ¶ 47; *see also supra* pages 10–12 & n.7.)

19        Second, the FCA's plain language makes Falk liable if it "causes" a false claim "to be presented."

20 § 3729(a)(1). The FCA also establishes liability for anyone who "makes, uses, or causes to made or

21 used, a false record or statement material to a false or fraudulent claim." § 3729(a)(1)(B). Falk does not

22 need to be the party that actually submits a claim for payment. Its clear role in the causal chain leading

23 to fraud is enough to render it liable. *See, e.g.*, *Campie*, 862 F.3d at 903.

24                                    CONCLUSION

25        Falk's motion to dismiss should be denied in its entirety. In the alternative, if the Court finds

26 any deficiency in the SAC, the Court should permit Relator to amend his pleading.

27

28
RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS        CASE NO. 3:18-CV-01496-JD

Respectfully submitted,

Dated: March 12, 2025

**HERRERA KENNEDY LLP**

By: Nicomedes Sy Herrera

Nicomedes Sy Herrera (State Bar No. 275332)
Shawn M. Kennedy (State Bar No. 218472)
Bret D. Hembd (State Bar No. 272826)
Laura E. Seidl (State Bar No. 269891)
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile:  (855) 969-2050
Email: NHerrera@HerreraKennedy.com
          SKennedy@HerreraKennedy.com
          BHembd@HerreraKennedy.com
          LSeidl@HerreraKennedy.com

**SPARACINO PLLC**
Tejinder Singh (*pro hac vice*)
1920 L Street, NW, Suite 835
Washington, DC 20036
Telephone: (202) 629-3530
Email: Tejinder.Singh@sparacinopllc.com

**BURNS CHAREST LLP**
Warren T. Burns (*pro hac vice*)
Christopher Cormier (*pro hac* vice)
Clayton Mahaffey (*pro hac vice*)
Matthew Strauser (*pro hac vice*)
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002
Email: wburns@burnscharest.com
          ccormier@burnscharest.com
          cmahaffey@burnscharest.com
          mstrauser@burnscharest.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

- 16 -

RELATOR'S OPPOSITION TO DR. FALK'S MOTION TO DISMISS    CASE NO. 3:18-CV-01496-JD