1  Nicomedes Sy Herrera (State Bar No. 275332)
   Shawn M. Kennedy (State Bar No. 218472)
2  Bret D. Hembd (State Bar No. 272826)
   Laura E. Seidl (State Bar No. 269891)
3  **HERRERA KENNEDY LLP**
   1300 Clay Street, Suite 600
4  Oakland, California 94612
   Telephone: (510) 422-4700
5  Facsimile:  (855) 969-2050
   Email: NHerrera@HerreraKennedy.com
6          SKennedy@ HerreraKennedy.com
           BHembd@ HerreraKennedy.com
7          LSeidl@ HerreraKennedy.com

8  *Attorneys for Plaintiff-Relator Zachary Silbersher*

9  [Additional Counsel on the Signature Page]

10                    **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
11                         **SAN FRANCISCO DIVISION**

12  | | |
    |---|---|
    | UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, *ex rel.* ZACHARY SILBERSHER, <br><br>  Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, <br><br> Defendants. | Case No.: 3:18-cv-01496-JD <br><br> **PLAINTIFF-RELATOR'S BRIEF IN OPPOSITION TO THE MOTION TO DISMISS FILED BY THE BAUSCH (FORMERLY VALEANT) DEFENDANTS (ECF 142)** <br><br> Hearing Date: April 24, 2025 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 11 <br> Hon. James Donato, U.S.D.J. |

- i -

RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'     CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

QUESTIONS PRESENTED AND SUMMARY OF ARGUMENT ........................................ 2

ARGUMENT ........................................................................................................................ 3

    I.    The Court Should Follow And Apply The Ninth Circuit Decision In Valeant. ........... 3

    II.   Relator Pleads Falsity Under Three Independently Sufficient Theories Of Liability ... 7

        A.    The Fraudulent Patent Applications are False Claims. ............................ 7

        B.    Defendants' Upstream Fraud Taints Downstream Claims for Payment. .... 7

        C.    Defendants Falsely Certified to "Fair and Reasonable" Pricing. .............. 9

    III.  Relator Pleads Scienter. ............................................................................ 11

    IV.  Relator Adequately Pleads Materiality. ....................................................... 14

    V.   The State Law Claims Survive. ................................................................... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Amphastar Pharms. Inc. v. Aventis Pharma SA*
  2013 WL 12139832 (C.D. Cal. Apr. 19, 2013) ........................................................................ 2

*Cellwitch Inc. v. Tile, Inc.*
  No. 19cv1315 (N.D. Cal. Nov. 2, 2023) .................................................................................. 7

*Faulkner v. Board of Trustees of Leland Stanford Junior University*
  2024 WL 4982992 (N.D. Cal. Dec. 3, 2024) ......................................................................... 10

*Gardner v. Starkist*
  2020 WL 1531346 (N.D. Cal. Mar. 31, 2020) ......................................................................... 1

*Guilfoile v. Shields*,
  913 F.3d 178 (1st Cir. 2019) .................................................................................................. 14

*Nautilus, Inc. v. Biosig Instruments, Inc.*
  572 U.S. 898 (2014) .............................................................................................................. 11

*Praxair, Inc. v. Atmi, Inc.*
  543 F.3d 1306 (Fed. Cir. 2008) ....................................................................................... 11, 12

*Silbersher v. Allergan Inc.*
  506 F. Supp. 3d 772 (N.D. Cal. 2020) ................................................................ 1, 2, 8, 9, 13

*Silbersher v. Valeant Pharms. Int'l, Inc.*
  89 F.4th 1154 (9th Cir. 2024) ...................................................................................... 1, 3, 4, 5

*United States ex rel. Campie v. Gilead Scis., Inc.*
  862 F.3d 890 (9th Cir. 2017) .......................................................................................... 2, 8, 14

*United States ex rel. Escobar v. Universal Health Servs., Inc.*
  842 F.3d 103 (1st Cir. 2016) ............................................................................................ 14, 15

*United States ex rel. Heath v. Wisconsin Bell, Inc.*,
  92 F.4th 654 (7th Cir. 2024) .................................................................................................. 15

*United States ex rel. Hendow v. Univ. of Phx.*
  461 F.3d 1166 (9th Cir. 2006) ................................................................................................. 8

*United States ex rel. K & R Limited Partnership v. Massachusetts Housing Finance Agency*
  530 F.3d 980 (D.C. Cir. 2008) ............................................................................................... 10

*United States ex rel. Modglin v. DJO Global Inc.*
  114 F. Supp. 3d 993 (C.D. Cal. 2015) ................................................................................... 12

*United States ex rel. Schutte v. SuperValu Inc.*
  598 U.S. 739 (2023) .......................................................................................................... 3, 10

*United States ex rel. Silbersher v. Allergan, Inc.*
   2025 WL 325761 (9th Cir. Jan. 29, 2025) ..................................................................................4

*United States ex rel. Silbersher v. Janssen Biotech, Inc.*
   576 F. Supp. 3d 212 (D.N.J. 2021) ....................................................................... 1, 7, 8, 13, 14

*United States ex rel. Silingo v. Wellpoint, Inc.*
   904 F.3d 667 (9th Cir. 2018) ..................................................................................................13

*United States ex rel. Swoben v. United Healthcare Ins. Co.*
   848 F.3d 1161 (9th Cir. 2016) ................................................................................................13

*United States v. Allergan, Inc.*
   46 F.4th 991 (9th Cir. 2022) .....................................................................................................1

*United States v. Ehrlich*
   643 F.2d 634 (9th Cir. 1981) ..................................................................................................10

*United States v. Mabee*
   765 F.3d 666 (6th Cir. 2014) ....................................................................................................6

*United States v. McKesson Corp.*
   2020 WL 4805034 (N.D. Cal. Aug. 18, 2020) .......................................................................10

*United States v. Strock*,
   982 F.3d 51 (2d Cir. 2020) .....................................................................................................14

*Universal Health Servs., Inc. v. United States ex rel. Escobar*
   579 U.S. 176 (2016) ................................................................................................... 2, 10, 14

*Weil v. Raisin Elementary Sch. Dist.*
   2021 WL 6010137 (E.D. Cal. Dec. 20, 2021) ..........................................................................1

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*
   953 F.3d 1108 (9th Cir. 2020) ................................................................................................10

**STATUTES**

31 U.S.C. § 3729(a)(1) ...................................................................................................................7

31 U.S.C. § 3729(b)(1) ...................................................................................................................3

31 U.S.C. § 3729(b)(2)(A) .............................................................................................................7

31 U.S.C. § 3730(e)(4)(B) .............................................................................................................7

Cal. Gov't Code § 12652 ..............................................................................................................15

Tex. Hum. Res. Code § 36.002 ....................................................................................................15

**INTRODUCTION**

Relator submits this opposition to the motion to dismiss, (ECF 142), filed by defendants Bausch Health Companies Inc. (f/k/a Valeant Pharmaceuticals International, Inc.), Valeant Pharmaceuticals International, Salix Pharmaceuticals, Ltd., and Salix Pharmaceuticals, Inc. (collectively, "Bausch") (Bausch and Dr. Falk Pharma GmbH together, "Defendants"). For brevity, Relator refers to and incorporates the facts and summary of Relator's three theories for liability set forth in Relator's opposition to the motion to dismiss filed by co-defendant Dr. Falk Pharma GmbH, (ECF 151). Relator uses defined terms here consistently with their usage in that opposition.

This Court previously dismissed this action under the FCA's public disclosure bar, and the Ninth Circuit reversed, holding that the public sources collectively do not disclose substantially the same fraud alleged by Relator. *See Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1168-69 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 140 (2024). In its renewed motion to dismiss, Bausch runs straight back to its failed public disclosure argument, attempting to circumvent the Ninth Circuit's controlling decision by pointing to additional documents that Bausch claims disclosed the fraud. Bausch had access to all these documents five years ago, but it offers no excuse for its failure to raise them then, despite having asked the Court to take judicial notice of 20 documents in support of its initial motion to dismiss. ECF 37 & 37-1 through -20; *see, e.g.*, *Gardner v. Starkist*, 2020 WL 1531346, at *3–4 (N.D. Cal. Mar. 31, 2020) (denying second motion to dismiss based on argument that "could have been raised" in the first motion); *Weil v. Raisin Elementary Sch. Dist.*, 2021 WL 6010137, at *2 (E.D. Cal. Dec. 20, 2021) (same). In any event, Bausch's belated arguments merely put a new saddle on a dead horse: they don't materially add anything to Bausch's old (failed) public disclosure arguments. Now, as then, the public disclosures do not reveal "substantially the same" fraud alleged in the SAC.

Bausch fares no better in contesting the elements of liability. Multiple courts have issued well-reasoned decisions sustaining similar allegations and rejecting the arguments Bausch makes here. *See United States ex rel. Silbersher v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 228-30 (D.N.J. 2021); *Silbersher v. Allergan Inc.*, 506 F. Supp. 3d 772, 826 (N.D. Cal. 2020), *rev'd on other grounds and remanded sub nom. United States v. Allergan, Inc.,* 46 F.4th 991 (9th Cir. 2022); *Amphastar Pharms.*

- 1 -

| RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS' MOTION TO DISMISS | CASE NO. 3:18-CV-01496-JD |
|---|---|

*Inc. v. Aventis Pharma SA*, 2013 WL 12139832, at *3 (C.D. Cal. Apr. 19, 2013), *vacated on other grounds*, 2015 WL 4511573 (C.D. Cal. July 20, 2015), *vacatur aff'd*, 856 F.3d 696 (9th Cir. 2017). Those decisions are correct because—although the FCA is not an all-purpose fraud statute, *see Universal Health Servs., Inc. v. United States ex rel. Escobar,* 579 U.S. 176 (2016)—controlling precedent since confirm that as a specific anti-fraud statute intended to protect the public fisc, the FCA should be construed "broadly" to "'reach all types of fraud, without qualification, that might result in financial loss to the Government.'" *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (citation omitted). In expressing its views on the value and importance of Relator's *qui tams*, the State of California rejected drug companies' attempts to deflect from their unlawful conduct by making baseless accusations against Relator:

> Silbersher's "suits, if successful, may set an important precedent that would discourage drug companies from taking advantage of the *ex parte* nature of patent proceedings by withholding or misrepresenting material information relating to patentability—and thereby significantly reduce the amount governments and insurers pay for important medicines. …
>
> Mr. Silbersher's suits are neither 'parastic' nor 'opportunistic.' … We therefore welcome the efforts of relators like Mr. Silbersher to help identify instances where drug patents are not just invalid, but fraudulent[.]

*Allergan*, 506 F. Supp.3d at 783-84(quoting Statement of Interest, No. 18-cv-3018, ECF 133).

The proper focus of this litigation, and the only material issues in the case, therefore center around Defendants' misconduct in defrauding the Government out of hundreds of millions of dollars.[2]

## QUESTIONS PRESENTED AND SUMMARY OF ARGUMENT

Bausch's motion to dismiss presents four questions.

---

[2] Bausch alludes to the attempt by one of several petitioners that Relator represented in the *inter partes* review, Flat Line Capital, to intervene in the appeal of this case. (Mot. 1) This is irrelevant to any issues Defendants present, and Bausch does not suggest otherwise. Indeed, unclean hands (even if it exists) is not a defense to a *qui tam* action. *See, e.g., United States v. Ctr. for Diagnostic Imaging, Inc.,* 2011 WL 6300174, at *3 (W.D. Wash. Dec. 16, 2011). Moreover, Bausch does not tell the Court that the Ninth Circuit summarily rejected Flat Line's attempt to intervene. *See* No. 20-16176, Dkt. 102. The Ninth Circuit's rejection was for good reason, as explained in Relator's responsive filings, No. 20-16176, Dkt. 39-1 through -6 (demonstrating no ethical violations); and the *amicus* brief by Taxpayers Against Fraud Education Fund, *id.* Dkt. 27 at 18 n.4 (any potential ethical concerns "do not warrant dismissing a meritorious FCA claim and allowing a fraud on the government to go without redress."). Finally, Flat Line has not intervened in this Court, and any then-extant issues it had with Relator have been resolved.

- **Question 1**: Does the FCA's public disclosure bar require dismissal of the SAC?

  **Answer**: No, the Ninth Circuit's decision in *Valeant*, 89 F.4th 1154, determined that the disclosures Bausch relies upon are not "substantially the same" as the fraud alleged in the SAC. Bausch's new information is redundant of information relied upon five years ago.

- **Question 2**: Does Relator adequately plead false claims?

  **Answer**: Yes. Relator adequately pleads that the fraudulent patent applications are qualifying claims for "property." Moreover, there are reliable indicia that false claims for payment also have subsequently been submitted. Prior decisions in legally indistinguishable cases, including *Janssen* and *Allergan*, have all endorsed Relator's liability theories.

- **Question 3**: Has Relator sufficiently pleaded scienter with respect to Bausch?

  **Answer**: Yes. The FCA does not require specific intent, and liability attaches for actual knowledge, reckless disregard, and deliberate ignorance. 31 U.S.C. § 3729(b)(1). The SAC includes sufficient allegations that, through its patent attorneys, executives, or agents, each Bausch defendant was "conscious of a substantial and unjustifiable risk" that a fraudulent patent was acquired, listed in the Orange Book, and asserted in litigation against generics. *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023). Subsequent claims for payment therefore incorporated monopoly prices excluding generic competition.

- **Question 4**: Has Relator sufficiently pleaded materiality?

  **Answer**: Yes. For the false claim relating to the patent application, the "without food" limitation was the reason the '688 patent was granted, so prior art that speaks directly to this claim limitation is highly material. Regarding the downstream claims for payment, the price the Government pays—and whether it pays for a generic or a branded drug—is material to Government payment decisions because the Government wants to pay less and favors the availability and use of generics.

**ARGUMENT**

**I.    The Court Should Follow and Apply the Ninth Circuit Decision in Valeant.**

The Ninth Circuit held, point-blank, that "the public disclosure bar [was] not triggered" in this action. *Valeant*, 89 F.4th at 1169. The court's subsidiary holdings included that the IPR proceedings

- 3 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'        CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

invalidating the '688 patent do not fall within the public disclosure bar's scope, *id*. at 1165-66, and that the purported public disclosures "do not collectively disclose a combination of facts sufficient to permit a reasonable inference of fraud," *id*. at 1167. The court explained that, although "the scattered qualifying public disclosures may each contain a piece of the puzzle, … when pieced together, they fail to present the full picture of fraud." *Id*. at 1168. For example, although two disparate patent prosecution dockets contained conflicting representations, that was not enough to publicly disclose the conflict between the two: it was the Relator's *identification* of the conflict that was the "critical fact necessary for scienter"— and no purported disclosure affirmatively identified such conflict. *Id*. Similarly, although Bausch pointed to a Law360 article stating that two claims in one of the relevant patents were obvious, the Ninth Circuit concluded there was no public disclosure, because the article did "not disclose—nor even imply—that [Bausch] knowingly withheld information when applying for" the patent. *Id*. And "none of the qualifying disclosures … makes any mention of the Otterbeck Patents, much less disclose anything about the validity of these patents. … Silbersher filled the gaps by stitching together the material elements of the allegedly fraudulent scheme." *Id*.; *see also United States ex rel. Silbersher v. Allergan, Inc.*, 2025 WL 325761, at *2 (9th Cir. Jan. 29, 2025) (explaining that "[t]he court in *Valeant* determined that Silbersher's expertise brought those pieces of the puzzle together," and that the disclosure of the innocuous facts on their own "did not trigger the public disclosure bar").

Despite *Valeant*'s holding, Bausch seeks to re-introduce the full IPR decision under the second and third public disclosure channels because the IPR decision can be retrieved from the Patent Office's electronic docket website (similar to, but more cumbersome than PACER), (ECF 142-4), and was hyperlinked in the Law360 article. This argument, however, runs afoul of the Ninth Circuit's holdings that the public disclosure bar does not apply, and that IPRs do not fall within the scope of the public disclosure bar unless the Government is a party to the proceedings. *Valeant*, 89 F.4th at 1165-66. The Ninth Circuit did not hold that IPRs fall outside the public disclosure bar because of where they appear on the Internet; it held that these proceedings don't qualify as public disclosures because of their underlying nature. *Janssen* reached the same conclusion, holding that IPRs decisions should not be considered under channel (ii), because doing so would "negate evident Congressional intent." 576 F.

- 4 -

RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'  
MOTION TO DISMISS

CASE NO. 3:18-CV-01496-JD

1  Supp. 3d at 225. Otherwise, all judicial decisions, including in cases in which the government is not a
2  party, would be disclosures under channel (ii), because they are generally available on PACER.
3  Similarly, a hyperlink to the IPR decision in a Law360 article is not a channel (iii) disclosure because it
4  is not "news media," even if the text of the article *itself* qualifies.

5  Even if the Court were to consider the IPR decision (which would be error), the result would be
6  the same. The Ninth Circuit recognized the IPR decision discloses, *at most*, that the '688 patent was
7  invalid as obvious—not that it was tainted by fraud. *See Valeant*, 89 F.4th at 1162. The Court explained:
8  "An IPR does not decide whether an inventor obtained a patent wrongfully—by committing fraud, for
9  example." *Id.* at 1161. Going further, the Court observed that the mere disclosure that the '688 patent
10 was invalid as obvious is not "substantially the same" as Relator's fraud allegation that Bausch "withheld
11 material information demonstrating that [Bausch's] claimed granulated mesalamine formulation would
12 be effective when administered without food." *Id.* at 1162, 1169. A finding that a patent is invalid does
13 not disclose that prior art was affirmatively *withheld* from the Patent Office. *Id.* at 1168. Indeed, the IPR
14 decision does not mention any withholding of prior art, much less an intentional one that would
15 constitute fraud. In its first motion, Bausch argued that the Law360 article's description of the IPR
16 decision constituted a public disclosure. This discredited argument essentially is the same point Bausch
17 now tries to make again.

18 More important, the IPR decision says nothing about the import of the representations during the
19 '344 patent's prosecution, the Otterbeck patents, or the ways Defendants used the '688 patent to
20 overcharge the Government. All these allegations came from Relator—and the Ninth Circuit pointed to
21 them to explain why the public disclosure bar does not apply. None of those facts have changed, and so
22 the Ninth Circuit's decision still controls.

23 Bausch says that Relator "conceded" that the IPR decision would bar his suit. (Mot. 4-5 (citing
24 Order, ECF 109, citing ECF 102, at 12:23-13:2) During the first motion to dismiss, Relator expressly
25 stated that much of his "investigation, and the allegations of fraud here, were *not* disclosed in the IPR,"
26 and that the key facts described above "were not raised in the underlying IPR, or anywhere." (ECF 45,
27 at 2, 14; *see also id.* at 10 ("The IPR may have invalidated the '688 Patent, it contained *no findings* the

- 5 -

28 RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'       CASE NO. 3:18-CV-01496-JD
   MOTION TO DISMISS

1  patent was fraudulently procured[.]")) Counsel recognized the 2010 amendments' great importance, and
2  that is why counsel stated during the August 8, 2019, hearing that "[b]efore 2010, there would be no
3  case." (ECF 102, at 12:24)

4  The 2010 amendments went beyond the "Government party" limitation that excludes IPRs.
5  Congress also changed "based upon" to "substantially the same."[3] The Ninth Circuit has now confirmed
6  that the purported disclosures are not "substantially the same" as Relator's fraud allegations. Not only
7  did Relator raise this argument in his motion papers, he explicitly reiterated it again during the hearing,
8  saying that Defendants "cannot show a substantially similar allegation or transaction, even if you did
9  consider their sources to be enumerated within the statute." (*Id.*, at 8:15) Thus, counsel's statements at
10 the hearing about what would have happened hypothetically if this action had been filed before 2010,
11 should not be interpreted to establish waiver of Relator's argument that any purported disclosures in the
12 IPR decision are not "substantially the same" as Relator's fraud allegations. *See United States v. Mabee*,
13 765 F.3d 666, 672-73 (6th Cir. 2014) ("ambiguous" admissions "did not demonstrate the sort of plain,
14 positive concurrence … needed to establish a waiver ….").

15 Aside from the IPR decision, Bausch submits two additional articles—*Business Wire* and
16 *Seeking Alpha*—that generally describe a Paragraph IV certification from Lupin, a potential generic
17 competitor, stating Lupin's belief that one of the Otterbeck Patents was invalid. (Mot. 5-6.) But just like
18 the Law360 article, these articles do not describe whether any material prior art was withheld, or any
19 other facts suggesting fraud. Indeed, the articles reveal only that Lupin alleged the patents to be invalid,
20 not that they were adjudicated to be so. They certainly are not "substantially the same" as the detailed
21 allegations in the SAC concerning the Otterbeck Patents, (¶¶ 102-118), or the contradictions with the
22 '344 patents, (SAC ¶¶ 90-91).

23 Because there has been no public disclosure, the Court need not decide whether Relator is an
24 original source. Nevertheless, Relator's pharmaceutical patent expertise is qualifying "knowledge" that

---

[3] Relator argued on appeal that the shift in 2010 from "based upon" to "substantially the same" was intended to "demand a greater degree of similarity." The Ninth Circuit did not agree with this argument, but it did agree with Relator's interpretation of "substantially the same" as it applies to this case.

- 6 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'     CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

is "independent" and "materially adds to" any public disclosures, and he voluntarily provided "information" to the Government before filing this suit. Relator is an original source under the statute's plain text. Bausch says that Relator lacks "direct" and "independent" knowledge. (Mot. 7.) But the requirement of "direct" knowledge was removed from the statute in 2010. Bausch also argues that Relator's disclosures were not "voluntary" because he was obligated to disclose the alleged fraud. But Relator did not work for the Government, as did the relators in the decisions upon which Bausch relies. Relator therefore had no obligation to report the fraud, but he did so voluntarily on February 6, 2018, before filing this action, meeting the requirements of 31 U.S.C. § 3730(e)(4)(B). (SAC ¶ 41.) Nor did Relator have any obligation to use these allegations made in the SAC in the IPR, because fraud arguments cannot be raised in an IPR. *See* 35 U.S.C. § 311(b) (an IPR petitioner can seek to invalidate a patent "only on the basis of prior art consisting of patents or printed publications"); *see also Cellwitch Inc. v. Tile, Inc.*, No. 19cv1315, at *3-4 (N.D. Cal. Nov. 2, 2023) (ECF 221).

## II. Relator Pleads Falsity Under Three Independently Sufficient Theories of Liability.

### A. The Fraudulent Patent Applications are False Claims.

Bausch does not refute Relator's first liability theory: Fraudulent patent applications are themselves false claims. (SAC ¶ 34.) A "claim" is "any request or demand, whether under a contract or otherwise, for money or property." 31 U.S.C. § 3729(b)(2)(A). A patent application is a "request" for a patent, which is "property."[4] The SAC alleges that Defendants' patent applications used false statements to obtain property Defendants were not entitled to have. (SAC ¶¶ 134–36, 141; *see also* ¶¶ 82–118.) Because the applications constitute false claims, Defendants are liable for damages that the Government sustained "because of" the false claims. 31 U.S.C. § 3729(a)(1); *see Janssen*, 576 F. Supp. 3d at 228. This is an independently sufficient basis for FCA liability that eviscerates Defendants' other arguments.

### B. Defendants' Upstream Fraud Taints Downstream Claims for Payment.

The SAC alleges that Defendants made false statements or material omissions to: (1) the Patent Office during patent prosecution (SAC ¶¶ 134-36, 141-42; *see also* ¶¶ 77-118); and (2) the FDA, when

---

[4] Patents are property. *SeeOil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 338 (2018)*; Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 375 (2019).

- 7 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'   CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

1  Defendants listed the fraudulent patents in the Orange Book, as part of a scheme to exclude generic
2  competitors (SAC ¶¶ 64-70, 129-31, 145, 150, 159, 161, 168). These upstream misrepresentations to the
3  Government tainted downstream claims for payment submitted to the Government, rendering each of
4  the subsequent claims for payment "false or fraudulent" under the FCA. *Campie*, 862 F.3d at 902 ("In
5  other words, subsequent claims are false because of an *original fraud* (whether a certification or
6  otherwise)." (quoting *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1173 (9th Cir.
7  2006))) Courts have confirmed that materially indistinguishable allegations of patent fraud support
8  fraudulent inducement liability. *See Janssen*, 576 F. Supp. 3d at 229 (*qui tam* relator's allegations that
9  defendant drug companies' upstream misrepresentations to the government in obtaining a fraudulent
10 patent "tainted subsequent claims for payment" for the drug pleaded viable FCA claims); *accord*
11 *Allergan,* 506 F. Supp. 3d at 824-26 (relying on *Campie*).

12      Bausch argues that Relator "fails to describe *any* claim for payment for Apriso." (Mot. 9.) Not
13 so. Relator alleges that *every* claim for payment made to Medicare, Medicaid, and the direct
14 government purchasers, such as the VHA, are false because they incorporated unlawfully inflated
15 prices for Apriso caused by the unlawful exclusion of generic competitors. (SAC ¶¶ 134-62) In this
16 circumstance, the law requires plaintiffs to plead the upstream fraud with particularity, but does not
17 require them also to identify specific claims for payment. *See Allergan,* 506 F. Supp. 3d at 822-23
18 (Rule 9(b) does not require a relator "identify representative examples of false claims to support every
19 allegation; rather, it is sufficient to allege particular details of a scheme to submit false claims paired
20 with reliable indicia that lead to a strong inference that claims were actually submitted." (cleaned up)).

21      Bausch also denies the "causal connection" between Defendants' misrepresentations to the
22 Patent Office and the Government's payment of money. (Mot. 11.) *Campie* holds otherwise. There, the
23 court sustained allegations that the defendant used falsified testing data to deceive the FDA into
24 approving a noncompliant manufacturing facility for a drug, tainting subsequent claims for payment to
25 government healthcare programs. 862 F.3d at 896, 899, 904. It was irrelevant that the deception was
26 directed at the FDA, as opposed to the paying agencies, because "[i]t is not the distinction between the
27 agencies that matters, but rather the connection between the regulatory omissions and the claim for

28

- 8 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'      CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

payment." *Id*. at 903. The upstream misconduct was "integral to a causal chain leading to payment"—and that was enough to support liability. *Id*. at 902-03 (citation omitted).

This case is on all fours with *Campie*. Defendants' misrepresentations to the Patent Office and the FDA made two sets of false representations to the Government: (1) intentionally making false representations designed to induce the Patent to grant the '688 Patent and (2) fraudulently listing the '688 Patent in the FDA's Orange Book. These misstatements were integral to the causal chain that led the Government to overpay for Apriso because they allowed Defendants to unlawfully prevent generic competition and thus maintain monopoly prices. *Cf. Allergan*, 506 F. Supp. 3d at 823 (relying on *Campie* to hold that complaint stated a claim on indistinguishable facts).

### C. Defendants Falsely Certified to "Fair and Reasonable" Pricing.

The SAC alleges that each claim submitted to government programs that directly purchased Apriso because of the drug's listing in the Federal Supply Schedule (FSS) or under the Federal Acquisition Regulations are false claims because Defendants implicitly certified to government payors that Apriso's price was "fair and reasonable," omitting that the monopoly market prices were unlawfully inflated by fraud. (SAC ¶ 33.)

This case resembles *Escobar*, where the Supreme Court held that claims for payment using billing codes corresponding to certain services would cause anyone viewing the claims to "probably—but wrongly—conclude that" the people providing the services were properly trained and qualified. 579 U.S. at 190-91. It was irrelevant that the claims themselves said nothing about training or qualifications. *Id*.

The same is true here. "Defendants' certification that the prices of the drugs they were listing were 'fair and reasonable' misleadingly suggested that they held valid patents on those drugs that allowed them to charge the government higher prices as a result of the monopolies they held on them." *Allergan*, 506 F. Supp. 3d at 823. Those representations were prerequisites to claiming reimbursement for Apriso from Government health care programs. Anybody seeing the price of Apriso would therefore conclude—wrongly—that the price was not based on fraud.

1  More broadly, courts have held that when defendants engage in upstream fraud relating to pricing, that conduct violates the FCA. *See, e.g.*, *United States v. Ehrlich*, 643 F.2d 634, 635-37 (9th Cir. 1981) (holding that false cost certifications that inflated the price the Government paid violated the FCA). Indeed, one of the FCA's original purposes was to remedy situations in which the Government was "charged exorbitant prices for goods." *Escobar*, 579 U.S. at 182 (citation omitted).

Bausch seeks to discredit *Janssen* and *Allergan* because, according to Bausch, the "fair and reasonable" certification is too "imprecise" and "discretionary." (Mot. 10 & n. (quoting *United States v. McKesson Corp.*, 2020 WL 4805034, at *5 (N.D. Cal. Aug. 18, 2020)).) But many discretionary determinations or matters of opinion—including medical necessity, for example—underpin FCA actions. *See, e.g.*, *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1112-13, 1117 (9th Cir. 2020); *see also Schutte*, 598 U.S. at 756 (explaining that even statements involving "legal analysis remain actionable if they carry with them by implication an assertion about facts that justify the speaker's statement" (cleaned up)). More broadly, even if a determination is discretionary and turns on the totality of the circumstances, that does not give parties license to lie about what those circumstances are. Here, even if a "fair and reasonable" price yields to some discretion, that discretion does not countenance that the price is an artificially inflated monopoly price based on fraud that unlawfully excludes competitors. For this same reason, none of Defendants' other cases apply. Unlike *Faulkner v. Board of Trustees of Leland Stanford Junior University*, 2024 WL 4982992 (N.D. Cal. Dec. 3, 2024), where the FCA complaint was based upon failing to charge "reasonable" rates, *id.* at *6-7, here the allegation is far more egregious—*i.e.*, the difference between charging *monopoly* prices and market prices when Defendants knew that the only reason they were able to charge monopoly prices was because of their false statements and misleading omissions to the Government. (SAC ¶¶ 139-140.) Similarly, in *United States ex rel. K & R Limited Partnership v. Massachusetts Housing Finance Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008), the relator failed to explain why the defendant's interpretation of the contract was unreasonable, whereas here, Defendants knew that they were fraudulently charging monopoly prices over market prices based on the wrongful exclusion of generic competitors.

- 10 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'    CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

### III.  Relator Pleads Scienter.

Bausch claims that Relator improperly imputes the knowledge of some defendants to all defendants. (Mot. 12.) At the outset, Bausch's argument is irrelevant because Rule 9(b)'s heightened pleading standard does not apply to a defendant's statement of mind—"[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). And knowledge includes reckless disregard or deliberate ignorance. 31 U.S.C. § 3729(b)(1).

Even so, the SAC imputes the knowledge of *individuals* identified as carrying a duty of candor and good faith to specific defendants. For example, the SAC pleads that one of the inventors of the '688 patent, Lorin Johnson, knew of the inconsistent positions taken between the '688 patent and the '344 patent, because he was a named inventor for both patents. (SAC ¶¶ 90-91) Mr. Johnson also testified in the IPR that when Salix acquired a license to the rights under the patents covering Apriso, including the Otterbeck patents,[5] both Salix and Falk "shared all of the data" and "both had access to all of the data for [each company's] respective territories," *GeneriCo, LLC v. Dr. Falk Pharma*, IPR2016-00297 (P.T.A.B. Sept. 14, 2016), Ex. 1067, 67:9-17 (Herrera Decl. Ex. F), supporting a reasonable inference that Falk informed Mr. Johnson of the Brunner and Marakhouski studies. Similarly, when Salix Pharmaceuticals, Ltd. executed the Power of Attorney for the '688 patent, the prosecuting attorney for that patent, Jonathan Sparks, acted as Salix's agent. The SAC alleges both knowledge and intent to deceive by Mr. Johnson and Mr. Sparks. (*See* SAC ¶¶ 90-91.) Accordingly, both Mr. Johnson's and Mr. Sparks's knowledge and intent to deceive can be imputed to Salix Pharmaceuticals, Ltd., *See Praxair, Inc. v. Atmi, Inc.*, 543 F.3d 1306, 1316-17 (Fed. Cir. 2008) (finding inequitable conduct—which requires a higher standard than what applies to the FCA claims here—against Praxair based on knowledge and intent to deceive by two individuals, an outside attorney and inventor, that Praxair did not employ), *abrogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014). Indeed, Mr. Johnson's knowledge can be imputed to all the Bausch defendants given that, within the public filings of the IPR specifically referenced in the

---

[5] This occurred well before the prosecution of the patent resulting in the '688 patent. (SAC ¶ 46; *see also* Herrera Decl. Ex. G)

SAC, (¶ 17 (citing IPR2016-00297)), Mr. Johnson identified himself as a founder of Salix without distinguishing between any of Salix's corporate entities, *GeneriCo*, Ex. 2036 ¶ 4 (Herrera Decl. Ex. E)

Bausch also suggests that the SAC fails to plead scienter because it merely suggests that certain individuals may not have known certain scientific facts. (Mot. 12-13.) But unlike *United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993 (C.D. Cal. 2015), where the court found the complaint failed to plead scienter because there was no rule, law, or regulation that required the disclosure at issue, *id.* at 1024, the SAC here undisputedly pleads that Defendants had an affirmative duty of candor and good faith prescribed by law to disclose material prior art, *see e.g.*, SAC ¶ 73.

Bausch also claims that the SAC suffers from group pleading, (Mot. 14-15), but that overlooks specific pleadings—identified *supra*—distinguishing among the Bausch defendants.[6] For example, the SAC pleads that defendant Salix Pharmaceuticals, Ltd. participated in prosecuting the '688 patent where the false statements were made (*see supra* at 11-12), and defendant Salix Pharmaceuticals, Inc. repeatedly asserted the '688 and Otterbeck patents in litigation as part of conduct carrying out the asserted fraud, (SAC ¶¶ 119-133). The IPR identified in the SAC, IPR2016-00297, also identifies defendant Salix Pharmaceuticals, Ltd. as both a real-party-in-interest for the '688 patent and a wholly owned subsidiary of defendant Valeant Pharmaceuticals Int'l, Inc., *GeneriCo*, Case No. IPR2016-00297, Paper 6, at 2 (Dec. 30, 2015) (Herrera Decl. Ex. A. The SAC also pleads that by defending invalidity challenges to the '688 patent—including against prospective generics who had filed ANDAs for Apriso—Salix Pharmaceuticals, Ltd. further perpetuated the fraud, (SAC ¶¶ 119-33). Contrary to Bausch's suggestion (*see* Mot. 12), it is irrelevant that some of the Bausch defendants may not have participated in the '688 patent prosecution. *See Praxair*, 543 F.3d at 1316-17 (Praxair liable based on agent's conduct even though it "was not involved in the prosecution of the [relevant] patent").[7]

---

[6] Relator respectfully refers to his opposition, filed concurrently herewith, against defendant Dr. Falk Pharma GmbH's motion to dismiss that identifies specific allegations against Dr. Falk.

[7] Bausch's cases are distinguishable because they identified group pleading deficiencies that failed to distinguish between *individual* defendants, not affiliated corporate defendants. *See United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011) ("The Complaint provides no additional detail as

Indeed, *Janssen* and *Allergan* both upheld pleadings that treated affiliated corporate entities (with separate entities holding the patents and others holding rights under the FDA to market and sell the drug, for example) with a similar level of specificity as alleged here. *See Janssen,* 576 F. Supp.3d at 217 & n.2; *Allergan*, 506 F.Supp.3d at 778-782.

Finally, even if the SAC groups some defendants together in certain allegations, such as Bausch Health Companies Inc. (formerly known as Valeant Pharmaceuticals International, Inc.) and Valeant Pharmaceuticals International, the SAC satisfies Rules 8 and 9. "[A] complaint need not distinguish between defendants that had the exact same role in a fraud." *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018); *see also United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). ("There is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct."). Indeed, the most recent 10-K Annual Report for Bausch Health Companies Inc. indicates that "Salix" is now treated as a "Segment" within the company.[8] Thus, all the Valeant and Salix defendants have either merged with, or are treated as part of, Bausch.

---

to the nature of the Individual Defendants' involvement in the fraudulent acts, but simply attributes wholesale all of the allegations against Corinthian to the Individual Defendants."); *Destfino v. Reisweig*, 630 F.3d 952, 954, 958 (9th Cir. 2011); *First-Citizens Bank & Tr. v. HSBC Holdings plc*, 2024 WL 115933, at *12-13 (N.D. Cal. Jan. 10, 2024) (ordering plaintiff to "clean up its allegations about the individual defendants" only after plaintiff had said that it could do so); *United States ex rel. Juan v. Regents of Univ. of Cal.*, 2018 WL 6168529, at *1-2 (N.D. Cal. Nov. 26, 2018). And in *United States v. Valley Campus Pharmacy, Inc.*, the court did not dismiss the complaint for purported group pleading. *See* 2021 WL 4816648, at *11 (C.D. Cal. June 23, 2021).

Finally, Bausch cites *United States v. Safran Group,* 2017 WL 235197 (N.D. Cal. Jan. 19, 2017), which refused to relax the Rule 9(b) standard based upon allegations regarding corporate structure exclusively within defendants' possession. *Id.* at *9. *Safran* relied on *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010), which was filed in 2008 and addressed the pre-2010 version of the FCA and correspondingly held, "the FCA is geared primarily to encourage insiders to disclose information." Under the 2010 amendment to the FCA, that dicta from *Ebeid* is no longer applicable, because Congress removed the "direct" knowledge requirement to encourage all relators, not just insiders, to stop fraud.

[8] *See* Herrera Decl. Ex. H; Former Valeant Pharmaceutical International appears to have been a merging entity to effectuate the Agreement and Plan of Merger, dated February 20, 2015, where Bausch acquired and merged the Salix defendants. *See* Herrera Decl. Ex. I (April 1, 2015 Form 8-K of Salix Pharmaceuticals, Ltd.).

- 13 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS' MOTION TO DISMISS                    CASE NO. 3:18-CV-01496-JD

## IV. Relator Adequately Pleads Materiality.

Bausch argues that Relator has not sufficiently alleged materiality, (Mot. 13-14), but *Janssen* and *Allergan* rejected those arguments in legally indistinguishable cases. *See Janssen*, 576 F. Supp. 3d at 130; *Allergan*, 506 F. Supp. 3d at 827. In analyzing materiality under the FCA, the Ninth Circuit asks whether the misrepresentation has "a natural tendency to influence, or be capable of influencing, the payment of money or property." *Campie*, 862 F.3d at 904-05 (quoting 31 U.S.C. § 3729(b)(4)); *see also United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016) ("Materiality is more likely to be found where the information at issue goes 'to the very essence of the bargain,'" quoting *Escobar*, 579 U.S. at 193 n.5) Of course, when a false statement *actually* causes the Government to pay more, or the defendant to receive more, then materiality is established *a fortiori*. In cases arising from fraudulent inducement, courts hold that materiality can be established upstream, where the fraud occurs—or downstream, where payments occur. *See United States v. Strock*, 982 F.3d 51, 62 (2d Cir. 2020).

Defendants' fraud satisfies this element at both junctures. First, but for Defendants' concealment of critical prior art, the '688 patent would not have been granted. (SAC ¶¶ 10-14, 17-18, 20, 85-91-101.) This is plainly apparent because the Patent Office invalidated the patent once it learned of the prior art that was withheld. (*Id.* ¶¶ 17-18.) And the SAC adequately pleads that disclosure of the prior art described in ¶¶ 102-118 would have also led the Patent Office to reject the applications for the Otterbeck Patents as well. Moreover, these fraudulently obtained patents were material to payment decisions because they prevented generic competition that would have dramatically reduced the cost to government healthcare programs. (SAC ¶¶ 163-69) Indeed, as explained above, Defendants' conduct was not merely material to this overcharging—it *caused* it.

Courts have found materiality adequately alleged in indistinguishable cases where fraudulent patent schemes blocked generic competition and inflated drug prices. *See Janssen*, 576 F. Supp. 3d at 230 (complaint pleaded materiality because "Defendants' misrepresentations to the PTO and other government agencies had a natural tendency or capacity to influence government decisions to … pay inflated prices"); *Allergan*, 506 F. Supp. 3d at 827 ("Because price goes to the 'essence of the bargain'

- 14 -

RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'    CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

1   between the government and drug manufacturers, the Court finds that Relator has adequately alleged
2   that Defendants' fraud was material for the purposes of his FCA claims."). The SAC's many examples
3   of government efforts and enforcement actions targeting fraudulent patent extensions and other
4   anticompetitive acts further demonstrate materiality. (SAC ¶ 168)

5    Bausch's incorrectly argue that continued government payments defeat materiality under
6   *Escobar* because the Government continued to pay for Apriso after this case was filed. This argument
7   fails because SAC alleges the Government was unaware of Defendants' fraud. ¶ 176. And mere
8   knowledge of allegations—as opposed to actual violations—is insufficient. *See Escobar*, 842 F.3d at
9   112 ("[M]ere awareness of allegations . . . is different from knowledge of actual noncompliance.");
10  *United States ex rel. Heath v. Wis. Bell, Inc.*, 92 F.4th 654, 665 (7th Cir. 2024), *aff'd*, 604 U.S.__, 145
11  S. Ct. 498 (Feb. 21, 2025) ("The government's knowledge of a pending lawsuit making allegations
12  simply does not indicate actual knowledge of actual violations"). Indeed, in *Campie*, the Ninth Circuit
13  noted that although the Government continued to make payments, this merely raised "matters of proof,
14  not legal grounds to dismiss relators' complaint." 862 F.3d at 906-07.

15  **V.    The State Law Claims Survive.**

16   Bausch offers no independent reason to dismiss any state claim. (Mot. 15.) Even if the federal
17  law claims fail, the prudent course would be to decline to exercise jurisdiction over the state law claims
18  and dismiss them without prejudice because state FCAs typically differ from their federal counterpart
19  (e.g., only disclosures in state venues, not federal ones, triggers the public disclosure bar). *See, e.g.*, Cal.
20  Gov't Code § 12652(d)(3). And other statutes have different elements. For instance, the Texas Attorney
21  General's office has asked Relator to inform the Court that Texas Healthcare Fraud Prevention Act is
22  broader than the FCA, including because it does not require the submission of false claims, *see* Tex.
23  Hum. Res. Code § 36.002, and has a more permissive materiality requirement.

24                                         CONCLUSION

25   Bausch's motion to dismiss should be denied in its entirety. In the alternative, if the Court finds
26  any deficiency in the Complaint, the Court should permit Relator to amend his pleading.

27
28
- 15 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'       CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

|   |   |
|---|---|
| | Respectfully submitted, |
| Dated: March 12, 2025 | **HERRERA KENNEDY LLP** |

*[signature]*

By: Nicomedes Sy Herrera

Nicomedes Sy Herrera (State Bar No. 275332)
Shawn M. Kennedy (State Bar No. 218472)
Bret D. Hembd (State Bar No. 272826)
Laura E. Seidl (State Bar No. 269891)
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile:  (855) 969-2050
Email:  NHerrera@HerreraKennedy.com
            SKennedy@HerreraKennedy.com
            BHembd@HerreraKennedy.com
            LSeidl@HerreraKennedy.com

**SPARACINO PLLC**
Tejinder Singh (*pro hac vice*)
1920 L Street, NW, Suite 835
Washington, DC 20036
Telephone: (202) 629-3530
Email: Tejinder.Singh@sparacinopllc.com

**BURNS CHAREST LLP**
Warren T. Burns (*pro hac vice*)
Christopher Cormier (*pro hac* vice)
Clayton Mahaffey (*pro hac vice*)
Matthew Strauser (*pro hac vice*)
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002
Email: wburns@burnscharest.com
            ccormier@burnscharest.com
            cmahaffey@burnscharest.com
            mstrauser@burnscharest.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*