1   Mary W. Bourke (*admitted pro hac vice*)
    Mary.Bourke@wbd-us.com
2   Alexander Wharton (*admitted pro hac vice*)
    Alexander.Wharton@wbd-us.com
3   **WOMBLE BOND DICKINSON (US) LLP**
    1313 North Market Street, Suite 1200
4   Wilmington, DE 19801
    Tel.: 302-252-4320
5

6   Christian E. Mammen (CA Bar No. 188454)
    Chris.Mammen@wbd-us.com
7   Ben Bourke (*admitted pro hac vice*)
    Ben.Bourke@wbd-us.com
8   **WOMBLE BOND DICKINSON (US) LLP**
    50 California Street, Suite 2750
9   San Francisco, CA 94111
    Tel.: 415-433-1900
10  Fax: 415-433-5530
11

12  Attorneys for Defendant Dr. Falk Pharma GmbH

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15              **SAN FRANCISCO DIVISION**

16  UNITED STATES OF AMERICA; STATES          Case No.: 3:18-cv-01496-JD
    OF CALIFORNIA, COLORADO,
17  CONNECTICUT, DELAWARE, FLORIDA,           **DEFENDANT DR. FALK PHARMA**
    IOWA, LOUISIANA, MICHIGAN,                **GMBH'S REPLY IN SUPPORT OF ITS**
18  MINNESOTA, MONTANA, NEVADA,               **MOTION TO DISMISS SECOND**
    NEW JERSEY, NEW MEXICO, NEW               **AMENDED COMPLAINT**
19  YORK, NORTH CAROLINA,
    OKLAHOMA, RHODE ISLAND,                   Hearing Date: April 10, 2025
20  TENNESSEE, TEXAS, VERMONT, AND            Hearing Time: 10:00 a.m.
    WASHINGTON; THE                           Courtroom: 11
21  COMMONWEALTHS OF                          Hon. Judge: James Donato
    MASSACHUSETTS AND VIRGINIA; AND
22  THE DISTRICT OF COLUMBIA,

23  *ex rel.* . ZACHARY SILBERSHER,

24                      Plaintiffs,

25          v.

26  VALEANT PHARMACEUTICALS
    INTERNATIONAL, INC., VALEANT
27  PHARMACEUTICALS, LTD., SALIX
    PHARMACEUTICALS, INC., AND DR.
28  FALK PHARMA GMBH,
                        Defendants.

1
2

TABLE OF CONTENTS

Page

3    I.      INTRODUCTION ...................................................................................................1

4    II.     ARGUMENT ........................................................................................................2

5    A.      Dr. Falk Pharma Should Be Dismissed Under Rule 12(b)(5) Because It Has Not
6            Been Served. ...............................................................................................2

7            1.      Dr. Falk Pharma Did Not Expressly Waive Its Rule 12(b)(5) Defense.......2

8            2.      Dr. Falk Pharma Preserved Its Rule 12(b)(5) Defense. .............................3

9            3.      Dr. Falk Pharma Did Not Waive Its Rule 12(b)(5) Defense Via Litigation
10                   Conduct.................................................................................................5

11   B.      General Allegations as to "Defendants" are Deficient. ...........................................6

12           1.      Relator Does Not Dispute that Allegations of Fraud as to "Defendants"
                     Generally Fail to Satisfy Rules 9(b) and 12(b)(6). ...................................6

13           2.      Shorn of the Collective Allegations as to "Defendants," Relator's
14                   Allegations Specifically Naming Dr. Falk Pharma Fail to State a Claim....7

15   C.      Inequitable Conduct is the Only Recognized Theory of Fraud on the Patent Office.
16           ............................................................................................................9

17   III.    CONCLUSION...................................................................................................10

18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

Page(s)

Cases

*American Ass'n of Naturopathic Physicians v. Hayhurst*,
   227 F.3d 1104 (9th Cir. 2000) ................................................. 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................... 7, 8

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007).......................................................... 7

*BHPH Capital LLC v. JV Wholesalers LLC*,
   No. CV-22-00143-PHX-DJH, 2024 WL 455038 (D. Ariz. Feb. 6, 2024)................................ 6

*Callaghan v. BMW of North America, LLC*,
   No. 13-cv-04794-JD, 2014 WL 6629254 (N.D. Cal. Nov. 21, 2014) ........................ 3

*Continental Cas. Co. v. Hardin*,
   2016 WL 11234458 (M.D. Fla. Dec. 5, 2016)................................................. 3

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ................................................. 7

*Craters & Freighters v. Benz*,
   465 Fed. App'x 719 (9th Cir. 2012) ................................................. 6

*Generico, LLC v. Dr. Falk Pharma GmbH*,
   No. IPR2016-00297, Final Written Decision, Paper 55, 2017 WL 2211672 (P.T.A.B. May 19, 2017) ................................................................. 8

*Goodstein v. Bombardier Capital, Inc.*,
   167 F.R.D. 662 (D. Vt. 1996) ................................................. 4

In *United States ex rel. Silbersher v. Janssen Biotech, Inc.*,
   576 F.Supp.3d 212 (D.N.J. 2021) ................................................. 9, 10

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ................................................. 8

*Milgard Tempering, Inc. v. Selas Corp. of America*,
   902 F.2d 703 (9th Cir. 1990) ................................................. 3

*PlayUp, Inc. v. Mintas*,
   344 F.R.D. 429 (D. Nev. 2023)................................................. 5

*Praxair, Inc. v. ATMI, Inc.*,
   543 F.3d 1306 (Fed. Cir. 2008)................................................. 8

*Rudolph v. UT Starcom, Inc.*,
No. C 07–04578 SI, 2009 WL 248370 (N.D. Cal. Dec. 2, 2009) ..................................... 3, 4, 5

*SEB Investment Management AB v. Symantec Corp.*,
No. 18-02902 WHA, 2019 WL 2491935 (N.D. Cal. June 14, 2019) ........................................ 3

*Silbersher v. Allergan Inc.*,
506 F.Supp.3d 772 (N.D. Cal. 2020) ...................................................................................... 10

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
No. 20-16256, 2023 WL 4946736 (9th Cir. Aug. 3, 2023) ................................................. 1, 3

*Therasense, Inc. v. Becton, Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011) .......................................................................................... 8, 9

*Think Computer Corp. v. Dwolla, Inc.*,
No. 13-cv-02054-EJD, 2014 WL 1266213 (N.D. Cal. Mar. 24, 2014) ................................... 3

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .................................................................................................... 6

Statutes

31 U.S.C. § 3732(a) ......................................................................................................................... 2

35 U.S.C.  §§ 102, 103 .................................................................................................................... 8

Rules

Fed. R. Civ. P. 9(b) .......................................................................................................................... 6

Fed. R. Civ. P. 12(b)(5) .............................................................................................................. 4, 5, 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 5, 6

Fed. R. Civ. P. 12(d) ........................................................................................................................ 8

Fed. R. of Evid. 201 ......................................................................................................................... 8

Regulations

37 C.F.R. § 1.56 ........................................................................................................................... 1, 9

37 C.F.R. § 42.104 ........................................................................................................................... 8

Other Authorities

4 Wright, Miller & Steinman, Federal Practice & Procedure § 1063 ................................. 2

Manual of Patent Examining Procedure 2001.01 ............................................................. 9

P.T.A.B. Trial Practice Guide (Nov. 2019)....... ...................................................... 9

## I.    INTRODUCTION

Relator Zachary Silbersher's ("Relator's") Opposition to Dr. Falk Pharma's Motion to Dismiss (D.N. 154) misstates and mischaracterizes the issues presented and the relevant analysis.

On the first issue, Relator does not dispute that he has **never served** Dr. Falk Pharma with the Summons and Complaint.  Instead, Relator improperly relies on a statement in the Ninth Circuit's ruling on Dr. Falk Pharma's appeal of its Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, which states that Dr. Falk Pharma "later informed the district court that it did not "intend to challenge [the district] court's **jurisdiction** on the basis of improper service of process." *Silbersher v. Valeant Pharms. Int'l, Inc.*, No. 20-16256, 2023 WL 4946736, at *1 (9th Cir. Aug. 3, 2023) (emphasis added).  The issue of improper service under Rule 12(b)(5) was not previously before this Court and was not before the Ninth Circuit.  Relator's other arguments (including a response to his made-up argument about Rule 4(m)'s change from 120 days to 90 days) are equally unavailing, as set forth in more detail below. Finally, Relator has made no efforts to cure this admitted lack of service.

On the second question, Relator dodges the issue of the sufficiency under Rule 9(b) of allegations of fraud against "Defendants" generally.  As noted in Dr. Falk Pharma's Motion to Dismiss, only a few paragraphs in the Second Amended Complaint ("SAC") include factual allegations specific to Dr. Falk Pharma.  All of the hundreds of factual allegations in the SAC as to "Defendants" generally are, as a matter of law, deficient under Rules 9(b) and 12(b)(6).

Finally, the third question raises particular deficiencies in the main branches of Relator's theory of the case.  Specifically, concerning "fraud on the Patent Office" during prosecution of the '688 Patent, and despite having cited extensively to the doctrine of inequitable conduct and the associated Duty of Disclosure under 37 C.F.R. § 1.56 ("Rule 56"), Relator now seeks to foster ambiguity to suggest that the FCA might impose a duty of disclosure to the United States Patent Office that is more expansive than Rule 56 (meaning that the threshold for proving fraud is, according to Relator, lower than Rule 56), and ignores controlling Federal Circuit precedent and causes serious policy implications for Patent Office practice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   ARGUMENT

### A.   Dr. Falk Pharma Should Be Dismissed Under Rule 12(b)(5) Because It Has Not Been Served.

Dr. Falk Pharma has never been served. Dr. Falk Pharma raised and preserved its Rule 12(b)(5) defense, and did not waive it.  Nor is the Rule 12(b)(5) defense subject to "law of the case." Each of Relator's arguments fails.

### 1.   Dr. Falk Pharma Did Not Expressly Waive Its Rule 12(b)(5) Defense.

First, Relator incorrectly argues that Dr. Falk Pharma expressly waived its Rule 12(b)(5) lack-of-service argument by stating in the parties' August 1, 2019 Joint Case Management Statement (D.N. 86) ("CMC Statement") that it did "not intend to challenge this court's **jurisdiction** on the basis of improper service of process."  (D.N. 86 at 2) (emphasis added).  The entire paragraph from which this quotation is taken relates to Dr. Falk Pharma's **personal jurisdiction** motion.  D.N. 43.  The specific sentence Relator now quotes responds to Relator's assertion in the CMC Statement that "The Court has **personal jurisdiction** over each of the Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process." D.N. 86 at 1 (emphasis added). The quoted statement was intended to clarify that Dr. Falk Pharma's pending **personal jurisdiction** motion was not based on the FCA's nationwide service of process statute.  At that time (as is still the case), Dr. Falk Pharma had not been served with the Summons and Complaint, meaning that **personal jurisdiction** over Dr. Falk Pharma could not have been established *via* service of process, even under a nationwide service of process statute.

Improper service (or lack of service) under Rule 12(b)(5) is a separate and distinct defense from lack of personal jurisdiction under Rule 12(b)(2).  *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000) (personal jurisdiction and service of process are "two separate defenses under Rule 12(b).  An objection based on insufficiency of service of process is delineated under Rule 12(b)(5); one based on 'lack of jurisdiction over the person' is set forth under Rule 12(b)(2).").  *See also generally* 4 Wright, Miller & Steinman, Federal Practice & Procedure § 1063 (explaining distinction between service of process and personal jurisdiction).  Between the two, at the time of February 18, 2019, Motion to Dismiss, Dr.

Falk Pharma's Rule 12(b)(2) defense was the only basis for requested relief (though Dr. Falk Pharma did raise and preserve its potential Rule 12(b)(5) defense). D.N. 43. And the Court's Order re Personal Jurisdiction Motion addressed only Rule 12(b)(2), and not Rule 12(b)(5). D.N. 108. The same is true for the Ninth Circuit's ruling in Dr. Falk Pharma's appeal of that order. *Silbersher v. Valeant Pharma. Int'l, Inc. et al.*, No. 20-16256, 2023 WL 4946736 (9th Cir. Aug. 3, 2023).

Accordingly, Relator's arguments about "law of the case" simply miss the mark. In order for the law of the case doctrine to apply, the issue must have been "decided explicitly or by necessary implication in [the] previous disposition." *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990) (cleaned up). Put another way, it is law of the case that Dr. Falk Pharma has been found subject to **personal jurisdiction** in this case; there has been no ruling as to Rule 12(b)(5).

### 2. Dr. Falk Pharma Preserved Its Rule 12(b)(5) Defense.

Relator's failure-to-preserve arguments also fail.

First, Relator argues that because D.N. 42 (Joinder) was filed moments before D.N. 43 (Motion to Dismiss) on the same day, the defense was waived before it could be preserved, citing *Continental Cas. Co. v. Hardin*, 2016 WL 11234458, at *13 (M.D. Fla. Dec. 5, 2016) and *Rudolph v. UT Starcom, Inc.*, No. C 07–04578 SI, 2009 WL 248370, at *1 (N.D. Cal. Dec. 2, 2009). D.N. 154 at 8. Such an argument is contrary to established practice in this District. *See Callaghan v. BMW of North America, LLC*, No. 13-cv-04794-JD, 2014 WL 6629254 (N.D. Cal. Nov. 21, 2014) (considering joinder (D.N. 50) and separate motion (D.N. 51), granting joint motion and denying as moot separate motion but with leave to re-file); *see also Think Computer Corp. v. Dwolla, Inc.*, No. 13-cv-02054-EJD, 2014 WL 1266213 (N.D. Cal. Mar. 24, 2014) (granting multiple motions to dismiss including joinders and separate motions filed on dates after the primary motion to dismiss); *SEB Investment Management AB v. Symantec Corp.*, No. 18-02902 WHA, 2019 WL 2491935 (N.D. Cal. June 14, 2019) (considering multiple motions to dismiss, including one joined by several parties and separate motions filed by those parties). *Rudolph* is also off-point. In *Rudolph*, defendant Wu joined in two Rule 12(b)(6) motions to dismiss, filed in February and June

2008.  2009 WL 248370 at *1.  Five months later, on November 17, 2008, Wu filed a Rule 12(b)(5) motion. *See* 2008 WL 5459918 (D.N. 94, Wu's Motion to Dismiss).  Accordingly, *Rudolph* does not support Relator's position that the sequence of same-day filings can result in waiver.

Second, Dr. Falk Pharma's Rule 12(b)(5) defense was not available in February 2019. Therefore, its reservation of rights in its Motion to Dismiss was enough to preserve the defense.[1] Relator advances a confused, straw-person argument based on the 2015 amendment to Rule 4(m), changing its domestic-service time limit from 120 days to 90 days.  D.N. 154 at 8-9.  But Dr. Falk Pharma does not rely on Rule 4(m) and it has no application to overseas service of the type needed to serve Dr. Falk Pharma.  The only hook for Relator's argument is a reference in Dr. Falk Pharma's motion to "the **then**-120-day (now 90-day) deadline in Rule 4(m)."  D.N. 141 at 10 (*cf.* D.N. 154 at 9) (emphasis added).  Contrary to Relator's mistaken interpretation, this phrase does not refer to the Rule 4(m) deadline applicable when Dr. Falk Pharma filed its motion in 2019. Rather, "then-120-day" refers to the deadline applicable in the pre-2015 *Goodstein* and *Lewis* cases addressed in the preceding paragraph of Dr. Falk Pharma's motion.  *See* D.N. 141 at 10.

Rule 4(m) facially does not apply to foreign service.  Although Rule 4 sets no fixed deadline for overseas service, "the amount of time allowed for foreign service is not unlimited." *See* D.N. 141 at 11 (collecting cases). And at the time of Dr. Falk Pharma's first motion in February 2019, just over 60 days had passed since the Court granted Relator's request to authorize overseas service of process, on December 14, 2018 (D.N. 31).  Thus, foreign service should have been underway in February 2019, and so a Rule 12(b)(5) defense was not ripe or available at that time. By contrast, now, six years later, given that service *still* has not been completed, it is appropriate to assert the defense.

In response to Dr. Falk Pharma's citation to *Goodstein v. Bombardier Capital, Inc.,* 167 F.R.D. 662, 665 (D. Vt. 1996), Relator again relies on *Rudolph v. UT Starcom, Inc.*, 2009 WL

---

[1] To reiterate, in its February 18, 2019 Motion to Dismiss, Dr. Falk Pharma stated, "To date, Relator has failed to effect proper service of process on Falk under Federal Rule of Civil Procedure 12(b)(5).  In the event proper service of process is never effectuated, Falk retains all claims, defenses and rights afforded by law and does not waive any right to challenge service of process." D.N. 43 at 4 n.2.

248370.  However, Relator misinterprets *Rudolph*, which is distinguishable on multiple grounds. First, unlike Relator, who raised and reserved its right to challenge the Rule 12(b)(5) issue in its initial motion, defendant Wu in *Rudolph* failed to raise his Rule 12(b)(5) defense in either of two Rule 12(b)(6) motions that were filed months earlier.  This was the primary basis for the *Rudolph* ruling.  2009 WL 248370 at *1-*2 ("Wu neither challenged **nor reserved his right to challenge** the sufficiency of service of process in either motion." (emphasis added)).    Second, as an alternative ground, the court in *Rudolph* rejected Wu's argument that the Rule 4(m) deadline applied and had expired, even though Wu was overseas. This second issue is both dicta and is, in any event, consistent with Dr. Falk Pharma's position.  Accordingly, *Goodstein* is the better, more on-point authority.

### 3.    Dr. Falk Pharma Did Not Waive Its Rule 12(b)(5) Defense Via Litigation Conduct.

Finally, Relator argues that Dr. Falk Pharma's participation in the August 2019 Joint CMC Statement, and its service of discovery requests prior to the 2025 discovery stay, constitute such extensive participation in the litigation as to constitute a waiver. D.N. 154 at 9-10.  Not at all.  The Joint CMC Statement (D.N. 86) was filed by all parties at the request of the Court (D.N. 81) one week before the combined CMC and hearing on motions to dismiss, which was held on August 8, 2019 (D.N. 94). In 2024-2025, following appeal and remand, the parties submitted a stipulated briefing schedule on renewed motions to dismiss with a stipulation to stay discovery (D.N. 136). In response, the Court entered a scheduling order (D.N. 138) that set a fact discovery cutoff of October 3, 2025, and made no mention of the parties' proposed stipulation to stay discovery.  In response, and in view of the nine-month period given in the Court's scheduling order for fact discovery, Relator served extensive discovery requests on all defendants (*see* D.N. 145 at 3), and thereafter, Dr. Falk Pharma served its own discovery requests.[2]  Shortly thereafter, the Valeant defendants moved to stay discovery (D.N. 145), which the Court granted (D.N. 149).  This is a far

---

[2] Given the timeframes established by the Court's CMC order, Dr. Falk Pharma appropriately served discovery requests to Silbersher even while its Motion to Dismiss is pending. *See, e.g. PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 435 (D. Nev. 2023) ("Well-settled law establishes that the pendency of a motion to dismiss does not act to automatically stay discovery.").

1  cry from "extensive participation in the discovery process" or "sandbagging" with the Rule

2  12(b)(5) defense.  Accordingly, *BHPH Capital LLC v. JV Wholesalers LLC*, No. CV-22-00143-

3  PHX-DJH, 2024 WL 455038 (D. Ariz. Feb. 6, 2024), cited by Relator, is inapplicable. Similarly,

4  in *In re CRT Antitrust Litigation*, No. CV 07-5944-SC (N.D. Cal. June 9, 2014) is also off-point.

5  In contrast with the multiple years of litigation involved in that case, Dr. Falk Pharma raised and

6  preserved the service issue in its first motion to dismiss and then, in its first substantive submission

7  following remand, immediately re-raised the service issue.[3]

8  **B.    General Allegations as to "Defendants" are Deficient.**

9  The second issue in Dr. Falk Pharma's motion is whether the allegations of fraud in the

10  SAC that are made as to "Defendants" generally all fail to allege fraud with sufficient particularity,

11  requiring dismissal under Rules 9(b) and 12(b)(6).  D.N. 141 at 1.  Relator's Opposition reframes

12  the second issue as a substantially different question and does not directly respond to this issue as

13  raised by Dr. Falk Pharma. Instead of addressing this core deficiency in the SAC, Relator retreats

14  to the few factual allegations made explicitly as to Dr. Falk Pharma—and even then finds it

15  necessary to go beyond the four corners of the SAC by citing to extrinsic evidence, while also

16  repeating its broad allegations as to "Defendants" generally.  D.N. 154 at 10-12, n.8.

17  **1.    Relator Does Not Dispute that Allegations of Fraud as to "Defendants"**
18  **Generally Fail to Satisfy Rules 9(b) and 12(b)(6).**

19  Relator does not even attempt to address Dr. Falk Pharma's legal argument that fraud must

20  be pled with particularity as to each defendant, and that *all* of the hundreds of allegations as to

21  "Defendants" generally in the SAC are legally deficient.  As stated in Dr. Falk Pharma's opening

22  brief, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but

23  requires plaintiffs to differentiate their allegations when suing more than one defendant and inform

24  each defendant separately of the allegations surrounding his alleged participation in the fraud."

25  *United States v. Corinthian Colleges*, 655 F.3d 984, 997-998 (9th Cir. 2011).  *See* D.N. 141 at 11-

26  12 (citing cases).  In order to enable Dr. Falk Pharma to meaningfully respond to the SAC, Relator

27

28  [3] *Craters & Freighters v. Benz*, 465 Fed. App'x 719 (9th Cir. 2012), also cited by Relator, references "litigation conduct" but provides no factual analysis to provide any support to Relator's position.

must specify which of these allegations apply to Dr. Falk Pharma—what conduct *Dr. Falk Pharma* allegedly engaged in.

Other than the six paragraphs addressed below, there is *no* mention by name of Dr. Falk Pharma in the substantive allegations that go through paragraph 169 of the SAC. Nor is there any mention of Dr. Falk Pharma in the Counts. SAC ¶¶ 170-516.

At the same time, there are multiple conclusory allegations that Relator tries to rely on as a hook to include Dr. Falk Pharma. For example (and by way of illustration only), this occurs in ¶ 112 (referring to "Defendants" and alleged failure to disclose alleged prior art during prosecution of Otterbeck patents), ¶ 138 ("Defendants presented, or caused others to present, false claims …"), ¶ 143 ("Defendants defrauded the government by impliedly certifying to certain Government payors …"), and ¶ 149 ("Defendants … individually and in concert, knowingly submitted or caused to be submitted false claims … Through their planning and coordination, Defendants conspired …").[4] Each of these allegations is conclusory. Each fails to apprise Dr. Falk Pharma of the "who, what, when, where, and how" that *it* is alleged to have committed. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). And each is too conclusory to pass muster under *Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do." (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 557 (2007)).

> **2.    Shorn of the Collective Allegations as to "Defendants," Relator's Allegations Specifically Naming Dr. Falk Pharma Fail to State a Claim.**

Dr. Falk Pharma is mentioned by name in just six paragraphs of the SAC: ¶¶ 13 and 86 allege Dr. Falk Pharma's role in connection with the Marakhouski and Brunner studies, ¶ 47 alleges Dr. Falk Pharma's place of incorporation, principal place of business, and status as assignee

---

[4] In fact, Relator has previously admitted that Dr. Falk Pharma "was not active in the last step in the causal chain" – i.e., presentment of claims for payment for Apriso. D.N. 55 at 6; *see also* D.N. 62 at 2, 4. Moreover, the 2002 license agreement submitted by Relator as extrinsic evidence actually shows that as between Valeant and Dr. Falk Pharma, Valeant alone has responsibility for these actions in the United States. D.N. 152-1 Exhibit G.

of certain patents, and ¶¶ 17, 18 and 89 include Dr. Falk Pharma's name as part of citations to case captions.  D.N. 141 at 12.

Relator now broadens its factual allegations specifically naming Dr. Falk Pharma to include additional detail based on extrinsic evidence submitted by Relator. D.N. 154 at 10-12 (citing exhibits to D.N. 152-1 (Herrera Decl.)).  When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).  With limited exceptions, a court may not consider evidence outside the pleadings in ruling on a motion to dismiss.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Thus, even assuming Relator's Request for Judicial Notice (D.N. 152) has facially satisfied the requirements of Federal Rule of Evidence 201, Relator has made no argument that the court may consider these documents at the motion to dismiss stage, or that they are admissible for the truth of the matters for which Relator proffers them.  *See Marder* 450 F.3d at 448.  Conversion of Relator's opposition brief into a motion for summary judgment under Rule 56 would be premature. At the same time, Relator has left out key elements of proof or law.  For example:  inequitable conduct could not have been litigated in the IPR (*see* 37 C.F.R. § 42.104 (identifying grounds for IPR as invalidity under 35 U.S.C.  §§ 102, 103)), and only two of sixteen claims in the '688 Patent were challenged and invalidated in the IPR. *Generico, LLC v. Dr. Falk Pharma GmbH*, No. IPR2016-00297, Final Written Decision, Paper 55, 2017 WL 2211672 at *1 (P.T.A.B. May 19, 2017) (claims 1 and 16). Again, the SAC's allegations also fall short of the Supreme Court's admonition in *Iqbal*, 556 U.S. at 678, that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"

Relator's reliance on *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1316-1317 (Fed. Cir. 2008) is misplaced for two reasons.  First, Relator's characterization of the ruling as "finding inequitable conduct … against Praxair" is not accurate.  Rather, the Federal Circuit affirmed a finding "that the '115 patent is unenforceable due to inequitable conduct."  543 F.3d at 1328.  That does not translate *ipso facto* into a finding that Praxair committed inequitable conduct or any other kind of fraud.  Second, *Praxair* was decided before *Therasense* and does not reflect the current

legal standard for finding materiality and intent. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc).

### C. Inequitable Conduct is the Only Recognized Theory of Fraud on the Patent Office.

Finally, Relator has undertaken slick and misleading double-speak in an effort to push a theory about duty of disclosure during prosecution before the USPTO that is wholly unsupported in the Patent Act, its implementing regulations, the Manual of Patent Examining Procedure, or case law concerning "fraud on the patent office."[5]

One illustration that lays bare this double-speak is footnote 8 on page 10 of Relator's opposition. Starting from the premise that Dr. Falk Pharma was a "real-party-in-interest" (RPI) in the *Inter Partes* Review proceeding for the '688 Patent, Relator concludes that Dr. Falk Pharma was subject to a duty of candor and good faith during prosecution of the '688 Patent, citing Rule 56 (both at 37 C.F.R. § 1.56 and Manual of Patent Examining Procedure 2001.01 as a "*cf.*" In fact (and as admitted by Relator's use of "*cf.*" in the citation), Rule 56 has nothing to do with RPI status during an IPR. *Compare* P.T.A.B. Trial Practice Guide (Nov. 2019) at 12 (core function of RPI requirement is "to assist members of the board in identifying potential conflicts, and to assure proper application of the statutory estoppel provisions [for PTAB final decisions]") *with* 37 C.F.R. § 1.56. Relator's conclusion is therefore unsupported. *See* D.N. 141 at 7-9, 13-14.

Relator relies on two cases, *Janssen* and *Allergan*, to support its argument that a lower standard of FCA-fraud can be applied in place of inequitable conduct for allegations of fraud during patent prosecution. Neither case supports Relator's position. In *United States ex rel. Silbersher v. Janssen Biotech, Inc.*, 576 F.Supp.3d 212 (D.N.J. 2021), the court separately considered allegations of fraud against the J&J defendants and against defendant BTG. Concerning the J&J defendants, it appears undisputed that they were directly involved in prosecution of the patent-in-issue, and that they submitted affirmative representations to the

---

[5] For at least the same reasons that Silbersher's theory of "fraud on the patent office" fails as to the '688 Patent, it also fails as to any viable assertion that his FCA claim is based on "fraud on the patent office" during prosecution of the Otterbeck Patents. *See* D.N. 154 at 1 n.1. No such theory is clearly articulated in the SAC, and even if it were, it would fail for this same reason.

USPTO.  The court declined to dismiss the complaint as to the J&J defendants.  *See id.* at 231.  By contrast, and similar to Relator's allegations against Dr. Falk Pharma here, "Plaintiff's complaint says little about BTG beyond its co-ownership of the '438 Patent and its participation in at least three civil infringement actions against generic competitors."  *Id.*  Based on those allegations, the court *dismissed* all claims against BTG.  *Id.* at 232.  Moreover, it appears that the J&J defendants in *Janssen* relied on *Walker Process* antitrust case law, rather than directly relying on inequitable conduct precedents.  576 F.Supp.3d at 230.  And while the *Janssen* court could not "find justification" to apply this standard in the FCA context, there is a clear policy reason to avoid expanding the duty of disclosure during patent prosecution to include parties not already included in Rule 56: it would upend established patent prosecution practice before the USPTO, potentially requiring many more entities to make broader disclosures to the USPTO during prosecution.  Likewise, the district court's analysis of Relator's "fraud on the patent office" theory in *Silbersher v. Allergan Inc.*, 506 F.Supp.3d 772, 823-824 (N.D. Cal. 2020), *reversed* 46 F.4th 991 (9th Cir. 2022) is too conclusory and devoid of factual analysis to support any extrapolation to the particular facts and pleadings pertaining to Dr. Falk Pharma in the present case.

## III.    CONCLUSION

For the foregoing reasons, the SAC should be dismissed as to Dr. Falk Pharma, without additional time to complete service and without leave to further amend.

Date: April 2, 2025                  By: */s/ Mary W. Bourke*
                                        Mary W. Bourke

                                        Mary W. Bourke (*admitted pro hac vice*)
                                        Mary.Bourke@wbd-us.com
                                        Alexander Wharton (*admitted pro hac vice*)
                                        Alexander.Wharton@wbd-us.com
                                        **WOMBLE BOND DICKINSON (US) LLP**
                                        1313 North Market Street, Suite 1200
                                        Wilmington, DE 19801
                                        Tel.: 302-252-4320

                                        Christian E. Mammen (CA Bar No. 188454)
                                        Chris.Mammen@wbd-us.com
                                        Ben Bourke (*admitted pro hac vice*)
                                        Ben.Bourke@wbd-us.com

**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, CA 94111
Tel.: 415-433-1900

Attorneys for Defendant Dr. Falk Pharma GmbH

DEFENDANT DR. FALK PHARMA GmbH'S REPLY ISO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

CASE NO.: 3:18-cv-01496-JD