Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Padraic W. Foran, State Bar No. 268278
pforan@hueston.com
Michael H. Todisco, State Bar No. 315814
mtodisco@hueston.com
Nicholas Kellum (*Admitted Pro Hac Vice*)
nkellum@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:    (213) 788-4340
Facsimile:    (888) 866-4825

Attorneys for Defendants Bausch Health Companies, Inc.
f/k/a Valeant Pharmaceuticals International, Inc.,
Bausch Health Americas, Inc. f/k/a Valeant Pharmaceuticals
International, Salix Pharmaceuticals, Ltd., and
Salix Pharmaceuticals, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, <br><br> *ex rel.* ZACHARY SILBERSHER, <br><br> Plaintiffs, <br><br> vs. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, <br><br> Defendants. | Case No. 3:18-cv-01496-JD <br><br> **DEFENDANTS VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., AND SALIX PHARMACEUTICALS, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** <br><br> Judge:   Hon. James Donato <br><br> Trial Date:   None Set <br><br> Hearing Date: November 13, 2025 <br> Hearing Time: 10:00 a.m. <br> Courtroom:      11 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 13, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 11 before the Honorable James Donato, Defendants Bausch Health Companies, Inc. (*f/k/a* Valeant Pharmaceuticals International, Inc.), Bausch Health Americas, Inc. (*f/k/a* Valeant Pharmaceuticals International), Salix Pharmaceuticals, Ltd., and Salix Pharmaceuticals, Inc., (collectively, "Defendants") by and through counsel, will and hereby do move this Court to Dismiss the Third Amended Complaint (Dkt. 166) (the "TAC") pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6).

Defendants' motion is based on this notice of motion and accompanying memorandum of points and authorities, the Request for Judicial Notice, the Declaration of Michael H. Todisco and accompanying exhibits, all documents in the Court's file, any additional matters of which this Court may take judicial notice, and on such written or oral argument that Defendants may present to the Court.

Dated: August 25, 2025                    HUESTON HENNIGAN LLP

By: _____
Moez M. Kaba
Attorneys for Defendants
Bausch Health Companies, Inc. *f/k/a*
Valeant Pharmaceuticals International,
Inc., Bausch Health Americas, Inc. *f/k/a*
Valeant Pharmaceuticals International,
Salix Pharmaceuticals, Ltd., and
Salix Pharmaceuticals, Inc.

1

2

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

BACKGROUND ............................................................................................................................. 3

LEGAL STANDARDS ................................................................................................................... 3

ARGUMENT ................................................................................................................................... 4

    A.    The TAC's FCA claims are barred by public disclosures ......................................... 4

           1.    The '688 Prosecution History disclosed substantially the same transactions and allegations through the "other Federal . . . hearing" channel ................................................................................. 4

           2.    The IPR Decision disclosed substantially the same transactions and allegations through the "other … Federal hearing" and news media channels ....................................................... 5

           3.    Silbersher is not an "original source" of the publicly disclosed information .................................................................................... 7

    B.    The TAC violates Rule 9(b) by lumping Defendants together ................................. 8

    C.    The TAC fails to plead falsity ................................................................................ 10

           1.    The TAC fails to plead falsity in the '688 Application ............................. 10

           2.    The TAC fails to plead falsity in "downstream" claims for payment ..................................................................................................... 12

    D.    The TAC fails to plead scienter ............................................................................. 13

    E.    The TAC fails to plead materiality ........................................................................ 14

    F.    The TAC is untimely as to claims that accrued before March 8, 2012 ................. 15

    G.    The TAC's state law claims must be dismissed for the same reasons.................... 15

CONCLUSION.............................................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4

*Ashcroft v. Iqbal*,
5      556 U.S. 662 (2009)......................................................................................................... 4

6

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
7      587 U.S. 262 (2019)....................................................................................................... 15

8

*Destfino v. Reiswig*,
     630 F.3d 952 (9th Cir. 2011) ........................................................................................... 9

9

*Ebeid ex rel. United States v. Lungwitz*,
10      616 F.3d 993 (9th Cir. 2010) ......................................................................................... 10

11

*Evercrete Corp. v. H-Cap Ltd*.,
12      429 F. Supp. 2d 612 (S.D.N.Y. 2006) ........................................................................... 10

13

False Claims Act. *Franchitti v. Cognizant Tech. Sols. Corp*.,
     555 F. Supp. 3d 63 (D.N.J. 2021) .................................................................................. 10

14

*Freedline v. O Organics LLC*,
15      445 F. Supp. 3d 85 (N.D. Cal. 2020) ............................................................................... 9

16

*GeneriCo, LLC v. Dr. Falk Pharma GmbH*,
17      2017 WL 2211672 (P.T.A.B. May 19, 2017) ................................................................... 1

18

*Godecke v. Kinetic Concepts, Inc.*,
19      937 F.3d 1201 (9th Cir. 2019) ......................................................................................... 4

20

*Hagood v. Sonoma Cnty. Water Agency*,
     81 F.3d 1465 (9th Cir. 1996) ......................................................................................... 12

21

*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*,
22      512 F. Supp. 3d 1096 (D. Haw. 2021) ........................................................................... 13

23

*Hoffmann-La Roche Inc. v. Apotex Inc.*,
24      748 F.3d 1326 (Fed. Cir. 2014) ..................................................................................... 12

25

*In re Rigel Pharms., Inc. Secs. Litig*.,
     697 F.3d 869 (9th Cir. 2012) ......................................................................................... 14

26

*Knudsen v. Sprint Commc'ns Co.*,
27      2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) ................................................................ 14

28

ii

1

<u>TABLE OF AUTHORITIES (cont.)</u>

2

Page(s)

3
4

*Kociemba v. G.D. Searle & Co.*,
    707 F. Supp. 1517 (D. Minn. 1989)..................................................................... 12

5

*Nationstar Mortg. LLC v. River Glider Ave. Tr.*,
    2022 WL 187840 (9th Cir. Jan. 20, 2022)............................................................. 1

6
7

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    584 U.S. 325 (2018)............................................................................................. 10

8
9

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013) ............................................................................ 2, 11

10
11

*Prather v. AT&T, Inc.*,
    847 F.3d 1097 (9th Cir. 2017) ............................................................................... 8

12

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
    563 U.S. 401 (2011)............................................................................................... 7

13
14

*Silbersher v. Allergan, Inc.*,
    2025 WL 325761 (9th Cir. Jan. 29, 2025) ............................................................ 6

15
16

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
    89 F.4th 1154 (9th Cir. 2024) ...................................................................... passim

17
18

*Solis v. Millennium Pharms., Inc.*,
    852 Fed. Appx. 298 (9th Cir. 2021)....................................................................... 7

19

*Thulin v. Shopko Stores Operating Co., LCC*,
    2013 WL 5946503 (W.D. Wis. Nov. 5, 2013) ............................................. 2, 5, 13

20
21

*U.S. ex rel. Durkin v. Cnty. of San Diego*,
    300 F. Supp. 3d 1107 (S.D. Cal. 2018).................................................................. 13

22
23

*U.S. ex rel. Englund v. Los Angeles Cnty.*,
    2006 WL 3097941 (E.D. Cal. Oct. 31, 2006)....................................................... 11

24

*U.S. ex rel. Griffith v. Conn*,
    117 F. Supp. 3d 961 (E.D. Ky. 2015)................................................................... 10

25
26

*United States ex rel. Bly-Magee v. Premo*,
    470 F.3d 914 (9th Cir. 2006) ................................................................................. 8

27
28

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .......................................................................... 2, 12

1

<u>TABLE OF AUTHORITIES (cont.)</u>

2

<u>Page(s)</u>

3

*United States ex rel. Colucci v. Beth Israel Med. Ctr.,*
   785 F.Supp.2d 303 (S.D.N.Y. 2011) ................................................................. 13

4

5

*United States ex rel. Faulkner v. Bd. Trs. of Leland Stanford Jr. Univ.,*
   2024 WL 4982992 (N.D. Cal. Dec. 3, 2024) ................................. 2, 12, 13

6

7

*United States ex rel. Fine v. Chevron, U.S.A. Inc.,*
   72 F.3d 740 (9th Cir. 1995) ............................................................................. 8

8

*United States ex rel. Green v. Serv. Cont. Educ. & Training Tr. Fund,*
   843 F. Supp. 2d 20 (D.D.C. 2012) ................................................................. 7

9

10

*United States ex rel. Harman v. Trinity Indus. Inc.,*
   872 F.3d 645 (5th Cir. 2017) ......................................................................... 14

11

12

*United States ex rel. Juan v. Regents of Univ. of Cal.,*
   2018 WL 6168529 (N.D. Cal. Nov. 26, 2018) .............................................. 8

13

14

*United States ex rel. Lockwood v. Sanofi US Servs., Inc.,*
   2024 WL 5087330 (C.D. Cal. Dec. 9, 2024) ............................................... 13

15

16

*United States ex rel. Solis v. Millennium Pharms., Inc.,*
   445 F. Supp. 3d 786 (E.D. Cal. 2020) ........................................................... 7

17

*United States ex rel. Stinson, Lyons Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,*
   944 F.2d 1149 (3d Cir. 1991) ......................................................................... 8

18

19

*United States ex rel. Williams v. Med. Support Los Angeles,*
   2021 WL 6104016 (C.D. Cal. Nov. 29, 2021) ............................................ 15

20

21

*United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.,*
   953 F.3d 1108 (9th Cir. 2020) ................................................................ 14, 15

22

*United States v. Cath. Healthcare W.,*
   445 F.3d 1147 (9th Cir. 2006) ......................................................................... 6

23

24

*United States v. Corinthian Colleges,*
   655 F.3d 984 (9th Cir. 2011) ........................................................................... 2

25

*United States v. DaVita Inc.,*
   2020 WL 3064771 (C.D. Cal. Apr. 10, 2020) ............................................ 11

26

27

*United States v. Kaiser Found. Health Plan, Inc.,*
   2016 WL 11760614 (C.D. Cal. Mar. 2, 2016) ............................................. 12

28

TABLE OF AUTHORITIES (cont.)

Page(s)

*United States v. McKesson Corp.*,
   2020 WL 4805034 (N.D. Cal. Aug. 18, 2020) ....................................................... 12, 13

*United States v. Safran Grp. S.A.*,
   2017 WL 235197 (N.D. Cal. Jan. 19, 2017).............................................................. 9, 13

*United States v. Scan Health Plan*,
   2015 WL 12778776 (C.D. Cal. Aug. 28, 2015) ............................................................. 8

*United States v. Sci. Applications Int'l Corp.*,
   626 F.3d 1257 (D.C. Cir. 2010).................................................................................. 14

*United States v. Valley Campus Pharmacy, Inc.*,
   2021 WL 4816648 (C.D. Cal. June 23, 2021) ............................................................... 9

*Univ. of W. Va. Bd. of Trs. v. VanVoorhies*,
   278 F.3d 1288 (Fed. Cir. 2002) .............................................................................. 2, 10

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   579 U.S. 176 (2016)................................................................................................. 2, 14

Statutes

21 U.S.C. § 355(t)............................................................................................................ 15

31 U.S.C. § 3730(e)(4) .............................................................................................. 1, 4, 7

31 U.S.C. § 3731(b)......................................................................................................... 15

Rules

Federal Rule of Civil Procedure 9(b)............................................................................ 1, 2

Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6) ........................................... 1

**ISSUES TO BE DECIDED**

1.      Does the public disclosure bar defeat the Third Amended Complaint's ("TAC") claims under the False Claims Act when the relevant patent prosecution history and a written decision on *inter partes review* ("IPR") each disclosed substantially the same allegations and transactions; when the Ninth Circuit has already ruled that the prosecution history is a qualifying public disclosure; when multiple public channels published the IPR decision in full; and when the relator Silbersher is not an original source of the information because he lacks firsthand knowledge and disclosed the information involuntarily, as a lawyer with ethical and professional responsibilities to his clients?

2.      Does the TAC fail to satisfy heightened-pleading standards of Federal Rule of Civil Procedure 9(b) when, just like the dismissed Second Amended Complaint, it continues to attribute allegations indiscriminately to all or multiple defendants?

3.      Does the TAC fail to plead falsity with particularity when it fails to identify any objective falsity in the patent prosecution history; when it does not specify that any claim for payment to the government contained any representations at all, let alone a false one; when it alleges the falsity only of the imprecise and subjective term "fair and reasonable"; and when the alleged claims for payment do not imply anything about and have no causal nexus to the alleged underlying fraud?

4.      Does the TAC fail to plead scienter when it relies on statements about debatable scientific and regulatory interpretations, when it imputes knowledge by one defendant to others, and when public disclosures reveal that Defendants disclosed the allegedly concealed information?

5.      Does the TAC fail to meet the rigorous and demanding materiality standard when it not only fails to allege that the government would have refused to pay claims but alleges the opposite: that the government continues to pay claims after receiving notice of the alleged falsity?

6.      Alternatively, are the alleged false claims that accrued before March 18, 2012 barred by the statute of limitations and subject to dismissal?

## MEMORANDUM OF POINTS AND AUTHORITIES

Relator Zachary Silbersher tries and fails for the fourth time to bring claims against Defendants under the False Claims Act ("FCA"). Silbersher is a patent attorney, who in 2017 was adverse to certain Defendants in an IPR of two claims of one of their patents. Silbersher seeks to exploit (and misstate) public information that he obtained while representing his client in the IPR to support his own FCA claim. He alleges that Defendants fraudulently obtained a patent, which inflated the market price of the drug Apriso and made "downstream" claims for its reimbursement false. His Third Amended Complaint fails for five independently sufficient reasons:

*First*, the TAC cannot clear the FCA's public disclosure bar. Silbersher claims that he "discovered" that Defendants "took conflicting positions in their patent prosecutions of the '344 and '688 Patents," *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1162, 1168 (9th Cir. 2024), and that the '344 Patent was "never mentioned" in the IPR. (Dkt. 102 at 22:8 –23:3). This is the heart of Silbersher's fraud theory. But it is demonstrably false. The '344 patent application was directly and repeatedly disclosed during the '688 Patent's prosecution and IPR. *See* Dkt. 152-7 at 23 (marking the '344 Application as Exhibit 2051); *see also* Todisco Decl. Ex. G (IPR Ex. 2051). The very document that allegedly "conflicted" with the '688 Patent but which the Ninth Circuit believed had been withheld during its prosecution—the application for the '344 Patent—was not only "cited during prosecution of the '688 patent to support the Examiner's finding[s]," but also admitted into evidence at the IPR. *See* Todisco Decl. Ex. C (*GeneriCo, LLC v. Dr. Falk Pharma GmbH*, 2017 WL 2211672 (P.T.A.B. May 19, 2017), *aff'd,* 774 Fed. Appx. 665 (Fed. Cir. 2019) ("IPR Decision") (discussing Exhibit 2051)). The alleged fraud was thus publicly disclosed by the '688 patent prosecution file *and* by the written IPR decision. 31 U.S.C. § 3730(e)(4)(A)(ii) and (iii). The Ninth Circuit never considered whether these disclosures bar Silbersher's claims, so its reversal and remand in no way precludes these arguments. *See Nationstar Mortg. LLC v. River Glider Ave. Tr.*, 2022 WL 187840, at *2 (9th Cir. Jan. 20, 2022) ("[W]hen a court is confronted with issues that the remanding court never considered, the mandate requires respect for what the higher court decided, not for what it did *not* decide.") (citation omitted). To the contrary, the Ninth Circuit's ruling that "[t]he patent prosecution[] involving the … '688 [Patents] [is a] qualifying public disclosure[]" controls and

1    means that the claims must be dismissed. *Silbersher*, 89 F.4th at 1165.

2          *Second*, the TAC continues to lump all Defendants together in an "undifferentiated mass."

3    Dkt. 162 (Second Ord. re Dismissal); *see, e.g.*, *United States v. Corinthian Colleges*, 655 F.3d 984,

4    997 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants

5    together." (citation omitted)).

6          *Third*, the TAC pleads no false claim. The '688 patent itself was "not government property"

7    so Defendants could not commit "fraud by making false statements to the PTO in prosecuting" it.

8    *Univ. of W. Va. Bd. of Trs. v. VanVoorhies*, 278 F.3d 1288, 1303 (Fed. Cir. 2002). Besides, the single

9    scientific statement that the TAC identifies as false is at worst "contested and contestable," which

10   cannot meet the FCA's standard for objective falsehood. *ONY, Inc. v. Cornerstone Therapeutics,*

11   *Inc.*, 720 F.3d 490, 496–97 (2d Cir. 2013). As to "downstream" claims for payment of Apriso,

12   Silbersher incorrectly asserts that "it is not necessary to identify each specific false claim," TAC

13   ¶ 180, so he does not even *try* to allege *any* content, let alone *false* content, in *any* claim. *See United*

14   *States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056–57 (9th Cir. 2011)

15   (affirming dismissal of FCA claim where the complaint failed to "identify any particular false claims

16   or their attendant circumstances"). And Silbersher's theory that Defendants certified that Apriso's

17   price was "fair and reasonable," TAC ¶ 8, further fails because such "open-ended and discretionary

18   language" cannot be objectively false. *United States ex rel. Faulkner v. Bd. Trs. of Leland Stanford*

19   *Jr. Univ.*, 2024 WL 4982992, *6–7 (N.D. Cal. Dec. 3, 2024) (dismissing FCA claim for failure to

20   plead falsity where allegations "depend[ed]" on requiring defendants to "charge a 'reasonable' rate").

21         *Fourth*, the TAC pleads no scienter. It points only to debatable scientific and regulatory

22   interpretations that are "open to debate"—which "precludes any finding of knowledge," *Thulin v.*

23   *Shopko Stores Operating Co., LCC*, 2013 WL 5946503, at *7 (W.D. Wis. Nov. 5, 2013), especially

24   when Defendants' disclosed to the government the very information they allegedly concealed.

25         *Fifth*, Silbersher cannot meet FCA's "rigorous," "demanding" materiality standard. *Universal*

26   *Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192–94 (2016). His theory that

27   price is *per se* material fails as a matter of law and, in any event, is negated through allegations that

28   the government continues to pay for Apriso despite knowing of the alleged fraud. *Id.* at 195 ("if the

1  Government pays a particular claim in full despite its actual knowledge that certain requirements

2  were violated, that is very strong evidence that those requirements are not material"). Because none

3  of these defects can be cured by further amendment, the TAC should be dismissed with prejudice.

## BACKGROUND

5  Silbersher alleges Defendants made material omissions in prosecuting a patent relating to an

6  ulcerative colitis drug Apriso (U.S. Patent No. 8,865,688 ("the '688 Patent")). TAC ¶¶ 3, 17, 82. He

7  alleges the '688 Patent prevented generic manufacturers from entering the market, *id.* ¶¶ 137–51,

8  which inflated Apriso's price and market share. *Id.* ¶¶ 27–30, 75–76. Because Silbersher believes

9  that Defendants were required to provide the government with "proof that [Apriso's] price is fair and

10  reasonable," *id.* ¶ 172, Silbersher concludes that "each and every claim presented to the government

11  for Apriso from at least September 12, 2014," is a false claim. *Id.* ¶ 179.

12  Silbersher, on behalf of a generic drug company and hedge fund, initiated IPR of two claims

13  of the '688 Patent in 2015. *See* Todisco Decl. Ex. C (IPR Decision). In May 2017, the PTAB held

14  the two claims unpatentable. *Id.*; TAC ¶ 17. That same day, the PTAB's entire IPR Decision was

15  published in the prosecution history of the '688 Patent and in an online news article by *Law360*.[1]

16  Silbersher later filed this action. *See* Dkt. 1. On May 11, 2020, this Court dismissed Silbersher's first

17  amended complaint, Dkt. 10, under the public disclosure bar, because Silbersher's allegations of

18  fraud were publicly disclosed during the IPR *proceeding*. Dkt. 109 at 15–17 (First Ord. re Mot. to

19  Dismiss). Silbersher appealed, and the Ninth Circuit reversed and remanded, holding that an IPR

20  *proceeding* is not a channel for public disclosure. *Silbersher*, 89 F.4th at 1165–66, 1169. The Ninth

21  Circuit did *not* consider whether disclosures made in the '688 patent prosecution disclosed the alleged

22  fraud or whether *Law360's* publication of the written IPR *Decision* constitutes a public disclosure.

23  The Ninth Circuit expressly "ma[d]e no statement about the sufficiency of the pleadings" and

24  remanded for this Court "to consider whether Silbersher's *qui tam* action may proceed." *Id.* at 1169.

## LEGAL STANDARDS

26  On a motion to dismiss, a complaint's "factual content" is accepted as true, but any

---

[1] *See* Todisco Decl. Ex. A ("*Law360* article") (containing hyperlink to IPR Decision); Todisco Decl. Ex. B (patent prosecution history of the '688 Patent); Todisco Decl. Ex. C (IPR Decision).

1   "[t]hreadbare recitals" or "conclusory statements" are properly disregarded. *Ashcroft v. Iqbal*, 556

2   U.S. 662, 678–79 (2009). Requirements for FCA claims go further: "*qui tam* actions under the FCA

3   'must be not only plausible but pled with particularity under Rule 9(b).'" Dkt. 162 at 2 (quoting

4   *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019)).

5                                          **ARGUMENT**

6       **A.      The TAC's FCA claims are barred by public disclosures.**

7       The FCA bars a *qui tam* action if (1) there has been a "public disclosure" of "substantially

8   the same allegations or transactions as alleged in the action" (2) through any of three specified

9   "channels," and (3) the relator is not an "original source" of that disclosure. 31 U.S.C. § 3730(e)(4).

10  This bar applies here based on public disclosure in the prosecution history of the '688 Patent and in

11  the IPR Decision.

12              *1.     The '688 Prosecution History disclosed substantially the same transactions*

13                      *and allegations through the "other Federal . . . hearing" channel.*

14      Silbersher has argued that the allegedly "inconsistent statements in the '344 Patent

15  application" had not been "raised in the underlying IPR, or anywhere," Dkt. 45 at 14, and that he

16  "uncovered" the inconsistency only when he "conducted *additional* investigation *beyond* the IPR,"

17  Third Br. on Cross-Appeal at 25, *Silbersher*, 89 F.4th at 1154, Dkt. 68 (emphases added). But far

18  from being "never mentioned" during the '688 proceedings, Dkt. 102 at 22:8–23:3, the '344

19  application was disclosed repeatedly in both the '688 prosecution and IPR proceeding. *See* IPR

20  Decision, at *22–23. The patent examiner even cited the '344 Application in the Notice of

21  Allowance, the document concluding that "it would not have been obvious . . . to administer [Apriso]

22  without food." *See* Todisco Decl. Ex. J (IPR Ex. 1019 at 3); *see* Todisco Decl. Ex. K (IPR Ex. 2052)

23  (listing '344 Application in corresponding "Notice of References Cited")). Silbersher then quoted

24  the '688 Examiner's discussion of the '344 Application in his client's petition for IPR. Todisco Decl.

25  Ex. L (IPR Petition at 7). Dr. Falk later used the '344 Application as a deposition exhibit and, over

26  Silbersher's objection, a trial exhibit. *See* Dkt. 152-7 at 23; *see also* Todisco Decl. Exs. G, K (IPR

27  Exs. 2051, 2052). The '344 Application was so central to the IPR that Dr. Falk devoted minutes of

28  argument to detailing its use. Todisco Decl. Ex. M (IPR Tr. 29:1–38:11).

1    The '344 Application also features in the IPR Decision, which identifies the '344 Application

2    as one of the "clinical studies that are the basis for the '688 Patent" and rejects Silbersher's motion

3    to exclude it. IPR Decision at *6 (citing IPR Ex. 2051). As the PTAB explained, the '344 Application

4    was not only "cited during prosecution of the '688 patent to support the Examiner's finding[s]," but

5    Silbersher specifically "quoted and relied upon [that finding] in the Petition." *Id.* at *23.

6    These facts turn the Ninth Circuit's reasoning squarely against Silbersher. The Ninth Circuit

7    held that "[t]he patent prosecutions involving the '344 [and] '688 [Patents] are qualifying public

8    disclosures" through the "other Federal … hearing" channel. *Silbersher*, 89 F.4th at 1165. But the

9    Ninth Circuit lacked the information above, and held that the separate prosecution histories of the

10   '344 and '688 Patents were too "scattered" to raise an inference of fraud, and that "[n]othing in the

11   prosecution history of [the '688] patent" revealed the contradictory information from "the '344 patent

12   application." *Id.* at 1168. Silbersher has repeatedly described the Ninth Circuit's holding as hinging

13   on the conflicting disclosures being located in two separate "patent prosecution docket[s]."[2] The '688

14   Prosecution's disclosures of the '344 Application disposes of this argument and compel dismissal.

15        2.    *The IPR Decision disclosed substantially the same transactions and*

16              *allegations through the "other … Federal hearing" and news media channels.*

17   Even setting the '344 Application aside, the IPR Decision disposes of Silbersher's FCA

18   claims. This Court and Silbersher each acknowledged that the IPR Decision alone discloses

19   substantially the same transactions alleged in the TAC. *See* Dkt. 109 at 15 ("The article may also

20   have included a link directly to the PTAB's decision, ***which relator has conceded would bar his***

21   ***suit***." (emphasis added)). Silbersher's counsel conceded: "Your Honor mentioned the PTAB

22   decision. That's right.  Before 2010, there would be no case." Dkt. 102 at 12:19–24. The analysis can

23   end here, which is what the Ninth Circuit did when it affirmed dismissal of another of Silbersher's

24

---

25   [2] Appellant's Reply Br., at 1–2, *Silbersher v. Allergan, Inc.*, No. 23-15613, Dkt. 42 (9th Cir., Mar.
26   21, 2024) (*Valeant* "held that when one patent prosecution docket revealed a defendant's
     representation to the Government and another docket contained contrary information, the alleged
     fraud on the USPTO was not publicly disclosed"); Pl.'s Mot. for Indicative Ruling for Post-J. Relief
27   at 6, *Silbersher v. Allergan*, No. 3:18-cv-03018, Dkt. 201 (C.D. Cal. Feb. 20, 2024) ("In *Valeant*, like
     here, the defendants pointed to two conflicting representations in different patent prosecution files,
28   saying that one file disclosed the misrepresented state of affairs, and the other disclosed the true state
     of affairs.").

1  cases based on a concession made "at a hearing on the first motion to dismiss." *Silbersher v. Allergan,*

2  *Inc.*, 2025 WL 325761, at *1 (9th Cir. Jan. 29, 2025).

3      The IPR Decision even more clearly discloses the alleged fraud when analyzed in

4  combination with other public disclosures, including the *Law360* article, the Marakhouski and

5  Brunner studies, and the '688, '344, and Otterbeck patent prosecution histories that this Court and

6  the Ninth Circuit did consider.[3] *United States v. Cath. Healthcare W.*, 445 F.3d 1147, 1151 n.1 (9th

7  Cir. 2006) ("[T]he elements of the fraud allegation need not have been made public in a single

8  document."). On appeal, the Ninth Circuit held that these *other* disclosures did not bar Silbersher's

9  FCA claims because of two "gaps": (1) "that [Defendant] knowingly withheld information when

10  applying for the '688 Patent," including the Marakhouski and Brunner studies, and (2) that the

11  Otterbeck Patents "were invalidly obtained." *Silbersher*, 89 F.4th at 1168. It found that Silbersher

12  "filled the gaps" to "present the full picture of fraud." *Id.* But with the more complete record, we can

13  see that the first gap was filled by the IPR Decision (unavailable on appeal), and the second gap filled

14  by national news articles (also unavailable on appeal).

15      On gap (1), the IPR Decision discloses the very facts Silbersher cites as his basis to claim that

16  Defendants withheld information from the Patent Office: (a) that the '688 Patent's alleged invention

17  in claims 1 and 16 (that Apriso's active ingredient could be taken without food) was already taught

18  by the Marakhouski and Brunner studies and (b) that a co-author of these studies, Dr. Roland

19  Greinwald, was "the head of research and development at Falk." *Compare* IPR Decision, at *6, 10

20  *with* TAC ¶ 13 (alleging the same facts). On gap (2), the news websites *Business Wire* and *Seeking*

21  *Alpha* published and described Defendants' announcements that Apriso's generic competitors

22  asserted that the Otterbeck Patents were invalid. TAC ¶¶ 139–41.[4]

23      The IPR Decision was no doubt disclosed through enumerated channels. It qualifies under

24

---

25  [3] At the Ninth Circuit, "Silbersher d[id] not meaningfully challenge" that the *Law360* article and
   Marakhouski and Brunner studies qualify as news media. *Silbersher*, 89 F.4th at 1166. And "[t]he

26  patent prosecutions involving the '344, '688, and Otterbeck Patents are qualifying public disclosures
   under channel (ii), as 'other Federal . . . hearing[s].'" *Id.* at 1165.

27  [4] *See* Todisco Decl. Ex. D ("Lupin filed an ANDA application to seek approval to market a generic
   version of APRISO. The notification letter asserted non-infringement ***and invalidity*** of [Salix's]

28  Orange Book-listed U.S. Patent No. 6,551,620." (emphasis added)); Todisco Decl. Ex. E (same);
   Todisco Decl. Ex. F (similar).

1    the "other Federal … hearing" channel, because a patent prosecution's "public disclosure also

2    encompasses publicly-filed documents submitted as part of the proceeding." *Silbersher*, 89 F.4th at

3    1165. It also qualifies, along with the *Business Wire* and *Seeking Alpha* articles, under the "broad

4    scope" of the "news media" channel. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S.

5    401, 408–09 (2011) (citation omitted). The IPR Decision was attached to and incorporated within an

6    article in *Law360*—a national legal news publication and undisputed channel for public disclosure.

7    *See* 31 U.S.C. § 3730(e)(4)(A)(iii); *see also* Dkt. 109 at 4 n.2 & 15 (taking judicial notice of the

8    *Law360* article and assessing it as a channel (iii) news media public disclosure). The IPR Decision

9    was therefore "a part of" the *Law360* article. *Schindler Elevator Corp.*, 563 U.S. at 411 & n.6

10   (holding that if "an allegation or transaction is disclosed in a record attached to" a qualifying

11   disclosure, it too is disclosed in that channel). *Business Wire*, a press release and newswire service,

12   and *Seeking Alpha*, a public website, are quintessential news media. *See* Todisco Decl. Exs. D & E;

13   *United States ex rel. Green v. Serv. Cont. Educ. & Training Tr. Fund*, 843 F. Supp. 2d 20, 32 (D.D.C.

14   2012) (collecting cases "constru[ing] [news media] to include readily accessible websites").[5]

15          3.    *Silbersher is not an "original source" of the publicly disclosed information.*

16          "Ninth Circuit law makes it clear that to qualify as an original source, Relator must

17   demonstrate (1) direct and independent knowledge of the information on which his allegations rest;

18   and (2) that he voluntarily provided that information to the government before filing his action."

19   *United States ex rel. Solis v. Millennium Pharms., Inc.*, 445 F. Supp. 3d 786, 796 (E.D. Cal. 2020)

20   (cleaned up). Silbersher can demonstrate neither.

21          *First*, "direct" knowledge requires "firsthand knowledge of the alleged fraud" that is obtained

22   "through [the relator's] own labor unmediated by anything else.'" *Solis v. Millennium Pharms., Inc.*,

23   852 Fed. Appx. 298, 300 (9th Cir. 2021). Silbersher is no whistleblowing insider. His FCA

24   allegations rely on second-hand, public information that he found while developing evidence for his

25

26   _____

27   [5] The IPR Decision, *Business Wire* article, and *Seeking Alpha* article were not in the appellate record, so the Ninth Circuit could not address whether they qualified as public disclosures. *Silbersher*, 89 F.4th at 1166 (assessing only the text of the *Law360* article). The Ninth Circuit instead considered

28   only whether the IPR *proceeding* itself qualifies as a disclosure. *Id.* ("[T]he IPR **proceeding** at issue here did not constitute a disclosure occurring within a specified channel." (emphasis added)).

1  clients to use in the IPR proceeding. *Compare, e.g.*, IPR Decision, at *10 (finding "that the 'without

2  food' limitation is taught by Marakhouski and Brunner"), *with* TAC ¶ 13 (alleging Defendants

3  knowingly omitted the same studies). His knowledge, derived from attorney work product and

4  research, is neither direct, independent, nor unmediated. *See, e.g.*, *United States v. Scan Health Plan*,

5  2015 WL 12778776, at *7 (C.D. Cal. Aug. 28, 2015) (relator lacked "direct and independent

6  knowledge" because he had "learned most of this secondhand information while employed"); *United*

7  *States ex rel. Bly-Magee v. Premo*, 470 F.3d 914, 917 (9th Cir. 2006) (similar).[6]

8      *Second*, however Silbersher obtained his information, he did not disclose it voluntarily.

9  Silbersher was bound by professional, ethical, and contractual duties to disclose alleged fraud related

10  to the patent whose claims his clients were seeking to invalidate. Silbersher thus "acted in exchange

11  for valuable consideration … to do the very acts he claims were voluntary" and was "compelled to

12  disclose the fraud by the very terms of his employment," which is contrary to "[d]ictionary definitions

13  of 'voluntary.'" *United States ex rel. Fine v. Chevron, U.S.A. Inc.*, 72 F.3d 740, 743–44 (9th Cir.

14  1995) (en banc); *see Prather v. AT&T, Inc.*, 847 F.3d 1097, 1107 (9th Cir. 2017) (no voluntary

15  disclosure by attorney-relator, whose FCA claim was based on work performed "during work hours,

16  on a work computer" even though "it was not [attorney-relator's] job to discover and report fraud").

17      **B.    The TAC violates Rule 9(b) by lumping Defendants together.**

18      Next, the TAC fails to cure the deficiency that was fatal to the SAC: lumping Defendants into

19  an "undifferentiated mass." Dkt. 162 at 2. With respect to Silbersher's "downstream" fraud theory—

20  the theory that all claims for payment for Apriso are necessarily false, TAC ¶¶ 35, 158—the TAC

21  continues to "attribute[] wholesale all of the allegations against [one Defendant] to all of the

22  Individual Defendants." *United States ex rel. Juan v. Regents of Univ. of Cal.*, 2018 WL 6168529, at

23  *2 (N.D. Cal. Nov. 26, 2018) (citation omitted). The TAC still does not specify which defendant (if

24  any) wrongfully delayed generic competition, entered into agreements with the Government, made

25

26  [6] "Allowing a lawyer to qualify as an original source based on information a client paid him to obtain"
   also raises an "ethical problem," given an attorney's fiduciary duties of loyalty and candor. Dkt. 109
27  at 16–17; *see also United States ex rel. Stinson, Lyons Gerlin & Bustamante, P.A. v. Prudential Ins.*
   *Co.*, 944 F.2d 1149, 1161 n.10 (3d Cir. 1991) (construing the "'original source' exception" to
28  "avoid[] the conflict of interest issue that could arise by a lawyer arrogating to himself . . . a qui tam
   action based on information learned in the service of a client").

false certifications to Government payors, or submitted claims to the Government to pay for Apriso (among other things). It instead directs allegations on these topics to all "Defendants." *See, e.g.*, TAC ¶¶ 156–58, 162–68, 169–84, 191–95. Such indiscriminate allegations make it "impossible for defendants to know . . . the role each of them is said to have played in the alleged fraudulent scheme." Dkt. 162 at 3; *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) ("everyone did everything allegations" constitute "shotgun pleading" that must be dismissed.)

For the "upstream" theory—the theory that Defendants deceived the Patent Office in obtaining the '688 Patent—the TAC mostly replaces the term "Defendants" with "Dr. Falk and Salix," a superficial change that helps little. *See, e.g.,* TAC ¶¶ 12–14, 17, 21, 23, 25. At best, this means that the TAC now lumps together three defendants (Dr. Falk, Salix Pharmaceuticals, Ltd., and Salix Pharmaceuticals, Inc.) rather than all five. Of course, "the lumping of [three] Defendants warrants dismissal" too. *United States v. Safran Grp. S.A.*, 2017 WL 235197, at *8 (N.D. Cal. Jan. 19, 2017). Even worse, the TAC converts many allegations to passive voice—which avoids the term "Defendants," but makes even less clear who allegedly did what. *Compare, e.g.,* SAC ¶ 90 *with* TAC ¶ 92 (changing "Other statements **Defendants** made while prosecuting the '688 Patent" to "Other statements made while prosecuting the '688 Patent") (emphasis added).[7]

The TAC's new section (VI.B "Each Named Defendant Participated in the Fraud Alleged Herein" at TAC ¶ 105–18) confirms that Silbersher cannot satisfy Rule 9(b). For instance, it alleges that Salix Pharmaceuticals, Inc. "participated in the fraud alleged herein" because it had a license to Apriso-related patents *before* the prosecution of the '688 patent and because it was a plaintiff in certain patent enforcement actions. TAC ¶ 108–09. These allegations offer no clarity about Salix Pharmaceuticals, Inc.'s alleged role in conduct by "Dr. Falk and Salix," and fail to provide the "the who, what, when, where, and how" that Rule 9(b) requires. *Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 90 (N.D. Cal. 2020); *see, e.g., see also United States v. Valley Campus Pharmacy, Inc.*, 2021 WL 4816648, at *11 (C.D. Cal. June 23, 2021) (dismissing FCA claims about altered medical

---

[7] *See also, e.g.,* SAC ¶ 99 with TAC ¶ 102 (changing "**Defendants'** omission of these facts was material . . ." to "Omitting these facts was material . . .") (emphasis added); SAC ¶ 34 *with* TAC ¶ 35; SAC ¶ 23 *with* TAC ¶ 24; SAC ¶ 119 *with* TAC ¶ 137; SAC ¶ 124 *with* TAC ¶ 142; SAC ¶ 126 *with* TAC ¶ 144; SAC ¶ 131 *with* TAC ¶ 149; SAC ¶ 133 *with* TAC ¶ 151.

1  records that failed to allege "who altered a record or when any record was altered."). The TAC blames

2  its inability to allege who did what on the fact that Silbersher has "no access to the [relevant] records,"

3  TAC ¶ 180, but this only highlights why the FCA claims must fail. *Ebeid ex rel. United States v.*

4  *Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) ("To jettison the particularity requirement simply

5  because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule,

6  especially because the FCA is geared primarily to encourage insiders to disclose information.").

7      **C.    The TAC fails to plead falsity.**

8      Rule 9(b) requires a relator to plead falsity with particularity. At minimum, they must "allege

9  particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong

10  inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998–99. The TAC fails to do so.

11          *1.    The TAC fails to plead falsity in the '688 Application*

12      Silbersher's upstream and downstream fraud theories rely on the same threshold premise: that

13  the '688 Patent was obtained through fraud. But the premise fails on both the law and the facts.

14      Starting with the law, Silbersher asserts that the '688 Patent application constituted a false

15  claim. TAC ¶ 35. But "[p]atents convey only a specific form of property right—a public franchise"—

16  which belongs to the patentholder (not the government). *Oil States Energy Servs., LLC v. Greene's*

17  *Energy Grp., LLC*, 584 U.S. 325, 338 (2018). "Such a 'purely regulatory' scheme" does not invoke

18  the "traditional property rights" encompassed by the False Claims Act. *Franchitti v. Cognizant Tech.*

19  *Sols. Corp.*, 555 F. Supp. 3d 63, 69 (D.N.J. 2021) (because a visa is not property, submitting false

20  documentation in a visa application could not constitute a false or fraudulent claim (citation

21  omitted)). The Federal Circuit has held in applying two other federal fraud statutes that because "a

22  patent application is not government property," a defendant cannot commit "fraud by making false

23  statements to the PTO in prosecuting applications." *VanVoorhies*, 278 F.3d at 1303; *see also*

24  *Evercrete Corp. v. H-Cap Ltd*., 429 F. Supp. 2d 612, 629–30 (S.D.N.Y. 2006) (a trademark

25  "registration is not money or property in the hands of the USPTO" because its interest is "purely

26  regulatory" and not "economic" (citation omitted)). This dooms Silbersher. The "upstream fraud"

27  theory fails directly. *VanVoorhies*, 278 F.3d at 1303. And the "downstream fraud" theory fails for

28  lack of an original fraud that would taint subsequent claims. *See U.S. ex rel. Griffith v. Conn*, 117 F.

Supp. 3d 961, 978 (E.D. Ky. 2015) (claims submitted after allegedly fraudulent form were not false where the complaint failed to establish that original form created any FCA liability).

Turning to the facts, the TAC does not plausibly allege that any statement in the '688 Application was false. *See, e.g.,* Dkt. 142 at 9–13 (Defs.' Mot. to Dismiss Second Am. Compl.). It identifies only a single allegedly false statement: the sentence that "unlike other 5-mesalamine drugs available at the time of the invention, [Dr. Falk] has demonstrated that the claimed methods are equally safe and effective when granulated mesalamine is administered to a subject without food." TAC ¶ 85. The TAC alleges that this statement is proven false by the statement in the '344 Application that the "invention is due in part, to the unexpected finding that administration of balsalazide with food increases both the bioavailability and decrease[d] the systematic absorption of 5-ASA." TAC ¶¶ 17, 93 (alterations omitted).

If these dense, technical sentences do not jump off the page as inconsistent, that is reason alone to reject falsity. "At minimum, the FCA requires proof of an objective falsehood," so "scientific judgments . . . cannot be false." *U.S. ex rel. Englund v. Los Angeles Cnty.*, 2006 WL 3097941, at *11 (E.D. Cal. Oct. 31, 2006) (citation omitted). Even "contested and contestable" statements require something more to be "false," such as allegations that data are "fabricated or fraudulently created." *ONY, Inc.*, 720 F.3d at 496–97. There is no such allegation here. In fact, under any standard, the alleged statements from the '344 and '688 Prosecutions do not plausibly reflect "opposite"—or even inconsistent—positions. TAC ¶ 14.

*First*, the '344 and '688 statements are about different compounds: "granulated mesalamine" in the '688 versus "balsalazide" in '344. TAC ¶¶ 85, 93. The TAC presents a matrix of studies showing why that matters: different compounds have different results when administered with food. *See* TAC ¶ 94 (showing two drugs for which "food effect" *increased* colonic bioavailability, four for which it *decreased*, and one for which it had *no effect*); *see also United States v. DaVita Inc.*, 2020 WL 3064771, at *9 (C.D. Cal. Apr. 10, 2020) (dismissing FCA claim where relator lacked sufficient scientific evidence to allege that prescription drug was "equivalent" to over-the-counter alternatives).

*Second*, the two statements would not contradict each other even if they concerned the same compound. The '688 statement was about **safety and efficacy**: that, unlike with other mesalamine

drugs Dr. Falk "demonstrated" that the compound was "***equally safe and effective*** when . . . administered to a subject without food." TAC ¶ 85 (emphasis added). The '344 statement, on the other hand, was about ***bioavailability***: that it had been "unexpected" to find that taking the mesalamine compound with food "***increase[d]. . . the bioavailability***" of the drug. TAC ¶ 93 (emphasis added). While a drug's bioavailability can be one factor that the FDA considers in determining whether a drug is "safe and effective," they are not the same thing. *Kociemba v. G.D. Searle & Co.*, 707 F. Supp. 1517, 1526 (D. Minn. 1989); *See Hoffmann-La Roche Inc. v. Apotex Inc.*, 748 F.3d 1326, 1334 (Fed. Cir. 2014) ("The increased level of bioavailability has not been shown to be responsible for the improved . . . efficacy.").

### 2.   The TAC fails to plead falsity in "downstream" claims for payment.

The TAC fails to allege falsity in the "downstream" theories of implied falsity and promissory fraud for additional reasons. *First*, it fails to describe *any* content in *any* claim for payment for Apriso. *See, e.g.*, TAC ¶¶ 180, 193 (admitting a failure to identify false claims for payment); *see also Faulkner*, 2024 WL 4982992, at *5 ("It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim." (citation omitted)). Although Silbersher alleges a "taint[]" from the '688 Patent, *see e.g.*, TAC ¶¶ 154, 180, the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to ***the claim for payment***." *Cafasso*, 637 F.3d at 1055 (emphasis added; cleaned up); *see, e.g.*, *United States v. Kaiser Found. Health Plan, Inc.*, 2016 WL 11760614, at *7 (C.D. Cal. Mar. 2, 2016) (complaint failing to allege "any submissions, representations or promises" could not "show *an actual false claim* for payment" (citation omitted)).

*Second*, Silbersher's allegation that (unspecified) Defendants certified that the price for Apriso was "fair and reasonable" is too vague, imprecise, and subjective to allege falsity. TAC ¶ 176. "The Ninth Circuit has held that when the statutory . . . requirement underlying an FCA claim contains 'imprecise and discretionary language,'" there is no "objective statement of fact that can be deemed 'false.'" *United States v. McKesson Corp.*, 2020 WL 4805034, at *5 (N.D. Cal. Aug. 18, 2020) (collecting cases) (quoting *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996)). "[F]air and reasonable" is "subject to discretionary interpretation by the government,"

1    so that it "[can]not support a finding of falsity under the FCA." *Id.* at \*5; *see also Faulkner*, 2024

2    WL 4982992, at \*6–7 (dismissing FCA claim that "depend[ed] on open-ended and discretionary

3    language" requiring defendants to "charge a 'reasonable' rate").[8]

4    **D.    The TAC fails to plead scienter.**

5    To plead scienter, Silbersher must allege that Defendants had "actual knowledge, deliberate

6    ignorance of the truth or falsity of the information, or reckless disregard of the truth or falsity of the

7    information." *U.S. ex rel. Durkin v. Cnty. of San Diego*, 300 F. Supp. 3d 1107, 1128 (S.D. Cal. 2018).

8    "[I]nnocent mistakes, mere negligent misrepresentations and differences in interpretations will not

9    suffice." *Id.* (cleaned up). The TAC fails to meet this standard for three independent reasons.

10    *First*, Silbersher's theories of falsity rely on debatable scientific and regulatory

11    interpretations. "At the very least, the above discussion demonstrates that [Silbersher's] theory of

12    liability is premised on" assertions that are "open to debate"—which "precludes any finding of

13    knowledge." *Thulin*, 2013 WL 5946503, at \*7; *United States ex rel. Colucci v. Beth Israel Med. Ctr.*,

14    785 F.Supp.2d 303, 316 (S.D.N.Y. 2011) ("Even assuming the claims . . . were 'false,' given the lack

15    of clarity in the law, it cannot be said that defendants 'knew' the claims were false.").

16    *Second*, Silbersher's scienter arguments are gutted by the revelation that Defendants

17    repeatedly disclosed the '344 Application to the PTAB. *See supra* Section A. In FCA cases, "scienter

18    almost always requires some badge of fraud, typically in the form of concealment on the part of the

19    defendant"—e.g., allegations of "alter[ed] test results" or admissions from employees "management

20    was aware that the defendant company was violating [the law]." *United States ex rel. Lockwood v.*

21    *Sanofi US Servs., Inc.*, 2024 WL 5087330, at \*15 (C.D. Cal. Dec. 9, 2024) (citation omitted). Here,

23    [8] Silbersher's implied falsity theory fails for the additional reason that the TAC does not allege that
       in seeking payment for Apriso, Defendant certified or specifically represented anything about the

24    '688 Patent. *See, e.g., Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096,
       1114 (D. Haw. 2021) ("[M]erely submitting a claim is insufficient to state a valid implied false

25    certification theory, regardless of the particular allegations of fraud. Rather, 'certification' and
       'specific representations' are also required." (citation omitted)). And his promissory fraud theory

26    fails for the additional reason that he alleges no "causal connection" between Defendants'
       representations to the Patent Office and the "payment of money by the government" on claims for

27    Apriso. *Safran Grp. S.A.*, 2017 WL 235197, at \*9. To the contrary, the TAC alleges that the
       government continues to pay an allegedly inflated price for Apriso eight years after two claims of

28    the '688 Patent were invalidated. *See infra* Section E (citing TAC ¶¶ 3, 18, 194).

by contrast, Defendants presented the allegedly concealed facts to the Government (over the relator's objection). *See In re Rigel Pharms., Inc. Secs. Litig*., 697 F.3d 869, 885 (9th Cir. 2012) (failure to allege scienter where defendant "voluntarily publicly disclosed all the data").

*Third*, Plaintiffs continue to lump defendants, *see infra* Section B, and "collective knowledge" allegations are "an inappropriate basis for proof of scienter." *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274, 1275 (D.C. Cir. 2010).

### E.    The TAC fails to plead materiality.

The FCA's "rigorous" materiality standard requires plausible allegations that "that the statutory violations are 'so central' to the claims that the government 'would not have paid these claims had it known of these violations.'" *United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc*., 953 F.3d 1108, 1121 (9th Cir. 2020) (quoting *Escobar*, 579 U.S. at 196). The TAC cannot meet this high standard.

*First*, Silbersher alleges "[t]he price of a good that the government pays is *per se* material to the government's payment of money." TAC ¶ 182 (emphasis added). But courts in this District reject per se materiality. In *Knudsen v. Sprint Commc'ns Co.*, 2016 WL 4548924, at *13 (N.D. Cal. Sept. 1, 2016), for example, the defendant overcharged the government by failing to provide required price reductions. But the relator did not meet the materiality standard, because he did not allege "that the government consistently refuses to pay claims" that lack the price reduction. *Id.* at *14. Here, too, even if market price of Apriso were too high due to the wrongful exclusion of generic competition, the TAC does not allege that the government "consistently refuses" to pay claims for such drugs.

*Second*, the TAC not only fails to plead that the government would refuse to pay, but pleads the opposite: that the government has "continued to reimburse" claims for Apriso "with full knowledge of [Silbersher's] claims." *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 668 (5th Cir. 2017); *see, e.g.*, TAC ¶¶ 3, 194 ("The Government . . . paid and *continues to pay* the claims." (emphasis added)). Silbersher alleges that the government continues to overpay for Apriso: thirteen years after generic competitors filed applications certifying "*that [Valeant's] patents were invalid*," TAC ¶ 138 (emphasis added); eight years after two claims of the '688 Patent were invalidated, *id.* ¶ 18; seven years after Silbersher's complaint was unsealed, Dkt. 11; five years after

1   "Mylan's ANDA for generic Apriso received FDA final approval," TAC ¶ 142; *see* 21 U.S.C. §

2   355(t) (requiring the FDA Commissioner to "notify relevant Federal agencies" of "all authorized

3   generic drugs"). These concessions require dismissal. *See, e.g.*, *United States ex rel. Williams v. Med.*

4   *Support Los Angeles*, 2021 WL 6104016, at *10 (C.D. Cal. Nov. 29, 2021) (dismissing FCA claim

5   for failing to allege violations "were 'so central to the claims that the government would not have

6   paid these claims had it known of these violations'" (quoting *Winter*, 953 F.3d at 1121)).

7       **F.      The TAC is untimely as to claims that accrued before March 8, 2012.**

8       An FCA claim is untimely unless filed (1) "within six years of the alleged statutory violation"

9   or (2) "within three years after the United States official charged with the responsibility to act knew

10  or should have known the relevant facts," whichever comes later. 31 U.S.C. § 3731(b)(1)–(2);

11  *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 265, 267 (2019) (citing

12  31 U.S.C. § 3731(b)). The latest date Silbersher could possibly allege that relevant facts were known

13  for purposes of the second limitations period is September 7, 2012, when generic competitors began

14  "fil[ing] ANDAs for generic versions of Apriso that included Paragraph IV Certifications ***that***

15  ***Valeant's patents were invalid***." TAC ¶ 138 (emphasis added). Three years from that date is 2015,

16  and this complaint was not unsealed until March 2018. Thus, only the first limitations period is

17  available to Silbersher, and his only timely claims are those that occurred on or after March 8, 2012.

18  All other false claims—including for instance, any alleged false claim in the prosecution of the '688

19  patent in 2009 or 2010—are time-barred and must be dismissed.

20      **G.      The TAC's state law claims must be dismissed for the same reasons.**

21      Silbersher's state law claims rise and fall with his federal FCA claims and must be dismissed

22  for the same reasons. *Solis*, 445 F. Supp. 3d at 802 ("[B]ecause [state] claims also hinge on the same

23  false claim analysis set forth above, they too fail.").

24                                    **CONCLUSION**

25      The TAC epitomizes the opportunistic abuse the FCA was designed to prevent and falls far

26  short of any recognized theory of FCA liability. Because these failures go to the heart of the asserted

27  claims and are still present after three amendments, it is plain that Silbersher "has no hope of fixing

28  his complaint," Dkt. 162 at 3. The Court should dismiss the TAC with prejudice.

1    Dated: August 25, 2025                    HUESTON HENNIGAN LLP

2

3

4                                                By: _____
                                                     Moez M. Kaba
5                                                    Attorneys for Defendants
                                                     Bausch Health Companies, Inc.
6                                                    *f/k/a* Valeant Pharmaceuticals
                                                     International, Inc.,
                                                     Bausch Health Americas, Inc.
7                                                    *f/k/a* Valeant Pharmaceuticals International,
                                                     Salix Pharmaceuticals, Ltd., and
8                                                    Salix Pharmaceuticals, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  3:18-cv-01496-JD
MOTION TO DISMISS THIRD AMENDED COMPLAINT