Nicomedes Sy Herrera (State Bar No. 275332)
Shawn M. Kennedy (State Bar No. 218472)
Laura E. Seidl (State Bar No. 269891)
**HERRERA KENNEDY LLP**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile: (855) 969-2050
Email: NHerrera@HerreraKennedy.com
　　　　SKennedy@ HerreraKennedy.com
　　　　LSeidl@ HerreraKennedy.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

[Additional Counsel on the Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, *ex rel.* ZACHARY SILBERSHER, <br><br>　　　　　　　Plaintiffs, <br><br>　　v. <br><br>VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, <br><br>　　　　　　　Defendants. | Case No.: 3:18-cv-01496-JD <br><br> **PLAINTIFF-RELATOR'S BRIEF IN OPPOSITION TO THE MOTION TO DISMISS FILED BY THE BAUSCH (FORMERLY VALEANT) DEFENDANTS (ECF 179)** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Hearing Date: Nov. 13, 2025 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 11 <br> Hon. James Donato, U.S.D.J. |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I. The Ninth Circuit Already Rejected Bausch's Public Disclosure Arguments................... 2

II. The TAC Adequately Distinguishes Among Defendants. ................................................ 7

III. Relator Sufficiently Pleads Falsity Under Three Liability Theories................................. 9

    A. The Fraudulent Patent Applications are False Claims. .............................. 9

    B. Defendants' Upstream Fraud Taints Downstream Claims for Payment. . 10

    C. Defendants Falsely Certified to "Fair and Reasonable" Pricing.............. 11

    D. The TAC Adequately Pleads Specific False or Misleading Statements. . 12

IV. Relator Pleads Scienter. .................................................................................................. 13

V. Relator Adequately Pleads Materiality. .......................................................................... 14

VI. The TAC Is Not Untimely to Claims Accruing Before March 8, 2012. ......................... 15

VII. The State Law Claims Survive........................................................................................ 15

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Amphastar Pharms. Inc. v. Aventis Pharma SA*
  2013 WL 12139832 (C.D. Cal. Apr. 19, 2013) .................................................................. 1

*Faulkner v. Board of Trustees of Leland Stanford Junior University*
  2024 WL 4982992 (N.D. Cal. Dec. 3, 2024) .................................................................... 12

*Gardner v. Starkist*
  2020 WL 1531346 (N.D. Cal. Mar. 31, 2020) ................................................................... 1

*Guilfoile v. Shields*,
  913 F.3d 178 (1st Cir. 2019) ........................................................................................... 14

*Luv n' Care, Ltd. v. Laurain*
  98 F.4th 1081 (Fed. Cir. 2024) ......................................................................................... 9

*Nautilus, Inc. v. Biosig Instruments, Inc.*
  572 U.S. 898 (2014) .......................................................................................................... 7

*Praxair, Inc. v. Atmi, Inc.*
  543 F.3d 1306 (Fed. Cir. 2008) ........................................................................................ 7

*Silbersher v. Allergan Inc.*
  506 F. Supp. 3d 772 (N.D. Cal. 2020) ............................................................... 1, 2, 10, 11

*Silbersher v. Valeant Pharms. Int'l, Inc.*
  89 F.4th 1154 (9th Cir. 2024) ................................................................................ 1, 2, 4, 5

*United States ex rel. Campie v. Gilead Scis., Inc.*
  862 F.3d 890 (9th Cir. 2017) ....................................................................................... 1, 14

*United States ex rel. Escobar v. Universal Health Servs., Inc.*
  842 F.3d 103 (1st Cir. 2016) ..................................................................................... 14, 15

*United States ex rel. Heath v. Wisconsin Bell, Inc.*,
  92 F.4th 654 (7th Cir. 2024) ........................................................................................... 15

*United States ex rel. Hendow v. Univ. of Phx.*
  461 F.3d 1166 (9th Cir. 2006) ......................................................................................... 10

*United States ex rel. Silbersher v. Allergan, Inc.*
  2025 WL 325761 (9th Cir. Jan. 29, 2025) ........................................................................ 2

*United States ex rel. Silbersher v. Janssen Biotech, Inc.*
  576 F. Supp. 3d 212 (D.N.J. 2021) .......................................................................... 1, 9, 10

*United States v. Allergan, Inc.*
  46 F.4th 991 (9th Cir. 2022) ............................................................................................. 1

*United States v. Ehrlich*
  643 F.2d 634 (9th Cir. 1981) ........................................................................................... 11

*United States v. Mabee*
  765 F.3d 666 (6th Cir. 2014) .................................................................................................. 6

*United States v. McKesson Corp.*
  2020 WL 4805034 (N.D. Cal. Aug. 18, 2020) ...................................................................... 11

*United States v. Strock*,
  982 F.3d 51 (2d Cir. 2020) .................................................................................................... 14

*Universal Health Servs., Inc. v. United States ex rel. Escobar*
  579 U.S. 176 (2016) .................................................................................................. 1, 11, 14

*University of West Virginia Board of Trustees v. VanVoorhies*
  278 F.3d 1288 (Fed. Cir. 2002) .............................................................................................. 9

*Weil v. Raisin Elementary Sch. Dist.*
  2021 WL 6010137 (E.D. Cal. Dec. 20, 2021) ........................................................................ 1

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*
  953 F.3d 1108 (9th Cir. 2020) .............................................................................................. 12

**STATUTES**

31 U.S.C. § 3729(a)(1) ................................................................................................................. 9

31 U.S.C. § 3729(a)(1)(A) .......................................................................................................... 11

31 U.S.C. § 3729(b)(2)(A) ............................................................................................................ 9

31 U.S.C. § 3730(e)(4)(B) ............................................................................................................ 7

Cal. Gov't Code § 12652 ............................................................................................................ 15

Tex. Hum. Res. Code § 36.002 .................................................................................................. 15

- iv -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'     CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

# Introduction

The Ninth Circuit has spoken: the public disclosure bar does not apply here. *See Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1169 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 140 (2024). Undeterred, Bausch runs straight back to its failed public disclosure argument, citing documents it had access to over six years ago, but failed to timely present to the Court. Bausch offers no excuse for its failure to raise these documents then, despite having previously asked the Court to take judicial notice of 20 documents. ECF 37 & 37-1 through -20; *see, e.g.*, *Gardner v. Starkist*, 2020 WL 1531346, at *3–4 (N.D. Cal. Mar. 31, 2020) (denying second motion to dismiss based on argument that "could have been raised" in the first motion); *Weil v. Raisin Elementary Sch. Dist.*, 2021 WL 6010137, at *2 (E.D. Cal. Dec. 20, 2021) (same). In any event, Bausch's belated arguments merely put a new saddle on a dead horse: they don't materially add anything to Bausch's failed public disclosure arguments.

Bausch fares no better on the merits. At its core, this case advances a simple, heartland FCA violation: Defendants used fraud on a government agency (the Patent Office) to overcharge many government agencies (health plans and direct purchasers) for medicine. Multiple courts have issued well-reasoned decisions sustaining similar allegations and rejecting the arguments Bausch makes here. *See United States ex rel. Silbersher v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 228-30 (D.N.J. 2021); *Silbersher v. Allergan Inc.*, 506 F. Supp. 3d 772, 826 (N.D. Cal. 2020), *rev'd on other grounds and remanded sub nom. United States v. Allergan, Inc.*, 46 F.4th 991 (9th Cir. 2022); *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 2013 WL 12139832, at *3 (C.D. Cal. Apr. 19, 2013), *vacated on other grounds*, 2015 WL 4511573 (C.D. Cal. July 20, 2015), *vacatur aff'd*, 856 F.3d 696 (9th Cir. 2017). Those decisions are correct because—although the FCA is not an all-purpose fraud statute, *see Univ. Health Servs., Inc. v. United States ex rel. Escobar,* 579 U.S. 176 (2016)—controlling precedent confirms that, as an anti-fraud statute intended to protect the public fisc, the FCA should be construed "broadly" to "reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (citation omitted). In expressing its views on the value and importance of Relator's *qui tams*, the State of California rejected drug companies' attempts to deflect from their unlawful conduct:

> Silbersher's "suits, if successful, may set an important precedent that would discourage drug companies from taking advantage of the *ex parte* nature of patent proceedings by withholding or misrepresenting material information relating to patentability—and thereby significantly reduce the amount governments and insurers pay for important medicines. …
>
> Mr. Silbersher's suits are neither 'parastic' nor 'opportunistic.' … We therefore welcome the efforts of relators like Mr. Silbersher to help identify instances where drug patents are not just invalid, but fraudulent[.]

*Allergan*, 506 F. Supp.3d at 783-84 (quoting Statement of Interest, No. 18-cv-3018, ECF 133).

Bausch's motion presents these questions: (i) does the public disclosure bar require dismissal?; (ii) does the Third Amended Complaint ("TAC") (ECF 166) rely on improper group pleading? (iii) does the TAC plead falsity with particularity?; (iv) does the TAC plead scienter?; (v) does the TAC plead materiality?; and (vi) are claims before March 2012 time-barred?

## Argument

### I. The Ninth Circuit Already Rejected Bausch's Public Disclosure Arguments.

The Ninth Circuit held, point-blank, that "the public disclosure bar [was] not triggered" in this action. *Valeant*, 89 F.4th at 1169. The court held the IPR that invalidated the '688 patent does not fall within the public disclosure bar's scope, *id*. at 1165-66, and that the qualifying public disclosures "do not collectively disclose a combination of facts sufficient to permit a reasonable inference of fraud," *id*. at 1167. The court explained that, although "the scattered qualifying public disclosures may each contain a piece of the puzzle, … when pieced together, they fail to present the full picture of fraud." *Id.* at 1168; *see also United States ex rel. Silbersher v. Allergan, Inc.*, 2025 WL 325761, at *2 (9th Cir. Jan. 29, 2025) (explaining that "[t]he court in *Valeant* determined that Silbersher's expertise brought those pieces of the puzzle together," and that any qualifying disclosures "did not trigger the public disclosure bar").

Despite *Valeant*'s holding, Bausch makes a new argument it failed to make six years ago when it first moved to dismiss; or earlier this year when it filed moving papers for their second motion to dismiss. Bausch now claims that "the very document that allegedly 'conflicted' with the '688 Patent but which the Ninth Circuit believed had been withheld during prosecution—the application for the '344 Patent"—was supposedly both cited during prosecution of the '688 Patent, and admitted in evidence in the IPR. (Mot. 1.) This argument is factually wrong and legally irrelevant.

- 2 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'  CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

1    Bausch's argument—even if true (which it is not)—does not change the result that *Valeant* dictates, because the Ninth Circuit's holding rested on more than the omissions relating to the '344 Patent. At the heart of the Circuit's decision on public disclosure was its holding that the "Brunner and Marakhouski studies (and Valeant's involvement in those studies) reinforce that Valeant understood the obviousness of" the claimed invention, 89 F.4th at 1168; and that Relator's allegations concerning Defendants' concealment of Marakhouski and Brunner were not "substantially the same" as any or all qualifying public disclosures, *id.* at 1166 (internal quotations omitted). Indeed, the information contained in those studies was *the stated reason* the '688 patent was invalidated. (¶ 18.). Bausch even argues on page 11 of its Motion that "the '344 and '688 statements are about different compounds: 'granulated mesalamine' in the '688 versus 'balsalazide' in '344." While the merits of Bausch's distinction are wrong (*see* p. 12, *infra*), Bausch's argument demonstrates the central importance of Marakhouski and Brunner, which specifically studied "Salofalk," the granulated mesalamine formulation developed jointly by Salix and Dr. Falk into Apriso. (¶¶ 86-91.) Therefore, Bausch's new argument concerning the '344 Patent, while further confirming fraud, does not vitiate *Valeant*'s ruling.

Bausch also gets the facts wrong. The TAC alleges Defendants told the Patent Office one thing to acquire the '688 patent, but the opposite to obtain the separate, unrelated '344 Patent. (¶¶ 92-104.)[1] While prosecuting the '344 Patent, patent prosecution counsel, Jonathan Sparks, responded to an Office Action by characterizing prior art drugs, Lialda®, Asacol® and Claversal®, in a table identified as "Table 1" (¶ 94) (hereinafter, the "Sparks Amendment"). But while prosecuting the '688 patent, Dr. Falk and Salix (mis)characterized Lialda® differently, (¶ 95), and intentionally omitted material information regarding Asacol® and Claversal® included in the '344 Patent filer wrapper (¶¶ 96-104).

The "document" that Bausch incorrectly claims the Ninth Circuit believed had been withheld during prosecution—U.S. Patent Application Publication No. 2007/0167416 ("the '416 Publication") (Todisco Decl. Ex. G)—was introduced into evidence as Exhibit 2051 in the IPR. The '416 Publication is ***not*** the document that the TAC alleges—or the Ninth Circuit believed—was withheld

---

[1] All citations to "¶" and "¶¶" refer to paragraphs in the TAC (ECF 166).

- 3 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'   CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

during the '688 Patent's prosecution. Bausch misleadingly mischaracterizes the '416 Publication as the "application" for the '344 Patent. But the '416 Publication is the pre-issuance published version of what eventually issued as the '344 Patent. It does not include the file wrapper (*i.e.*, prosecution history) for the '344 Patent, any of the examiner's office actions, the applicant's responses, the Sparks Amendment, or Table 1 discussed in the TAC (¶¶ 92–104). Thus, it includes none of the most important facts to this case that Relator relies upon. By contrast, Bausch's argument hinges on reference to "the '344 Application," but that term is never defined in its Motion, and it is misleading because the "application" for a patent does not refer to any single document.

Bausch suggests the '416 Publication was "central to the IPR." (Mot. 4.) Not so. Defendants introduced the '416 Publication on redirect during a deposition. (*See* IPR2016-00297, Ex. 1067 at 81.) Nothing in the deposition, the IPR generally, or the '688 Patent's prosecution, discussed Defendants' statements in the Sparks Amendment as alleged in the TAC (¶¶ 92–104). The '416 Publication was only at issue in the IPR to clarify whether the Examiner's use of the term "bioavailability" referred to colonic or systemic bioavailability. (*See* Todisco Decl. Ex. M, IPR Tr. 30:20-31:2 and 34:3-5.) This distinction was irrelevant to the IPR outcome and not mentioned in the IPR decision.

Bausch also claims "[t]he Ninth Circuit never considered whether these disclosures bar Silbersher's claims, so its reversal and remand in no way preclude these arguments." (Mot. 1.) Wrong again. The *Valeant* court considered the inconsistent statements made in the Sparks Amendment—which were ***not*** disclosed in the '416 Publication. *Valeant*, 89 F.4th at 1168 ("Falk and Valeant took conflicting positions in their patent prosecutions of the '344 and '688 Patents. Neither of these patent prosecutions, or any other disclosure, reveals that fact.").

Bausch also tries to backdoor the full IPR decision under the second and third public disclosure channels, because the IPR decision is available on the Patent Office's electronic docket website, (ECF 142-4), and was hyperlinked in a Law360 article. The Ninth Circuit foreclosed this argument. *Valeant*, 89 F.4th at 1165-66. The court did not hold IPRs fall outside the public disclosure bar because of where they appear on the Internet, but because of their underlying nature. *Janssen* reached the same conclusion, holding that considering IPR decisions under channel (ii) would "negate evident Congressional intent."

- 4 -

RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'   CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

1  576 F. Supp. 3d at 225. Otherwise, all judicial decisions, including in cases in which the Government is not a party, would be channel (ii) or (iii) disclosures, because they are generally available on PACER. Similarly, a hyperlink to the IPR decision in a Law360 article is not a channel (iii) disclosure because the decision itself is not "news media," even if the article's text qualifies.

Even if the Court were to consider the IPR decision, Bausch's argument fails. The Ninth Circuit recognized the IPR decision discloses, *at most*, that the '688 patent was invalid as obvious—not that it was tainted by fraud. *See Valeant*, 89 F.4th at 1162. The Court explained: "An IPR does not decide whether an inventor obtained a patent wrongfully—by committing fraud, for example." *Id.* at 1161. Going further, the court held that the mere disclosure that the '688 patent was invalid as obvious is not "substantially the same" as Relator's fraud allegations. *Id.* at 1162, 1169. Indeed, the IPR decision does not mention any withholding of prior art (such as Marakhouski and Brunner), much less an intentional one. In its first motion, Bausch argued the Law360 article's description of the IPR decision constituted a public disclosure. This discredited argument essentially is the same one Bausch rehashes here.

Bausch says that Relator "conceded" that the IPR decision would bar his suit. (Mot. 4-5.) Bausch and Dr. Falk both unsuccessfully raised this same argument during the Ninth Circuit appeal (No. 20-16176, Dkt. 41 at 34-35; *Id.*, Dkt. 43 at 24-25), and the Ninth Circuit rejected it. Moreover, during the first motion to dismiss, Relator expressly stated that much of his "investigation, and the allegations of fraud here, were *not* disclosed in the IPR," and that the key facts described above "were not raised in the underlying IPR, or anywhere." (ECF 45, at 2, 14; *see also id.*, at 10 ("The IPR may have invalidated the '688 Patent, it contained *no findings* the patent was fraudulently procured[.]")) The alleged "concession"—counsel's statement that "[b]efore 2010, there would be no case," (ECF 102, Tr. 12:24) was counsel recognizing the importance of 2010 amendments to the FCA.

Those 2010 amendments were significant and went beyond adding the "Government party" limitation that excludes IPRs in the first statutory channel, 31 U.S.C. § 373(e)(4)(A)(i), which in context was the point that counsel was addressing when he made that statement. Importantly, Congress amended § 3730(e)(4)(A) to also require that qualifying public disclosures had to be "substantially the same" as

- 5 -

RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'    CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

1  the fraud allegations, instead of "based upon" them under the pre-2010 version."[2] Under the post-2010 framework, the Ninth Circuit has now confirmed that the purported disclosures Bausch cites are not "substantially the same" as Relator's fraud allegations. Relator raised this argument in his motion papers, and he explicitly reiterated it during the hearing, saying that Defendants "cannot show a substantially similar allegation or transaction, even if you did consider their sources to be enumerated within the statute." (ECF 102, Tr. 8:15) Thus, statements about what would have happened hypothetically if this case pre-dated the 2010 amendments did not waive anything, let alone Relator's argument that any disclosures in the IPR decision are not "substantially the same" as Relator's fraud allegations. *See United States v. Mabee*, 765 F.3d 666, 672-73 (6th Cir. 2014) ("ambiguous" admissions "did not demonstrate the sort of plain, positive concurrence … needed to establish a waiver… .").

Aside from the IPR decision, Bausch submits two additional articles—from *Business Wire* and *Seeking Alpha*—that generally describe a Paragraph IV certification from Lupin, a potential generic competitor. (Mot. 6.) These articles do not say if any material prior art was withheld, or any other fact suggesting fraud. They certainly are not "substantially the same" as the TAC's detailed allegations about the critical concealment of the Brunner and Marakhouski studies (¶¶ 86-91); the Otterbeck Patents (¶¶ 119-136), and the additional contradictions with the '344 patent prosecution history (¶¶ 86-104).

Because there has been no public disclosure, the Court need not decide if Relator is an original source. Nevertheless, Relator's pharmaceutical patent expertise is qualifying "knowledge" that is "independent" and "materially adds to" any public disclosures, and he voluntarily provided "information" to the Government before filing this suit. Bausch says that Relator lacks "direct" and "independent" knowledge. (Mot. 7.) Congress removed the "direct" knowledge requirement in 2010. Bausch also argues that Relator had to disclose the alleged fraud, making his disclosures involuntary. But Relator did not work for the Government, as did the relators in the two decisions Bausch relies upon. Relator therefore had no obligation to report them. He did so voluntarily on February 6, 2018, satisfying

---

[2] Relator argued on appeal that the shift in 2010 from "based upon" to "substantially the same" was intended to "demand a greater degree of similarity." The Ninth Circuit did not agree with this argument, but it did agree with Relator's interpretation of "substantially the same" as it applies to this case.

- 6 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'   CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

1  31 U.S.C. § 3730(e)(4)(B)'s requirements. (¶ 42.) Nor did Relator have any obligation to use the TAC's
2  allegations in the IPR because fraud arguments cannot be raised in an IPR. *See* 35 U.S.C. § 311(b).

## II.   The TAC Adequately Distinguishes Among Defendants.

The TAC now identifies the specific conduct by each individual defendant. (¶¶ 4, 11-17, 19, 21, 23, 26, 44-46, 86-89, 92-94, 95-98, 101, 104, and 105-118.) It also identifies wrongful conduct by individuals, including Mr. Johnson (inventor) (¶¶ 17, 94, 105-106, 113-114) and Mr. Sparks (outside prosecuting attorney) (¶¶ 93-94, 96-98, 101, l05), and why their conduct can be imputed to Dr. Falk, Salix Pharmaceuticals, Inc., and Salix Pharmaceuticals, Ltd. (*E.g.,* ¶¶ 105-109; *see also Praxair, Inc. v. Atmi, Inc.*, 543 F.3d 1306, 1316-17 (Fed. Cir. 2008) (finding inequitable conduct—which requires a higher standard than what applies to the FCA claims here—against Praxair based on knowledge and intent to deceive by two individuals, an outside attorney and inventor, that Praxair did not employ), *abrogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014). It is irrelevant that some Defendants may not have participated in the '688 patent prosecution, because each Defendant exploited that patent to harm the Government. *Cf. id.* (Praxair liable based on agent's conduct even though it "was not involved in the prosecution of the [relevant] patent").

Bausch says that for the fraud on the Patent Office, the TAC lumps together Dr. Falk, Salix Pharmaceuticals, Ltd., and Salix Pharmaceuticals, Inc. That ignores allegations in the TAC that detail each of those three defendants' particular roles in perpetrating the fraud on the Patent Office, and the Salix entities' consolidation and subsequent treatment as business "segments" within Bausch[3] after Bausch (at that time called Valeant Pharmaceuticals International, Inc.) acquired Salix in April 2015.[4] (¶¶ 12-17, 44-46, 82-85, 86-89, 92-94, 95-98, 101-104, 105-116.) Indeed, the TAC specifically identifies how Dr. Falk and each Salix entity collaborated in developing Apriso and protected it from

---

[3] Other lawsuits document Bausch's other fraudulent conduct and attempts to fraudulently convey assets between its subsidiaries to evade potential judgments. *See, e.g.,* Letter, *GMO Tr. v. Bausch Health*, No. 3:22-cv-01823 (D.N.J. Aug. 23, 2022), at ECF 12, (counseling against accepting Bausch's corporate shell game gambit); Opinon, *id.*, ECF No.17.

[4] Therefore, both Salix entities' actions before April 2015 merged for liability purposes within Bausch, which reports to the SEC all Apriso sales as occurring within its business "segments." *See* ¶ 46 (alleging facts from Bausch Health Companies Inc.'s SEC filings, including Bausch's 2024 10-K).

- 7 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'         CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

generic competitors, including "sharing data" and collaborating on the Marakhousi and Brunner studies. (¶¶ 88-89.) The TAC even names the specific individuals involved (*e.g.,* Roland Greinwald, Dr. Falk's head of Research and Development, ¶ 87). Even the initial name of the earlier product developed into Apriso (Salo<u>falk</u>®)—confirms their joint efforts. (¶ 87.) Bausch attacks only the allegations related to Salix Pharmaceuticals, Inc., but those allegations specify that company's exclusive rights to Apriso during the '688 Patent's prosecution. The company also held New Drug Application No. 22-301, which is required to sell Apriso in the United States. (¶¶ 48, 63, 109.)

Bausch says that the TAC does not identify which defendants "wrongfully delayed generic competition," (Mot. 8), but the TAC alleges that each Defendant contributed to wrongfully delaying generic competition, with their individual roles identified in at least paragraphs 4, 11-17, 19, 21, 23, 26, 44-46, 86-89, 92-94, 95-98, 101, 104, and 105-118. Bausch also incorrectly claims that the TAC does not identify which defendants "entered into agreements with the Government," made false certifications to government payors, or "submitted claims." (Mot. 8.) Bausch's argument is premised on an improperly narrow view of the False Claims Act. The Act does not require that any Defendant submitted an invoice or entered an agreement with the Government, because it imposes liability on anyone who "causes to be presented" a "false or fraudulent claim," or who "makes, uses, or causes to be made or used, a false record of statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). The TAC alleges not only that submission of an application for a patent is *itself* a false claim under the Act (¶ 35), but that all claims for payment for Apriso prescriptions (regardless of whether the claims were submitted by third parties, such as providers, patients, or pharmacies) were false—and each Defendant played a role in causing their submission. *See* Section III(A)-(C), *infra*.

In any event, the TAC alleges that Bausch was responsible for selling Apriso after it acquired both Salix entities in April 2015. (¶¶ 44-46.) The TAC also alleges that both Salix Pharmaceuticals, Ltd., and Salix Pharmaceuticals, Inc., were also responsible for selling Apriso, for which Salix Pharmaceuticals, Inc. owns the NDA, (¶¶ 107-109).These entities necessarily certified to Apriso's "fair and reasonable" pricing as a condition for selling Apriso directly to the Government (*i.e.,* the Veterans Health Administration), or having Medicaid reimburse Apriso prescriptions. (¶¶ 169-180.)

- 8 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'  CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

And independently, the TAC alleges that the Government reimbursed providers and pharmacies for overpriced Apriso, suffering harm from Defendants' fraudulent scheme, even when the money did not go to Defendants directly. (¶¶ 36-37).

### III. Relator Sufficiently Pleads Falsity Under Three Liability Theories.

#### A. The Fraudulent Patent Applications are False Claims.

The TAC alleges that fraudulent patent applications are themselves false claims. (¶ 35.) A "claim" is "any request or demand, whether under a contract or otherwise, for money or property," and expressly applies "*whether or not the United States has title to the money or property*." 31 U.S.C. § 3729(b)(2)(A) (emphasis added). A patent application is a "request" for a patent, which is "property."[5] The TAC alleges that Defendants' patent applications used false statements to obtain property Defendants were not entitled to have. (¶¶ 157-160; *see also* ¶¶ 77–136.) Because the applications constitute false claims, Defendants are liable for damages that the Government sustained "because of" the false claims. 31 U.S.C. § 3729(a)(1); *see Janssen*, 576 F. Supp. 3d at 228. This is an independently sufficient basis for FCA liability that eviscerates Defendants' other arguments.

Bausch argues that a "defendant cannot commit fraud by making false statements to the PTO in prosecuting applications." (Mot. 10 (cleaned up).) But the law says otherwise. *See e.g.*, *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081 (Fed. Cir. 2024); *cf.* 37 C.F.R. § 1.56(a) (prohibiting granting of patents when "fraud on the Office was practiced or attempted" in connection with the application). Bausch cites *University of West Virginia Board of Trustees v. VanVoorhies*, 278 F.3d 1288, 1303 (Fed. Cir. 2002), for the proposition that "because a patent application is not government property, a defendant cannot commit fraud by making false statements to the PTO in prosecuting applications." (Mot. 10.) *Voorhies* does not say that. Rather, the court rejected an inventor's RICO claim because, under the mail fraud statute, the PTO had not been defrauded of something it owns. The FCA, however, is broader than mail fraud, applying "whether or not the United States has title to the money or property" claimed. 31 U.S.C. § 3729(b)(2)(A).

---

[5] *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 338 (2018)*; Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 375 (2019).

- 9 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'    CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

B. Defendants' Upstream Fraud Taints Downstream Claims for Payment.

The TAC alleges that Defendants made false statements or material omissions to: (1) the Patent Office during patent prosecution, (¶¶ 157-160 *see also* ¶¶ 77-136); and (2) the FDA, when Defendants listed the fraudulent patents in the Orange Book, as part of a scheme to exclude generic competitors. (¶¶ 64-70, 107, 109, 139, 163, 177, 186.) This liability theory is indistinguishable from the one the Ninth Circuit upheld in *Campie*, where the defendant pharmaceutical company's alleged false statements to the FDA tainted later claims to government health care programs. *See* 862 F.3d at 902 ("In other words, subsequent claims are false because of an *original fraud* (whether a certification or otherwise)." (quoting *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1173 (9th Cir. 2006))). Courts have held that similar allegations of patent fraud support fraudulent inducement liability. *See Janssen*, 576 F. Supp. 3d at 229 (*qui tam* relator's allegations that defendant drug companies' upstream misrepresentations to the Government in obtaining a fraudulent patent "tainted subsequent claims for payment" for the drug pleaded viable FCA claims); *accord Allergan,* 506 F. Supp. 3d at 824-26 (relying on *Campie*).

Bausch argues that Relator "fails to describe *any* content in *any* claim for payment for Apriso." (Mot. 12.) That is not a basis for dismissal. Courts do not require pleading specific claims for payment. *See Allergan,* 506 F. Supp. 3d at 822-23 (Rule 9(b) does not require a relator to "identify representative examples of false claims to support every allegation; rather, it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." (cleaned up)). Here, the TAC alleges how inflated monopoly prices for brand name drugs artificially increase what the Government pays for those drugs—thus plausibly alleging that *every* claim for payment made to Medicare, Medicaid, and direct government purchasers, such as the VHA, was false because it incorporated unlawfully inflated prices for Apriso caused by the unlawful exclusion of generic competitors. (¶¶ 152-168.)

Bausch notes the FCA attaches liability not to underlying fraudulent activity, but to claims for payment. (Mot. 12.) Yes, there must ultimately be claims for the FCA to apply—but Bausch does not dispute that there were, in fact, *many* claims for payment for Apriso. To the extent Bausch suggests that prior fraud cannot taint those claims as a matter of law, *Campie* foreclosed that argument by

- 10 -

RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'  CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

holding that liability was appropriate when upstream misconduct was "integral to a causal chain leading to payment"—and that it was irrelevant that the defendant's deception was directed at the FDA, as opposed to the paying agencies, because "[i]t is not the distinction between the agencies that matters, but rather the connection between the regulatory omissions and the claim for payment." *Id*. at 902-03 (citation omitted). So too here. By defrauding the Patent Office, Bausch "knowingly … cause[d] to be presented" downstream "false or fraudulent claim[s] for payment" for Apriso. 31 U.S.C. § 3729(a)(1)(A).

### C. Defendants Falsely Certified to "Fair and Reasonable" Pricing.

The TAC alleges that Defendants falsely certified to government programs that claims for reimbursement for Apriso were "fair and reasonable" even though the claimed prices were artificially inflated by upstream fraud on the Patent Office. (¶ 34.) Many courts have deemed upstream fraud that wrongfully inflates prices actionable under the FCA, even if the claim for payment does not require certification with any specific rule or law. *See Escobar*, 579 U.S. at 190-91 (holding billing codes *implicitly* certified that contractors were properly trained and qualified, even though the payment claims did not refer to that certification); *United States v. Ehrlich*, 643 F.2d 634, 635-37 (9th Cir. 1981) (holding that false cost certifications that inflated the price the Government paid violated the FCA); *Allergan*, 506 F. Supp. 3d at 823 ("Defendants' certification that the prices of the drugs they were listing were 'fair and reasonable' misleadingly suggested that they held valid patents on those drugs that allowed them to charge the Government higher prices as a result of the monopolies they held on them."). Indeed, one of the FCA's original purposes was to remedy situations in which the Government was "charged exorbitant prices for goods." *Escobar*, 579 U.S. at 182 (citation omitted).

Bausch claims the "fair and reasonable" certification is too "imprecise" and "discretionary." (Mot. 12) (quoting *United States v. McKesson Corp.*, 2020 WL 4805034, at *5 (N.D. Cal. Aug. 18, 2020)).) But the TAC explains that the Government relies on the manufacturer's reported drug price to decide if prices are "fair and reasonable"; if the manufacturer reports a price that it knows to be the product of a fraudulent monopoly, it is knowingly misleading the Government. (¶¶ 171-76.) And if any ambiguity exists around commonly used phrases like "fair and reasonable," it is not so great as to

- 11 -

1  permit knowingly using fraud to overcharge the Government. Such a reading would render the phrase
2  meaningless. In any event, discretionary determinations or matters of opinion frequently underpin
3  FCA actions. *See, e.g.*, *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953
4  F.3d 1108, 1112-13, 1117 (9th Cir. 2020) (medical opinion of "medical necessity" is actionable if
5  made with deliberate ignorance or reckless disregard); *see also Schutte*, 598 U.S. at 756 (explaining
6  that even statements involving "legal analysis remain actionable if they carry with them by implication
7  an assertion about facts that justify the speaker's statement") (cleaned up). For this reason, *Faulkner v.*
8  *Board of Trustees of Leland Stanford Junior Univ.*, 2024 WL 4982992 (N.D. Cal. Dec. 3, 2024) is
9  distinguishable because the FCA complaint there was based upon a failure to charge "reasonable"
10 rates "sufficient" to cover costs (as opposed to "no greater than" than what was sufficient), *id.* at *6-7.
11 In contrast, Defendants here knowingly charged monopoly rates and excluded lower-cost generics
12 from the market. (¶¶ 157-158.) Both *Janssen*, 576 F. Supp.3d at 228-29; and *Allergan*, 506 F. Supp.3d
13 at 823, confirm the viability of Relator's "fair and reasonable" allegations under these circumstances.

14              D.  <u>The TAC Adequately Pleads Specific False or Misleading Statements.</u>

15         Turning to the facts supporting falsity, Bausch argues that the TAC does not plausibly allege
16 any false statement in the '688 Patent's prosecution history because falsity under the FCA requires
17 fabricated or fraudulently created data. (Mot. 10–11.) Many courts have already held otherwise,
18 specifically upholding Relator's patent fraud theory. *See, e.g., supra* at 1 (citing to *Janssen*, *Allergan*,
19 and *Amphastar*). Moreover, Bausch focuses only on the TAC's allegations about the '344 Patent but
20 overlooks allegations about the intentional omission of the Marakhouski and Brunner studies during
21 '688 Patent's prosecution (¶¶ 86-91), which, on their own, state a claim for fraud by omission.

22         Bausch claims that the TAC's falsity allegations in connection with the '344 Patent must fail
23 for two reasons. (Mot. 11-12.) First, the '688 Patent and '344 Patent claim different drugs (granulated
24 mesalamine versus balsalazide). That is irrelevant because, as alleged in the TAC, what is important is
25 that the prosecution history for the '344 Patent demonstrates that the inventor and prosecuting attorney
26 for the '688 Patent knew of information about prior art drugs (Lialda, Claversal, Asacol) that was
27 material to the '688 Patent but not disclosed to the examiner. Second, Bausch argues that the '688

28
- 12 -
RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'         CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

1   Patent "was about safety and efficacy" whereas the '344 Patent "was about bioavailability." Even if
2   that were true (it is not), it is a distinction without a difference because both mesalamine and
3   balsalazide are drugs for treating ulcerative colitis, and. therefore, the efficacy of both drugs depends
4   upon bioavailability. More importantly, Bausch misconstrues the TAC's allegations. The TAC does
5   not allege that the '344 Patent's invention "contradicted" the '688 Patent's purported invention.
6   Rather, while prosecuting the '688 Patent, Defendants disclosed some information related to prior art
7   mesalamine drugs, but intentionally withheld known information about other prior art mesalamine
8   drugs, and the '344 Patent's prosecution history proves that. (¶¶ 92-104.)[6]

### IV.     Relator Pleads Scienter.

Scienter is a quintessentially factual question, typically reserved for a fact finder. Bausch's three scienter objections are unpersuasive. First, Bausch argues that Relator's theories rely on "debatable scientific and regulatory interpretations," (Mot. 13), but Bausch fails to explain what is debatable or how that specifically impacts the TAC's scienter allegations. Bausch, a sophisticated pharmaceutical company, cannot seriously contend that the laws regulating drugs and patents are too "debatable" for the company to act with intent. Second, Bausch claims Relator's arguments are "gutted by the revelation that Defendants repeatedly disclosed the '344 Application to the PTAB," (*id.*), but as shown above, there is no new revelation because the '416 Publication did not include the information regarding material prior art drugs disclosed in the Sparks Amendment. Finally, Bausch claims that the TAC continues to "lump defendants" (*id.*), but the TAC imputes the knowledge of individuals identified as carrying the duty of candor and good faith to specific defendants (*see e.g.*,

---

[6] Bausch buries two additional arguments in a footnote. First, Bausch cites *Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1114 (D. Haw. 2021), to argue that Relator's implied falsity theory requires alleging that Defendants made specific representations about the '688 Patent in their claims for payment for Apriso. (Mot. 13 n.8.) The specific misrepresentation here is the price—which carries with it an implied promise that the price is "fair and reasonable," or at least was not the product of fraud on the Government. No more granular representation about the '688 Patent is necessary (just as the defendant in *Campie* was not required to make specific representations about its interactions with the FDA in every claim for payment). Second, Bausch cites *U.S. v. Safran Group S.A.*, No. 15cv746, 2017 WL 235197 (N.D. Cal. Jan. 19, 2017), to argue that Relator's promissory fraud theory must fail because it alleges no "causal connection" between fraud on the Patent Office and claims for reimbursement for Apriso. (Mot. 13 n.8.) But the TAC plainly alleges Defendants' misconduct caused false claims to be presented in many ways. (¶¶ 28-30, 32, 34-35, 137-168.)

- 13 -

¶¶ 105-118). Further, Rule 9(b)'s heightened pleading standard does not apply to a defendant's "knowledge" or mental state—which "may be alleged generally." Fed. R. Civ. P. 9(b). And knowledge under the FCA includes reckless disregard or deliberate ignorance. 31 U.S.C. § 3729(b)(1). Here, crediting Relator's allegations that the inventors and prosecuting attorneys made false statements and misleading omissions to the Patent Office to obtain the '688 Patent, it is at least plausible that this misconduct was at least reckless based on the information in Defendants' possession.

## V.     Relator Adequately Pleads Materiality.

The Ninth Circuit analyzes materiality by asking if the misrepresentation has "a natural tendency to influence, or be capable of influencing, the payment of money or property." *Campie*, 862 F.3d at 904-05 (quoting 31 U.S.C. § 3729(b)(4)); *see also United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016) ("Materiality is more likely to be found where the information at issue goes 'to the very essence of the bargain.'" (quoting *Escobar*, 579 U.S. at 193 n.5)). In fraudulent inducement cases, courts hold that materiality can be established upstream, where the fraud occurs, or downstream, where payments occur. *See United States v. Strock*, 982 F.3d 51, 62 (2d Cir. 2020).

Defendants' fraud was material at both junctures. Upstream, but for Defendants concealing material prior art, the '688 Patent would not have issued. (¶¶ 10-14, 18-19, 21, 82-104.) Indeed, the Patent Office invalidated the patent once it learned of the withheld prior art. (¶¶ 18-19.) And the TAC adequately pleads that disclosure of the prior art described in ¶¶ 119-36 would have barred allowance of the Otterbeck Patents. Downstream, the TAC explains that if the '688 Patent had not issued, the Government would have paid less for mesalamine, and that, in many cases, less costly generics would have been substituted because many Government programs required it—which alone demonstrates that price is material to the Government. (¶ 157.) Plus, *Janssen* and *Allergan* held, in indistinguishable circumstances, that materiality was pleaded. *See Janssen*, 576 F. Supp. 3d at 230 (materiality pleaded because "Defendants' misrepresentations to the PTO and other government agencies had a natural tendency or capacity to influence government decisions to … pay inflated prices"); *Allergan*, 506 F. Supp. 3d at 827 ("Because price goes to the 'essence of the bargain' … Relator has adequately alleged that Defendants' fraud was material for the purposes of his FCA claims.").

Bausch incorrectly argues that continued government payments defeat materiality. (Mot. 14.) This improperly assumes that paying agencies were aware of this action, credited the allegations, and decided to ignore Defendants' violations, an unreasonable pro-defense inference at the pleading stage. *See Campie*, 862 F.3d at 906-07. The Government's mere knowledge of allegations—as opposed to actual violations—is insufficient to permit an inference against materiality. *See, e.g.*, *United States ex rel. Heath v. Wis. Bell, Inc.*, 92 F.4th 654, 665 (7th Cir. 2024) ("The government's knowledge of a pending lawsuit making allegations simply does not indicate actual knowledge of actual violations"), *aff'd*, 145 S. Ct. 498 (2025); *Escobar*, 842 F.3d at 112 (similar). Bausch also suggests that the Government "continues to overpay for Apriso." (Mot. 14.) But the TAC alleges the Government paid much less for mesalamine after generic entry.[7]

### VI. The TAC Is Not Untimely to Claims Accruing Before March 8, 2012.

Bausch argues the Government had notice of the fraud for statute of limitations purposes when generic companies filed Paragraph IV certifications alleging Valeant's patents were invalid or would not be infringed. That's wrong: just because a patent is invalidated does not mean it was fraudulent.

### VII. The State Law Claims Survive.

Bausch offers no independent reason to dismiss any state claim. (Mot. 15.) State FCAs sometimes differ from their federal counterpart (*i.e.*, public disclosure triggered only by state sources), *see, e.g.*, Cal. Gov't Code § 12652(d)(3). Oher statutes have different elements. For instance, the Texas Attorney General's office asked Relator to inform the Court that Texas does not require the submission of false claims, *see* Tex. Hum. Res. Code § 36.002, and has a more permissive materiality requirement.

### CONCLUSION

For these reasons, the Court should deny Bausch's motion.

---

[7] Bausch's authorities are therefore distinguishable. For example, in *U.S. ex rel. Harman v. Trinity Industries Ind.*, 872 F.3d 645, 688 (5th Cir. 2017), the government expressly determined that defendant's guardrail end terminal system was eligible for payment. And in *U.S. ex rel. Williams v. Medical Support Los Angeles*, 2021 WL 6104016, at *10 (C.D. Cal. Nov. 29, 2021), court found the alleged tasks performed by non-credentialed examiners were immaterial and administrative tasks.

- 15 -

RELATOR'S OPPOSITION TO THE BAUSCH DEFENDANTS'   CASE NO. 3:18-CV-01496-JD
MOTION TO DISMISS

|   |   |
|---|---|
| 1 | Respectfully submitted, |
| 2  Dated: September 8, 2025 | **HERRERA KENNEDY LLP** |

By: Nicomedes Sy Herrera

Nicomedes Sy Herrera (State Bar No. 275332)
Shawn M. Kennedy (State Bar No. 218472)
Laura E. Seidl (State Bar No. 269891)
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile:  (855) 969-2050
Email:  NHerrera@HerreraKennedy.com
            SKennedy@HerreraKennedy.com
            LSeidl@HerreraKennedy.com

**SPARACINO PLLC**
Tejinder Singh (*pro hac vice*)
1920 L Street, NW, Suite 835
Washington, DC 20036
Telephone: (202) 629-3530
Email: Tejinder.Singh@sparacinopllc.com

**BURNS CHAREST LLP**
Warren T. Burns (*pro hac vice*)
Christopher Cormier (*pro hac* vice)
Clayton Mahaffey (*pro hac vice*)
Matthew Strauser (*pro hac vice*)
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002
Email: wburns@burnscharest.com
            ccormier@burnscharest.com
            cmahaffey@burnscharest.com
            mstrauser@burnscharest.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*