Christy Lea (State Bar No. 212060)
christy.lea@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Nathanael Luman (State Bar No. 273349)
nate.luman@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Phone: 858-707-4000
Facsimile: 858-707-4001

*Attorneys for Defendant*
*Dr. Falk Pharma GmbH*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. *ex rel*. ZACHARY SILBERSHER,<br><br>Plaintiffs,<br><br>vs.<br><br>VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH,<br><br>Defendants. | Case No.: 3:18-cv-01496-JD<br><br>**DEFENDANT DR. FALK PHARMA'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Judge: Hon. James Donato<br><br>Trial Date: None Set<br>Hearing Date: November 13, 2025<br>Hearing Time: 10:00 A.M.<br>Courtroom: 11 |

# TABLE OF CONTENTS

Page No.

I.  INTRODUCTION ..................................................................................................2

II.  BACKGROUND ..................................................................................................2

III.  LEGAL STANDARD ..........................................................................................4

IV.  ARGUMENT........................................................................................................4

    A.  The TAC Still Fails To Plead Fraud With Particularity As To Falk ................4

        i.  The TAC Perpetuates the Group-Pleading Defect.................................5

        ii.  The TAC's New Allegations (¶¶110-116) Remain Deficient ...............6

            1.  No Allegations of Falk Involvement in the '688 Patent Prosecution ..................................................................................6

            2.  No Allegations of Falk FDA Submissions, Approval, or Claims......................................................................................6

            3.  Ownership, Co-Authorship, and Data Sharing Do Not Constitute Fraud.................................................................7

            4.  Scienter Must Be Tied to the Speaker ......................................7

        iii.  Further Amendment of the Complaint Would be Futile........................8

    B.  The TAC Fails To State A Claim Under The FCA ...........................................8

        i.  The TAC fails to plead a false statement or fraudulent course of conduct ...............................................................................................8

            1.  No falsity regarding the Brunner and Marakhouski studies .....................................................................................9

            2.  No falsity regarding arguments made during prosecution of the '688 and '344 patents................................11

            3.  No falsity regarding the Otterbeck patents .............................13

            4.  No falsity regarding claims for reimbursement.......................14

        ii.  The TAC fails to plead scienter ..........................................................14

**TABLE OF CONTENTS**
(*cont'd*)

Page No.

C.    The TAC's State Law Claims Also Fail ............................................................15

V.    CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

Page No(s).

*Abaxis, Inc. v. Cepheid,*
2011 WL 1044396 (N.D. Cal. 2011) ........................................................... 9, 10

*Aevoe Corp. v. AE Tech. Co.,*
2013 WL 876036 (D. Nev. 2013) .................................................................... 9

*Akzo, N.V. v. U.S. Int'l Trade Comm'n,*
808 F.2d 1471 (Fed. Cir. 1986) ..................................................................... 13

*Andritz Inc. v. Cortex N. Am. Corp.,*
2020 WL 4495267 (D. Or. 2020) .................................................................... 9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................... 4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................................... 4

*United States ex rel. Campie v. Gilead Scis., Inc.,*
862 F.3d 890 (9th Cir. 2017) ....................................................................... 4, 8

*Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.,*
2021 WL 5449073 (N.D. Cal. 2021) ............................................................... 9

*Crye Precision LLC v. Duro Textiles,*
LLC, 112 F. Supp. 3d 69 (S.D. NY 2015) ...................................................... 9

*United States ex rel. Durkin v. Cnty. of San Diego,*
2018 WL 3361148 (S.D. Cal. 2018) ........................................................... 7, 15

*United States ex rel. Durkin v. Cnty. of San Diego,*
300 F. Supp. 3d 1107 (S.D. Cal. 2018) .......................................................... 14

*United States ex rel. Englund v. Los Angeles Cnty.,*
2006 WL 3097941 (E.D. Cal. 2006) .............................................................. 13

*Fiskars, Inc. v. Hunt Mfg. Co.,*
221 F.3d 1318 (Fed. Cir. 2000) ..................................................................... 11

*Freedline v. O Organics LLC,*
445 F. Supp. 3d 85 (N.D. Cal. 2020) .............................................................. 4

*GeneriCo, LLC v. Dr. Falk Pharma GmbH,*
2017 WL 2211672 (P.T.A.B. 2017) .......................................................... 7, 11

1

**TABLE OF AUTHORITIES**
(*cont'd*)

2

3

**Page No(s).**

4

*Godecke v. Kinetic Concepts Inc.*,
  937 F.3d 1201 (9th Cir. 2019) ........................................................................ 4

5

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
  498 F. Supp. 2d 25 (D.D.C. 2007) ................................................................. 6

6

7

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
  488 F.3d 982 (Fed. Cir. 2007) ........................................................................ 9

8

9

*Innogenetics, N.V. v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008) .................................................................... 11

10

*United States ex rel. Juan v. Regents of Univ. of Cal.*,
  2018 WL 6168529 (N.D. Cal. Nov. 26, 2018) .............................................. 5

11

12

*Lakim Indus., Inc. v. Linzer Prods. Corp.*,
  2012 WL 12547988 (C.D. Cal. 2012) .......................................................... 12

13

14

*LifeScan, Inc. v. Home Diagnostics, Inc.*,
  103 F. Supp. 2d 379 (D. Del. 2000) ............................................................. 11

15

*In re Oracle Corp.*,
  627 F.3d 376 (9th Cir. 2010) ....................................................................... 14

16

17

*Oracle Corp. v. DrugLogic, Inc.*,
  807 F. Supp. 2d 885 (N.D. Cal. 2011) ........................................................... 9

18

19

*Praxair, Inc. v. ATMI, Inc.*,
  543 F.3d 1306 (Fed. Cir. 2008) ..................................................................... 6

20

*Quatela v. Stryker Corp.*,
  820 F. Supp. 2d 1045 (N.D. Cal. 2010) ......................................................... 5

21

22

*Rambus, Inc. v. STMicroelectronics N.V.*,
  2013 WL 12343708 (N.D. Cal. 2013) .......................................................... 13

23

24

*Rothman v. Target Corp.*,
  556 F.3d 1310 (Fed. Cir. 2009) ................................................................... 12

25

*United States ex rel. Silbersher v. Janssen Biotech, Inc.*,
  No. 19-cv-12107-MEF, Dkt. 331 (D. N.J. 2024) ...................................... 3, 4

26

27

*United States ex rel. Solis v. Millenium Pharms., Inc.*,
  445 F. Supp. 3d. 786 (E.D. Cal. 2020) ........................................................ 15

28

1

2

**TABLE OF AUTHORITIES**
(***cont'd***)

3

**Page No(s).**

4

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ................................................................. 5

5

6

*Therasense, Inc. v. Becton Dickinson & Co.,*
    649 F.3d 1276 (Fed. Cir. 2013) ............................................................. 9

7

*United States v. Corinthian Colls.,*
    655 F.3d 984 (9th Cir. 2011) ................................................................. 5

8

9

*United States v. DaVita Inc.,*
    2020 WL 3064771 (C.D. Cal. 2020) ................................................... 13

10

11

*United States v. Honeywell Int'l, Inc.,*
    2014 WL 12579803 (C.D. Cal. Jan. 24, 2014) ................................... 15

12

*United States v. Safran Grp., ,*
    2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ......................................... 8

13

14

*United States v. United Healthcare Ins. Co.,*
    848 F.3d 1161 (9th Cir. 2016) ............................................................... 5

15

16

*Vess v. Ciba–Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................... 4

17

*Young v. Lumenis, Inc.,*
    492 F.3d 1336 (Fed. Cir. 2007) ........................................................... 13

18

19

20

**OTHER AUTHORITIES**

21

31 U.S.C. § 3729 ............................................................................................ 4

22

37 C.F.R. § 1.56 .................................................................................... 6, 7, 8

23

False Claims Act ................................................................................... *passim*

24

MPEP § 2001.01 ........................................................................................... 6

25

Rule 9 ................................................................................................... *passim*

26

Rule 12 .............................................................................................. 2, 3, 4

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

    **PLEASE TAKE NOTICE** that, on November 13, 2025 at 10:00 a.m. in the courtroom of the Honorable Judge James Donato, located at the San Francisco Courthouse, 450 Golden Gate Avenue, 19th Floor, CA 94102, Defendant Dr. Falk Pharma GmbH will and hereby does move for an order granting Defendant Dr. Falk Pharma GmbH's Motion to Dismiss the Third Amended Complaint (Dkt. 166, the "TAC"). This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice, the Declaration of Christy Lea and accompanying exhibits, the Court's files in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Dated: <u>September 8, 2025</u>    By:  <u>/s/  Christy Lea</u>
                                     Christy Lea (State Bar No. 212060)
                                     Nathanael Luman (State Bar No. 273349)
                                     KNOBBE MARTENS OLSON & BEAR, LLP

                                     *Attorneys for Defendant Dr. Falk Pharma GmbH*

<strong>ISSUES TO BE DECIDED</strong>

    1.  Does the TAC fail to satisfy the fair-notice and heightened-pleading standards of Federal Rules of Civil Procedure 8(a)(2) and 9(b) where it does not differentiate among defendants and does not inform each defendant separately of the allegations constituting its alleged participation the alleged fraud?

    2.  Does the TAC fail to satisfy the heightened-pleading standard of Federal Rule of Civil Procedure 9(b) where it does not plead falsity with particularity regarding the alleged fraud in obtaining U.S. 8,865,688 and the Otterbeck patents, and also contains no particularized allegations that Dr. Falk Pharma GmbH submitted Medicare/Medicaid reimbursement claims for Apriso?

    3.  Does the TAC fail to satisfy the heightened-pleading standard of Federal Rule of Civil Procedure 9(b) where it does not plead scienter with particularity regarding the alleged fraud in obtaining U.S. 8,865,688 and the Otterbeck patents?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Relator Zachary Silbersher, a former patent litigation attorney, filed this case in March 2018. He advances a novel and untested theory of False Claims Act ("FCA") liability, alleging that supposed fraud in obtaining patents from the U.S. Patent & Trademark Office ("PTO") led to fraudulent government reimbursement claims for the Apriso pharmaceutical product. On that basis, he seeks an extraordinary windfall—over $16 billion in damages—five times larger than the largest FCA healthcare settlement of which Defendant Dr. Falk Pharma GmbH is aware.

Now in its seventh year, this case rests on Silbersher's ***third*** amended complaint. Despite multiple opportunities, he has not cured the fundamental pleading defects in his unconventional theory, which attempts to shoehorn alleged fraud on the PTO into an FCA claim. If a viable claim existed, he would have pled it by now. Instead, his implausible accusations have consumed judicial resources for years and unjustly tarnished Falk's reputation in the medical community. Enough is enough. The TAC should be dismissed with prejudice.

Falk previously joined the Bausch Defendants' motion to dismiss, Dkt. 180, and Falk brings this renewed motion to dismiss based on three additional grounds. First, the TAC still relies on impermissible group pleading. Despite this Court's prior ruling, Silbersher continues to lump Falk together with other defendants without distinguishing their respective conduct. Second, the TAC fails to plead falsity with particularity regarding the alleged fraud in obtaining the '688 patent and the Otterbeck patents. It also fails to plead any particularized factual allegations of conduct by Falk in the alleged fraudulent submission of claims for Medicare/Medicaid reimbursement of Apriso. Third, the TAC fails to plead scienter with particularity as to those patents.

## II.    BACKGROUND

Falk is a German pharmaceutical company dedicated to developing innovative medicines that improve the lives of patients with digestive disease. TAC ¶47. Among its innovations, Falk developed a pellet formulation of mesalamine designed to deliver the drug more effectively to the colon for treatment of ulcerative colitis. On July 15, 2002, Falk and

Salix entered into an exclusive licensing agreement under which Falk granted Salix the right to develop, market, and obtain regulatory approval for the pellet formulation in the United States. *Id.* ¶108. The agreement further provided that any improvements relating to the product would vest solely in Falk, subject to a license back to Salix.

On October 2, 2009, Salix—not Falk—filed a patent application directed to a method of using mesalamine that later issued as the '688 patent. Under the 2002 agreement, Falk was the party authorized to apply for patents, with an obligation to grant a back-license to Salix. *Id.* ¶¶82, 105. About 18 months after the filing, Salix conveyed its ownership interest in the application to Falk, which then licensed it back to Salix consistent with the terms of the 2002 agreement. *Id.* ¶¶110, 83. The prosecution history of the '688 patent confirms that Salix—not Falk—prosecuted the application. *Id.* ¶¶82-83, 94, 105. The named inventors, William Forbes and Lorin Johnson, were Salix employees, not Falk employees. *Id.* ¶¶106, 15-17. And Salix retained the prosecuting attorneys Jonathan Sparks and Michael DeGrazia, who submitted powers of attorney on behalf of Salix, not Falk. *Id.* ¶¶83, 105, 15-17.

Indeed, Falk is nowhere identified in the prosecution record before the patent issued on October 21, 2014. Salix managed the prosecution, and every submission to the PTO during that period was signed by Forbes, Johnson, Sparks, or DeGrazia. Falk did not appear in the record until July 24, 2015—nearly ten months after issuance—when its name was added as an assignee. The TAC fails to allege facts that any Falk personnel played a substantive role in prosecution. Rather, the TAC attempts to impute Salix and its agents' prosecution activities to Falk by virtue of its ownership interest in the '688 patent. *See id.* ¶47, 115.

Meanwhile, in February 2015, Valeant Pharmaceuticals (now Bausch) acquired Salix. By then, Salix had already secured FDA approval to manufacture and sell mesalamine extended-release capsules under the brand name Apriso. *Id.* ¶¶4, 77. Falk has never had FDA approval to sell Apriso in the United States, nor does it manufacture, distribute, package, or sell Apriso (or any other product) in the United States. Falk has never submitted, or caused anyone else to submit, a claim for payment or reimbursement for Apriso to the U.S. government. Consistent with these facts, the TAC does not identify any sale of Apriso by Falk or any

1    reimbursement claim submitted by Falk. Instead, it alleges that Bausch and Salix alone were

2    responsible for all U.S. activities concerning Apriso. *Id.* ¶¶39, 44, 77, 81, 107, 109, 117.

3    Nonetheless, Silbersher has repeatedly sought to hold Falk responsible for his novel

4    theory of false claims premised on "overpriced prescription drugs." After two prior rounds of

5    motions to dismiss, including an appeal to the Ninth Circuit, Silbersher filed his Third Amended

6    Complaint on August 11, 2025. Dkt. 166. The TAC fails to cure the defects the Court identified

7    in dismissing the SAC, Dkt. 162, and is now the subject of this renewed motion to dismiss.

8    **III.    LEGAL STANDARD**

9    To survive a motion to dismiss, a complaint must plead "sufficient factual matter,

10   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

11   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

12   Because Silbersher's alleges fraud claims, they are subject to Rule 9(b), which requires

13   that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

14   In the Ninth Circuit, this means alleging the "who, what, when, where, and how" of the alleged

15   misconduct. *Godecke v. Kinetic Concepts Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). A motion

16   to dismiss under Rule 9(b) is the functional equivalent of a Rule 12(b)(6) motion to dismiss for

17   failure to state a claim. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

18   To state a claim under the FCA, Silbersher must allege (1) a false statement or

19   fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the

20   government to pay out money or forfeit moneys due. *United States ex rel. Campie v. Gilead*

21   *Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017); 31 U.S.C. § 3729(a)(1)(A). Absent particularized

22   allegations meeting these standards, an FCA claim must be dismissed with prejudice.

23   **IV.    ARGUMENT**

24   **A.    The TAC Still Fails To Plead Fraud With Particularity As To Falk**

25   Rule 9(b) requires that a relator allege the "who, what, when, where, and how" of the

26   alleged fraud. *Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 90 (N.D. Cal. 2020). This

27   requirement is especially strict where multiple defendants are named: allegations that "merely

28   lump multiple defendants together" do not satisfy Rule 9(b). *United States v. United Healthcare*

1    *Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). A relator must "differentiate their allegations . .

2    . and inform each defendant separately of the allegations surrounding his alleged participation

3    in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). At a minimum, a

4    complaint must "identify the role of each defendant in the alleged fraudulent scheme." *United*

5    *States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011).

6                          **i.    The TAC Perpetuates the Group-Pleading Defect**

7                This Court dismissed the SAC for "lump[ing] 'Defendants' together in an

8    undifferentiated mass with respect to 'the circumstances constituting fraud.'" Dkt. 162 at 2.

9    The TAC, however, does not cure that deficiency. It substitutes cosmetic edits for particularized

10   allegations of Falk's misconduct and continues to attribute fraud to "Defendants" collectively.

11   *See, e.g.*, TAC ¶¶ 1-30, 104, 134. By one count, "Defendants" still appears hundreds of times

12   throughout the pleading. Such generalized allegations fail to apprise Falk of its role and remain

13   insufficient under Rule 9(b). *See Corinthian Colls.*, 655 F.3d at 997-98; *see United States ex*

14   *rel. Juan v. Regents of Univ. of Cal.*, 2018 WL 6168529, at *2 (N.D. Cal. Nov. 26, 2018).

15               Where the SAC alleged misconduct by "Defendants," the TAC now substitutes "Falk

16   and Salix":

17   •  SAC ¶ 11*:* "During prosecution of the '688 Patent application, **Defendants argued** to

18           the Patent Office…"

19   •  TAC ¶ 11*:* "During prosecution of the '688 Patent application, **Dr. Falk and Salix**

20           argued to the Patent Office…"

21   This cosmetic change does not cure the defect. Lumping two defendants together without

22   differentiating their specific roles is no more particularized than lumping all defendants

23   together. *Quatela v. Stryker Corp.*, 820 F. Supp. 2d 1045, 1049 (N.D. Cal. 2010) (plaintiff

24   "must specifically allege [each defendant's] role in the purported fraud").

25               In other places, the TAC replaces "Defendants" with passive voice:

26   •  SAC ¶ 82*:* "**Defendants applied** for a new patent relating to Apriso…"

27   •  TAC ¶ 82*:* "On October 2, 2009, a patent application **was filed**…"

28

1   Such revisions further obscure the actor's identity, rendering the TAC even less particular. Rule

2   9(b) requires that the specific party be identified; passive voice only underscores Silbersher's

3   inability to allege specific facts as to Falk.

4              **ii.    The TAC's New Allegations (¶¶110-116) Remain Deficient**

5              Silbersher attempts to cure the group-pleading defect by adding Falk-specific

6   allegations in TAC ¶¶110–116. But these allegations, like those before, fail to identify any false

7   statement by Falk, when or how it was made, or who at Falk made it. Silbersher still relies on

8   conclusory liability imputations and legally irrelevant conduct, which cannot satisfy Rule 9(b).

9         **1.   No Allegations of Falk Involvement in the '688 Patent Prosecution**

10             Silbersher alleges that Falk was a "real party-in-interest" and imputes others' conduct

11  to Falk. TAC ¶110. This theory fails. The TAC identifies **no false statement by a Falk**

12  **employee or agent**. The duty of candor applies only to individuals substantively involved in

13  prosecution—such as inventors, attorneys, or agents. 37 C.F.R. § 1.56**;** MPEP § 2001.01 ("The

14  duty of disclosure applies only to individuals, not to organizations."). The TAC itself alleges

15  that Salix's counsel prosecuted the '688 application and the inventor was a Salix co-founder.

16  TAC ¶¶94, 105-6, 113.

17             Ownership or "real party in interest" status does not impute any statements by a licensee

18  or its agents to Falk. *Cf. United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498

19  F. Supp. 2d 25, 59-60 (D.D.C. 2007) (parent not liable for subsidiary's FCA violation). Nor

20  does *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1316–17 (Fed. Cir. 2008) support imputation.

21  *See* TAC ¶105. That case involved an inequitable conduct finding because individuals with a

22  duty of disclosure to the PTO (the inventor and prosecuting attorney) knowingly withheld

23  highly material art with an intent to deceive. The court made no agency or imputed liability

24  finding based on corporate ownership. Rather, the patent was held unenforceable by virtue of

25  statements made by an individual with a duty of candor.

26         **2.   No Allegations of Falk FDA Submissions, Approval, or Claims**

27             The TAC contains no allegations that Falk submitted an FDA application, obtained

28  FDA approval, sold Apriso in the United States, or submitted claims for government

reimbursement. *See* TAC ¶¶ 111-113. Enforcing patent rights in litigation or defending patents in IPR proceedings is lawful conduct, not fraud. Notably, 14 claims from the '688 patent remain patentable after the IPR decision. *GeneriCo, LLC v. Dr. Falk Pharma GmbH*, 2017 WL 2211672, at *24 (P.T.A.B. 2017).

### 3. Ownership, Co-Authorship, and Data Sharing Do Not Constitute Fraud

Silbersher alleges that a Falk employee co-authored studies later cited as prior art. TAC ¶¶112, 114. But co-authorship of scientific studies is not concealment, and the TAC alleges no decision by Falk to withhold those studies from the PTO. To the contrary, the TAC concedes that Falk "informed" Salix of the studies and openly "shared data" with Salix, undermining any inference of intent to conceal. TAC ¶¶88, 114.

### 4. Scienter Must Be Tied to the Speaker

Silbersher alleges that Falk "possessed the requisite scienter" because two studies were "highly material" to patentability. TAC ¶116. But scienter under Rule 9(b) must be alleged as to the individual who actually made the misrepresentation or omission. *United States ex rel. Durkin v. Cnty. of San Diego*, 2018 WL 3361148, at *5-6 (S.D. Cal. 2018) (a complaint asserting claims based on false statements must plead scienter of the speaker).

Here, the TAC itself identifies only the Salix prosecuting attorney and Salix inventor as the individuals who purportedly withheld those studies, and those two individuals are the only individuals identified in the complaint with a duty of candor under 37 C.F.R. § 1.56.

The TAC does not allege that any Falk employee participated in the prosecution of the '688 patent or had an obligation to disclose information to the PTO. Without such participation, Falk cannot have formed the "intent to deceive" required for fraud on the PTO or under the FCA. To the contrary, the TAC affirmatively alleges that Falk disclosed the studies to Salix. TAC ¶¶88, 114. Allegations that Falk shared information with Salix are irreconcilable with an inference that Falk simultaneously intended to conceal that same information from the PTO.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### iii.    Further Amendment of the Complaint Would be Futile

This Court already dismissed the SAC for failure to plead fraud with particularity and warned that "[f]urther opportunity to amend after the filing of a third amended complaint is unlikely." Dkt. 162 at 3. The TAC's cosmetic edits—substituting "Falk and Salix" for "Defendants," employing passive voice, and adding conclusory allegations—confirm that Silbersher cannot allege particularized fraudulent conduct by Falk. Further amendment would be futile, and dismissal with prejudice is warranted. *See United States v. Safran Grp.,* 2017 WL 235197, at *8 (N.D. Cal. Jan. 19, 2017).

### B.    The TAC Fails To State A Claim Under The FCA

Silbersher's FCA claim rests entirely on alleged fraud in obtaining patents from the PTO. *See, e.g.,* TAC ¶3 ("This case is about Defendants' acquisition of a patent through fraud…").  But as the Bausch Defendants explain, patent prosecution, even if fraudulent, does not itself constitute the submission of a false claim for payment under the FCA. Dkt. 179 at 18-21. Here, Falk is not alleged to have sought government payment for Apriso, let alone to have made any false statements in connection with such a request.

Instead, Silbersher advances three patent-fraud theories: (1) that Falk and Salix withheld the Brunner and Marakhouski studies showing that mesalamine can be taken without food during prosecution of the '688 patent (TAC ¶¶86-91); (2) that Falk and Salix made arguments in the '688 prosecution inconsistent with arguments Salix made in the '344 prosecution (*id.* ¶¶92-104); and (3) that Falk and Salix withheld prior art during prosecution of the Otterbeck patents (*id.* ¶¶119-136). None of these three theories satisfies Rule 9(b). The TAC fails to plead with the required particularity for two essential elements of an FCA claim: (i) that Falk made a false statement, and (ii) that Falk acted with scienter.[1]

### i.    The TAC fails to plead a false statement or fraudulent course of conduct

The FAC requires a false statement or fraudulent course of conduct. *Campie*, 862 F.3d at 899. The TAC alleges neither.

---

[1] Because Silbersher fails to plausibly allege the first two elements of its FCA claim, the last two elements (materiality and causation) are necessarily not adequately pled as well.

### 1.  No falsity regarding the Brunner and Marakhouski studies

Silbersher claims Falk and Salix withheld the Brunner and Marakhouski studies showing that mesalamine granules can be taken without food during prosecution of the '688 patent. *See* TAC ¶¶12-13, 83-91, 104. But the TAC concedes that fraud on the PTO is governed by 37 C.F.R. § 1.56, which imposes a duty to disclose only ***non-cumulative*** information material to patentability:

> Under 37 C.F.R. § 1.56, each individual involved in a patent prosecution has "a duty of candor and good faith in dealing with the [Patent] Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability . . . ." ***Information is material when it is <u>not cumulative</u>*** and either compels a conclusion that a claim is unpatentable or it refutes or is inconsistent with a position an applicant takes in support of a patent claim.

TAC ¶90 (emphasis added); *see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007) ("Information cumulative of other information already before the Patent Office is not material."). Courts have held that failure to plead non-cumulativeness defeats a fraud-on-the-PTO theory. *See, e.g., Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc*., 2021 WL 5449073, at *10 (N.D. Cal. 2021).[2] "To satisfy the 'why' component" of fraud, Silbersher was required to plead facts "with particularity that the withheld information is not cumulative of the information actually disclosed during prosecution." *Aevoe Corp. v. AE Tech. Co.*, 2013 WL 876036, at *8 (D. Nev. 2013) (granting motion to dismiss).

Silbersher failed to plead that Brunner and Marakhouski's disclosure that mesalamine granules can be taken without food was non-cumulative to the information considered by the examiner. Silbersher failed to plead falsity for this reason alone. *See Andritz Inc. v. Cortex n. Am. Corp.*, 2020 WL 4495267, at *5 (D. Or. 2020) (granting motion to dismiss where pleadings failed to allege that the allegedly withheld references "were non-cumulative in light of other references the examiner considered"); *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 898-99 (N.D. Cal. 2011) (granting motion to dismiss where a party did "not allege any facts to

---

[2] The duty to submit only non-cumulative information makes sense, otherwise patent applicants would need to bury examiners with a deluge of cumulative prior art to avoid theories of fraud. In fact, the PTO encourages applicants ***not*** to submit cumulative art for this reason. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2013) (disparaging "bury[ing] PTO examiners with a deluge of prior art").

1  support an inference that the information allegedly withheld from the PTO is not cumulative of

2  other information previously disclosed"); *Abaxis, Inc. v. Cepheid*, 2011 WL 1044396, at *5

3  (N.D. Cal. 2011) (granting motion to dismiss where a party "fail[ed] to allege with the required

4  particularity that the material information within the [references] was not already before the

5  PTO"); *Crye Precision LLC v. Duro Textiles*, LLC, 112 F. Supp. 3d 69, 80-81 (S.D. NY 2015).

6        Here, Brunner and Marakhouski's disclosure that mesalamine granules can be taken

7  without food was undeniably submitted during prosecution. The '688 patent lists the references

8  considered by the examiner. Lea Decl. Ex. A ('688 patent) at 1-5. The first reference on page

9  2 identifies the following Medical News Today article with a website link that remains active

10  today:

> New Once Daily Salofalk Granules Launc[h]ed for Ulcerative Colitis. News
> Article [online]. Medical News Today, Feb. 17, 2008 [retrieved on Nov. 18,
> 2009]. Retrieved from the internet: <URL:
> http://web.archive.org/web/20080217225137/jhht://www.medicalnewstoday.co
> m/articles/96533.php. p. 1, para [0001]-[0003]; p. 2, para. [0001], [0004]-[0005].

14  *Id.* at 2. The Medical News Today article summarizes the Brunner and Marakhouski studies,

15  and explains that they disclose that mesalamine granules can be taken without food as follows:

> The Salofalk [mesalamine][3] granules are a step forward in the treatment of
> ulcerative colitis as they offer prolonged, consistent release of the active
> ingredient mesalazine over the whole colon surface. [References] *1,2*. . . .

> Additionally as the granules *can be taken with or without food*, [Reference] *1,*
> patients are given the choice of when to take the treatment.

19  Lea Decl. Ex. B at ¶¶[0002]-[0003] (emphases added). References 1 and 2 are the Brunner and

20  Marakhouski studies:

### References

> 1. Marakhouski Y et al. A double-blind dose-escalating trial comparing novel
> mesalazine pellets with mesalazine tablets in active ulcerative colitis. *Aliment
> Pharmacol Ther* 2005; 21: 133-40

> 2. Brunner M *et al*. Gastrointestinal transit and release of 5-aminosalicylic acid
> from 153Sm-labelled mesalazine pellets vs. tablets in male healthyvolunteers.
> *Aliment Pharmacol Ther* 2003; 17: 1163-9

25  *Id.* at 1. A copy of the Medical News Today article was submitted to the examiner, and the

26  examiner confirmed that it was considered. Lea Decl. Ex. C at 2. In addition, an Authorized

---
[3] Silbersher admits that Salofalk is a granulated mesalamine formulation. *See* TAC ¶ 87.

Officer of the International Searching Authority provided the examiner with a summary of the Medical News Today article, including its disclosure of mesalamine granules being taken without food:

> *Medical News* teaches a method of treating ulcerative colitis (pg 1, para [0001]-[0002], comprising: administering… a granulated mesalamine formulation to the subject once daily…. *wherein the granulated mesalamine formulation is taken without regard to meals* (pg 1, para [0003]).

Lea Decl. Ex. C at 20 (emphases added).

The Brunner and Marakhouski studies were summarized for and cited to the patent examiner, and, thus, "can not be deemed to have been withheld." *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000). Silbersher's accusation that they were withheld is therefore implausible, and Silbersher's first theory of fraud on the PTO must be dismissed.

### 2. No falsity regarding arguments made during prosecution of the '688 and '344 patents

Silbersher next claims that Falk and Salix made arguments in the '688 prosecution inconsistent with arguments and information submitted by Salix in the '344 prosecution. TAC ¶¶14-17, 92-104. But the examiner of the '688 patent was aware of and cited the '344 application. *GeneriCo*, 2017 WL 2211672, at *23 & n. 19 (PTAB explaining that the '344 application, Ex 2051 (U.S. 2007/0167416), was "cited during prosecution of the '688 patent to support the Examiner's finding[s]"). Silbersher failed to plead that the supposedly inconsistent arguments raised in its TAC were non-cumulative of information considered by the examiner. Because the examiner considered the '344 application, Silbersher cannot plausibly allege that relevant information was withheld. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008) (no fraudulently material omission or misrepresentation "[g]iven that the Cha PCT application had been submitted . . . [and the examiner] was free to accept or reject the patentee's arguments distinguishing its invention from the prior art.").

Even if the arguments differed, it would not constitute fraud because it is "clear that an applicant is free to advocate its interpretation of its claims and the teachings of prior art." *Id.*; *see also LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 386 (D. Del. 2000) ("[E]ven if Plaintiff's characterization of the [prior art] was inaccurate, the Court concludes

1   that this characterization would not rise to the level of a material misrepresentation" because
2   "the mere fact that a patent applicant attempts to distinguish its patent from the prior art does
3   not constitute a material omission or misrepresentation where the patent examiner has the prior
4   art before him or her, and therefore, is free to make his or her own conclusions regarding the
5   claimed invention.").

6          Likewise, the information that Silbersher complains of concerning Lialda®,
7   Claversal®, and Asacol® was not withheld from the '688 patent examiner. Silbersher admits
8   that the information concerning those drugs was discussed during the '344 prosecution. *See*
9   TAC ¶¶94-99. In view of the '688 patent examiner being aware of the '344 application, Falk
10  made no material omission or misrepresentation concerning those drugs. *Rothman v. Target*
11  *Corp.*, 556 F.3d 1310, 1326 (Fed. Cir. 2009) (explaining that information "is not material . . .
12  when it is cumulative of information already before the examiner"). Silbersher has therefore
13  failed to allege sufficient facts to establish that, even assuming Falk made a misrepresentation,
14  that such a misrepresentation was material. *See Lakim Indus., Inc. v. Linzer Prods. Corp.*, 2012
15  WL 12547988, at *4 (C.D. Cal. 2012) (dismissing where, even assuming a statement was a
16  misrepresentation, the pleadings "fail to allege sufficient facts to show that the
17  misrepresentation was material").

18         Silbersher fails to plead facts that would show with particularity that the arguments and
19  information submitted during prosecution of the '688 patent cross the threshold from
20  permissible attorney argument to materially false statements. Silbersher admits that the '344
21  and '688 statements are about different compounds: "balsalazide" in '344 and "granulated
22  mesalamine" in '688. *See* TAC ¶93 (admitting '344 relates to taking balsalazide with food); *id.*
23  ¶10 (admitting '688 relates to taking granulated mesalamine formulations without food).
24  Balsalzide is a ***prodrug*** that is converted to an active form by an ***enzyme*** in the colon.  *See* Lea
25  Dec. Ex. D ('344 patent), 21:33-36. The '688 mesalamine formulations have an ***enteric coating***
26  that releases the drug ***at high pH***. TAC ¶¶6, 79, 99. Silbersher fails to allege facts showing that
27  statements made during prosecution of the '344 and '688 patents about food effects for these
28  starkly different delivery mechanisms are plausibly inconsistent or contradictory.

The FCA requires a false statement, and "[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *United States ex rel. Englund v. Los Angeles Cnty.*, 2006 WL 3097941, at *10–11 (E.D. Cal. 2006). The allegedly inconsistent statements constitute expression of opinion, scientific judgment, and conclusions on which reasonable minds may differ. Such statements are not false. *Id.*; *see also United States v. DaVita Inc.*, 2020 WL 3064771, at *7-8 (C.D. Cal. 2020) (dismissing FCA claim where reasonable minds may differ).

Silbersher's disagreement with the applicant's interpretation of the '344 application and '688 patent does not convert the attorney argument submitted during prosecution into a false misrepresentation. *See Akzo, N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986) (applicant's interpretation of a past patent was a permissible attempt to distinguish prior art, not an omission or misrepresentation). Here, the examiner reviewed and commented on the '344 application before determining whether they would accept or deny the '688 patent application. No false arguments were submitted to the PTO because the arguments contained mere matters of opinion where reasonable minds could differ and were not objectively false. *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("We therefore fail to see how the statements . . . which consist of attorney argument and an interpretation of what the prior art discloses, constitute affirmative misrepresentations of material fact."). Silbersher's second theory of fraud on the PTO must be dismissed.

### 3.  No falsity regarding the Otterbeck patents

Silbersher's final theory asserts that Falk and Salix failed to disclose prior art in six Otterbeck prosecutions. *See* TAC ¶¶21, 119-136. Silbersher's pleadings on this third theory are woefully inadequate under Rule 9(b). The TAC does not identify "who" at Falk knew of the references, knew they were material, and decided to withhold them. It does not identify "why" the references are material to patentability and not cumulative of art that was submitted during examination. It does not identify "how" the examiner would have used the references to assess patentability. It does not identify "what" particular claims from the six patents would not have issued if the references had been submitted. Based on the foregoing, Silbersher has not

1    plausibly pled fraud based on the allegedly withheld references for the Otterbeck patents. *See*

2    *Rambus, Inc. v. STMicroelectronics N.V.*, 2013 WL 12343708, at *3 (N.D. Cal. 2013) ("[t]he

3    fact that the required information may exist *somewhere* in the record in no way excuses [a

4    party] from its obligations under Rule 9(b) to plead that information specifically") (emphasis

5    in original); *In re Oracle Corp.*, 627 F.3d 376, 386 (9th Cir. 2010) ("It behooves litigants . . .

6    to resist the temptation to treat judges as if they were pigs sniffing for truffles."). Silbersher's

7    third theory of fraud on the PTO must be dismissed.

8                    **4.    No falsity regarding claims for reimbursement**

9           Silbersher's FCA claim is alternatively based on the alleged submission to Medicare or

10   Medicaid of false or fraudulent claims for reimbursement for Apriso. *See* TAC ¶¶152-187.

11   Silbersher asserts the reimbursements were false or fraudulent because the market price for

12   Apriso was protected by the '688 patent that Silbersher alleges was fraudulently obtained. But

13   the TAC does not allege that Falk manufactures, sells, or imports Apriso into the United States.

14   Nor does it allege that Falk submitted claims to Medicare or Medicaid for Apriso. Silbersher's

15   alternative allegation of falsity fails to state a claim as to Falk and should be dismissed.

16                    **ii.    The TAC fails to plead scienter**

17          "[S]cienter is the knowing presentation of what is known to be false, and that the false

18   statement or fraudulent conduct must be made with the intent to deceive." *United States ex rel.*

19   *Durkin v. Cnty. of San Diego*, 300 F. Supp. 3d 1107, 1128 (S.D. Cal. 2018). To plead scienter,

20   Silbersher must allege that Falk had "actual knowledge, deliberate ignorance of the truth or

21   falsity of the information, or reckless disregard of the truth or falsity of the information." *Id.*

22   "[I]nnocent mistakes, mere negligent misrepresentations and differences in interpretations will

23   not suffice." *Id.* The TAC fails to plead scienter because it does not allege a false statement or

24   fraudulent course of conduct. *Supra* Section IV.B.i; *Durkin*, 300 F. Supp. 3d at 1128. It also

25   fails to plead any facts showing that any Falk employee acted with intent to deceive:

26          **Brunner/Marakhouski theory**: The only Falk employee Silbersher alleges had

27   knowledge of the Brunner and Marakhouski studies is Dr. Roland Greinwald. TAC ¶¶13, 87,

28   112. But the TAC alleges no facts showing that Dr. Greinwald, or Falk more generally,

1  recognized a specific "food effect" disclosure, understood its materiality, and intentionally

2  concealed it. To the contrary, the TAC itself alleges that Falk provided the studies to Salix,

3  which handled prosecution. TAC ¶114. Disclosure is inconsistent with intent to conceal.

4        **Inconsistent '688/'344 arguments theory**: Silbersher failed to plead that the

5  supposedly inconsistent arguments and withheld information were non-cumulative. Without

6  pleading such facts, there is no reasonable inference that Falk acted with the requisite state of

7  mind to deceive the PTO. Silbersher also fails to plead facts showing with particularity that the

8  arguments and information submitted during prosecution cross the threshold from permissible

9  attorney argument to materially false statements. "The FCA is concerned with ferreting out

10  wrongdoing, not scientific errors." *United States v. Honeywell Int'l, Inc*., 2014 WL 12579803,

11  at *4 (C.D. Cal. Jan. 24, 2014). The allegedly inconsistent statements constitute expression of

12  opinion, scientific judgement, and conclusions which reasonable minds may differ. Even

13  assuming differences between arguments in the '688 and '344 prosecutions, Silbersher pleads

14  no facts showing Falk knew such statements were false. Scientific differences and attorney

15  argument are not actionable fraud.

16        **Otterbeck patents**: The TAC pleads no facts showing who at Falk knew of the alleged

17  prior art, recognized its materiality, and deliberately withheld it. *Supra* Section IV.B.i.3. That

18  omission defeats scienter. Because scienter must be tied to the individual who made the alleged

19  misrepresentation, and the TAC identifies only Salix's attorney and inventor as having duties

20  of disclosure, Silbersher cannot impute intent to Falk. *See Durkin*, 2018 WL 3361148 at *5.

21        **C.**     **The TAC's State Law Claims Also Fail**

22        Silbersher's state law claims must be dismissed because they rise and fall with his

23  federal FCA claim. *See United States ex rel. Solis v. Millenium Pharms., Inc.*, 445 F. Supp. 3d.

24  786, 802 (E.D. Cal. 2020).

25  **V.**     **CONCLUSION**

26        For all these reasons, the TAC should be dismissed as to Falk. No further leave to amend

27  should be permitted, and dismissal should be entered with prejudice.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE MARTENS OLSON & BEAR, LLP

Dated: <u>September 8, 2025</u>    By:  <u>/s/ Christy Lea</u>

      Christy Lea (State Bar No. 212060)
      Nathanael Luman (State Bar No. 273349)
      KNOBBE, MARTENS, OLSON & BEAR, LLP

*Attorneys for Defendant Dr. Falk Pharma GmbH*