**HUESTON HENNIGAN LLP**
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Padraic W. Foran, State Bar No. 268278
pforan@hueston.com
Michael H. Todisco, State Bar No. 315814
mtodisco@hueston.com
Nicholas Kellum (*Admitted Pro Hac Vice*)
nkellum@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:    (888) 866-4825

Attorneys for Defendants Bausch Health Companies, Inc.
f/k/a Valeant Pharmaceuticals International, Inc.,
Bausch Health Americas, Inc., f/k/a Valeant Pharmaceuticals
International, Salix Pharmaceuticals, Ltd., and
Salix Pharmaceuticals, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel.* ZACHARY SILBERSHER,<br><br>Plaintiffs,<br><br>vs.<br><br>VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH,<br><br>Defendants. | Case No. 3:18-cv-01496-JD<br><br>**DEFENDANTS VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., AND SALIX PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Hearing Date:  November 13, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom:     11<br>Hon. Judge James Donato |

TABLE OF CONTENTS

Page

I. PUBLIC DISCLOSURE BARS THE TAC ................................................................. 1

    A. The '344 Application Was Disclosed in the '688 Prosecution and IPR Decision ........................................................................................................ 1

    B. The IPR Decision Was Disclosed Through Qualifying Channels ............. 2

    C. The IPR Decision Disclosed Substantially the Same Allegations .............. 4

    D. The Business Wire and Seeking Alpha Articles Fill a Narrow Gap .......... 5

    E. Silbersher Is Not an Original Source .......................................................... 5

II. THE TAC DOES NOT SATISFY RULE 9(b) ........................................................ 6

III. THE TAC DOES NOT PLAUSIBLY PLEAD FALSITY ...................................... 6

    A. Silbersher theory of "patent fraud" fails .................................................... 6

    B. Silbersher's theory of "upstream" falsity fails ........................................... 7

    C. Silbersher's theory of "downstream" falsity fails ...................................... 8

IV. THE TAC DOES NOT PLAUSIBLY PLEAD SCIENTER ................................... 8

V. THE TAC FAILS TO SATISFY THE FCA'S DEMANDING MATERIALITY STANDARD ................................................................................ 9

VI. CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Al-Safin v. Cir. City Stores, Inc.*,
  394 F.3d 1254 (9th Cir. 2005) .................................................................................................. 4

*Brown v. Davis*,
  482 F. Supp. 3d 1049 (E.D. Cal. 2020) ..................................................................................... 2

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ....................................................................................... 6

*Knudsen v. Sprint Commc'ns Co.*,
  2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) .......................................................................... 10

*Kociemba v. G.D. Searle & Co.*,
  707 F. Supp. 1517 (D. Minn. 1989) ........................................................................................... 7

*Luv n' Care, Ltd. v. Laurain*,
  98 F.4th 1081 (Fed. Cir. 2024) .................................................................................................. 7

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325 (2018) ................................................................................................................... 6

*Primacy Eng'g, Inc. v. ITE, Inc.*,
  2019 WL 2059668 (S.D. Cal. May 9, 2019) ............................................................................. 4

*Reed v. NBTY, Inc.*,
  2014 WL 12284044 (C.D. Cal. Nov. 18, 2014) ........................................................................ 7

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
  563 U.S. 401 (2011) .............................................................................................................. 3, 4

*Silbersher v. Allergan, Inc.*,
  506 F. Supp. 3d 772 (N.D. Cal. 2020) ....................................................................................... 8

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
  89 F.4th 1154 (9th Cir. 2024) ............................................................................................ passim

*Thulin v. Shopko Stores Operating Co., LLC*,
  771 F.3d 994 (7th Cir. 2014) ..................................................................................................... 9

*Tremblay v. OpenAI, Inc.*,
  742 F. Supp. 3d 1054 (N.D. Cal. July 30, 2024) ....................................................................... 6

TABLE OF AUTHORITIES (cont.)

Page(s)

*U.S. ex. rel. Lockwood v. Sanofi US Servs., Inc.*,
2024 WL 5087330 (C.D. Cal. Dec. 9, 2024) .................................................................. 9

*U.S. ex rel. Barth v. Ridgedale Elec., Inc.*,
44 F.3d 699 (8th Cir. 1995) ............................................................................................ 6

*U.S. ex rel. Campie v. Gilead Scis., Inc.*,
862 F.3d 890 (9th Cir. 2017) ..................................................................................... 7, 8

*U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*,
785 F. Supp. 2d 303 (S.D.N.Y.2011) ............................................................................ 9

*U.S. ex rel. Complin v. N. Carolina Baptist Hosp.*,
818 F. App'x 179 (4th Cir. *2020)* ................................................................................. 9

*U.S. ex rel. Englund v. Los Angeles Cnty.*,
2006 WL 3097941 (E.D. Cal. Oct. 31, 2006) ............................................................ 7, 8

*U.S. ex rel. Foreman v. AECOM*,
19 F.4th 85 (2d Cir. 2021) ........................................................................................... 10

*U.S. ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016) ..................................................................................... 2, 5

*U.S. ex rel. Mateski v. Raytheon Co.*,
2017 WL 3326452 (C.D. Cal. Aug. 3, 2017) ................................................................ 8

*U.S. ex rel. Oliver v. Philip Morris USA Inc.*,
826 F.3d 466 (D.C. Cir. 2016) ...................................................................................... 2

*U.S. ex rel. Osheroff v. Humana Inc.*,
776 F.3d 805 (11th Cir. 2015) ....................................................................................... 3

*U.S. ex rel. Paranich v. Sorgnard*,
396 F.3d 326 (3d Cir. 2005) .......................................................................................... 6

*U.S. ex rel. Solis v. Millennium Pharms., Inc.*,
885 F.3d 623 (9th Cir. 2018) ......................................................................................... 2

*U.S. ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
953 F.3d 1108 (9th Cir. 2020) ....................................................................................... 9

*U.S. ex rel. Yu v. Grifols USA, LLC*,
2021 WL 5827047 (S.D.N.Y. Dec. 8, 2021) ................................................................. 9

TABLE OF AUTHORITIES (cont.)

Page(s)

*U.S. Sec. & Exch. Comm'n v. Jensen*,
    835 F.3d 1100 (9th Cir. 2016) .................................................................................................. 4

*United States ex rel King v. Solvay Pharms., Inc.*,
    871 F.3d 318 (5th Cir. 2017) .................................................................................................... 6

*United States v. Allergan, Inc.*,
    46 F.4th 991 (9th Cir. 2022) ............................................................................................ 3, 5, 6

*United States v. Ehrlich*,
    643 F.2d 634 (9th Cir. 1981) .................................................................................................... 8

*United States v. Janssen Biotech, Inc.*,
    576 F. Supp. 3d 212 (D.N.J. 2021) ........................................................................................... 3

*Univ. of W. Va. Bd. of Trs. v. VanVoorhies*,
    278 F.3d 1288 (Fed. Cir. 2002) ................................................................................................ 7

*Universal Health Servs., Inc. v. United States*,
    579 U.S. 176 (2016) ........................................................................................................... 8, 10

Statutes

21 U.S.C. § 355(t) ........................................................................................................................... 9

31 U.S.C. 3730(e)(4)(A) ................................................................................................................ 3

Silbersher's Opposition fails to address the public disclosures that bar his Third Amended Complaint (TAC), and the TAC still does not meet Rule 9(b) standards, plausibly plead falsity or scienter, or satisfy the FCA's rigorous materiality requirement.

## I.     PUBLIC DISCLOSURE BARS THE TAC

### A.     The '344 Application Was Disclosed in the '688 Prosecution and IPR Decision.

In his Opposition, Silbersher does not dispute the dispositive facts that the '344 application was disclosed in the '688 prosecution and IPR Decision. (*See* Dkt. 181.) He therefore tries to misdirect. Silbersher insists that the Ninth Circuit somehow did *not* believe that Defendants withheld the '344 Application. (Dkt 181 at 3-4.) This is impossible to square with the opinion, which quotes the '344 Application in describing what was "not disclosed in the IPR proceeding":

> Silbersher's investigations into Valeant's Apriso-related patents revealed other information that was **not disclosed in the IPR proceeding**. He discovered that three years before applying for the '688 Patent, Valeant had applied for Patent No. 8,921,344 ("the '344 Patent"). In **the '344 Patent application**, Valeant claimed it had made an "unexpected finding": taking mesalamine *with food* made the drug more effective. In other words, **the '344 Patent application** claimed it was *obvious* that mesalamine was effective without food—the exact opposite of what Valeant would claim a few years later in the '688 Patent application.

*Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1162 (9th Cir. 2024) (bold added, italics in original). Silbersher also accuses Bausch of "misleading" when it refers to U.S. Patent Application Publication No. 2007/0167416 (Dkt. 179-8, Todisco Decl. Ex. G), which issued as the '344 Patent, as "the '344 Application." (Dkt. 181 at 3-4.) But the Ninth Circuit calls this document nearly the same thing: "the '344 Patent application." And there can be no doubt the Ninth Circuit was referring to and quoting the same document. *Compare Silbersher*, 89 F.4th at 1162 *with* Todisco Decl. Ex. G at 4 ("The invention is due, in part, to the ***unexpected finding*** that administration of balsalazide ***with food increases*** … the bioavailability … of 5-ASA … in human subjects." (emphasis added)). Silbersher attempts to evade the Ninth Circuit's ruling by rebranding the '344 Patent application as the "'416 Publication." (Dkt. 181 at 3.) What matters is that the Ninth Circuit was under the impression that neither the '688 Patent prosecution nor the IPR proceeding disclosed the '344 application or its "unexpected finding."

This impression is wrong. The '688 patent examiner cited the '344 Application ('416

Publication) directly, Todisco Decl. Ex. J (IPR Ex. 1019 at 3); the PTAB admitted it into evidence at the IPR proceeding (over Silbersher's objection), Dkt. 152-7 at 23; and the IPR Decision cited and discussed it directly, IPR Decision at *6 (citing IPR Ex. 2051). The Ninth Circuit did not have or consider any of this information. That means—contrary to Silbersher's false claim that it "[a]lready [r]ejected Bausch's [p]ublic [d]isclosure [a]rguments," (Dkt. 181 at 2)—the Ninth Circuit could not have ruled on these facts under the public disclosure bar. *Brown v. Davis*, 482 F. Supp. 3d 1049, 1057 (E.D. Cal. 2020) (a "decision can't be interpreted as deciding a question it didn't address.")

Silbersher quibbles about whether the '344 Application ('416 Publication) was "central to the IPR." Dkt. 181 at 4. The Court can put this argument aside. Central or not, the '344 Application ('416 Publication) was *disclosed* in the '688 patent prosecution and IPR Decision.

Silbersher points to superfluous information outside the '344 Application ('416 Publication), like the complete file wrapper containing all PTO office actions and applicant responses. (Dkt. 181 at 4.) This can be disregarded too. A relator cannot clear the public disclosure bar because *other* documents would add cumulative details to what is already known through public disclosures. *See U.S. ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623, 627 (9th Cir. 2018) (relator could not escape dismissal by pleading "139 more pages of detail"). The '688 prosecution history and the IPR Decision each disclosed the core premise of Silbersher's fraud theory: that Defendants allegedly "took conflicting positions in their patent prosecutions of the '344 and '688 Patents," *Silbersher*, 89 F.4th at 1162. This constitutes both the true and the allegedly misrepresented state of facts from which fraud could be inferred. *Id.* at 1167; *see also U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 567 (9th Cir. 2016). "Merely providing 'more specific details' about what happened does not negate substantial similarity." *U.S. ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 472 (D.C. Cir. 2016).

**B.    The IPR Decision Was Disclosed Through Qualifying Channels**

Silbersher contends that the Ninth Circuit's holding "foreclosed" the IPR Decision from qualifying as a public disclosure under the second and third public disclosure channels. (Dkt. 181 at 4.) Not so. The Ninth Circuit ruled only on the IPR *proceeding*; it did not consider the IPR *Decision*. *Silbersher*, 89 F.4th 1154 ("we hold that the disclosures in the IPR proceeding at issue here did not

constitute a disclosure occurring within a specified channel."). Silbersher also relies on the out-of-circuit district court decision in *United States v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 225 (D.N.J. 2021), but that case too addressed only whether "IPR *proceedings* constitute a 'Federal hearing' within the meaning of channel (ii)," *Id.* at 225 (emphasis added). Neither decision addressed the scenario here: an IPR *decision* publicly disclosed through enumerated public disclosure channels.

The IPR Decision was publicly disclosed through two qualifying channels: the '688 Patent prosecution through channel (ii) ("other Federal report, [or] hearing"); and *Law360* through channel (iii) ("news media"). (*See* Dkts. 142-3, -4; 31 U.S.C. 3730(e)(4)(A).) As to the '688 Patent prosecution, Silbersher fails to acknowledge—let alone address—that the Ninth Circuit has twice held that "publicly-filed documents' submitted as part of [a patent prosecution] proceeding" qualify as public disclosures. *Silbersher*, 89 F.4th at 1164-65 (quoting *United States v. Allergan, Inc.*, 46 F.4th 991, 998-99 (9th Cir. 2022)). As for *Law360*, Silbersher continues not to "meaningfully challenge" that it qualifies as "news media." *Id.* at 1166. Instead, he takes the extraordinary position that it does not *matter* if the IPR Decision was disclosed through enumerated channels, on the theory that IPRs are immune from the public disclosure bar "because of their underlying nature." (Dkt. 181 at 4.) This premise appears nowhere in the *Silbersher* decision or anywhere else. The theory that an IPR decision can *never* be publicly disclosed if it was *initially* published through a non-qualifying channel (an IPR proceeding) would defy logic and precedent. In *Schindler Elevator*, for instance, the defendant's "VETS-100 reports" were not publicly disclosed when originally submitted to the Department of Labor but became public disclosures when DOL later disclosed them as "attach[ments] to a FOIA response." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 411 (2011). And a civil complaint, though not initially published through a qualifying channel, becomes publicly disclosed if the complaint's allegations are later covered by news reports. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812–14 (11th Cir. 2015). The same is true here.

Silbersher next argues—again with no supporting authority—that "the [IPR] decision itself is not 'news media,' even if the article's text qualifies." (Dkt. 181 at 5.) The Supreme Court rejected this theory in *Schindler Elevator* too, holding that "[i]f an allegation or transaction is disclosed in a record attached to a [channel-qualifying source], it is disclosed 'in' that [channel] . . . ." *Id.* While

the Ninth Circuit held that the IPR proceedings did "not fall within the public disclosure bar's scope" (Dkt. 181 at 2), that does not change the fact that the IPR Decision was later published as *part of* a federal hearing and *part of* a report in the news media—and thus disclosed through those channels. *See Schindler Elevator*, 563 U.S. at 411 n.6 ("It is irrelevant whether a particular record is itself a report. The attached records do not 'become' reports, but simply are part of a report." (cleaned up)).

### C. The IPR Decision Disclosed Substantially the Same Allegations.

Silbersher asserts that the Ninth Circuit "confirmed that the purported disclosures Bausch cites are not 'substantially the same' as Relator's fraud allegations." (Dkt. 181 at 6.) The Ninth Circuit did no such thing. It found that the IPR proceeding was *not* a qualifying public disclosure and then held that the "*qualifying* public disclosures" were not substantially the same as Silbersher's allegations. *Silbersher*, 89 F. 4th at 1166-67.[1] It did not address—let alone reverse—this Court's finding that the IPR Decision alone discloses Silbersher's allegations. *See Al-Safin v. Cir. City Stores, Inc.*, 394 F.3d 1254, 1258 (9th Cir. 2005) ("The law of the case doctrine . . . does not apply to issues not addressed by the appellate court.")

On this point, Silbersher cannot escape his concession that disclosure of the IPR Decision "would bar his suit." (Dkt. 109 ("Order") at 15 ("The [*Law360*] article may also have included a link directly to the PTAB's decision, which relator has conceded would bar his suit.")) Silbersher chalks this up to a misunderstanding, characterizing his admission as merely "recognizing the importance of the 2010 amendments to the FCA." (Opp. at 5.) But he never asked the Court to reconsider. *See Primacy Eng'g, Inc. v. ITE, Inc.*, 2019 WL 2059668, at *3 (S.D. Cal. May 9, 2019) ("Reconsideration may also be appropriate when a court 'has misunderstood a party's argument or made an error of apprehension.'"). And even if Silbersher's statement had been about the broader "importance of 2010 amendments," that would make no difference. The only other distinction that Silbersher asserted at

---

[1] If anything, the structure of the Ninth Circuit's opinion undermines Silbersher's argument. If the Ninth Circuit had believed that Silbersher's allegations were not "substantially the same" as Silbersher's allegations, it could have—and likely would have—decided the appeal on those grounds rather than unnecessarily reach the "novel questions" of statutory interpretation posed by whether IPR proceedings were a qualifying channel. *Id.* at 1165; *see, e.g., U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1113 n.6 (9th Cir. 2016) (describing the "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more").

the time—that the 2010 amendments excluded "patent prosecution dockets" (Dkt. 102 at 20-21)—was later rejected by the Ninth Circuit in *Allergan*. *Compare* Dkt. 102 at 9:13-14:4 (arguing that after 2010, "an administrative proceeding, like a PTAB . . . doesn't count" as a "hearing"), *with Allergan, Inc.*, 46 F.4th at 997 (holding that "a patent prosecution" qualifies as "an administrative hearing").) Whatever Silbersher's counsel meant when he said "there would be no case" prior to the 2010 amendment, the admission is decisive. (Dkt. 102 at 12:19-13:14.).[2]

On the facts, Silbersher offers only that the IPR Decision does not *allege* an intentional withholding of prior art. (Dkt. 181 at 5.) But a public disclosure need not contain an explicit allegation; disclosure of "facts from which fraud can be inferred" is enough. *Mateski*, 816 F.3d at 571 (citation omitted); *Silbersher*, 89 F.4th at 1167. And the IPR Decision discloses the very facts from which Silbersher infers that Defendants' withheld prior art intentionally: (a) that the '688 Patent's alleged invention in claims 1 and 16 (that Apriso's active ingredient could be taken without food) was already taught by the prior art studies and (b) that a co-author of the studies was "[the] head of research and development [at Falk]." *Compare* IPR Decision, at *6, 10 *with* Dkt. 166, TAC ¶ 13 (alleging the same facts).

### D. The Business Wire and Seeking Alpha Articles Fill a Narrow Gap.

Silbersher misunderstands the relevance of the *Business Wire* and *Seeking Alpha* articles, arguing that the articles do not disclose all the allegations in the TAC. (Dkt. 181 at 6.) Bausch has never suggested otherwise. The point is that these articles disclosed the TAC's allegations that the Otterbeck Patents were invalid. *Silbersher*, 89 F.4th at 1168. Silbersher does not contest this fact.

### E. Silbersher Is Not an Original Source.

Silbersher argues he is an "original source" because his "pharmaceutical patent expertise is

---

[2] The Ninth Circuit recently affirmed dismissal of Silbersher's claims in *Allergan* because of similar comments made years earlier "at a hearing on the first motion to dismiss." 2025 WL 325761, at *1 (9th Cir. Jan. 29, 2025). As here, Silbersher argued in the pleadings that public disclosures were "not substantially similar" to his allegations, 2019 WL 11718950, but agreed at argument that "the material facts regarding the fraud are disclosed in . . . the patent prosecution files." (No. 23-15613, Dkt. 24 at 45 (9th Cir. Jan. 29, 2024).) That is exactly what happened here. *See* Dkt. 102 at 18:15-21 (THE COURT: "I didn't see anything in the complaint that's alleged to be the basis for the fraud, other than [Brunner and Marakhouski] and the PTAB decision. What else is in the complaint that says -- MR. HERRERA: That's it. . . .").)

qualifying 'knowledge' that is 'independent' and 'materially adds to' any public disclosures." (Opp. at 6–7.) But the Ninth Circuit recently rejected this same argument. *U.S. ex rel. Silbersher*, 2025 WL 325761, at *2. And the Opposition fails to address this Court's prior ruling that Silbersher could not have "voluntarily" disclosed the information comprising his FCA claims because his "job was to find and use the Marakhouski and Brunner studies, and the Salix press releases, to attack the '688 patent." (Order at 16.) Silbersher argues merely that he did not work for the government, (Dkt. 181 at 6), but neither the statute nor the caselaw limits the voluntary disclosure requirement to government employees. 31 U.S. 3730(e)(4); *see, e.g., United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 325 (5th Cir. 2017) (non-government-employee relator did not satisfy voluntary disclosure requirement); *U.S. ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 340 (3d Cir. 2005) (same); *U.S. ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699 (8th Cir. 1995) (same).[3]

## II. THE TAC DOES NOT SATISFY RULE 9(b)

For his upstream fraud theory, Silbersher does not dispute that the TAC mostly takes the SAC and replaces the term "Defendants" with "Dr. Falk and Salix" or converts the passage to passive voice. (Dkt. 181 at 7-8.) And for his downstream theory, Silbersher concedes that the TAC fails to identify any defendant who entered into a government agreement, made a false certification, or submitted a single invoice for Apriso. (*Id.* at 8.) Rule 9(b) requires "the who, what, when, where, and how," and the TAC still does not provide it.

## III. THE TAC DOES NOT PLAUSIBLY PLEAD FALSITY

### A. Silbersher theory of "patent fraud" fails.

Silbersher argues that "[f]raudulent patent applications are themselves false claims" because a "patent application is a 'request' for a patent, which is 'property.'" (Dkt. 181 at 9 & n.5 (citing *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 338 (2018)).) But *Oil States*

---

[3] Silbersher suggests in passing that Bausch's public disclosure argument is "belated." (Dkt. 181 at 1.) This argument is properly before the Court for multiple reasons, including because Silbersher chose to amend his complaint and because the prior appeal constitutes an intervening change in the law. *Silbersher*, 89 F.4th at 1164-66 (clarifying *Allergan*, 46 F.4th 991); *see, e.g., In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012) ("Courts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available."); *Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, at *1 (N.D. Cal. July 30, 2024) (similar) (citation omitted).

holds nearly the opposite: that a patent conveys a public franchise to the patent holder, not the government, so does not invoke "traditional property rights." (*See* Dkt. 179 at 10-12.) Silbersher also asks this Court to ignore the Federal Circuit's holding that a defendant cannot commit "fraud by making false submissions to the PTO in prosecuting . . . applications." *Univ. of W. Va. Bd. of Trs. v. VanVoorhies*, 278 F.3d 1288, 1303 (Fed. Cir. 2002). He relies on *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1099 (Fed. Cir. 2024), which concerned neither fraud nor the FCA. *Luv n' Care* stands for the long-held premise that intentional misrepresentations to the PTO can make a patent unenforceable. (Dkt. 181 at 9) Nothing in it contravenes the holdings of *Oil States* or *VanVoorhies*.

### B. Silbersher's theory of "upstream" falsity fails.

Beyond this legal deficiency, Silbersher fails to identify any plausible "falsity" in any "upstream" statement made to the PTO or the FDA. He concedes that the '344 and '688 patents claim different drugs and that the statement in one concerned "bioavailability" while the other "**safety and efficacy**." This is fatal. (*See* Dkt. 179 at 11-13.) Silbersher therefore tries to pivot to alleged falsity in the '688 Patent's disclosures about prior art drugs Lialda, Claversal, and Asacol. (Dkt. 181 at 12-13.) But the same problem persists. Here too, the '688 Patent statements concerned "safety and efficacy" while the allegedly withheld information about the prior art drugs concerned bioavailability. (*See* TAC ¶¶ 95, 99-100) As much as Silbersher tries to obfuscate the distinction between these fundamentally distinct concepts, he cannot. *See Kociemba v. G.D. Searle & Co.*, 707 F. Supp. 1517, 1526 (D. Minn. 1989) (in pharmaceuticals, "safe and effective" is a "term of art.")

As this discussion demonstrates, the scientific complexity of these statements defeats falsity. "[T]he FCA requires proof of an "objective falsehood," *U.S. ex rel. Englund v. Los Angeles Cnty.*, 2006 WL 3097941, at *10–11 (E.D. Cal. Oct. 31, 2006), so the sorts of "[i]nconclusive findings and unsettled science" identified in the TAC "are insufficient to meet Plaintiffs burden of raising a question of fact on the issue of falsity." *Reed v. NBTY, Inc.*, 2014 WL 12284044, at *14 (C.D. Cal. Nov. 18, 2014) (citation omitted). Silbersher cites cases where, by contrast, the "falsity" was objective and straightforward. For instance, in *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 909 (9th Cir. 2017) the defendant drug manufacturer misrepresented the source of its drug's active ingredient as "specific registered facilities in Canada, Germany, the United States, and South

Korea," when it instead sourced "illicit" ingredients from "unregistered facilities" in China. *Id.* at 896.

### C.    Silbersher's theory of "downstream" falsity fails.

For "downstream" falsity, Silbersher concedes that he identifies no specific statement made in connection with any claim for Apriso. (Dkt. 181 at 10-11.) This makes it impossible to plausibly allege falsity. *See U.S. ex rel. Mateski v. Raytheon Co.*, 2017 WL 3326452, at *7 (C.D. Cal. Aug. 3, 2017), *aff'd,* 745 F. App'x 49 (9th Cir. 2018) (dismissing FCA claim where relator "does not identify a single specific representation that [defendant] made to the Government, and thus neither [defendant] nor the Court can discern how that representation (if it even exists) was in any way false.").

At best, the TAC pleads that some (unknown) defendant at some (unknown) time certified that the price of Apriso was "fair and reasonable," a hopelessly vague term. The parties can have "divergent views as to the meaning and significance" of this language, but a "legal question upon which reasonable minds could differ" cannot be fraudulent under the FCA. *Englund*, 2006 WL 3097941, at *11. None of Silbersher's cases suggests that the FCA can apply liability to such ambiguous language. In *United States v. Ehrlich*, 643 F.2d 634, 636 (9th Cir. 1981), the defendant contractor falsified concrete, disprovable facts, such his actual construction costs and whether he had an ownership or other financial interest in a subcontractor. In *Escobar*, too, the defendant health company falsified concrete information by billing for health services that correspond to specific job titles, even though the workers "lack[ed] the credentials and licensing required for" those titles. *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 184 (2016). Silbersher also relies on the now-reversed district court decision in *Silbersher v. Allergan, Inc.,* 506 F. Supp. 3d 772 (N.D. Cal. 2020), *rev'd by United States v. Allergan, Inc.*, 46 F.4th 991 (9th Cir. 2022), even after the case was dismissed. *See Allergan, Inc.*, 2025 WL 325761, at *1.

## IV.    THE TAC DOES NOT PLAUSIBLY PLEAD SCIENTER

Silbersher contends that scienter is a "quintessentially factual question" that is reserved for a fact finder. (Dkt. 181 at 13). But courts dismiss FCA claims that fail to plausibly plead scienter. *See Thulin v. Shopko Stores Operating Co., LCC*, 2013 WL 5946503, at *6–8 (W.D. Wis. Nov. 5, 2013),

*aff'd sub nom. Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994 (7th Cir. 2014). Silbersher's theories of falsity rely on debatable interpretations of scientific and regulatory issues. "[E]stablishing even the loosest standard of knowledge, i.e., acting in reckless disregard of the truth or falsity of the information, is difficult when falsity turns on a disputed interpretive question." *U.S. ex rel. Complin v. N. Carolina Baptist Hosp.*, 818 F. App'x 179, 184 (4th Cir. 2020); *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 316 (S.D.N.Y.2011), *aff'd sub nom. Colucci v. Beth Israel Med. Ctr.*, 531 F. App'x 118 (2d Cir. 2013) ("Even assuming the claims submitted by [defendants] were 'false,' given the lack of clarity in the law, it cannot be said that defendants 'knew' the claims were false."). The fact that Defendants affirmatively and repeatedly disclosed the '344 Application to the PTAB also means that Bausch's "openness stands in stark contrast to the defendants in [cases] where the relators adequately alleged scienter." *U.S. ex. rel. Lockwood v. Sanofi US Servs., Inc.*, 2024 WL 5087330, at *15 (C.D. Cal. Dec. 9, 2024).

## V. THE TAC FAILS TO SATISFY THE FCA'S DEMANDING MATERIALITY STANDARD

The Opposition confirms that the TAC cannot meet the FCA's "rigorous" materiality standard, because it cannot allege that the "violations are 'so central' to the claims that the government 'would not have paid these claims had it known.'" *U.S. ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1121 (9th Cir. 2020). Silbersher does not even attempt to argue that "the Government has expressly identified [any allegedly violated] provision as a condition of payment." *U.S. ex rel. Yu v. Grifols USA, LLC*, 2021 WL 5827047, at *8 (S.D.N.Y. Dec. 8, 2021), *aff'd*, 2022 WL 7785044 (2d Cir. Oct. 14, 2022). After all, it is Silbersher, not Bausch, who alleges that the Government "continues to pay wrongfully inflated monopoly prices." *See, e.g.*, TAC ¶¶ 3, 194, 205, 217.

Silbersher asserts that the government's mere "knowledge of a pending lawsuit" does not necessarily "defeat materiality." (Dkt. 181 at 15.) While this is an accurate statement of law, it does not apply here. The government is aware not only of Silbersher's "allegations" about the '688 Patent (TAC ¶¶ 7-11), but also that the '688 Patent claims were *actually* invalidated and that generic competitors *actually* entered the market in 2019. (*See* TAC ¶ 142; *see also* 21 U.S.C. § 355(t).)

Silbersher is thus unable to plead facts showing "that the government consistently refuses to pay claims" based on similar violations. *Knudsen v. Sprint Commc'ns Co.*, 2016 WL 4548924, at *8 (N.D. Cal. Sept. 1, 2016). If the validity of the '688 Patent were material to the government's Apriso payment decisions, it would not still be reimbursing Apriso's allegedly "unlawfully inflated" claims through "the present"—more than six years after the patent claims' invalidation. (TAC ¶ 179.) Yet the TAC lacks any allegation of any government attempt to stop paying, let alone recoup, the alleged "hundreds of millions of dollars" it supposedly overpaid and continues to overpay. (TAC ¶ 30.) Silbersher even acknowledges that at least certain government contracts for Apriso continue to be "renewed annually." (TAC ¶ 170.) This context rebuts any suggestion of materiality—the government "not only continued to extend and pay claims," "but also [has] never demanded repayment, disallowed any charged costs, or penalized" Bausch. *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 115 (2d Cir. 2021).

Silbersher nevertheless argues, without support, that price is necessarily material, as it goes to the "essence of the bargain." (Dkt. 181 at 14.) But Silbersher refuses to grapple with *Knudsen*, which rejects per se materiality of price and explains that to adequately plead materiality requires allegations that the government consistently *refuses* to pay claims for drugs whose market price is too high due to the alleged wrongful exclusion of generic competition. (Dkt. 181 at 14 (citing *Knudsen*, 2016 WL 4548924, at *1, 13). Silbersher's theory also runs afoul of *Escobar*, where the Supreme Court held that a defendant could defeat materiality if the Government "pays a particular claim in full despite its actual knowledge that certain requirements were violated." *Escobar,* 579 U.S. at 186.

## VI.  CONCLUSION

This is Silbersher's fourth attempt to exploit the public information that he learned while representing his legal client, to assert FCA claims against Bausch, and he still cannot state a claim. His parasitic claims should finally be put to rest. The Court should dismiss with prejudice.

| | |
|---|---|
| Dated: September 15, 2025 | HUESTON HENNIGAN LLP |
| | By: _____ |
| | Moez M. Kaba |
| | Attorneys for Defendants |
| | Bausch Health Companies, Inc., |
| | *f/k/a* Valeant Pharmaceuticals International, Inc., |
| | Bausch Health Americas, Inc., |
| | *f/k/a* Valeant Pharmaceuticals International; |
| | Salix Pharmaceuticals, Ltd., and |
| | Salix Pharmaceuticals, Inc. |