Christy Lea (State Bar No. 212060)
christy.lea@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Nathanael Luman (State Bar No. 273349)
nate.luman@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Phone: 858-707-4000
Facsimile: 858-707-4001

*Attorneys for Defendant*
*Dr. Falk Pharma GmbH*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. *ex rel*. ZACHARY SILBERSHER, <br><br> Plaintiffs, <br><br> vs. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, <br><br> Defendants. | Case No.: 3:18-cv-01496-JD <br><br> **DEFENDANT DR. FALK PHARMA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THIRD AMENDED COMPLAINT** <br><br> Judge: Hon. James Donato <br><br> Trial Date: None Set <br> Hearing Date: November 13, 2025 <br> Hearing Time: 10:00 A.M. <br> Courtroom: 11 |

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................1

    A.   The TAC Fails To Plead Fraud With Particularity Against Falk ....................1

        i.    Silbersher's Opposition Confirms the TAC Still Engages in Impermissible Group Pleading ...........................................................1

        ii.   Silbersher Fails to Tie Falk to Any False Statement or Omission ...........................................................................................2

        iii.  Silbersher's Scienter and Conspiracy Allegations Are Conclusory and Deficient ......................................................................4

    B.   The TAC Fails To State A Claim Under The FCA .........................................5

        i.    No Falsity Regarding the Brunner and Marakhouski Studies .................................................................................................5

        ii.   No Falsity Regarding '688/'344 Patent Arguments ............................7

        iii.  No Falsity Regarding the Six Otterbeck Patents .................................8

        iv.   No Falsity Regarding Claims for Reimbursement...............................9

        v.    The TAC Fails to Plead Scienter .......................................................10

    C.   The TAC's State Law Claims Also Fail ........................................................10

III.  CONCLUSION...................................................................................................10

# TABLE OF AUTHORITIES

Page No(s).

*Akron Polymer Container Corp. v. Exxcel Container, Inc.*,
  148 F.3d 1380 (Fed. Cir. 1998) .................................................................8, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................5

*Cherdak v. Vock*,
  2012 WL 1427847 (E.D. Va. 2012) .................................................................8

*Drake Univ. v. Des Moines Area Cmty. Coll. Found.*,
  748 F. Supp. 3d 708 (S.D. Iowa 2024) ............................................................2

*United States ex rel. Durkin v. Cnty. of San Diego*,
  300 F. Supp. 3d 1107 (S.D. Cal. 2018)...........................................................10

*Innogenetics, N.V. v. Abbott Lab'ys.*,
  512 F.3d 1363 (Fed. Cir. 2008) .........................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Cost. Indus. Pension Fund*,
  575 U.S. 175 (2015)............................................................................................8

*Pixion, Inc. v. Citrix Sys., Inc.*,
  2012 WL 762005 (N.D. Cal. 2012) ..............................................................8, 10

*Praxair v. ATMI, Inc.*,
  543 F.3d 1306 (Fed. Cir. 2008) .........................................................................3

*Rothman v. Target Corp.*,
  556 F.3d 1310 (Fed. Cir. 2009) .........................................................................6

*United States ex rel. Silbersher v. Janssen Biotech, Inc.*,
  576 F. Supp. 3d 212 (D.N.J. 2021) ...................................................................5

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
  89 F.4th 1154 (9th Cir. 2024) ............................................................................7

*United States ex rel. Solis v. Millenium Pharms. Inc.*,
  455 F. Supp. 3d 786 (E.D. Cal. 2020) .............................................................10

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ....................................................................1, 3, 5

*United States v. Care Alts.*,
  952 F.3d 89 (3d Cir. 2020) .................................................................................8

*United States v. Safran Grp. S.A.*,
  2017 WL 235197 (N.D. Cal. 2017) ...................................................................9

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  579 U.S. 176 (2016)............................................................................................9

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...........................................................................4

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) .................................................................5

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
    953 F.3d 1108 ..........................................................................................8

**OTHER AUTHORITIES**

37 C.F.R. § 1.31-32 .........................................................................................3

37 C.F.R. § 1.56 ...............................................................................................5

37 C.F.R. § 3.71 ...............................................................................................3

37 C.F.R. § 3.73 ......................................................................................2, 3, 4

Rule 9 ............................................................................................... *passim*

M.P.E.P. § 402.02 ............................................................................................3

M.P.E.P. § 2004 ...............................................................................................6

1

## I.    INTRODUCTION

Realtor Silbersher's Opposition attempts to paper-over and disguise the fundamental pleading defects of the Third Amended Complaint ("TAC"). After multiple opportunities to amend, Silbersher still has not alleged with particularity that Dr. Falk Pharma GmbH ("Falk") made a false statement to the PTO or any other government entity or acted with scienter. Further, there is no causal connection between the alleged PTO fraud and Apriso reimbursements because the government continued reimbursing for Apriso even after the Otterbeck patents expired and the PTO issued its IPR decision on the '688 patent. Silbersher's opposition relies on impermissible group pleading, conclusory allegations of ownership or co-authorship, and sweeping assertions of conspiracy. None of this satisfies Rule 9(b) or the demanding materiality standard. Because the TAC does not tie Falk itself to any actionable misrepresentation or false claim, the FCA and state law claims must be dismissed with prejudice at least with respect to Falk.

## II.    ARGUMENT

### A.  The TAC Fails To Plead Fraud With Particularity Against Falk

#### i.  Silbersher's Opposition Confirms the TAC Still Engages in Impermissible Group Pleading

Silbersher insists that "Falk's group pleading argument is wrong" and "group pleading is permissible." Opp'n at 4. But this Court has made clear that Rule 9(b) requires a relator to "differentiate" among defendants and "inform each defendant separately of the allegations" constituting its alleged participation. D.I. 162 at 2. The TAC does not do so. Instead, it relies on conclusory assertions that Falk was "the patent owner" and "Defendants were inextricably intertwined throughout the patent prosecution." Opp'n at 5.

Mere ownership is not fraud. Courts consistently reject FCA claims where a realtor lumps multiple defendants together without identifying specific misrepresentations attributable to each. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). That is exactly what Silbersher has done here: while the TAC details Salix's prosecution of the '688 patent, it attributes no specific conduct to Falk beyond its later ownership of the patent. *See* TAC ¶110

1   (alleging only that Falk "acquired rights to the '688 patent application in April 1, 2011").

2       Silbersher also claims that "Falk was obligated to disclose Marakhouski and Brunner,

3   but deliberately withheld them." Opp'n at 5 (citing ¶¶110, 112, 116). But the TAC pleads no

4   facts showing that any Falk employee was involved in prosecution or owed a duty of disclosure

5   at the time of the alleged nondisclosure. Those duties fell exclusively to the named inventors

6   (Forbes and Johnson, both Salix employees) and Salix's counsel (Sparks and DeGrazia). *See*

7   TAC ¶¶115-16; Mot. at 9-10. Without allegations that Falk itself directed or controlled the

8   alleged nondisclosure, Silbersher cannot satisfy Rule 9(b).

9       Finally, Silbersher points to Falk's alleged initiation of lawsuits to block generic

10  competition. Opp'n at 5 (TAC ¶111). But filing infringement suits to enforce a facially valid

11  patent—even one later found invalid—does not establish fraud under the FCA. *See* Mot. at 6-

12  7. Nor does it cure the TAC's failure to allege that Falk made or caused any false statement to

13  the PTO.

14          **ii.  Silbersher Fails to Tie Falk to Any False Statement or Omission**

15      Silbersher argues that Sparks acted as "Falk's agent" and made false statements or

16  omissions "on Falk's behalf." Opp'n at 5 (citing TAC ¶115). That theory collapses under both

17  the facts pled and the governing law.

18      Silbersher's own complaint admits that Salix—not Falk—retained Sparks and

19  DeGrazia, who submitted a power of attorney on Salix's behalf. TAC ¶105. The named

20  inventors (Forbes and Johnson) were Salix employees, and Salix alone executed the power of

21  attorney during prosecution. *Id.* Falk did not appear in the PTO record until July 2015, when it

22  was listed as an assignee ***after*** the patent had already issued. Mot. at 3. Falk filed no § 3.73(b)

23  statement establishing its right to take action for the '688 patent until 2015, almost a year after

24  prosecution had concluded. Mot. at 3.

25      The PTO regulations foreclose Silbersher's agency theory. Authority to act derives

26  from a power of attorney executed by the assignee; ownership alone is not enough. *Drake Univ.*

27  *v. Des Moines Area Cmty. Coll. Found.*, 748 F. Supp. 3d 708, 713 (S.D. Iowa 2024) (explaining

28  that an attorney receives authority to act on behalf of an applicant at the PTO "when they are

designated via a power of attorney executed by the applicant"); 37 C.F.R. § 1.31-32 (pre-AIA). Under pre-AIA rules, an assignee could only prosecute an application after becoming of record by filing a signed statement of ownership. 37 C.F.R. §§ 3.71(a), 3.73(b) (pre-AIA); M.P.E.P. § 402.02(a).[1] Because Falk never did so until after the patent issued, Sparks was Salix's attorney, not Falk's.

Silbersher's attempt to equate Falk's later ownership with agency is merely another form of group pleading. The Ninth Circuit has rejected such conclusory allegations. In *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007), the complaint alleged that two defendants (KPMG and B&W) made specific misrepresentations, while lumping other defendants together and asserting they "knew" about the fraud and "were acting as agents." The court held that such conclusory allegations were "insufficient as a matter of law." *Id.* at 765. The TAC here suffers from the same defect: Silbersher attributes specific conduct to Salix but tries to sweep Falk in with vague references to "ownership" and "involvement." Opp'n 1, 3, 5; *see* TAC ¶ 115.

Silbersher's reliance on *Polukoff* and *Heath* is misplaced. Opp'n 5-6. In both cases, realtors identified specific misrepresentations attributable to each defendant. Here, the TAC fails to allege that any Falk employee drafted, submitted, or directed statements to the PTO.

Even if Silbersher's "agency" theory were viable (it is not), the TAC never identifies a single false statement Sparks or anyone else made "on Falk's behalf." The only allegation is that the Brunner and Marakhouski studies were withheld (TAC ¶¶86-89, 104), but the TAC admits that Falk disclosed those studies to Salix. TAC ¶¶88, 114. Without allegations that Falk directed, controlled, or ratified any nondisclosure, the TAC fails to plead falsity.

Moreover, Silbersher's authorities do not support his theory. *Praxair v. ATMI, Inc.,* 543 F.3d 1306 (Fed. Cir. 2008), involved an inventor and an attorney—individuals who owed the PTO a duty of candor. It did not impose liability on an assignee for statements made by a licensee's counsel. Likewise, *Beco Dairy* and *Avid Identification* involved corporate liability for statements made by a company's own employees or retained counsel, not for the conduct

---

[1] Available at https://www.uspto.gov/web/offices/pac/mpep/mpep-0400.pdf

of another company's attorneys acting independently.

Accordingly, the TAC fails to allege any false statement or omission by Falk, directly or through an agent.

### iii. Silbersher's Scienter and Conspiracy Allegations Are Conclusory and Deficient

Silbersher's scienter allegations rest on speculation, not facts. He argues that intent can be inferred from Falk's co-authorship of the Brunner and Marakhouski studies. Opp'n at 7. That allegation does not come close to satisfying Rule 9(b). To plead scienter, Silbersher must allege facts showing that a specific Falk employee (1) knew the information was material to patentability, and (2) deliberately withheld it from the PTO. The TAC does neither. Instead, it simply asserts that Falk "knowingly and deliberately" withheld the studies merely because it co-authored them. *See* TAC ¶¶104, 112-116. The Ninth Circuit has repeatedly held that such "must have known" allegations are insufficient. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106-1107 (9th Cir. 2003).

Silbersher's assertion that Falk had an intent to deceive based on its supposed involvement in the '688 prosecution is implausible. Opp'n at 5, 7-8. The prosecution record demonstrates the absence of intent. Salix—not Falk—controlled the '688 application. Salix employees were the inventors, and Salix's attorneys submitted a power of attorney and communications with the PTO. Mot. at 8-9; Lea Decl. Ex. E at 1 (Salix Power of Attorney). Falk did not even appear in the PTO record until it filed its § 3.73(b) statement in July 2015, long after the patent had issued. Mot. at 9; Lea Decl. Ex. E at 3 (Falk § 3.73(b) Statement, Jul. 2015). Silbersher pleads no facts showing that any Falk employee had decision-making authority during Salix's prosecution of the application, let alone that Falk instructed Salix's counsel to withhold Brunner or Marakhouski. The disconnect between the implausible speculation raised in the TAC and the actual prosecution record underscores Silbersher's failure to plead scienter with particularity.

Silbersher's fallback conspiracy theory fares no better. He asserts that "Salix's conduct is imputable to Falk as a co-conspirator." Opp'n at 6. But the TAC contains no particularized

1    facts showing that Falk knowingly agreed to join a fraudulent scheme. *See* TAC ¶¶110-115.

2    Conspiracy is derivative of an underlying fraud, and Rule 9(b) imposes heightened specificity

3    where "the object of the conspiracy is fraudulent." *See Wasco Prods., Inc. v. Southwall Techs.,*

4    *Inc.*, 435 F.3d 989, 990 (9th Cir. 2006). Just as in *Swartz*, Silbersher alleges no meeting,

5    communication, or overt act by Falk showing it agreed to defraud the government. Silbersher

6    asserts only conclusory allegations that Falk "was inextricably intertwined" with Salix or that

7    Falk "benefit[ed]" from Salix's conduct. Opp'n at 5. Such generalized assertions are legally

8    insufficient. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007) (parallel conduct

9    and business collaboration cannot substitute for proof of conspiracy). At most, the TAC alleges

10   Falk acquired rights in the '688 patent in 2011. TAC ¶110. But the acquisition of intellectual

11   property, even intellectual property later alleged to be invalid, does not establish an agreement

12   to commit fraud. *See United States ex rel. Silbersher v. Janssen Biotech, Inc.*, 576 F. Supp. 3d

13   212, 231-232 (D.N.J. 2021) (dismissing FCA conspiracy claim where relator failed to plead

14   facts showing an agreement to defraud).

15        In short, Relator fails to allege facts showing that any Falk employee acted with

16   fraudulent intent, and his attempt to salvage the claim through conclusory conspiracy

17   allegations is equally deficient. The TAC therefore fails to plead scienter as required under

18   Rule 9(b).

19        **B.  The TAC Fails To State A Claim Under The FCA**

20        Silbersher does not dispute that all of his FCA theories rest entirely on alleged fraud on

21   the PTO in obtaining the '688 and Otterbeck patents. *See* Opp'n at 8-9. Because the TAC fails

22   to plead any actionable fraud on the PTO, it necessarily fails to state an FCA claim and must

23   be dismissed.

24             **i.    No Falsity Regarding the Brunner and Marakhouski Studies**

25        The TAC concedes that applicants only have a duty to disclose information that is (1)

26   non-cumulative and (2) either compels a conclusion that a claim is unpatentable or refutes a

27   position taken by an applicant. TAC ¶90 (citing 37 C.F.R. § 1.56). Rule 56 expressly provides

28   that "information is material to patentability when it is ***not cumulative*** to information already

1  of record." 37 C.F.R. § 1.56 (emphasis added). Federal Circuit precedent confirms: "An

2  applicant has no duty to disclose a reference to the PTO if it is cumulative." *Rothman v. Target*

3  *Corp.*, 556 F.3d 1310, 1326 (Fed. Cir. 2009). The PTO itself cautions applicants ***against***

4  burdening examiners with cumulative information. *See* M.P.E.P. § 2004, Item 13.[2]

5      Yet Silbersher failed to make a specific allegation that the Brunner and Marakhouski

6  studies disclosed anything non-cumulative. Because there is no such allegation, the TAC makes

7  no effort to explain why the studies were non-cumulative. Instead, the TAC merely alleged that

8  the studies "are clearly material." TAC ¶90. The TAC should be dismissed for this reason alone.

9      Silbersher's opposition only underscores the deficiency. He now asserts that "material"

10  means the same thing as "not cumulative," Opp'n at 9, and a complaint need not "disprove

11  ahead of time any possibility of cumulativeness," *id.* at 9 n2. But Silbersher cites no legal

12  authority for his position. *Id*. Many courts have granted dismissal under the same scenario

13  where a party failed to plead non-cumulativeness, despite pleading materiality. *See* Mot. at 9-

14  10 (collecting exemplary cases).

15      Even more fundamentally, the very disclosure Silbersher claims was concealed—the

16  ability to take mesalamine "without food"—was before the examiner. Silbersher does not

17  dispute that the Medical News Today article,[3] submitted during prosecution, attributes the

18  Brunner and Marakhouski studies as the source for its express statement that mesalamine "can

19  be taken with or without food." Opp'n at 9-10. Silbersher argues that providing the examiner

20  with the Medical News Today article is "not the same as disclosing [the] Marakhouski and

21  Brunner" references themselves. *Id.* at 9. The only alleged material information regarding

22  Marakhouski and Brunner is the disclosure of taking mesalamine without food. *See, e.g.* TAC

23  ¶¶12, 16, 90, 116. The food effect disclosure within the Marakhouski and Brunner references

24  are surrounded by several pages of scientifically dense text. *See* ECF 37-18 and 37-19. In

25  contrast, the Medical News Today article is 1.5 pages long and succinctly summarizes the

26  _____

[2] Available at available: https://www.uspto.gov/web/offices/pac/mpep/mpep-2000.pdf

27  [3] Silbersher contends that the Medical News Today article is not a type of document that should
be judicially noticed. D.I. 184-1 at 2. News articles, however, are precisely the type of
28  documents that should be noticed. *See infra* Falk's Reply on Request for Judicial Notice.

1  Brunner and Marakhouski studies as disclosing that mesalamine granules "can be taken with

2  or without food." D.I. 182, Lea Decl. Ex. B ¶[0003].

3      Silbersher does not dispute that the International Searching Authority explained to the

4  '688 examiner that Medical News Today discloses taking mesalamine granules without food.

5  *Id.* Ex. C at 20. Instead, Silbersher takes the absurd position that taking mesalamine "with or

6  without food" does not disclose "without food." Opp'n at 11. That position defies both ordinary

7  English and common sense, given that the conjunction "or" connects two or more possibilities

8  or alternatives. Silbersher's request for judicial notice further belies his position: the examiner

9  explains that administering "with or without food" discloses "without food" because "'with

10 food' and 'without food' are the only two options" such that the granulated mesalamine is

11 necessarily administered "without food." D.I. 184, Herrera Dec. Ex. A at 8-9.

12     Silbersher also argues that the references were material because they showed an

13 "advantage" to taking mesalamine without food. Opp'n at 10-11. But the TAC contains no such

14 allegation. Regardless, the Medical News Today article undeniably states that taking

15 mesalamine without food is a "step forward" that is "favored" and advantageously gives

16 patients "choice of when to take the treatment." D.I. 182, Lea Decl. Ex. B ¶¶[0002]-[0003].[4]

17           **ii.   No Falsity Regarding '688/'344 Patent Arguments**

18     Silbersher does not dispute that the '688 examiner considered the '344 application.

19 Instead, Silbersher attempts to relabel the '344 application as the "'416 publication." Opp'n at

20 11-12. The Ninth Circuit, however, refers to this application with nearly the same name as Falk:

21 "the '344 Patent application." *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1162

22 (9th Cir. 2024).

23     Silbersher admits that he "doesn't take issue with Falk's characterization of anything"

24 during the '688 prosecution, and instead argues that information from the '344 application

25 prosecution history was withheld. Opp'n at 12-13. That argument fails because he pleads no

26 facts showing the information was non-cumulative to information considered by the '688

27 _____

28 [4] Silbersher confusingly asserts—without explanation—that Medical News Today somehow
   mischaracterizes Brunner and Marakhouski. Opp'n at 11. There is no mischaracterization.

1    examiner.

2        The TAC does not plead facts alleging the '688 examiner was unaware of the '344

3    application prosecution history. There is no fraud because the '688 examiner was aware of the

4    '344 application. *See Akron Polymer Container Corp. v. Exxcel Container, Inc.*, 148 F.3d 1380,

5    1383-84 (Fed. Cir. 1998) (no fraud where the PTO was on notice of both applications); *Pixion,*

6    *Inc. v. Citrix Sys., Inc.*, 2012 WL 762005, at *6-7 (N.D. Cal. 2012) (same). "Given that the

7    ['344] application had been submitted for the patent examiner to examine herself, she was free

8    to accept or reject the patentee's arguments distinguishing its invention from the prior art" and

9    there was no "material omission or misrepresentation." *Innogenetics, N.V. v. Abbott Lab'ys.*,

10   512 F.3d 1363, 1379 (Fed. Cir. 2008).[5]

11       Silbersher does not dispute that the '688 and '344 applications concerned different

12   compounds (granulated mesalamine vs. balsalazide prodrug) with different delivery

13   mechanisms (pH vs. enzymatic cleavage) and food effects. Mot. at 12. Arguments concerning

14   such compounds in the '688/'344 applications do not amount to an omission or

15   misrepresentation because "[t]he Federal Circuit has repeatedly commented that attorney

16   argument, advocating the attorney's interpretations of its claims and the teachings of the prior

17   art, does not amount to an omission or misrepresentation." *Cherdak v. Vock*, 2012 WL

18   1427847, at *1 (E.D. Va. 2012).[6]

19       ### iii.    No Falsity Regarding the Six Otterbeck Patents

20       Silbersher wrongly accuses Falk of failing to contend with the TAC's allegations of

21   fraud for the Otterbeck patents. Opp'n at 13-14. There simply are no alleged facts in the TAC

22   to contend with regarding non-cumulativeness, or "what," "why," or "how" the cited references

23   could possibly have led to fraud in obtaining the six Otterbeck patents. Mot. at 13-14. Silbersher

---

24   [5] Silbersher's supposed distinctions between *Akzo* and *Young*, Opp'n at 13, are unavailing in
25   view of the '688 examiner being aware of the '344 application.

26   [6] Silbersher's cited cases do not save the TAC. Opp'n at 13. *Omnicare* involved Section 11 of
     the Securities Act that excluded and disclaimed any allegation of fraud. *See Omnicare, Inc. v.
     Laborers Dist. Council Cost. Indus. Pension Fund*, 575 U.S. 175, 181 (2015); *Winter ex rel.
27   United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1118 (explaining that
     a reasonable disagreement on a matter of opinion, without more, was not false); *United States
28   v. Care Alts.*, 952 F.3d 89, 99 (3d Cir. 2020) (similar).

1    improperly shifts the burden to the Court and Falk to identify facts for him by asserting—

2    without explanation—that facts are supposedly found within ¶¶119-136 of the TAC. The Court

3    previously warned Silbersher that he may not drop the ball on his pleading requirement and

4    expect the Court or Falk to pick it up for him. D.I. 162 at 3. Silbersher failed to heed that

5    warning and fails to explain how anything in the threadbare recitals of ¶¶119-136 satisfies his

6    heightened Rule 9(b) requirements. The TAC does not allege that any forum has ever

7    determined that any claim from any of the Otterbeck patents is invalid, and Silbersher fails to

8    plead sufficient facts to support any theory of fraud on the PTO based on the Otterbeck patents.

9             **iv.    <u>No Falsity Regarding Claims for Reimbursement</u>**

10            Silbersher does not dispute that Falk never manufactured, sold, or submitted

11   reimbursement claims for Apriso in the United States. Opp'n at 14. Even apart from this

12   threshold defect, the TAC fails to allege the required "causal connection" between alleged PTO

13   fraud and the "payment of money by the government" for Apriso. *See United States v. Safran*

14   *Grp. S.A*., 2017 WL 235197, at *9 (N.D. Cal. 2017) (dismissing where there was no causal

15   connection). Silbersher's own allegations confirm the break in causation: the government

16   continued reimbursing Apriso prescriptions even after claims from the '688 patent were

17   invalidated in 2017 (TAC ¶18) and after the Otterbeck patents expired in 2018 (TAC ¶21). *See*

18   TAC ¶¶36-37. If the government kept paying in the absence of patent protection, it cannot be

19   said that the patents, or any supposed fraud in obtaining them, caused payment.

20            Relator's allegations also fail the FCA's "demanding" materiality standard. *Universal*

21   *Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016). As the Supreme

22   Court explained, "[i]f the Government pays a particular claim in full despite its actual

23   knowledge that certain requirements were violated, that is very strong evidence that those

24   requirements are not material." *Id.* Here, Relator pleads no facts suggesting that CMS (or any

25   other agency) considered the alleged omissions about Brunner or Marakhouski material to

26   reimbursement. On the contrary, the government has continued to pay Apriso claims for years

27   despite public knowledge of the very prior art disputes Relator cites in the TAC. That

28   undisputed history is powerful evidence that the alleged omissions were immaterial as a matter

of law.

#### v.   The TAC Fails to Plead Scienter

Silbersher fails to identify any alleged facts in the TAC that constitute scienter for any of his three theories of PTO fraud. Silbersher does not dispute that he never alleged that Dr. Greinwald understood the materiality of the Brunner and Marakhouski studies to the '688 patent and intentionally concealed them. *See* Opp'n at 15. Silbersher therefore failed to allege facts for the "specific intent to defraud" that is required for scienter. *United States ex rel. Durkin v. Cnty. of San Diego*, 300 F. Supp. 3d 1107, 1128 (S.D. Cal. 2018).

Silbersher's fallback theory that Sparks was Falk's "agent" also fails. Even assuming *arguendo* that Sparks acted for Falk (he did not), there was no scienter because Silbersher fails to plead that the withheld information was non-cumulative or that the attorney arguments on opinions of scientific judgement constitute actionable fraud. Mot. at 14-15. There was no intent to deceive because the '688 examiner was aware of the '344 application. *Akron*, 148 F.3d at 1383-84; *Pixion,* 2012 WL 762005, at *6-7.

As for the Otterbeck patents, Silbersher does not dispute that the TAC alleges no facts about Falk at all, Opp'n at 15, which confirms Falk had no scienter.

#### C.  The TAC's State Law Claims Also Fail

Silbersher fails to articulate any reason this Court should exercise supplemental jurisdiction over his state law claims, and those claims should be dismissed with his FCA claim.

### III.   CONCLUSION

The TAC should be dismissed as to Falk with no further leave to amend. *See United States ex rel. Solis v. Millenium Pharms. Inc.*, 455 F. Supp. 3d 786, 802 (E.D. Cal. 2020) ("Relator has already had three opportunities to correct the fatal deficiencies in his pleadings, including a trip to the Ninth Circuit. That is enough.").

Respectfully submitted,

KNOBBE MARTENS OLSON & BEAR, LLP

Dated: September 29, 2025      By: /s/ Christy Lea

Christy Lea (State Bar No. 212060)
Nathanael Luman (State Bar No. 273349)
KNOBBE, MARTENS, OLSON & BEAR, LLP

*Attorneys for Defendant Dr. Falk Pharma GmbH*