Nicomedes Sy Herrera (State Bar No. 275332)
Shawn M. Kennedy (State Bar No. 218472)
Laura E. Seidl (State Bar No. 269891)
**HERRERA KENNEDY LLP**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile:  (855) 969-2050
Email: NHerrera@HerreraKennedy.com
        SKennedy@HerreraKennedy.com
        LSeidl@HerreraKennedy.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

[Additional Counsel on the Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, <br><br> *ex rel.* ZACHARY SILBERSHER, <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., AND DR. FALK PHARMA GMBH, <br><br> Defendants. | Case No.: 3:18-cv-01496-JD <br><br><br><br><br> **PLAINTIFF-RELATOR'S BRIEF IN OPPOSITION TO THE MOTION FOR JUDGMENT ON THE PLEADINGS BY DR. FALK PHARMA GMBH (ECF 215)** <br><br><br> Hearing Date: July 23, 2026 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 11 <br> Hon. James Donato, U.S.D.J. |

RELATOR'S OPPOSITION TO DR. FALK'S          CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................................... 1

THE ALLEGATIONS AGAINST FALK REGARDING THE OTTERBECK PATENTS.............. 1

    A.  Falk Owns Each of the Otterbeck Patents.......................................................................... 1
    B.  Falk and Salix Withheld Material Prior Art While Prosecuting the Otterbeck Patents. ........ 2
    C.  Falk Asserted the Otterbeck Patents Against Competitors to Delay Generic Entry. ............ 3
    D.  The Otterbeck Patent Allegations Similarly Satisfy the Same FCA Elements as the '688 Patent Allegations. ..........................................................................................................4

ARGUMENT .............................................................................................................................. 5

I. THE TAC ADEQUATELY ALLEGES FCA LIABILITY RELATING TO THE OTTERBECK PATENTS ...................................................................................................................................... 6

    A.  Causation and Conspiracy ................................................................................................ 6
    B.  Materiality ........................................................................................................................ 8
    C.  Scienter and Fraud on the Patent Office............................................................................ 9

II. ELIMINATING THE OTTERBECK CLAIMS PRE-DISCOVERY WOULD REDUCE ONLY RELATOR'S POTENTIAL DAMAGES, NOT THE CORE LIABILITY QUESTIONS ............. 14

CONCLUSION ......................................................................................................................... 14

- ii -

RELATOR'S OPPOSITION TO DR. FALK'S
MOTION FOR JUDGMENT ON THE PLEADINGS

CASE NO. 3:18-CV-01496-JD

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 678 (2009) ........................................................................................................... 11

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008) ........................................................................................................... 13

*Broadcom Corp. v. Netflix Inc.*,
   598 F. Supp. 3d 800 (N.D. Cal. 2022) ................................................................................. 5

*Dan Abrams Co. v. Medtronic Inc.*,
   850 F. App'x 508 (9th Cir. 2021) ........................................................................................ 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) .......................................................................................... 10

*Exxon Co., U.S.A. v. Sofec, Inc.*,
   517 U.S. 830 (1996) ........................................................................................................... 13

*F.T.C. v. Actavis, Inc.*,
   570 U.S. 136 (2013) ........................................................................................................... 13

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................................... 5

*Mendocino Env't Ctr. v. Mendocino Cnty.*,
   192 F.3d 1283 (9th Cir. 1999) ........................................................................................ 7, 11

*Praxair, Inc. v. Atmi, Inc.*,
   543 F.3d 1306 (Fed. Cir. 2008) ....................................................................................... 9, 10

*Pyramid Lake Paiute Tribe v. Hodel*,
   882 F.2d 364 (9th Cir. 1989) ............................................................................................... 5

*Silbersher v. Allergan Inc.*,
   506 F. Supp. 3d 772 (N.D. Cal. 2020) ............................................................................... 10

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
   2023 WL 4946736 (9th Cir. Aug. 3, 2023) .......................................................................... 6

*United States ex rel. Campie v. Gilead Scis., Inc.*,
   862 F.3d 890 (9th Cir. 2017) ....................................................................................... 7, 8, 12

RELATOR'S OPPOSITION TO DR. FALK'S
MOTION FOR JUDGMENT ON THE PLEADINGS

CASE NO. 3:18-CV-01496-JD

*United States ex rel. Escobar v. Universal Health Servs., Inc.*,
   842 F.3d 103 (1st Cir. 2016) ................................................................................................ 9

*United States ex rel. Heath v. Wis. Bell, Inc.*,
   92 F.4th 654 (7th Cir. 2024) ............................................................................................... 9

*United States ex rel. Osinek v. Kaiser Permanente*,
   2023 WL 4054914 (N.D. Cal. June 15, 2023) (ECF 215 ................................................. 11

*United States ex rel. Polukoff v. St. Mark's Hosp.*,
   895 F.3d 730 (10th Cir. 2018) ............................................................................................ 8

*United States ex rel. Silbersher v. Janssen Biotech, Inc.*,
   576 F. Supp. 3d 212 (D.N.J. 2021) .................................................................................... 10

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) .......................................................................................................... 13

**Statutes**

15 U.S.C. § 15(a) ..................................................................................................................... 12

18 U.S.C. § 1964 ...................................................................................................................... 13

31 U.S.C. § 3729(b)(2)(A) ......................................................................................................... 5

35 U.S.C. § 282 ........................................................................................................................ 11

- iv -

RELATOR'S OPPOSITION TO DR. FALK'S                    CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

Dr. Falk Pharma GmbH ("Falk") filed its Motion for Partial Judgment on the Pleadings asking the Court to dismiss Relator's False Claims Act ("FCA") claims concerning the Otterbeck Patents on substantially the same grounds it raised, and this Court rejected, in Falk's September 2025 motion to dismiss the Third Amended Complaint ("TAC"). *See* ECF 182, 189. This Motion should meet the same fate, particularly since nothing in Defendants' answers (ECF 192, 193) have changed anything to make Falk's arguments any more viable since the motions to dismiss were briefed. Notably, Defendant Bausch Health Companies, Inc. ("Bausch") has neither filed a comparable motion nor joined Falk's Motion, despite the defendants' past practice, a tacit acknowledgement of this Motion's weakness. *See, e.g.*, ECF 180.

Also significant is what the Otterbeck claims represent within this case. Even if Falk's arguments had any merit (and they do not), the Otterbeck Patent allegations are unnecessary for Defendants' liability. This case's core concerns Falk's and Salix's fraudulent procurement of the '688 Patent, which the PTAB invalidated and the Federal Circuit affirmed. TAC ¶¶ 18-19. Seeking to eliminate the Otterbeck claims through duplicative motion practice does not promote this case's efficient resolution, it impedes it. The Court should deny the Motion in its entirety.

**THE ALLEGATIONS AGAINST FALK REGARDING THE OTTERBECK PATENTS**

The TAC pleads the same category of allegations against Falk with respect to the Otterbeck Patents that it pleads with respect to the '688 Patent: that Falk owned the patents; Falk and Salix withheld material prior art from the Patent Office during prosecution; and Falk enforced the resulting patents against generic competitors to delay generic entry and maintain inflated Apriso prices. Those allegations independently satisfy each element of Relator's FCA claims, similar to the same category of allegations for the '688 Patent.

**A. Falk Owns Each of the Otterbeck Patents.**

Just as Falk is "the sole assignee of all rights pertaining to all United States patents relating to Apriso" (TAC ¶ 47) and acquired ownership of the '688 Patent application in April 2011 (TAC ¶ 110), the TAC alleges that "Dr. Falk owns each of the Otterbeck Patents, and Salix Pharmaceuticals, Inc., is

- 1 -

RELATOR'S OPPOSITION TO DR. FALK'S
MOTION FOR JUDGMENT ON THE PLEADINGS

CASE NO. 3:18-CV-01496-JD

the exclusive licensee of each of the Otterbeck Patents." TAC ¶ 136. Falk confirmed that ownership in its infringement complaints against generic manufacturers, which "identified Dr. Falk as owning each of the Otterbeck Patents and Salix Pharmaceuticals, Inc., as their exclusive licensee." *Id.* (citing each of the patent infringement actions).

The TAC further alleges that the Otterbeck Patents' named inventors, Norbert Otterbeck and Peter Gruber, "were employees of Dr. Falk during the prosecution of each patent." TAC ¶ 136. Falk's Answer admits this allegation as to Mr. Otterbeck, and disputes only Mr. Gruber's employment status. ECF 193 ¶ 136. Falk's ownership of the Otterbeck Patents, together with its own employee's role as a named inventor during prosecution, provides scienter and conspiracy allegations at least as direct as those the Court already found sufficient for the '688 Patent, where Falk's knowledge depended in part on imputing the conduct of Salix's prosecuting attorney and inventor as Falk's agents. TAC ¶¶ 105, 115.

**B. Falk and Salix Withheld Material Prior Art While Prosecuting the Otterbeck Patents.**

The TAC alleges that "Dr. Falk and Salix knew" U.S. Patent No. 6,290,990 (TAC ¶ 125); U.S. Patent No. 4,892,742 (TAC ¶ 126); U.S. Patent No. 4,784,858 (TAC ¶ 127); and European Patent 0169821A2 (TAC ¶ 128"were all in the prior art when prosecuting the Otterbeck Patents," yet they "intentionally failed to disclose any of these patents to the Patent Office." TAC ¶ 125-29. The TAC explains why each reference was material and non-cumulative: the "non gel-forming" polymer matrix that Falk described in the Otterbeck Patents as a "surprising" finding was disclosed in the '990 Patent and EP0169821A2 (TAC ¶¶ 122-124, 130); polymers "insoluble in the intestinal tract and permeable to intestinal fluids" were disclosed in the '858 Patent and EP0169821A2 (TAC ¶ 131); the specific claimed polymer compounds were disclosed in the '858 Patent (TAC ¶ 132); the specific claimed enteric coating materials—including the identical commercially available coating, Eudragit RL—were disclosed in EP0169821A2 and the '858 Patent (TAC ¶ 133); and the claimed pellet manufacturing process was disclosed in the '990 Patent (TAC ¶ 134).

- 2 -

RELATOR'S OPPOSITION TO DR. FALK'S                      CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

The TAC identifies additional prior art that Falk failed to disclose, and which would have prevented the Otterbeck Patents from issuing in the first place. TAC ¶ 135. These material omissions are the same types of misconduct the TAC alleges concerning the '688 Patent, where Falk and Salix withheld the Brunner and Marakhouski studies that later formed the basis for the PTAB's invalidation of that patent. TAC ¶¶ 12-13, 86-91.

### C.  Falk Asserted the Otterbeck Patents Against Competitors to Delay Generic Entry.

The TAC alleges that Falk did not merely prosecute the Otterbeck Patents—it enforced them in litigation against the same generic manufacturers it later sued under the '688 Patent. The '620 Patent, one of the six Otterbeck Patents, was "the only patent in effect when the FDA approved Apriso in 2008 and when the first generic ANDA was filed in July 2012." TAC ¶ 119. Falk and Salix Pharmaceuticals, Inc. sued the first ANDA filer, Lupin, on the Otterbeck Patents on September 7, 2012—more than two years before the '688 Patent issued. TAC ¶¶ 23, 139. Only after the Patent Office issued its notice of allowance for the '688 Patent on September 11, 2014, did Falk dismiss its Otterbeck claims against Lupin—the very next day—in favor of a settlement keyed to the newly allowed '688 Patent. TAC ¶¶ 23, 139. The TAC alleges that "Lupin agreed to a later entry date—i.e., 2022—only because of the allowance of the '688 patent," TAC ¶ 139, reflecting that the Otterbeck Patents and the '688 Patent operated as substitute instruments within a single fraudulent and exclusionary scheme.

The TAC alleges that Falk likewise asserted the Otterbeck Patents together with the '688 Patent against Novel Laboratories (later G&W Laboratories) beginning in February 2014 (TAC ¶ 140), and against Mylan beginning in June 2015 (TAC ¶ 141), as a named co-plaintiff with Salix, before dismissing the Otterbeck claims years later. Falk's Answer admits that it dismissed Otterbeck Patent infringement claims against generic manufacturers following the Lupin dismissal. ECF 193 ¶ 26. The TAC further alleges that listing the '688 Patent and the Otterbeck Patents in the Orange Book "automatically triggered the 30-month stay of FDA approval that blocked generic manufacturers from introducing lower-priced alternatives." TAC ¶ 177.

RELATOR'S OPPOSITION TO DR. FALK'S                    CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

**D. The Otterbeck Patent Allegations Satisfy the Same FCA Elements as the '688 Patent Allegations.**

Each FCA element the TAC alleges concerning the '688 Patent is independently alleged for the Otterbeck Patents. On falsity, the TAC alleges in part that the nondisclosure of Brunner and Marakhouski "amounts to a false and misleading statement that the Patent Office relied on in approving the '688 Patent" (TAC ¶ 90), and the TAC alleges a materially indistinguishable species of misleading omissions with respect to the four withheld material prior art for the Otterbeck Patents. TAC ¶¶ 121-135.

Regarding scienter, the TAC alleges Falk's knowledge of the '688 Patent fraud through its agents, Sparks and Greinwald (TAC ¶¶ 112, 115-116). For the Otterbeck Patents, the TAC alleges Falk's knowledge of the Otterbeck Patent fraud not only because it owned the patents, but also directly through its own employees, including named inventor Otterbeck. TAC ¶¶ 129, 136.

Regarding materiality, the TAC alleges that Falk's Orange Book certification regarding the '688 Patent was false because Falk knew the patent "could not be 'reasonably asserted'" against generics (TAC ¶ 177). The TAC similarly alleges a materially indistinguishable certification theory for the Otterbeck Patents: "Defendants also knew that the Otterbeck Patents were invalid and could not reasonably be asserted to block generic competitors from entering the market." TAC ¶ 177; *see also* TAC ¶ 21 (alleging Falk "did not press the Otterbeck Patents against generic competitors because they knew that the Otterbeck Patents either were invalid or could not reasonably have been asserted").

On causation, the TAC alleges that Falk's '688 Patent litigation against generics was a critical part of the fraudulent scheme to maintain inflated Apriso prices, which is the same causal mechanism for Falk's Otterbeck Patent litigation against Lupin, Novel/G&W, and Mylan: Both triggered the same Orange Book listing and 30-month stay mechanism that delayed generic competition. TAC ¶¶ 23-26, 139-141, 177.

Finally, the TAC alleges that a fraudulently obtained patent application is itself a false claim because it is a "request" for "property" presented to a Patent Office examiner. 31 U.S.C. § 3729(b)(2)(A); TAC ¶ 35; see also TAC ¶¶ 77-136 (cited in support of that theory). That liability

- 4 -

RELATOR'S OPPOSITION TO DR. FALK'S                                    CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

theory applies equally to the Otterbeck Patent applications, which all sought the same type of "property" through the same allegedly fraudulent nondisclosure. TAC ¶¶ 119-136.

**ARGUMENT**

When evaluating a Rule 12(c) motion for judgment on the pleadings, the Court applies a "functionally identical" standard as a Rule 12(b)(6) motion to dismiss. *Broadcom Corp. v. Netflix Inc.*, 598 F. Supp. 3d 800, 804 (N.D. Cal. 2022). Accordingly, the "Court takes as true the plausible and nonconclusory factual allegations in the complaint, and draws all reasonable inferences from those allegations in plaintiffs' favor." *Id.* This means that the Court should grant a Rule 12(c) motion only "when there is no issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Id.* Deciding such a motion is therefore generally "confined to the four corners of the complaint, and any materials it incorporates." *Id.* (*citing Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

Because the Rule 12(c) and motion to dismiss legal standards are "functionally identical," the Court's prior denial of Falk's motion to dismiss the TAC due to the sufficiency of its Otterbeck allegations governs the result here, especially when nothing in Defendants' answers have changed anything since the time the motions to dismiss were briefed that would make Falk's failed arguments any more viable now; or that would open up any new lines of argument that Falk could not have made in any of its three prior motions to dismiss.

It is an improper waste of judicial resources for a party to ask the Court to revisit prior interlocutory rulings absent new facts, an intervening change in controlling law, or a clear showing of error that would produce manifest injustice. *Cf. Pyramid Lake Paiute Tribe v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989). Falk identifies none of these. Its Motion reprises the same arguments it advanced in its September 2025 motion to dismiss the TAC. *Compare, e.g.*, ECF 182 at 13-15, *with* ECF 215 at 5-14.

Indeed, in its prior, most recent unsuccessful motion to dismiss, Falk specifically listed in its "Issues to be Decided" questions whether the TAC adequately pleaded falsity, the submission of false claims, and scienter with respect to the Otterbeck Patents. ECF 182 at 1. And Falk then devoted a

- 5 -

RELATOR'S OPPOSITION TO DR. FALK'S                    CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

section unsuccessfully arguing that the TAC did not adequately allege falsity, materiality, or the "who, why, what, and how" of the alleged fraud. *Id.* at 13-14. Moreover, the Bausch defendants filed a separate motion to dismiss, which Falk also joined. ECF 179, 180. Both Falks' and Bausch's motions raised the same arguments Falk now reasserts: that the TAC inadequately pleaded FCA claims regarding the Otterbeck Patents; that it failed to allege conspiracy, causation, scienter, and materiality connecting Falk to false reimbursement claims; and that the Otterbeck Patent fraud was inadequately pleaded under Rule 9(b). Relator opposed both motions, which the Court denied. ECF 181, 184, 189. Undaunted, Falk (but not Bausch) presses ahead with its current motion.

Falk has previously attempted to relitigate losing arguments. In its second motion to dismiss (ECF 141), Falk argued that it should be dismissed for lack of jurisdiction and improper service (ECF 141, at 9-11). But it failed to inform the Court that it had explicitly waived service (ECF 86, at 2). Falk also rehashed the improper service argument before the Ninth Circuit, which specifically denied it, holding that Falk "waived any such challenge" by "inform[ing] the district court that it did not 'intend to challenge [the district] court's jurisdiction on the basis of improper service of process.'" *Silbersher v. Valeant Pharms. Int'l, Inc.*, No. 20-16256, 2023 WL 4946736, at *1 (9th Cir. Aug. 3, 2023). Despite this, Falk tried the argument for at least the third time in its second motion to dismiss—but never informed the Court that it had raised, waived, then lost the same argument before the Ninth Circuit. *See generally* ECF 154, at 7-8.

The Court should stop this abusive motion practice and deny this motion in its entirety.

## I.    The TAC Adequately Alleges FCA Liability Relating To The Otterbeck Patents

Relator incorporates by reference the arguments set forth in his prior opposition to Falk's and Bausch's motion to dismiss the TAC (ECF181, 184), and the factual allegations set forth above, and addresses the legal sufficiency of the main arguments Falk reasserts here.

### A.  Causation and Conspiracy

Falk argues that the TAC does not connect its Otterbeck Patent conduct to any reimbursement claim because Salix—not Falk—submitted claims to government payors. ECF 215 at 6-7. The Court

RELATOR'S OPPOSITION TO DR. FALK'S                                     CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

has already considered and rejected this argument. The FCA imposes liability on persons who cause false claims to be presented. 31 U.S.C. § 3729(a)(1)(A). This Court previously recognized that "Falk's involvement in obtaining the '688 patent, and its lawsuits, are a critical part of the alleged scheme." ECF 108 at 2. The same logic applies to the Otterbeck Patents, which Falk owned, asserted as a named plaintiff against every generic ANDA filer, and used to trigger the same Orange Book and 30-month stay mechanism as the '688 Patent. Those facts plausibly allege that Falk's Otterbeck Patent conduct was "integral to a causal chain leading to payment" of false claims. *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902-03 (9th Cir. 2017).

Falk's conspiracy argument fares no better. The TAC alleges that Falk and Salix shared all relevant Apriso data, jointly prosecuted the Otterbeck Patents through Falk's own employee-inventor, and together enforced those patents as named co-plaintiffs in coordinated litigation. Those factual allegations, accepted as true, support a plausible inference of an agreement to engage in the fraudulent scheme that gave rise to the Government's payment of false claims—the same inference this Court already credited on structurally identical facts concerning the '688 patent.

Falk separately faults the TAC for not pleading the "who, what, when, where" of the agreement itself—*i.e.*, when it was formed, who communicated, or where it was reached. ECF 215 at 5-6. But an agreement need not be pleaded through such direct evidence; it may "be inferred on the basis of circumstantial evidence such as the actions of the defendants," including that the defendants undertook acts that are "unlikely to have been undertaken without an agreement." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999). That is precisely what the TAC alleges here: Falk and Salix split ownership and licensing of the Otterbeck Patents between themselves, prosecuted those patents through the same personnel responsible for the '688 Patent prosecution, and then appeared together as named co-plaintiffs in four separate infringement suits against Lupin, Novel/G&W, Mylan, and Teva, dismissing their Otterbeck claims in lockstep once the '688 Patent issued. Coordinated conduct of that kind across four separate litigations does not happen by coincidence, and it supplies exactly the "who" (Falk and Salix), "what" (an exclusionary patent scheme split across ownership, prosecution, and enforcement roles), and "where" (the Patent Office

- 7 -

RELATOR'S OPPOSITION TO DR. FALK'S                                    CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

and four district courts) that Rule 9(b) requires—particularly where, as here, Rule 9(b) demands only enough particularity to give Falk "notice of the claims against it." *See United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018).

### B. Materiality

Falk argues that the TAC does not allege the Otterbeck Patents affected reimbursement decisions because CMS does not condition payment on Orange Book patent validity. ECF 215 at 13. But the materiality inquiry asks whether the alleged misconduct had "a natural tendency to influence, or be capable of influencing, the payment of money or property." *Campie*, 862 F.3d at 904-05 (quotation omitted). The TAC alleges that listing the Otterbeck Patents in the Orange Book and then asserting them against generic manufacturers triggered the same statutory 30-month stay mechanism that delayed FDA approval of generic ANDAs and maintained inflated Apriso pricing as the '688 Patent. That causal connection satisfies the materiality standard at the pleading stage.

Falk also leans on a case holding that a relator cannot plausibly "assume the federal government w[ould] not reimburse" for "an off-label use of a medical device" where "the federal government has authorized that doctors may use medical devices for off-label purposes as long as it is medically necessary and reasonable." *See Dan Abrams Co. v. Medtronic Inc.*, 850 F. App'x 508, 509-10 (9th Cir. 2021). But the inference Falk asks the Court to draw in its favor—the Otterbeck Patent misconduct could not have been material because the federal government would have paid claims despite the validity of Orange Book patents—improperly assumes that paying agencies would have known of the Otterbeck allegations, credited them, and decided to pay anyway. It is therefore an unreasonable, improper pro-defendant inference at the pleading stage. *See Campie*, 862 F.3d at 906-07. The fact that a patent is in the Orange Book, and the Government's mere knowledge that a lawsuit exists making allegations, does not equate to actual knowledge of the veracity of those allegations, or that fraudulent patents listed in the Orange Book do not have a "natural tendency to influence, or be capable of influencing, the payment" of claims. 31 U.S.C. § 3729(b)(4); *Campie*, 862 F.3d at 904-05. And the government's payment for Orange Book listed drugs, even if there is a lawsuit alleging fraud, does not

- 8 -

RELATOR'S OPPOSITION TO DR. FALK'S
MOTION FOR JUDGMENT ON THE PLEADINGS

CASE NO. 3:18-CV-01496-JD

by itself permit an inference against materiality. *Cf., e.g., United States ex rel. Heath v. Wis. Bell, Inc.*, 92 F.4th 654, 665 (7th Cir. 2024) ("The government's knowledge of a pending lawsuit making allegations simply does not indicate actual knowledge of actual violations"), *aff'd*, 145 S. Ct. 498 (2025); *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 112 (1st Cir. 2016) (similar). Unlike *Dan Abrams*, where the government had expressly determined the challenged product was eligible for payment, the TAC alleges no comparable agency determination regarding the Otterbeck Patents—only that the same Orange Book listing and 30-month stay mechanism that delayed generic entry for the '688 Patent operated identically here.

More fundamentally, Falk's materiality argument asks the wrong question. The materiality issue does not turn on whether the government monitors the validity of Orange Book listed patents and decides whether to pay claims if there is a pending allegation of patent fraud. Rather, the fraudulent obtaining of a patent to inflate the price that the government pays "touches upon an essential characteristic of Zytiga for government procurement purposes, namely, its price." *Janssen*, 576 F. Supp. 3d at 230 (finding the "materiality" requirement esd satisfied in a materially indistinguishable FCA case alleging patent fraud to exclude generic competition). This "essential" element supports a good case of materiality for the jury, if not *per se*.

## C. Scienter and Fraud on the Patent Office.

Falk contends that the TAC fails to identify any specific individual who knowingly withheld the four prior art references during Otterbeck prosecution that would render the purportedly inventive patent claims to be "obvious." ECF 215 at 8-11. But, as set forth above, the TAC alleges that the named Otterbeck inventors—including Falk's own employee, Norbert Otterbeck—owed a duty of candor as persons "associated with the filing and prosecution of a patent application." 37 C.F.R. § 1.56. Their knowledge and intent, in their capacity as Falk's employees prosecuting Falk's patents, are appropriately attributable to Falk at this stage. *See Praxair, Inc. v. Atmi, Inc.*, 543 F.3d 1306, 1316-17 (Fed. Cir. 2008) (imputing scienter to a patent owner based on the knowledge of an outside attorney

- 9 -

and inventor who were not even the owner's employees). The pleading here is, if anything, more direct.

In repeating its failed arguments concerning scienter and falsity (phrased in terms of whether the prior art would have rendered the purported inventions obvious), Falk relies heavily on *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327–29 (Fed. Cir. 2009) and the standards applicable to scienter, causation, and materiality  patent infringement defenses in an inequitable conduct case. But Falk never informs the Court that *Exergen* is an inequitable conduct case that proposes heightened standards inapplicable to an FCA case.

This is a glaring omission given Falk's prior motions. In its second motion to dismiss, Falk explicitly argued for application of the standards governing the inequitable conduct affirmative defense available to an accused infringer. ECF 141, at 7-9 (citing *Exergen*). Relator, in opposition, noted that every court to consider that approach has rejected it. ECF 151, at 12-15 (citing, *e.g.*, *United States ex rel. Silbersher v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 230–31 (D.N.J. 2021) (inequitable conduct is "judicially-crafted and designed for different statutory contexts than the FCA," and it cannot "displace . . . the FCA's plain text"); *United States ex rel. Silbersher v. Allergan Inc.*, 506 F. Supp. 3d 772, 812 & 829 (N.D. Cal. 2020)). Given this, Falk abandoned the argument in its third motion to dismiss, ECF 184, n.1, tacitly conceding that *Praxair*, and not Falk's cases, control. The Court should reject Falk's attempt to resurrect this argument now.

Nevertheless, the TAC adequately alleges how each of the misleading omissions about the four withheld, material prior art for the Otterbeck Patents would have rendered the purported claims in the patent applications obvious. TAC ¶¶ 121-135. For example, Paragraph 124 identifies a central claim common to the Otterbeck patents concerning the supposedly surprising effect of non gel-forming polymer matrices on efficacy that were in fact obvious given the withheld prior art. TAC ¶¶ 124-130. So too with the supposedly novel uses of the chemical compounds specified in the Otterbeck Patents, such as coating or pellet formulations. TAC ¶¶ 132-135.

Falk argues that dismissing the Otterbeck claims against Lupin, Novel/G&W, and Mylan is "entirely consistent with ordinary litigation strategy" and that patents carry a statutory presumption of

- 10 -

RELATOR'S OPPOSITION TO DR. FALK'S                    CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

validity, so the dismissals cannot support an inference that Falk believed it could not reasonably assert the Otterbeck Patents. ECF 215 at 14 (citing 35 U.S.C. § 282). That presumption, however, does not immunize the specific sequence the TAC alleges. The TAC does not rely on the dismissals in isolation; it alleges that Falk sued Lupin on the Otterbeck Patents in September 2012, that the Patent Office issued its notice of allowance for the '688 Patent on September 11, 2014, and that Falk dismissed its Otterbeck claims against Lupin *the very next day* in favor of a settlement keyed to the newly allowed '688 Patent. TAC ¶¶ 23, 139. A patent holder confident in the merits of six patents does not abandon infringement claims against its first ANDA filer within twenty-four hours of a more convenient patent becoming available; that timing is itself the kind of fact "unlikely to have been undertaken" for the innocent, presumption-of-validity reasons Falk now offers. *Cf. Mendocino*, 192 F.3d at 1301. At the pleading stage, the TAC need not foreclose every innocent explanation for the next-day substitution; it need only plead facts that make the inference of knowing reliance on a pretextual patent plausible, which it does. *See Ashcroft v. Iqbal*, 556 U.S. 678 (2009).

Falk's reliance on the "complicated causal chain" analysis in *United States ex rel. Osinek v. Kaiser Permanente*, No. 13cv3891, 2023 WL 4054914, at *14-15 (N.D. Cal. June 15, 2023) (ECF 215, at 7), is misplaced. *Osinek* held that the plaintiffs adequately pleaded false claims with respect to two categories of damages. The court rejected a speculative, derivative category of claims relating to increased tax credits that extended "well beyond" the defendant's alleged misconduct through several intervening, independently-caused steps. That category of damages involved risk adjustment factors that the defendant and other insurers set. According to the *Osinek* complaint, because Kaiser allegedly manipulated certain insurance risk factors, it paid less into a risk pool, and perhaps was able to charge lower premium to its members. This in turn perhaps led to competitors charging relatively higher premium, because they paid proportionately more into the insurance risk pool. Although not intended by Kaiser, the government may have been affected because the government covered part of the cost of monthly premium for the competitors (as well as Kaiser) through tax credits, which were set according to a benchmark plan that may or may not have been affected, depending on the rates charged by competitors relative to Kaiser, and which therefore may have affected in some unspecified amount the

- 11 -

RELATOR'S OPPOSITION TO DR. FALK'S
MOTION FOR JUDGMENT ON THE PLEADINGS

CASE NO. 3:18-CV-01496-JD

amount of tax credits the government issued. *See id.* at 13. Affecting the amount of the government's tax credits was not the intended purpose or goal of the alleged fraud, unlike here. The derivative, speculative, unintended chain of events in *Osinek* bears no resemblance to the direct, intended fraudulent scheme alleged in this case.

Here, by contrast, the chain from Falk's conduct to the Government's overpayment runs through a single, direct, and entirely foreseeable statutory mechanism: Defendants fraudulent obtained a patent to extend their drug monopoly by listing the fraudulent patent in the Orange Book and asserting it against an ANDA filer to automatically trigger the 30-month stay that blocks FDA approval of cheaper generics. TAC ¶ 177. That is not a complicated, attenuated chain of the kind *Osinek* found insufficient; it is the ordinary, direct mechanism this Court has already recognized as "a critical part of the alleged scheme." ECF 108 at 2. The FCA must be "construed broadly" to "reach all types of fraud, without qualification, that might result in financial loss to the Government," *Campie*, 862 F.3d at 899 (quotation omitted), and a direct statutory trigger of the kind alleged here satisfies that standard. If a "false statement is integral to a causal chain leading to payment," liability properly attaches. *Id.* at 903.

Indeed, preventing generic entry was the obvious—in fact, the *only*—intended consequence of defendants' fraud. Any suggestion that the harm to the government is attenuated from the fraud is wrong. At minimum, a reasonable jury could find that defendants' sustained monopoly market share and prices were the intended effect of their fraud and that the harm to the government from that monopoly was a foreseeable consequence.

Analogous antitrust cases brought by direct purchasers asserting *Walker Process,* sham litigation, or pay-for-delay claims and seeking the same type of damages that the government would seek here for the exclusion of generic competitors confirm the directness of the damages alleged here. The comparison is instructive both because it involves similarly situated plaintiffs and underlying conduct, and because the antitrust statutes use similar language to the False Claims Act when specifying permissible damages. *Compare* 15 U.S.C. § 15(a) (permitting any person injured "by reason of" an antitrust violation to "recover threefold the damages by him sustained"), *with* 31 U.S.C.

- 12 -

RELATOR'S OPPOSITION TO DR. FALK'S                          CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

§ 3729(a) (permitting recovery of "3 times the amount of damages which the Government sustains because of the act of" the defendant); *see, e.g., Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172 (1965); *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013).

Similarly, civil claims under RICO, which also require a plaintiff to show injury "by reason of" a defendant's racketeering misconduct, confirm the adequacy of Relator's pleadings here. 18 U.S.C. § 1964. In *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), for example, the Court held that defendants' racketeering activities proximately caused the plaintiffs' RICO injuries even though contributing causes—including government action—had intervened between the defendants' RICO violations and the plaintiffs' injuries.

The plaintiffs and defendants in *Bridge* were competing buyers at a public auction. The defendants allegedly committed mail fraud by submitting false certifications to the government authorities conducting the auction. The false certifications misled government authorities concerning the identities of the defendants and the agents bidding on their behalf. The government authorities consequently awarded to the defendants a greater percentage of auction sales when the plaintiffs and defendants submitted equal bids. Despite the governmental action that had intervened between the defendants' fraud and the plaintiffs' injuries, the Court held that the RICO violations proximately caused the plaintiffs' injuries and were therefore recoverable as being caused "by reason of" defendants' underlying RICO violations. The Court held the plaintiff's injury was the "direct result" of the defendants' fraud because it was the "foreseeable and natural consequence" of the fraud, *id.* at 658, and therefore had *not* been "an intervening cause breaking the chain of causation." *Id.* at 659.

That holding is entirely consistent with well-established common law causation principles. At common law, certain intervening events—also called "superseding causes"—may sever the causal nexus between a defendant's wrongdoing and a plaintiff's injury. This occurs, however, only if the injury is neither reasonably foreseeable nor part of the risk created by a defendant's wrongful conduct. *See, e.g., Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996) ("'The doctrine of superseding cause is . . . applied where . . . the injury was actually brought about by a later cause of *independent*

- 13 -

RELATOR'S OPPOSITION TO DR. FALK'S                    CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

*origin that was not foreseeable*'") (emphasis added)) (quoting 1 T. Schoenbaum, *Admiralty and Maritime Law* § 5-3, pp. 165-166 (2d ed. 1994)).

## II.   Eliminating The Otterbeck Claims Would Not Reduce The Core Liability Questions

Falk frames this Motion as an efficiency measure that would narrow the issues for discovery and trial. ECF 215 at 2. Not so. Even if the Court grants this Motion, Relator could and would still argue that the Otterbeck Patents were clearly invalid, even if not fraudulent, and therefore would not have deterred generic entry. Accordingly, eliminating the Otterbeck Patent FCA claims now, would do little to narrow the issues for discovery or trial.

## CONCLUSION

Falk's duplicative motion should be denied in its entirety.

Respectfully submitted,

Dated: July 1, 2026

**HERRERA KENNEDY LLP**

_____
By: Nicomedes Sy Herrera

Nicomedes Sy Herrera (State Bar No. 275332)
Shawn M. Kennedy (State Bar No. 218472)
Laura E. Seidl (State Bar No. 269891)
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile:  (855) 969-2050
Email: NHerrera@HerreraKennedy.com
        SKennedy@HerreraKennedy.com
        LSeidl@HerreraKennedy.com

**BURNS CHAREST LLP**
Warren T. Burns (*pro hac vice*)
Christopher Cormier (*pro hac vice*)
Clayton Mahaffey (*pro hac vice*)
Matthew Strauser (*pro hac vice*)
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002
Email: wburns@burnscharest.com
        ccormier@burnscharest.com
        cmahaffey@burnscharest.com
        mstrauser@burnscharest.com

- 14 -

RELATOR'S OPPOSITION TO DR. FALK'S                    CASE NO. 3:18-CV-01496-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

**SPARACINO PLLC**
Tejinder Singh (*pro hac vice*)
1920 L Street, NW, Suite 835
Washington, DC 20036
Telephone: (202) 629-3530
Email: Tejinder.Singh@sparacinopllc.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

- 15 -